# EXHIBIT 1(a)(1)

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
William Reed, Esq., State Bar No. 261931
WReed@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number: (310) 860 0770
Facsimile Number: (310) 860 0771

Attorneys for Plaintiff,
CRAIG STOKER

Electronically FILED by Superior Court of California, County of Los Angeles 11/27/2023 2:16 PM David W. Slayton, Executive Officer/Clerk of Court, By S. Ruiz, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company. KEVIN LUNDY. an individual. and DOES 1 to 100, inclusive,

Defendants.

Case No.: 23STCV28816

**PLAINTIFF CRAIG STOKER'S COMPLAINT FOR DAMAGES FOR:**

**(1) VIOLATION OF LABOR CODE § 1102.5 (b) & (c) (WHISTLEBLOWER RETALIATION);**

**(2) VIOLATION OF LABOR CODE § 232.5 (RETALIATION FOR REPORTING WORKING CONDITIONS);**

**(3) VIOLATION OF LABOR CODE § 6310 (RETALIATION FOR DISCLOSING UNSAFE WORKING CONDITIONS);**

**(4) DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF FEHA;**

**(5) HARASSMENT ON THE BASIS OF GENDER IN VIOLATION OF FEHA;**

**(6) RETALIATION IN VIOLATION OF THE FEHA;**

**(7) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT. AND/OR**

**RETALIATION IN VIOLATION OF FEHA;**

**(8) BREACH OF EXPRESS ORAL CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

**(9) BREACH OF IMPLIED-IN-FACT CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

**(10) NEGLIGENT HIRING, SUPERVISION, AND RETENTION;**

**(11) WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF PUBLIC POLICY; *and***

**(12) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS


Page

SUMMARY ..... 1

PARTIES ..... 1

VENUE ..... 3

FACTS COMMON TO ALL CAUSES OF ACTION ..... 4

Plaintiff's Hire ..... 4

Plaintiff's Performance ..... 4

Plaintiff's Protected Status and Activities ..... 4

General Synopsis of Underlying Facts ..... 4

Stoker Blows the First Whistle ..... 4

Stoker Blows the Whistle, Again ..... 7

After His Complaints Against Blue Origin's CEO, Stoker Confronts Retaliation ..... 8

Stoker Learns that A Fellow Employee Nearly Asphyxiated, And Immediately Voices His Workplace Safety Concerns ..... 9

Stoker Raises Safety Concerns of Employees Working "24-hour" Shifts ..... 9

Unsurprisingly, Blue Origin's (Now) Internal Investigation Absolved Its CEO of Any Wrongdoing ..... 10

Stoker Schedules a Follow-Up Meeting to Inquire into the Investigation and Express His Grave Concerns Re Its Thoroughness, Propriety, and Impartiality ..... 13

Based on Stoker's Reported "24 Hour Shift" Safety Concerns, Stevens Issues an Interim Policy on "Fatigue Management" ..... 14

Stoker Follows Up on the Concerns Raised at the August 3, 2022 Meeting ..... 15

With No Further Action, Beatty Quickly Closes the Investigation ..... 15

Stoker Raises Ethical / Legal Concerts to In House Counsel ..... 16

Stoker Raises Ethical / Legal Concerts to In House Counsel ..... 17

Defendants' Termination of Plaintiff's Employment ..... 18

FIRST CAUSE OF ACTION ..... 20

Whistleblower Retaliation (Violation of Labor Code § 1102.5, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive ..... 20

SECOND CAUSE OF ACTION ........ 22

Whistleblower Retaliation (Violation of Cal. Labor Code § 232.5) Against Blue Origin and Does 1 to 100, Inclusive ........ 22

THIRD CAUSE OF ACTION ........ 23

Whistleblower Retaliation (Violation of Labor Code § 6310) Against Blue Origin and Does 1 to 100, Inclusive ........ 23

FOURTH CAUSE OF ACTION ........ 24

Discrimination on the Basis of Sex and Gender (Government Code § 12900, et seq.) Against Blue Origin and Does 1 to 100, Inclusive ........ 24

FIFTH CAUSE OF ACTION ........ 25

Hostile Work Environment / Harassment on the Basis of Gender/Sex (Government Code § 12900, et seq.) Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive ........ 25

SIXTH CAUSE OF ACTION ........ 26

Retaliation for Engaging in Protected Activity (Violation of Government Code § 12900, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive........ 26

SEVENTH CAUSE OF ACTION ........ 27

Failure to Prevent Discrimination, Harassment, and/or Retaliation (Violation of Government Code § 12900, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive........ 27

EIGHTH CAUSE OF ACTION ........ 28

Breach of Express Oral Contract Not to Terminate Employment Without Good Cause (*Marvin v. Marvin* (1976) 18 Cal.3d 660) Against Blue Origin and Does 1 to 100, Inclusive........ 28

NINTH CAUSE OF ACTION ........ 29

Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622) Against Blue Origin and Does 1 to 100, Inclusive ........ 29

TENTH CAUSE OF ACTION ........ 30

Negligent Hiring, Supervision, and Retention (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038) Against Blue Origin and Does 1 to 100, Inclusive........ 30

ELEVENTH CAUSE OF ACTION ........ 31

Wrongful Termination of Employment in Violation of Public Policy (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167) Against Blue Origin and Does 1 to 100, Inclusive........ 31

TWELFTH CAUSE OF ACTION........ 32

Intentional Infliction of Emotional Distress (*Hughes v. Pair* (2009) 46 Cal.4th 1035) Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive ................ 32

PRAYER ........................................................................................................ 33

Plaintiff, Craig Stoker, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Craig Stoker ("plaintiff" or "Stoker"), whose employment with defendant Blue Origin LLC ("Blue Origin") was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b), Labor Code section 1102.5(j), and Code of Civil Procedure section 1021.5.

## PARTIES

1. *Plaintiff:* Plaintiff Stoker is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:* Defendant Blue Origin is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Defendants' place of business, where the following causes of action took place, was and is in the County of Los Angeles, at 21650 Oxnard Street, Suite 1555, Woodland Hills, CA 91367. Defendant Kevin Lundy ("Lundy") is, and at all times mentioned in this Complaint was, a manager with defendants. Defendant Lundy is, and at all times mentioned in this Complaint was believed to be, a resident of Los Angeles County, California.

3. *Doe defendants:* Defendants Does 1 to 100, inclusive, are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions

mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

4. *Relationship of defendants:* All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i). All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

5. All Defendants both directly and indirectly employed plaintiff Stoker, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

///

///

6. In addition, defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

7. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

**VENUE**

8. The actions at issue in this case occurred in the State of California, in the County of Los Angeles. Under the California Fair Employment and Housing Act, this case can alternatively, at Plaintiff's choice, be filed:

> [I]n a county in which the department has an office, ***in a county in which unlawful practices are alleged to have been committed***, in the county in which records relevant to the alleged unlawful practices are maintained and administered, in the county in which the person claiming to be aggrieved would have worked or would have had access to public accommodation, but for the alleged unlawful practices, in the county of the defendant's residence or principal office. . . (Italics and bolding added)

(California Government Code § 12965(b).)

9. Here, the plaintiff worked primarily in California in the County of Los Angeles. The location where plaintiff worked was located in Woodland Hills, California. The majority of the unlawful actions on the part of the defendants occurred at said Woodland Hills location.

10. "[I]n the absence of an affirmative showing to the contrary, the presumption is that the county in which the title of the actions shows that the case is brought is, prima facie, the proper county for the commencement and trial of the action." (*Mission Imports v. Sup. Crt.* (1982) 31 Cal.3d 921, 928.) The FEHA venue statute – section 12965(b) – thus affords a wide choice of venue to persons who bring actions under FEHA. (*Brown v. Sup. Crt.* (1984) 37 Cal.3d 477, 486.) "[T]he special provisions of the FEHA venue statute control in cases involving FEHA claims joined with non-FEHA claims arising from the same facts." (*Id.* at 487.)

///

## FACTS COMMON TO ALL CAUSES OF ACTION

### Plaintiff's Hire

11. Plaintiff, now 62 years of age, began his employment with Blue Origin as an Engine Program Director on or around October 19, 2020.

### Plaintiff's Performance

12. Throughout his employment, Stoker performed exceptionally. Never did he have a significant performance issue. Leading up to his wrongful termination, Stoker consistently received praise in his performance reviews. In his 2021 annual evaluation, Stoker earned an "Outstanding Contribution" overall rating.

13. Stoker's 2022 semiannual review rated his performance "on track" and noted that "***Craig and the BE-4 team have done an outstanding job identifying engineering and program talent to bring into Blue engines that are helping increase the experience and discipline that we need to be successful… BE-4 is an incredibly difficult program being watched through a magnifying glass both internally and externally. Your patience, professionalism, grit and accountability throughout this year has been admirable.***"

### Plaintiff's Protected Status and Activities

14. Stoker is over 40 years of age.

15. Stoker is a male.

16. Stoker engaged in protected activities. Specifically, Stoker made numerous complaints regarding *safety issues*, reported a *hostile work environment*, and brought to light *ethical violations*.

### General Synopsis of Underlying Facts

#### *Stoker Blows the First Whistle*

17. In May of 2022, a meeting was held between Stoker, Linda Cova ("Cova") – a female – Vice President of the Engines Business Unit, and Mary Plunkett ("Plunkett"), – a female – Senior Vice President of Human Resources. Stoker explained to these female leaders that Robert Smith's ("Smith"), Blue Origin CEO, behavior caused employees (mainly male) to frequently violate safety procedures and processes in order to meet

unreasonable deadlines. Then when issues inevitably arose (including those related to safety), Smith would explode. On information and belief, Kevin Lundy ("Lundy") was informed of this complaint and was involved in Plunkett and Cova's actions, or inactions, thereafter.

18. On or around May 23, 2022, Stoker sent an email to Cova and Plunkett, to reiterate and report other serious concerns related to the behavior of CEO Smith and the ever present hostile work environment that was hampering Blue Origin's ability to operate safely, efficiently, or competently. On information and belief Lundy was involved with the receipt and processing of this complaint.

19. This email follows:

a. "Myself, my leadership team and others throughout the company should not have to constantly apologize and make excuses to ourselves and our teams for the **CEO's bad behavior**. We spend significant time smoothing things over, building back morale, repairing damage, stopping people from overreacting to **direction to violate policies and procedures** and guiding them in making the right decisions. By continuing to accept this behavior we are all contributing to creating a **hostile work environment**, **<u>repeating the Space Shuttle missteps discussed at Safety Day this year and are not staying true to the Blue Leadership Principles</u>**."

b. "Therefore, I want to **record a formal complaint against Robert Smith** for creating a ***hostile work environment*** **and selectively targeting people** to assign individual blame for institution failings. The hostile work environment and targeting are **impacting the ability of Blue to execute work**, **impacting the health and wellbeing of my team and I** (and other across the company), **demoralizing the entire company** and **<u>creating a *safety* and quality hazard for our people, products and customers</u>**. The fact that we work for a private company does not mean we should accept this behavior and work environment that is **<u>inconsistent with the *state and federal laws* that govern the workplace</u>**."

///

c. "Hostile working environment examples are:"

- "Pitting BU and function against each other"
- "Unacceptably harsh tone, behavior and bullying in emails, in discussions and in meetings"
- "Demanding the impossible completion of tasks and schedules and not listening to facts and data"
- "Lack of clear direction leading to constant 'bring me another rock,'"
- "Demeaning direct and indirect communication and discussion"
- "Demanding people violate procedures and processes and take significant risk and then chastising the team and individuals when issues occur"
- "Shooting the messenger and individual blame environment"

d. "Institutional failing include:"

- "Lack of adequate resources, capacity and capability to complete assigned tasks"
- "Immature and inadequate process, procedures and tools"
- "Inadequately trained and experienced personnel to do assigned work"
- "Team burnout leading to mistakes because of constant firefighting and unrealistic goals, schedules and objectives"
- "Schedule above all else approach to execution including sacrificing quality and safety"
- "Inadequate escalation of issues and people moving forward with work instead of stopping to address issues and concerns because of shooting the messenger environment"
- "Lack of institutional accountability for poor decision making that puts us in our current position"

e. "Thank you for your support in this critical matter"

///

20. Stoker also reported that, on at least two occasions in December of 2020 and September of 2021, teams were being forced to work 24-hour shifts, and that the resulting exhaustion and burnout was leading to mistakes that required constant "firefighting." Stoker, thus impressed that company guidelines were needed to avoid careless errors and mistakes that appeared to be caused only by sleep deprivation.

21. Plunkett and Cova (and, on information and belief, by proxy Lundy) promised to take action to investigate Stoker's concerns, and in a case like this involving Senior Leadership, outside counsel would likely be utilized to investigate.

22. At that same meeting, Stoker inquired as to the status of an ongoing investigation into Smith's behavior, of which he was aware because he had been previously interviewed. Stoker echoed those significant concerns regarding Smith's behavior. A dismissive Plunkett (who was, on information and belief, also speaking on behalf of Cova and Lundy) indicated that the investigation had been closed out and that Smith was receiving "coaching."

23. Stoker's complaints to female leadership – *i.e.,* Cova and Plunkett – were, for all intent and purpose, disregarded. Sadly, this was the beginning of a trend where female executives, supervisors and human resources directors, would purposefully ignore Stokers legitimate concerns and complaints, on information and belief, due to his male gender.

24. On information and belief, influenced by the cat's paw, Lundy disregarded Stoker's complaints and expected Stoker, because he was a male, to buck up and grin and bear it.

***Stoker Blows the Whistle, Again***

25. After Stoker's May meeting with Cova and Plunkett, the female executives assigned Melissa Beatty ("Beatty"), – a female – Senior Director of Human Resources Operations, to lead the investigation into Stoker's complaints.

26. In May and June of 2022, Stoker met with Beatty to further express and explain his concerns regarding Smith.

///

27. At the meeting on or around May 24, 2022, Stoker was informed that an outside counsel would be used to complete the investigation since Plaintiff's complaint was against the CEO. At Beatty's request, Stoker walked her through his formal complaint and listed people who either witnessed, or were the subject of, the behavior outlined in his written claim.

28. At the meeting on or around June 9, 2022, Stoker expanded on his concerns. While doing so, he expressed his fear that Smith's behavior would lead to missteps similar to those demonstrated at "Safety Day" the previous January, where a former astronaut was invited to speak to Blue Origin employees regarding shuttle disasters and the circumstances that caused those incidents. ***Stoker specifically noted that, presently, there were several such issues also occurring at Blue Origin***, such as: **(i)** having a narrow focus on schedule above all else, **(ii)** ignoring engineering input, and **(iii)** not having strong safety and quality programs in place.

29. Sadly, Stoker's concerns were *yet again* ignored by a senior female director. On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***After His Complaints Against Blue Origin's CEO, Stoker Confronts Retaliation***

30. Since Stoker started his employment working from home in October of 2020, he did not have a workstation at the Los Angeles office. But by June of 2022, Blue Origin employees were regularly reporting to said office, including Stoker. Yet, Stoker, despite being the most senior employee at the LA branch, was refused a permanent workstation – unlike any other employee there.

31. On information and belief, Kevin Lundy ("Lundy"), the manager of the LA Branch – at the direction of Blue Origin directors such as Smith, Cova, and Beatty – refused to assign Stoker a permanent workstation. By having the branch's most senior employee frequently bounce around from desk to desk, making room for less experienced and lower ranking employees, Lundy actively sought to embarrass Stoker in front of his peers.

32. On several occasions Stoker asked for a permanent workstation, but as usually, he was totally ignored.

33. For the remainder of his tenure with Blue Origin, Stoker was regularly directed by Lundy to move from desk to desk.

***Stoker Learns that A Fellow Employee Nearly Asphyxiated, And Immediately Voices His Workplace Safety Concerns***

34. During Summer 2022, Stoker learned that a fellow employee had almost asphyxiated while working under an engine nozzle during a nitrogen purge. Despite the fact that industry practice required barriers and notification systems in the areas subject to nitrogen purges to make employees aware of the imminent danger, neither of those systems were in place at the time.

35. When Stoker brought these concerns to Michael Stevens ("Stevens"), Vice President of Safety and Mission Assurance, he was brushed off, and dismissively told that ***Blue Origin could not have safety procedures for everything***. Instead, Stevens blamed the employee – also a male – for not knowing that the area would be undergoing a nitrogen purge.

36. On information and belief, this – fare for yourself, you're a male, attitude – was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***Stoker Raises Safety Concerns of Employees Working "24-hour" Shifts***

37. On or around August 1, 2022, in an email to Cova, Beatty, Dawn Lovely, Michael Eilola, Jason Priebe, Rob Brazier, Robert Josker, and Keith Klaus, Stoker wrote:

a. "Congratulations again to you and the team on getting F1 delivered to LS1. I am as excited as anyone about this accomplishment, **but we have to learn from this and ensure the safety of our teams**. We had approximately **9 people work 24+ hours on the final day** to get this engine out the door. We had a similar situation last December where several of our teammates worked 26+ hours to complete a PQ engine and get it out the door. While I fully appreciate the extra effort, understand the schedule pressure and love the enthusiasm, I believe we need to generate a near miss to drive a change. I DO NOT

want an investigation that identifies the 9 employees and provides any kind of discipline. **What I want is a Near Miss that drives the implementation of work place rules that define the max hours per day, max days in a row, max hours per week, etc. that our employees can work to clearly establish a culture of safety over schedule**. We know the cause of the issue: technical and production debt, schedule pressure and lack of adequate resources and so a big investigation should not be required, but we absolutely must establish work place rules to **protect our people from themselves and ensure they understand that we value their safety over schedule**."

38. Human Resources Partner, Julie Grant ("Grant") – a female – was assigned to discuss these issues. As with Stoker's *previous* complaints made to female directors, his legitimate safety complaints, raised to protect his fellow (mainly male) employees from physical and emotional injury, were ignored.

39. On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***Unsurprisingly, Blue Origin's (Now) Internal Investigation Absolved Its CEO of Any Wrongdoing***

40. On or around August 1, 2022, Beatty scheduled a meeting with Stoker to review *her* investigative findings. While Beatty was explaining that Stoker's complaints did not meet the legal definition of a hostile work environment, she informed Stoker that she had *personally* conducted the investigation and that outside counsel was only used to review her findings.

41. Given the nature, severity, and hostility of Smiths egregious conduct, and the fact that Smith has numerous complaints against him for similar reasons, it is highly questionable whether Beatty also would have absolved Smith's hostilities if Stoker were a female. Beatty, in other words, implicitly expected Stoker to deal with the hostility because he was a male and could "handle it." On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

42. Beatty went on to disclaim that, despite *her* investigation's findings, she **did not have the expertise to investigate the safety concerns and compromising mission assurance**. Thus, these issues had **yet to be investigated** and would be **turned over to Stevens**. Beatty assured Stoker that Stevens would be following up with him to provide him with the results of the investigation. **As of Stokers termination, Stevens has not reached out with *any* questions, feedback, or findings related to this "investigation."**

43. Subsequently, Stoker received an email from Beatty stating:

a. "Mr. Stoker, this letter is in response to your email dated 23 May 2022 which you raised allegations of bullying behavior by CEO Bob Smith. We appreciate you sharing your concerns with us to allow us to review and respond. We take these allegations very seriously and therefore we assigned to Human Resources - Employee Relations to investigate."

b. "On 24 May 2022 and 9 June 2022, you met with me, Melissa Beatty, Senior Director, HR Operations to investigate your concerns. Specifically, you alleged in your letter and in your conversation with me the below concerns: [¶ … ¶ **(1)**] Bob Smith, CEO, demonstrated bad behavior towards the Engines team creating a hostile work environment[ and **(2)**] The CEO's behavior will lead to similar missteps demonstrated in the space shuttle disaster discussed at Safety Day in January 2022."

c. Findings: "To investigate these concerns, we reviewed all the material you provided, including the email communications with Mr. Smith, and interviewed people identified. We have also investigated generally Mr. Smith's treatment of you and your colleagues and specifically whether others feel Mr. Smith treats them harshly."

d. "This investigation did not corroborate your belief that Mr. Smith creates a hostile work environment. Everyone spoken to noted that they are under pressure to deliver engines as the next important step in Blue Origin's plans to build the road to space. Many referenced New Shepard right before the first human flight as an example of the kind of pressure they are experiencing. That said, examples of Mr. Smith's behavior do not rise to the level of a hostile work environment, which is the creation of a discriminatory

environment that a reasonable person would find so abusive or intimidating that it impacts the ability to work. The investigation did demonstrate, however, that some things could be done from a management and morale perspective to further support the team, which I discuss in the recommendations section of this letter. In reviewing the email examples of alleged harsh tone by Mr. Smith, I did not see harsh language. The behavior described was consistent with a CEO's desire and commitment to fulfil Blue's mission."

e. "For the allegation that Mr. Smith's behavior will lead to similar missteps demonstrated in the space shuttle disaster discussed at Safety Day in January 2022, HR is not qualified to assess the quality of design or safety impacts. This question has been referred to Michael Stevens, EHS, for inquiry. This effort is underway."

f. Recommendations:

- "*In process*: hand off to assess impact of management issues on design quality and safety concerns to Michael Stevens and EHS for review."
- "Consider additional support for the team, given the stress of where we are in the development of BE4. Answering the questions: does Engines have the right team in place, and the right people to support you and Engines? Include more regular touch points with HR and consider an executive coach for additional development support."
- "Ask Julie Grant to follow up on the Culture Assessment conducted in March to see where we are with the recommendations. To work with Mr. Stoker to assess the health of his organization, including team morale and resources available to support the work, including hours worked by the team."
- *"In process*: Consider incentives for those working the highest hours.
- "You and your Snr. HR Business Partner should engage much more routinely to ensure we are actively working on all concerns that are identified."
- "Conduct a review of all hours worked and ensure that team members

with the highest hours are taking time off periodically for rest and recovery."

g. Beatty's Lip service: "Mr. Stoker, as stated earlier the organization takes these allegations very seriously and conducted a thorough investigation into the matter. As a result, there were no findings that violated Blue Origin's policy or expectations of behavior. We do believe there is additional support and actions that could and should be taken to support the Engines team, and we have asked your Snr. HR Business Partner, Julie Grant, to work with you and Ms. Cova on potential next steps."

***Stoker Schedules a Follow-Up Meeting to Inquire into the Investigation and Express His Grave Concerns Re Its Thoroughness, Propriety, and Impartiality***

44. On or around August 3, 2022, Plaintiff had a follow-up meeting with Beatty, wherein he pointed out what he believed to be fatal flaws with the investigation. To start, Stoker pointed out that her investigation ignored Blue Origin policies, and instead focused narrowly on whether Smith's actions met the legal definition of a hostile work environment. Stated otherwise, Stoker pointed out that Beatty – a female – had "purposefully" ignored the legal standards (and those spelled out by Blue Origin policy) that clearly defined the applicable standard, again, on information and belief, because Stoker was a male, and could "suck it up." On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

45. Stoker then attempted to find out who was interviewed and whether Beatty had looked at things more broadly around Robert Smith's behavior relative to Blue Origins published Leadership Principles. In doing so, **Stoker learned that no one from the BE-4 program (where the safety issues occurred), the Blue Engine Business Unit, or Plaintiff's supervisor were interviewed as part of the investigation**. Beatty, quite hollowly, agreed to look further into Plaintiff's concerns. Stoker candidly conveyed this to Beatty that these failures gave him the impression that the investigation was not thoroughly conducted, and the lack of outside input appeared to place the results of the

investigation in serious question.

46. On information and belief, the three female human resources directors, Beatty, Plunkett, and Grant, along with Lundy (*via* the cat's paw) refused to take Stoker's legitimate safety concerns seriously, because he was a male, implying that they expected him to, in effect, "man up" and get tougher.

47. Rather than striving to protect their employees (mainly male) who worked with extremely dangerous tools and materials, whose designs and calculations require intense and exact precision, Beatty, Plunkett, Grant, and Lundy (*via* the cat's paw) expected Stoker, and male Blue Origin employees, to play the tough and machismo stereotypical blue-collar engineer, often emulated in pre-OSHA movies. Not only did this expectation risk billions of dollars, it risked lives, as demonstrated by the near asphyxiation of an employee just months earlier.

***Based on Stoker's Reported "24 Hour Shift" Safety Concerns, Stevens Issues an Interim Policy on "Fatigue Management"***

48. On or around August 4, 2022, Stevens circulated an email to Stoker, Keith Klaus, Dawn Lovely, James Dewees, Nathan Harris, and Priebe entitled: "Interim Safety Note to All Blue on Fatigue Management."

49. In said email, Stevens wrote:

a. "Leaders,"

b. "Please review and comment on the following note that I intend to send to all Blue."

c. "Safety is a core value at Blue. We value safety over schedule."

d. "Blue is in the process of publishing a fatigue management policy applicable to all organizations without an existing fatigue management plan (TFO and LS1 for example). In the interim, follow the below direction if your organization does not have an approved fatigue management plan:"

e. **(1) "Daily Total Work Hour Limit**" [¶ … ¶] "Employees should be limited to a maximum of 12 hours of work in a 24-hour period."

f. **(2)** "**Off Duty Periods**" [¶ … ¶] "Employees should be provided with a non-work or off duty period of no less than 10 consecutive hours prior to the start of a workday or shift." [¶ … ¶] "A minimum 48-hour rest period after 5 consecutive days of 12-hour shifts is required."

g. **(3)** "**Weekly Work Limit**" [¶ … ¶] "Employees should not work more than 60 hours in a labor reporting week."

h. **(4)** "**Consecutive Workday Limit**" [¶ … ¶] "Employees should not work more than 5 consecutive days where each day contains 12 hours (or more) of work without a 48-hour rest period[.]" [¶ … ¶] "Employees should not work more than 14 consecutive days where any amount of work is performed on those days."

i. Stoker felt some solace in that fact that this one complaint was addressed, notably though, it was by a male colleague.

***Stoker Follows Up on the Concerns Raised at the August 3, 2022 Meeting***

50. On or around August 20, 2022, Stoker sent Beatty a follow up email to determine where Beatty was with respect to his concern regarding the investigation and the timing of when he might receive a final investigation letter that addressed these concerns.

51. Mission critical, was that Stoker informed Beatty that he had **not heard back from Stevens on his Mission Assurance *safety* concerns.** On information and belief, this was no coincidence.

52. On further information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***With No Further Action, Beatty Quickly Closes the Investigation***

53. On or around August 22, 2022, Beatty responded that no additional or further investigation was planned or would be conducted, and that Stoker should expect a final closeout letter.

54. Stoker was left stunned by the clear neglect and unwillingness of human resources to conduct a legitimate and comprehensive investigation.

///

55. On information and belief, Beatty, Plunkett, Cove, and Lundy's (*via* the cat's paw) refusal to adequately investigate his concerns was because of his gender. As a male, they expected him to deal with his problems on his own and "whine" less – leaving Stoker with no recourse nor resource to raise his concerns against the company's most powerful officer.

***Stoker Raises Ethical / Legal Concerts to In House Counsel***

56. Recognizing Beatty, Plunkett, Cove, and Lundy (*via* the cat's paw) were not taking him seriously, Stoker met with Ian Savage ("Savage") – a male – Blue Origin Legal Counsel, on or around August 22, 2022. At said meeting, Stoker filed an Ethics concern against Smith and his actions surrounding Blue Origin's contract for the BE-4 engine with United Launch Alliance ("ULA") who builds and operates the Vulcan launch vehicle that the BE-4 engine will fly on.

57. Specifically, the contract required Blue Origin to provide ULA with a minimum of one year of insight into issues and updates surrounding the delivery of rocket engines.

58. Due to Blue Origin production issues, a production gap impacting ULA's business had been forecasted and Stoker wanted to fulfill Blue Origin's contractual obligations and inform ULA of this likelihood.

59. Stoker also wanted to provide additional insight because of the significance of this impact, in that it would almost certainly delay ULA's ability to make delivery to its government customer – the United States Space Force – and its ability to meet Assured Access to space requirements.

60. In this regard, **Stoker reported to Savage that Smith had instructed both he and Cova *not to* fully share these production issues and delivery schedules with ULA**.

61. At the time of Stoker's termination, Stoker had not heard back from legal regarding his concerns. On information and belief, the powers that be stood in the way.

///

///

///

***Stoker Raises Ethical / Legal Concerts to In House Counsel***

62. On or around September 22, 2022, Plaintiff sent an email to Senior Quality Director Henry Digdigan ("Digdigan - male – outlining a significant issue regarding baseline management that required immediate attention. Specifically, there was a discrepancy between the techniques, criteria, inspection methodology, and timing between identical production hardware being processed at the Huntsville and Kent locations, and Plaintiff required a plan of action to resolve the discrepancies.

63. Less than fifteen minutes later, Cova sent a follow-up email concurring with Plaintiff's concerns:

a. "+Mike and Jason (and minus all the IPTs)

b. "Diggy –"

c. "As you can see from the e-mail this is critical to ensuring we are delivering identical engines to ULA. And is just as important for all of the engines we deliver internally. In fact with long life hardware we are providing to NG a lot of these critical inspections will be even more important. Will you please let me know when you will have a team ready that can address this and lets get a weekly going to ensure we get quick closure on this. We are already in process with several flight engines and have to have this in control."

d. "We have a meeting with Bob on Friday to discuss how we control tWO change and this is another topic that we will need to discuss."

e. "Jason/Mike – assuming you will talk to this with Bob at our Friday meeting in addition to tWO control as it should be part of 'following planning' as well as change control."

64. On information and belief, this was lip service meant only to placate Stoker until his termination, which was coddled, approved, and ratified by Plunkett, Beatty, and Lundy (*via* the cat's paw).

///

///

***Defendants' Termination of Plaintiff's Employment***

a. On or around October 7, 2022 – on the heels of his protected activity, and only seven months after Stoker started rocking the "safety" boat – Stoker was called into a meeting with Cova and Grant. At the start, Cova informed Plaintiff that he was being terminated "without cause," because Blue Origin wanted to make a so called "leadership change."

b. When a perplexed Stoker asked why this was happening, Cova simply responded that he had neither done anything wrong, nor had he engaged in any misconduct, and that he would receive a – what later turned out to be a "cappy" – severance offer.

c. On information and belief, Smith spearheaded this termination due to Stoker's complaints against him, his raising of safety / ethical / legal issues, and the fact that many of these reports aimed to hamper his production / delivery schedule.

d. On information and belief, Plunkett, Lundy, Grant, and Beatty supported Smith's termination of Stoker, incensed and concerned by his legitimate complaints showcasing the holes in their expectations and procedures.

65. *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

66. Just one week later, Stoker was to hit his cliff to trigger additional equity share.

67. *Non-economic damages:* As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

68. *Punitive damages:* Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a. *Malice:* Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of his age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:* In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of his age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:* In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive him of legal rights.

69. *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

70. *Exhaustion of administrative remedies:* Prior to filing this action, plaintiff exhausted his administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-

sue letter.

**FIRST CAUSE OF ACTION**

**Whistleblower Retaliation**

**(Violation of Labor Code § 1102.5, *et seq.*)**

**Against Blue Origin and Does 1 to 100, Inclusive**

71. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

72. Under California Labor Code section 1102.5(b), an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency when the employee has reasonable cause to believe that the information discloses a violation of state or federal statute or a violation of or noncompliance with a state or federal rule or regulation. Section 1102.5 protects employees who disclose reasonably based suspicions of illegal activity or noncompliance with rules or regulations either to a government or law enforcement agency or directly to another employee of the employer, so long as the employee to whom the report is made has authority over the disclosing employee or has authority to investigate, discover, or correct the violation or noncompliance. Labor Code § 1102.5(b). Defendants are and at all relevant times were a government agency.

73. Under California Labor Code section 1102.5(c), an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a state or federal statute or a violation of or noncompliance with a state or federal rule or regulation.

74. At all relevant times, as set forth above, plaintiff reasonably believed, believes, and therefore alleges that he reported defendants' violation of various laws (*e.g.,* statutes, rules, codes, and regulations), ethical obligations, and contractual obligations (some that affected government contracts and legal obligations related thereto). The aforementioned make up plaintiff's reasonable belief of a potential legal violation and/or an actual legal

violation.

75. The same, plaintiff alleges that he refused to violate the law.

76. In violation of California Labor Code section 1102.5(b) and/or (c), defendants, and each of them, discriminated and retaliated against plaintiff by unlawfully demoting her or otherwise retaliating and discriminating against plaintiff because plaintiff lodged a complaint, testified (or was believed to have intended to do so), or assisted in any proceeding (or was believed to have intended to do so) concerning deficient patient care and safety, lack of quality of patient care, and doctors' performing life-threatening procedures on infants. Defendants unlawfully harassed and discriminated against plaintiff, as is fully set forth in the General Allegations and all paragraphs above, including adverse employment actions, such as compelled self-termination of employment.

77. As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

78. As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

79. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

80. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Labor Code section 1102.5(j), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

///

///

///

///

**SECOND CAUSE OF ACTION**

**Whistleblower Retaliation**

**(Violation of Cal. Labor Code § 232.5)**

**Against Blue Origin and Does 1 to 100, Inclusive**

81. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

82. At all relevant times, Labor Code section 232.5 was in effect and was binding on Defendants. As relevant here, this statute prohibits Defendants from discharging, formally disciplining, or otherwise discriminating against an employee who discloses information about the employer's working conditions.

83. California courts have interpreted section 232.5's definition of working conditions to mean "those conditions determined by the employer as a condition of employment." As described above, Plaintiff made numerous complaints about his working conditions. In violation of section 232.5, Defendants discharged, formally disciplined, and otherwise discriminated against/harassed Plaintiff because of his disclosures.

84. As a proximate result of Defendants' willful, knowing, intentional, and repeated violations of Labor Code section 232.5, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

85. As a result of defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

86. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles Plaintiff to punitive damages against Defendants.

///

///

///

///

**THIRD CAUSE OF ACTION**

**<u>Whistleblower Retaliation</u>**

**(<u>Violation of Labor Code § 6310</u>)**

**Against Blue Origin and Does 1 to 100, Inclusive**

87. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

88. At all relevant times, Labor Code section 6310 was in effect and was binding on defendants. This statute prohibits defendants from retaliating or otherwise discriminating against an employee, including plaintiff, for raising complaints (either oral or written) regarding health or health conditions or practices and/or instate or cause to be instated proceedings related to the employee's right to safe and healthful working conditions. Section 6310 also protects employees who report work-related injuries and illnesses.

89. Plaintiff made protected reports, complaints, and/or disclosures while he worked for defendants and was believed to be willing to raise complaints, and because of those reports/complaints/disclosures, defendants retaliated against him, discriminated against him, harassed him, and otherwise took adverse employment actions against him, up to, and including, the termination of his employment.

90. As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 6310, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

91. As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

92. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

///

## FOURTH CAUSE OF ACTION

**Discrimination on the Basis of Sex and Gender**

**(Government Code § 12900, et seq.)**

**Against Blue Origin and Does 1 to 100, Inclusive**

93. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

94. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following bases for liability:

a. Taking adverse employment action against Plaintiff, including but not limited to discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(a);

b. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(j);

c. Failing to take all reasonable steps to prevent discrimination and harassment in violation of Government Code section 12940(k);

95. On the basis of the above, plaintiff believes and alleges that a pattern and practice of the above described discrimination, harassment, retaliation, and failure to prevent discrimination and harassment occurred.

96. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

97. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

98. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

99. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

## FIFTH CAUSE OF ACTION

**Hostile Work Environment / Harassment on the Basis of Gender/Sex**

**(Government Code § 12900, et seq.)**

**Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive**

100. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

101. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following bases for liability:

a. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(j);

b. Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation in violation of Government Code section 12940(k).

102. Pursuant to Government Code section 12923(b), a single incident of harassing conduct is sufficient to create a hostile work environment if the harassing conduct has unreasonably interfered with plaintiff's work performance or created an intimidating, hostile, or offensive working environment.

///

103. As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

104. As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

105. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

106. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

**SIXTH CAUSE OF ACTION**

**Retaliation for Engaging in Protected Activity**

**(Violation of Government Code § 12900, *et seq.*)**

**Against Blue Origin and Does 1 to 100, Inclusive**

107. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

108. At all times herein mentioned, FEHA, Government Code section 12940, *et seq.,* was in full force and effect and was binding on defendants. This statute requires defendants to refrain from retaliating against any employee making complaints or opposing discrimination, harassment, or retaliation, or otherwise engaging in activity protected by the FEHA, including for seeking to exercise rights guaranteed under FEHA and/or assisting and/or participating in an investigation, opposing defendants' failure to provide rights, including rights to complain and to assist in a lawsuit, and/or the right to be free of retaliation, in violation of Government Code section 12940(h).

///

109. Plaintiff's seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including the right to be free of discrimination, harassment / a hostile work environment, and/or retaliation, in violation of Government Code section 12940(h), were substantial motivating reasons in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, and/or to take other adverse employment actions against plaintiff.

110. As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

111. As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

112. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

113. Defendants' retaliation was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

## SEVENTH CAUSE OF ACTION

**Failure to Prevent Discrimination, Harassment, and/or Retaliation**

**(Violation of Government Code § 12900, *et seq.*)**

**Against Blue Origin and Does 1 to 100, Inclusive**

114. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

///

115. At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

116. During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in plaintiff being treated less favorably because of his having engaged in protected activity.

117. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiffs have sustained and continue to sustain substantial losses of earnings and other employment benefits.

118. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

119. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

120. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

## EIGHTH CAUSE OF ACTION

## Breach of Express Oral Contract Not to Terminate Employment Without Good Cause

## (*Marvin v. Marvin* (1976) 18 Cal.3d 660)

## Against Blue Origin and Does 1 to 100, Inclusive

121. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

///

122. Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause. Plaintiff and defendants, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of him under the agreement by performing his job in an exemplary manner.

123. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the express oral contract they had with him.

124. As a proximate result of defendants' willful breach of the express oral contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

## NINTH CAUSE OF ACTION

**Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause**

**(*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622)**

**Against Blue Origin and Does 1 to 100, Inclusive**

125. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

126. On the basis of oral assurances of continued employment given to plaintiff by defendants' supervisors, the length of plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and defendants shared the actual understanding that plaintiff's employment could and would be terminated only for cause. This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

127. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with him.

128. As a proximate result of defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

**TENTH CAUSE OF ACTION**

**Negligent Hiring, Supervision, and Retention**

**(*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038)**

**Against Blue Origin and Does 1 to 100, Inclusive**

129. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

130. Defendants owed a duty of care to plaintiff to appoint, hire, retain, and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct. Defendants owed a duty of care to plaintiff not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities. Defendants owed a duty of care to plaintiff to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating against plaintiff.

131. Defendants breached these duties. As a result, defendants caused damages to plaintiff. As a proximate result of defendants' negligent hiring, retention, and supervision of their managers and employees, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof.

///

///

///

///

///

///

///

## ELEVENTH CAUSE OF ACTION

**Wrongful Termination of Employment in Violation of Public Policy**

**(*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167)**

**Against Blue Origin and Does 1 to 100, Inclusive**

132. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

133. Defendants terminated plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, plaintiff's employment was terminated in part because of his protected status (*i.e.,* protected activity). These actions were in violation of, but not limited to, the FEHA, the California Constitution, Government Code section 12900, *et seq.*, and the California Labor Code (*see* 232.5, 1102.5, 6310, and 6311).

134. As a proximate result of defendants' wrongful termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

135. As a result of defendants' wrongful termination of his employment, plaintiff has suffered general and special damages in sums according to proof.

136. Defendants' wrongful termination of plaintiff's employment was done intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages.

137. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq.,* plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

///

///

///

///

**TWELFTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(*Hughes v. Pair* (2009) 46 Cal.4th 1035)**

**Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive**

138. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

139. Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted extreme and outrageous misconduct and caused plaintiff severe emotional distress. Defendants were aware that treating plaintiff in the manner alleged above, including depriving plaintiff of his livelihood, would devastate plaintiff and cause him extreme hardship.

140. As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

141. As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

142. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

///

///

///

///

///

///

## PRAYER

WHEREFORE, plaintiff, Craig Stoker, prays for judgment against defendants as follows:

1. For general and special damages according to proof;
2. For exemplary damages, according to proof;
3. For pre-judgment and post-judgment interest on all damages awarded;
4. For reasonable attorneys' fees;
5. For costs of suit incurred;
6. For declaratory relief:
7. For such other and further relief as the Court may deem just and proper;

ADDITIONALLY, plaintiff, Craig Stoker, demands trial of this matter by jury. The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated: November 27, 2023

SHEGERIAN & ASSOCIATES, INC.

By: ______________________________
William Reed, Esq.

Attorneys for Plaintiff,
CRAIG STOKER

# EXHIBIT 1(a)(2)

**CM-010**

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

William Reed, Esq. | SBN 261931
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard, Los Angeles, California 90049
TELEPHONE NO.: (310) 860-0770 FAX NO.: (310) 860-0771
ATTORNEY FOR *(Name):* Plaintiff, Craig Stoker

***FOR COURT USE ONLY***

**Electronically FILED by Superior Court of California, County of Los Angeles 11/27/2023 2:16 PM David W. Slayton, Executive Officer/Clerk of Court, By S. Ruiz, Deputy Clerk**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MA LING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Los Angeles County Superior Court - Stanley Mosk Courthouse

CASE NAME:
Stoker v. Blue Origin LLC, et al.

## CIVIL CASE COVER SHEET

[X] **Unlimited** (Amount demanded exceeds $25,000)
[ ] **Limited** (Amount demanded is $25,000 or less)

**Complex Case Designation**
[ ] **Counter** [ ] **Joinder**
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: 23STCV28816
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[X] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief c. [X] punitive
4. Number of causes of action *(specify):* Twelve (12) Causes of Action
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 27, 2023
William Reed, Esq.
(TYPE OR PRINT NAME)
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/ Wrongful Death
- Product Liability *(not asbestos or toxic/environmental)* (24)
- Medical Malpractice (45)
  - Medical Malpractice– Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical or legal)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  - Negligent Breach of Contract/ Warranty
  - Other Breach of Contract/Warranty
- Collections (e.g., money owed, open book accounts) (09)
  - Collection Case–Seller Plaintiff
  - Other Promissory Note/Collections Case
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
- Asset Forfeiture (05)
- Petition Re: Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Claims Involving Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister State Judgment
  - Administrative Agency Award *(not unpaid taxes)*
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanics Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Late Claim
  - Other Civil Petition

| SHORT TITLE: Stoker v. Blue Origin LLC, et al. | CASE NUMBER 23STCV28816 |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☒ YES CLASS ACTION? ☐ YES LIMITED CASE? ☐ YES TIME ESTIMATED FOR TRIAL 15 ☐ HOURS/ ☒ DAYS

**Item II. Indicate** the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

**Applicable Reasons for Choosing Courthouse Location (see Column C below)**

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action (Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| Auto Tort | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070 Asbestos Property Damage<br>☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2.<br>2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons<br>☐ A7240 Other Professional Health Care Malpractice | 1., 4.<br>1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall)<br>☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270 Intentional Infliction of Emotional Distress<br>☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4.<br>1., 4.<br>1., 3.<br>1., 4. |

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Stoker v. Blue Origin LLC, et al. | |

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Non-Personal Injury/ Property Damage/ Wrongful Death Tort | Business Tort (07) | ☐ A6029 Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005 Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010 Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013 Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017 Legal Malpractice<br>☐ A6050 Other Professional Malpractice (not medical or legal) | 1., 2., 3.<br>1., 2., 3. |
| | Other (35) | ☐ A6025 Other Non-Personal Injury/Property Damage tort | 2.,3. |
| Employment | Wrongful Termination (36) | ☒ A6037 Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024 Other Employment Complaint Case<br>☐ A6109 Labor Commissioner Appeals | 1., 2., 3.<br>10. |
| Contract | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)<br>☐ A6008 Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence)<br>☐ A6019 Negligent Breach of Contract/Warranty (no fraud)<br>☐ A6028 Other Breach of Contract/Warranty (not fraud or negligence) | 2., 5.<br>2., 5.<br>1., 2., 5.<br>1., 2., 5. |
| | Collections (09) | ☐ A6002 Collections Case-Seller Plaintiff<br>☐ A6012 Other Promissory Note/Collections Case | 2., 5., 6.<br>2., 5. |
| | Insurance Coverage (18) | ☐ A6015 Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009 Contractual Fraud<br>☐ A6031 Tortious Interference<br>☐ A6027 Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 5.<br>1., 2., 3., 5.<br>1., 2., 3., 8. |
| Real Property | Eminent Domain/Inverse Condemnation (14) | ☐ A7300 Eminent Domain/Condemnation Number of parcels______ | 2. |
| | Wrongful Eviction (33) | ☐ A6023 Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018 Mortgage Foreclosure<br>☐ A6032 Quiet Title<br>☐ A6060 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6.<br>2., 6.<br>2., 6. |
| Unlawful Detainer | Unlawful Detainer-Commercial (31) | ☐ A6021 Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020 Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022 Unlawful Detainer-Drugs | 2., 6. |

| SHORT TITLE: Stoker v. Blue Origin LLC, et al. | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| Judicial Review | Asset Forfeiture (05) | ☐ A6108 Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115 Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151 Writ - Administrative Mandamus<br>☐ A6152 Writ - Mandamus on Limited Court Case Matter<br>☐ A6153 Writ - Other Limited Court Case Review | 2., 8.<br>2.<br>2. |
| | Other Judicial Review (39) | ☐ A6150 Other Writ /Judicial Review | 2., 8. |
| Provisionally Complex Litigation | Antitrust/Trade Regulation (03) | ☐ A6003 Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007 Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006 Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035 Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036 Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014 Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| Enforcement of Judgment | Enforcement of Judgment (20) | ☐ A6141 Sister State Judgment<br>☐ A6160 Abstract of Judgment<br>☐ A6107 Confession of Judgment (non-domestic relations)<br>☐ A6140 Administrative Agency Award (not unpaid taxes)<br>☐ A6114 Petition/Certificate for Entry of Judgment on Unpaid Tax<br>☐ A6112 Other Enforcement of Judgment Case | 2., 9.<br>2., 6.<br>2., 9.<br>2., 8.<br>2., 8.<br>2., 8., 9. |
| Miscellaneous Civil Complaints | RICO (27) | ☐ A6033 Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030 Declaratory Relief Only<br>☐ A6040 Injunctive Relief Only (not domestic/harassment)<br>☐ A6011 Other Commercial Complaint Case (non-tort/non-complex)<br>☐ A6000 Other Civil Complaint (non-tort/non-complex) | 1., 2., 8.<br>2., 8.<br>1., 2., 8.<br>1., 2., 8. |
| Miscellaneous Civil Petitions | Partnership Corporation Governance (21) | ☐ A6113 Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121 Civil Harassment<br>☐ A6123 Workplace Harassment<br>☐ A6124 Elder/Dependent Adult Abuse Case<br>☐ A6190 Election Contest<br>☐ A6110 Petition for Change of Name<br>☐ A6170 Petition for Relief from Late Claim Law<br>☐ A6100 Other Civil Petition | 2., 3., 9.<br>2., 3., 9.<br>2., 3., 9.<br>2.<br>2., 7.<br>2., 3., 4., 8.<br>2., 9. |

| SHORT TITLE: | CASE NUMBER |
|---|---|
| Stoker v. Blue Origin LLC, et al. | |

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., Step 3 on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case. | | | ADDRESS: |
|---|---|---|---|
| ☐1. ☒2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | | | 21650 Oxnard Street, Suite 1555 |
| CITY: Woodland Hills | STATE: CA | ZIP CODE: 91367 | |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: November 27, 2023

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet, Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).
5. Payment in full of the filing fee, unless fees have been waived.
6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

# EXHIBIT 1(a)(3)

Superior Court of California, County of Los Angeles

# ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

## What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

## Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

## Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or decision by a judge or jury.

## Main Types of ADR

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

- **ADR Services, Inc.** Assistant Case Manager Janet Solis, janet@adrservices.com (213) 683-1600
- **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion.** They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate, or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs.** Los Angeles County-funded agencies provide mediation services on the day of hearings in small claims, unlawful detainer (eviction), civil harassment, and limited civil (collections and non-collection) cases.
https://dcba.lacounty.gov/countywidedrp/

**Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case. https://my.lacourt.org/odr/

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit https://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit https://www.lacourt.org/division/civil/CI0047.aspx

Los Angeles Superior Court ADR website: https://www.lacourt.org/division/civil/CI0109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

# EXHIBIT 1(a)(4)

2019-GEN-014-00

FILED
Superior Court of California
County of Los Angeles

MAY 03 2019

Sherri R. Carter, Executive Officer/Clerk
By [signature], Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE LOS ANGELES SUPERIOR COURT – MANDATORY ELECTRONIC FILING FOR CIVIL | FIRST AMENDED GENERAL ORDER |

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

a) **"Bookmark"** A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

b) **"Efiling Portal"** The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

c) **"Electronic Envelope"** A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

d) **"Electronic Filing"** Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

e) **"Electronic Filing Service Provider"** An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court. (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"** For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"** An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"** A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format. Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs. Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

ii) Bonds/Undertaking documents;

iii) Trial and Evidentiary Hearing Exhibits

iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image**.**

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

i) Depositions;

ii) Declarations;

iii) Exhibits (including exhibits to declarations);

iv) Transcripts (including excerpts within transcripts);

v) Points and Authorities;

vi) Citations; and

vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted. (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day <u>before</u> the ex parte hearing.

b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9) PRINTED COURTESY COPIES

a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

i) Any printed document required pursuant to a Standing or General Order;

ii) Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

iii) Pleadings and motions that include points and authorities;

iv) Demurrers;

v) Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

vi) Motions for Summary Judgment/Adjudication; and

vii) Motions to Compel Further Discovery.

c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents. Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a) Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

11) SIGNATURES ON ELECTRONIC FILING

For purposes of this General Order, all electronic filings must be in compliance with California Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil Division of the Los Angeles County Superior Court.

This First Amended General Order supersedes any previous order related to electronic filing, and is effective immediately, and is to remain in effect until otherwise ordered by the Civil Supervising Judge and/or Presiding Judge.

DATED: May 3, 2019

KEVIN C. BRAZILE
Presiding Judge

# EXHIBIT 1(a)(5)

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

Reserved for Clerk's File Stamp

FILED
Superior Court of California
County of Los Angeles
11/27/2023
David W. Slayton, Executive Officer / Clerk of Court
By: S. Ruiz Deputy

## NOTICE OF CASE ASSIGNMENT
## UNLIMITED CIVIL CASE

**Your case is assigned for all purposes to the judicial officer indicated below.**

CASE NUMBER:
23STCV28816

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | William F. Fahey | 69 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record on 11/27/2023 (Date)

David W. Slayton, Executive Officer / Clerk of Court
By S. Ruiz, Deputy Clerk

# INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

**APPLICATION**
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

**COMPLAINTS**
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

**CROSS-COMPLAINTS**
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

**STATUS CONFERENCE**
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

**SANCTIONS**
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

**Class Actions**
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

***Provisionally Complex Cases**
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

# EXHIBIT 1(a)(6)

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**Electronically FILED by Superior Court of California, County of Los Angeles 11/27/2023 2:16 PM David W. Slayton, Executive Officer/Clerk of Court, By S. Ruiz, Deputy Clerk**

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***
Blue Origin LLC, a limited liability company, Kevin Lundy, an individual, and DOES 1 to 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***
Craig Stoker

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be elig ble for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California* (www.sucorte.ca.gov)*, en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services,* (www.lawhelpcalifornia.org)*, en el Centro de Ayuda de las Cortes de California,* (www.sucorte.ca.gov) *o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Stanley Mosk Courthouse - Central District
111 North Hill Street
Los Angeles, California 90012

CASE NUMBER:
*(Número del Caso):*
23STCV28816

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
William Reed, Esq. | SBN 261931 (310) 860-0770
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard, Los Angeles, California 90049

David W. Slayton, Executive Officer/Clerk of Court

DATE: *(Fecha)* 11/27/2023 Clerk, by *(Secretario)* S. Ruiz , Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date)*:





American LegalNet, Inc.
www FormsWorkflow.com

# EXHIBIT 1(a)(7)

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS

**Superior Court of California**
**County of Los Angeles**

**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**

**Consumer Attorneys Association of Los Angeles**

**Southern California Defense Counsel**

**Association of Business Trial Lawyers**

**California Employment Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

**◆Los Angeles County Bar Association Litigation Section◆**

**◆ Los Angeles County Bar Association Labor and Employment Law Section◆**

**◆Consumer Attorneys Association of Los Angeles◆**

**◆Southern California Defense Counsel◆**

**◆Association of Business Trial Lawyers◆**

**◆California Employment Lawyers Association◆**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | | CASE NUMBER: |

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to ________________ (INSERT DATE) for the complaint, and ________________ (INSERT DATE) for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at www.lacourt.org under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

______________________________ ➢ ______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR PLAINTIFF)

Date:

______________________________ ➢ ______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

______________________________ ➢ ______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

______________________________ ➢ ______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

______________________________ ➢ ______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________)

Date:

______________________________ ➢ ______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________)

Date:

______________________________ ➢ ______________________________
(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________)



Print Save Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION – DISCOVERY RESOLUTION** | | CASE NUMBER: |

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

        i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii. Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

        i. Also be filed on the approved form (copy attached);

        ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
| --- | --- |
| | |

iii. Be filed within two (2) court days of receipt of the Request; and

iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

   It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a “specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing,” within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to “days” mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR PLAINTIFF)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ______________________________)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ______________________________)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ______________________________)

Print Save Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
| --- | --- | --- |
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | | CASE NUMBER: |

1. This document relates to:

   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _______________ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _______________ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**



**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

Print Save Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | | CASE NUMBER: |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR PLAINTIFF)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR DEFENDANT)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________)

Date:

➢

(TYPE OR PRINT NAME) (ATTORNEY FOR ____________________)

**THE COURT SO ORDERS.**

Date: ____________________

JUDICIAL OFFICER

Print Save Clear

**FILED**
LOS ANGELES SUPERIOR COURT

MAY 11 2011

JOHN A. CLARKE, CLERK
N. Navarro
BY NANCY NAVARRO, DEPUTY

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| General Order Re<br>Use of Voluntary Efficient Litigation<br>Stipulations | ORDER PURSUANT TO CCP 1054(a), EXTENDING TIME TO RESPOND BY 30 DAYS WHEN PARTIES AGREE TO EARLY ORGANIZATIONAL MEETING STIPULATION |

Whereas the Los Angeles Superior Court and the Executive Committee of the Litigation Section of the Los Angeles County Bar Association have cooperated in drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los Angeles County Bar Association Labor and Employment Law Section; the Consumer Attorneys Association of Los Angeles; the Association of Southern California Defense Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California Employment Lawyers Association all "endorse the goal of promoting efficiency in litigation, and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases;"

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation. This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: May 11, 2011

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

# EXHIBIT 1(a)(8)

ORIGINAL

| NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
|---|---|---|
| Carney R. Shegerian, Esq.<br>Shegerian & Associates, Inc.<br>11520 San Vicente Boulevard<br>Los Angeles, California 90049<br>Telephone: (310) 860-0770 Fax: (310)860-0771 | 150461 | FILED<br>Superior Court of California<br>County of Los Angeles<br>NOV 28 2023<br>David W. Slayton, Executive Officer/Clerk of Court<br>By: V. Solis, Deputy |
| ATTORNEY FOR (Name): | | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS:<br>111 North Hill Street, Los Angeles, California 90012 | | |
| PLAINTIFF/PETITIONER:<br>Craig Stoker | | |
| DEFENDANT/RESPONDENT:<br>Blue Origin LLC, et al. | | |
| **PEREMPTORY CHALLENGE TO JUDICIAL OFFICER (Code Civ. Proc., § 170.6)** | | CASE NUMBER:<br>23STCV28816 |

FILED BY FAX

| Name of Judicial Officer: (PRINT) | Dept. Number: |
|---|---|
| William F. Fahey | 69 |
| ☑ Judge ☐ Commissioner ☐ Referee | |

I am a party (or attorney for a party) to this action or special proceeding. The judicial officer named above, before whom the trial of, or a hearing in, this case is pending, or to whom it has been assigned, is prejudiced against the party (or his or her attorney) or the interest of the party (or his or her attorney), so that declarant cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judicial officer.

## DECLARATION

**I declare under penalty of perjury, under the laws of the State of California, that the information entered on this form is true and correct.**

Filed on behalf of: Craig Stoker
Name of Party

☑ Plaintiff/Petitioner ☐ Cross Complainant
☐ Defendant/Respondent ☐ Cross Defendant
☐ Other:

Dated: 11/28/2023

Carney R. Shegerian
Signature of Declarant

Carney R. Shegerian, Esq.
Printed Name

# EXHIBIT 1(a)(9)

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | FILED<br>Superior Court of California<br>County of Los Angeles<br>11/29/2023<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: V. Solis Deputy |
| PLAINTIFF/PETITIONER:<br>Craig Stoker | |
| DEFENDANT/RESPONDENT:<br>Blue Origin LLC, et al. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>23STCV28816 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order Re Plaintiff's Peremptory Challenge filed against...) of 11/29/2023 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Carney Shegerian
Shegerian & Associates
11520 San Vicente Blvd
Los Angeles, CA 90049

David W. Slayton, Executive Officer / Clerk of Court

Dated: 11/29/2023

By: V. Solis
Deputy Clerk

# EXHIBIT 1(a)(10)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 69

**23STCV28816**
**CRAIG STOKER vs BLUE ORIGIN LLC, et al.**

November 29, 2023
9:22 AM

Judge: Honorable William F. Fahey
Judicial Assistant: Veronica Solis
Courtroom Assistant: Loida Bituin

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Court Order Re Plaintiff's Peremptory Challenge filed against the Honorable William F. Fahey

The Court reviews the Peremptory Challenge filed by Craig Stoker (Plaintiff) on 11/28/2023 pursuant to Code of Civil Procedure section 170.6 and finds that it was timely filed, in proper format, and is accepted.

Good cause appearing and on order of the Court, the above matter is reassigned at the direction of the Supervising Judge to Judge Stephanie M. Bowick in Department 19 at the Stanley Mosk Courthouse for all further proceedings.

If any appearing party has not yet exercised a peremptory challenge under Code of Civil Procedure section 170.6, peremptory challenges by them to the newly assigned judge must be timely filed within the 15 day period specified in Code of Civil Procedure section 170.6, with extensions of time pursuant to Code of Civil Procedure section 1013 if service is by mail. Previously non-appearing parties, if any, have a 15-day statutory period from first appearance to file a peremptory challenge (Government Code section 68616(1)).

All future hearings in this department are advanced to this date and taken off calendar.

Counsel for Plaintiff is ordered to give notice to all parties.

Certificate of Mailing is attached.

# EXHIBIT 1(a)(11)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Shegerian & Associates<br>Carney Shegerian SBN 150461<br>11520 San Vicente Boulevard<br>Los Angeles, California 90049<br>TELEPHONE NO: FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: crs@shegerianlaw.com<br>ATTORNEY FOR *(Name)*: Plaintiff | **Electronically FILED by Superior Court of California, County of Los Angeles 12/05/2023 1:02 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Abraham, Deputy Clerk** |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles<br>STREET ADDRESS: 111 N. Hill Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Los Angeles, 90012-3117<br>BRANCH NAME: Central District | |
| PLAINTIFF / PETITIONER: Craig Stoker<br>DEFENDANT / RESPONDENT: Blue Origin LLC, et al. | CASE NUMBER:<br>23STCV28816 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>10018678 (21745298) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] Summons
   b. [X] Complaint
   c. [X] Alternative Dispute Resolution (ADR) Package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] Cross-Complaint
   f. [X] Other *(specify documents)*: Civil Case Cover Sheet Addendum and Statement of Location, Notice of Case Assignment, Alternative Dispute Resolution (ADR) Information Package, First Amended General Order, Voluntary Efficient Litigation Stipulations, Order Pursuant to CCP 1054(a), Peremptory Challange to Judicial Officer
3. a. Party served *(specify name of party as shown on documents served)*:
   Blue Origin LLC, a limited liability company
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   CT Corporation System - John Montijo, Intake Specialist - Person Authorized to Accept Service of Process
4. Address where the party was served:
   330 North Brand Blvd #700, Glendale, CA 91203
5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Mon, Dec 04 2023 (2) at *(time)*: 12:44 PM
   b. [ ] **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: from *(city)*: or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: Craig Stoker<br>DEFENDANT / RESPONDENT: Blue Origin LLC, et al. | CASE NUMBER:<br>23STCV28816 |
|---|---|

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1) on *(date)*: (2) from *(city)*:
   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)
   d. ☐ **by other means** *(specify means of service and authorizing code section)*:
6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify)*:
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify)*: Blue Origin LLC, a limited liability company
   under the following Code of Civil Procedure section:
   ☐ 416.10 (corporation)
   ☐ 416.20 (defunct corporation)
   ☐ 416.30 (joint stock company/association)
   ☐ 416.40 (association or partnership)
   ☐ 416.50 (public entity)
   ☒ other: Corp. Code 17701.16, Limited Liability Company
   ☐ 415.95 (business organization, form unknown)
   ☐ 416.60 (minor)
   ☐ 416.70 (ward or conservatee)
   ☐ 416.90 (authorized person)
   ☐ 415.46 (occupant)
7. **Person who served papers**
   a. Name: Zeno Roller
   b. Address: 1400 N. McDowell Blvd., Suite 300 Petaluma, CA 94947
   c. Telephone number: 800.938.8815
   d. **The fee** for service was: $40.00
   e. I am:
   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☒ a registered California process server:
   (i) ☐ owner ☐ employee ☒ independent contractor
   (ii) Registration No: 2023100296
   (iii) County: Los Angeles
8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   or
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: December 4, 2023

Zeno Roller
(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc.- P000618
1400 N McDowell Blvd Suite 300
Petaluma, CA 94947
800-938-8815

(SIGNATURE)

# EXHIBIT 1(a)(12)

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp<br><br>FILED<br>Superior Court of California<br>County of Los Angeles<br>12/19/2023<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: C. Lam Deputy |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | |
| PLAINTIFF:<br>Craig Stoker | |
| DEFENDANT:<br>Blue Origin LLC, et al. | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>23STCV28816 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 04/17/2024 | Time: 8:30 AM | Dept.: 19 |
|---|---|---|

NOTICE TO DEFENDANT: THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 12/19/2023

[signature] Judicial Officer
Stephanie M. Bowick / Judge

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Carney Shegerian
11520 San Vicente Blvd
Los Angeles, CA 90049

David W. Slayton, Executive Officer / Clerk of Court

Dated: 12/19/2023

By C. Lam
Deputy Clerk