# EXHIBIT 1(b)(1)

Electronically Received 01/12/2024 01:36 PM

NAME, ADDRESS, AND TELEPHONE NUMBER OF ATTORNEY OR PARTY WITHOUT ATTORNEY:
Carney R. Shegerian, Esq.
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049

STATE BAR NUMBER: 150461

ATTORNEY FOR (Name): Plaintiff, Craig Stoker

*Reserved for Clerk's File Stamp*

**FILED**
Superior Court of California
County of Los Angeles
01/17/2024
David W. Slayton, Executive Officer / Clerk of Court
By: R. Duarte Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse, 111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Craig Stoker

DEFENDANT:
Blue Origin LLC, et al.

**AMENDMENT TO COMPLAINT**
**(Fictitious /Incorrect Name)**

CASE NUMBER:
23STCV28816

☐ **FICTITIOUS NAME** ***(No order required)***

Upon the filing of the complaint, the plaintiff, being ignorant of the true name of the defendant and having designated the defendant in the complaint by the fictitious name of:

FICTITIOUS NAME

and having discovered the true name of the defendant to be:

TRUE NAME

amends the complaint by substituting the true name for the fictitious name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
|---|---|---|
| | | |

☑ **INCORRECT NAME** ***(Order required)***

The plaintiff, having designated a defendant in the complaint by the incorrect name of:

INCORRECT NAME
Kevin Lundy

and having discovered the true name of the defendant to be:

TRUE NAME
Kevin Lunde

amends the complaint by substituting the true name for the incorrect name wherever it appears in the complaint.

| DATE | TYPE OR PRINT NAME | SIGNATURE OF ATTORNEY |
|---|---|---|
| 01/12/2024 | Carney R. Shegerian, Esq. | Carney R. Shegerian |

## ORDER

THE COURT ORDERS the amendment approved and filed.

01/17/2024
Dated

Stephanie M. Bowick
Judicial Officer
Stephanie M. Bowick / Judge

# EXHIBIT 1(b)(2)

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | FILED<br>Superior Court of California<br>County of Los Angeles<br>01/17/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: R. Duarte Deputy |
| PLAINTIFF/PETITIONER:<br>Craig Stoker | |
| DEFENDANT/RESPONDENT:<br>Blue Origin LLC, et al. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>23STCV28816 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Amendment to Complaint (Fictitious/Incorrect Name) upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Carney Shegerian
Shegerian & Associates
11520 San Vicente Blvd
Los Angeles, CA 90049

David W. Slayton, Executive Officer / Clerk of Court

Dated: 01/17/2024

By: R. Duarte
Deputy Clerk

# EXHIBIT 1(b)(3)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 19

**23STCV28816**
**CRAIG STOKER vs BLUE ORIGIN LLC, et al.**

January 19, 2024
11:40 AM

Judge: Honorable Stephanie M. Bowick
Judicial Assistant: Richard Duarte
Courtroom Assistant: Calvin Lam

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Court Order

ORDER GRANTING JOINT STIPULATION TO EXTEND DEFENDANTS' DEADLINES TO FILE RESPONSIVE PLEADINGS AND FOR EXTRA PAGES ON OPPOSITION AND REPLY BRIEFS AS TO BLUE ORIGIN'S MOTION TO COMPEL ARBITRATION is signed and filed this date.

A signed and file stamped copy is available for viewing and printing on www.Lacourt.org under Civil Case Document Images.

On the Court's own motion, the Case Management Conference scheduled for 04/17/2024 is advanced to this date and continued to 07/30/24 at 08:30 AM in Department 19 at Stanley Mosk Courthouse.

Counsel for Blue Origin to give notice.

Certificate of Mailing is attached.

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Stanley Mosk Courthouse 111 North Hill Street, Los Angeles, CA 90012 | FILED Superior Court of California County of Los Angeles 01/19/2024 David W. Slayton, Executive Officer / Clerk of Court By: R. Duarte Deputy |
| PLAINTIFF/PETITIONER: Craig Stoker | |
| DEFENDANT/RESPONDENT: Blue Origin LLC, et al. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER: 23STCV28816 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order) of 01/19/2024 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Emilio German Gonzalez
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017

David W. Slayton, Executive Officer / Clerk of Court

Dated: 01/22/2024

By: R. Duarte
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES
CENTRAL DISTRICT-STANLEY MOSK COURTHOUSE
CIVIL DIVISION
111 NORTH HILL STREET
LOS ANGELES, CALIFORNIA 90012

LOS ANGELES CA 900
23 JAN 2024 PM 9 L

US POSTAGE IMI PITNEY BOWES
ZIP 90012 $ 000.64⁰
02 4W
0000387745 JAN. 23. 2024

Emilio German Gonzalez
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017

90017-254399

# EXHIBIT 1(b)(4)

Electronically Received 01/18/2024 02:35 PM

FILED
Superior Court of California
County of Los Angeles
01/19/2024
David W. Slayton, Executive Officer / Clerk of Court
By: R. Duarte Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| CRAIG STOKER,<br><br>Plaintiff,<br><br>vs.<br><br>BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. **23STCV28816**<br><br>**[~~PROPOSED~~] ORDER GRANTING JOINT STIPULATION TO EXTEND DEFENDANTS' DEADLINES TO FILE RESPONSIVE PLEADINGS AND FOR EXTRA PAGES ON OPPOSITION AND REPLY BRIEFS AS TO BLUE ORIGIN'S MOTION TO COMPEL ARBITRATION**<br><br>Assigned to the Hon. Stephanie M. Bowick<br>Dept.: 19<br><br>Action Filed: November 27, 2023 |

**[~~PROPOSED~~] ORDER**

The Court, having reviewed and considered the Joint Stipulation to Extend Defendants' Deadlines to File Responsive Pleadings and for Extra Pages on the Opposition and Reply Briefs as to Blue Origin's Motion to Compel Arbitration (the "Stipulation") by Plaintiff Craig Stoker ("Plaintiff") and Defendant Blue Origin, LLC ("Defendant" or "Blue Origin") (collectively, the "Parties"), hereby orders the following:

1) Defendants' deadlines to file responsive pleadings as to the claims permitted by this Court to proceed in civil court following its ruling on Blue Origin's Motion to Compel Arbitration, including the sexual / gender harassment claim, are tolled until 15 days after this Court's ruling on the Motion to Compel Arbitration.

2) The Stipulation does not limit Defendants' ability to file Demurrers concurrently with the Motion to Compel Arbitration.

3) Plaintiff and Blue Origin may use up to eight extra pages beyond the applicable page limits for their Opposition and Reply briefs, respectively.

4) Neither the Stipulation, nor the rights actions afforded thereby, shall be construed as a waiver of any party's arguments regarding enforceability of the Arbitration Agreement.

5) The Case Management Conference is advanced from 4/17/2024 and continued to 7/30/2024. Counsel for Blue Origin to give notice.

**IT IS SO ORDERED.**

DATED: 01/19/2024

By: [signature]
Hon. Stephanie M. Bowick

PROOF OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On January 18, 2024, I served the foregoing document(s) described as: **PROPOSED] ORDER GRANTING JOINT STIPULATION TO EXTEND DEFENDANTS' DEADLINES TO FILE RESPONSIVE PLEADINGS AND FOR EXTRA PAGES ON OPPOSITION AND REPLY BRIEFS AS TO BLUE ORIGIN'S MOTION TO COMPEL ARBITRATION** by forwarding a portable document file to the electronic mail address(es) below:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>Shegerian & Associates, Inc.<br>11520 San Vicente Blvd.<br>Los Angeles, CA 90049<br><br>*Attorneys for Plaintiff CRAIG STOKER* | Tel: 310-860-0770<br>Fax: 310-860-0771<br>Email:<br>WReed@shegerianlaw.com<br>JShegerian@shegerianlaw.com<br>calendarclerk@shegerianlaw.com |

**(FROM ELECTRONIC MAIL ADDRESS vanessapalma@dwt.com)** at Suite 2400, 865 South Figueroa Street, Los Angeles, California.

Executed on January 18, 2024, at Los Angeles, California.

☒ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☐ Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Vanessa Palma — Print Name

[signature] — Signature

# EXHIBIT 1(b)(5)

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
William Reed, Esq., State Bar No. 261931
WReed@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number: (310) 860 0770
Facsimile Number: (310) 860 0771

Attorneys for Plaintiff,
CRAIG STOKER

Electronically FILED by Superior Court of California, County of Los Angeles 1/29/2024 12:18 PM David W. Slayton, Executive Officer/Clerk of Court, By M. Gonzalez, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company, KEVIN LUNDY, an individual, and DOES 1 through 100, inclusive,

Defendants.

Case No.: 23STCV28816

**The Honorable Stephanie Bowick**

**PLAINTIFF CRAIG STOKER'S NOTICE OF FILING CLIENT CONSENT FORM RE: CERTIFIED LAW STUDENT JUSTIN SHEGERIAN**

Dept.: 19
Action Filed: November 27, 2023

TO ALL PARTIES AND THE HONORABLE COURT:

PLEASE TAKE NOTICE that pursuant to California Rule of Court 9.42, Plaintiff Craig Stoker hereby files the client consent form regarding certified law student Justin Shegerian. A true and correct copy of said consent form is attached hereto as **Exhibit 1**.

Dated: January 29, 2024

SHEGERIAN & ASSOCIATES, INC.

By: ______________________________

William Reed, Esq.

Attorneys for Plaintiff,
CRAIG STOKER

# EXHIBIT 1

# SHEGERIAN & ASSOCIATES, INC.

## CLIENT CONSENT FORM

Re: *Stoker v. Blue Origin, et al.*
Case No. 23STCV28816

I, Craig Stoker, am aware that Shegerian & Associates, Inc. are the attorneys of record in this case and that Justin William Shegerian is a Certified Law Student. I am aware that a Certified Student is not a member of the State Bar of California, but is a law student who has been certified by the State Bar of California pursuant to the Rules Governing the Practical Training of Law Students. I am aware that a Certified Student is permitted to engage in the following activities with the approval and under the direct and immediate supervision and in the personal presence of one of the supervising attorneys:

(a) Appearing on behalf of the client in, or the taking of, depositions; and

(b) Appearing on behalf of the client in any public trial, hearing, arbitration, or proceeding, or before any arbitrator, court, public agency, referee, magistrate, commissioner, or hearing officer, to the extent approved by such arbitrator, court, public agency, referee, magistrate, commissioner, or hearing officer.

I am further aware that a Certified Student may provide legal advice and conduct negotiations, but only under the general supervision of one of the supervising attorneys, who shall have given prior approval of the legal advice or plan on negotiation to be given or engaged in by the Certified Student to the client. I consent to the representation by the Certified Student.

[signature]
Client CRAIG STOKER — Date: JANUARY 22, 2024

[signature]
Anthony Nguyen, Esq.,
Supervising Attorney — Date: January 09, 2024

[signature]
William Reed, Esq.,
Supervising Attorney — Date: January 09, 2024

[signature]
Mahru Madjidi, Esq.,
Supervising Attorney — Date: January 09, 2024

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 145 S. Spring Street, Suite 400, Los Angeles, California 90012.

On January 29, 2024, I served the foregoing document, described as **"PLAINTIFF CRAIG STOKER'S NOTICE OF FILING CLIENT CONSENT FORM RE: CERTIFIED LAW STUDENT JUSTIN SHEGERIAN,"** on all interested parties in this action as follows:

**Emilio Gonzalez**
**emiliogonzalez@dwt.com**
**Arielle Spinner**
**ariellespinner@dwt.com**
**David Rund**
**davidrund@dwt.com**
**DAVIS WRIGHT**
**TREMAINE LLP**
**865 South Figueroa Street, 24th**
**Suite 2400**
**Los Angeles, California 90017**

☒ **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the attorney at the offices of the addressee.

☒ **(STATE)** I declare, under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on January 29, 2024, at Los Angeles, California.

Rebecca Vasquez

# EXHIBIT 1(b)(6)

**POS-015**

ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: 150461
NAME: Carney Shegerian, Esq.
FIRM NAME: SHEGERIAN & ASSOACCIATES, INC.
STREET ADDRESS: 11520 San Vicente Boulevard
CITY: Los Angeles STATE: CA ZIP CODE: 90049
TELEPHONE NO.: (310) 860-0770 FAX NO.: (310) 860-0771
E-MAIL ADDRESS: CShegerian@shegerianlaw.com
ATTORNEY FOR (*Name*): Plaintiff, Craig Stoker

*FOR COURT USE ONLY*

**Electronically FILED by Superior Court of California, County of Los Angeles 1/30/2024 3:21 PM David W. Slayton, Executive Officer/Clerk of Court, By A. Lopez, Deputy Clerk**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: 111 North Hill Street
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

Plaintiff/Petitioner: Craig Stoker
Defendant/Respondent: Blue Origin LLC, et al.

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL**

CASE NUMBER: 23STCV28816

TO *(insert name of party being served)*: Kevin Lunde

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: January 17, 2024

Samantha Chen
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of ***(to be completed by sender before mailing):***

1. [x] A copy of the summons and of the complaint.
2. [x] Other (*specify*):

Civil Case Cover Sheet and Addendum and Statement of Location; Notice of Case Assignment - Unlimited Civil Case; Alternative Dispute Resolution (ADR) Information Package; Voluntary Efficient Litigation Stipulations; Order Pursuant to CCP 1054(a), Extending Time to Respond by 30 Days When Parties Agree to Early Organizational Meeting Stipulation; First Amended General Order; Peremptory Challenge to Judicial Officer (CCP 170.6); Amendment to Complaint (Fictitious/Incorrect Name) - Kevin Lunde

***(To be completed by recipient):***

Date this form is signed: January 30, 2024

Arielle J. Spinner
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ [signature]
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

# EXHIBIT 1(b)(7)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
BLUE ORIGIN, LLC and KEVIN LUNDE
(sued erroneously as KEVIN LUNDY)

Electronically FILED by Superior Court of California, County of Los Angeles 2/20/2024 1:41 PM David W. Slayton, Executive Officer/Clerk of Court, By K. Hung, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN, LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **23STCV28816**

**DECLARATION OF EMILIO G. GONZALEZ IN SUPPORT OF BLUE ORIGIN, LLC AND KEVIN LUNDE'S DEMURRER TO PLAINTIFF CRAIG STOKER'S COMPLAINT**

Assigned to the Hon. Stephanie Bowick
Dept.: 19

Hearing Date: August 12, 2024
Hearing Time: 8:30 a.m.
**RES ID: 638544698940**

Action Filed: November 27, 2023

**DECLARATION OF EMILIO G. GONZALEZ**

I, Emilio G. Gonzalez, declare and state as follows:

1. I am an attorney admitted to practice in the State of California and a partner at the law firm of Davis Wright Tremaine LLP, counsel for Defendants Blue Origin LLC ("Blue Origin") and Kevin Lunde (collectively, "Defendants") in the above-captioned lawsuit. I submit this declaration in support of Defendants' Demurrer to Plaintiff Craig Stoker's ("Plaintiff") Complaint for Damages in the above-captioned matter. I am over the age of eighteen, and, if called upon as a witness, could and would competently testify to each of the facts set forth herein.

2. Plaintiff Craig Stoker filed this lawsuit against Blue Origin and Kevin Lunde on November 27, 2023. A true and correct copy of the Complaint for Damages that was served on Blue Origin, and then on Mr. Lunde, is attached hereto as Exhibit 1.

3. Concurrently with this Demurrer, Blue Origin files a Motion to Compel Arbitration and Stay Proceedings. Blue Origin's Senior Human Resource Business Partner, Julie Grant, filed a Declaration in Support of Blue Origin's Motion to Compel Arbitration and Stay Proceedings. Attached to Ms. Grant's Declaration as Exhibit B is, according to Ms. Grant, a true and correct copy of the Employee Agreement that Plaintiff signed at his time of hire with Blue Origin. For ease of reference, an identical copy of this Employee Agreement is attached hereto as Exhibit 2.

4. Counsel for Defendants met and conferred with Plaintiff's counsel before filing this Demurrer. On February 12, 2024, Defendants, through their counsel, emailed Plaintiff through his counsel, explaining Defendants' intention to file a Demurrer and inviting Plaintiff to further discuss the matter. On February 13, 2024, Plaintiff responded and selected one of the dates and times that Defendants had proposed. Attached hereto as Exhibit 3 is a true and correct copy of the aforementioned email correspondence between Defendants' counsel and Plaintiff's counsel.

5. On February 15, 2024, Plaintiff and Defendants met and conferred by Zoom videocall. The Parties discussed numerous issues, including but not limited to Plaintiff's failure to factually allege that any of Defendants' alleged actions were taken ***because of*** Plaintiff's gender or sex, or any details supporting the existence of a purported oral contract that Plaintiff's



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

employment would only be terminated for good cause. The Parties ultimately determined that they were at an impasse.

6. As of the filing of this Demurrer, Plaintiff has not advised Defendants that he will dismiss any causes of action currently pled in his Complaint.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on February 20, 2024 at Los Angeles, California.

Emilio G. Gonzalez



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
William Reed, Esq., State Bar No. 261931
WReed@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number: (310) 860 0770
Facsimile Number: (310) 860 0771

Attorneys for Plaintiff,
CRAIG STOKER

Electronically FILED by Superior Court of California, County of Los Angeles 11/27/2023 2:16 PM David W. Slayton, Executive Officer/Clerk of Court, By S. Ruiz, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company. KEVIN LUNDY. an individual. and DOES 1 to 100, inclusive,

Defendants.

Case No.: 23STCV28816

**PLAINTIFF CRAIG STOKER'S COMPLAINT FOR DAMAGES FOR:**

**(1) VIOLATION OF LABOR CODE § 1102.5 (b) & (c) (WHISTLEBLOWER RETALIATION);**

**(2) VIOLATION OF LABOR CODE § 232.5 (RETALIATION FOR REPORTING WORKING CONDITIONS);**

**(3) VIOLATION OF LABOR CODE § 6310 (RETALIATION FOR DISCLOSING UNSAFE WORKING CONDITIONS);**

**(4) DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF FEHA;**

**(5) HARASSMENT ON THE BASIS OF GENDER IN VIOLATION OF FEHA;**

**(6) RETALIATION IN VIOLATION OF THE FEHA;**

**(7) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT. AND/OR**

**RETALIATION IN VIOLATION OF FEHA;**

**(8) BREACH OF EXPRESS ORAL CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

**(9) BREACH OF IMPLIED-IN-FACT CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

**(10) NEGLIGENT HIRING, SUPERVISION, AND RETENTION;**

**(11) WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF PUBLIC POLICY; *and***

**(12) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

Page

SUMMARY ..... 1
PARTIES ..... 1
VENUE ..... 3
FACTS COMMON TO ALL CAUSES OF ACTION ..... 4
Plaintiff's Hire ..... 4
Plaintiff's Performance ..... 4
Plaintiff's Protected Status and Activities ..... 4
General Synopsis of Underlying Facts ..... 4
Stoker Blows the First Whistle ..... 4
Stoker Blows the Whistle, Again ..... 7
After His Complaints Against Blue Origin's CEO, Stoker Confronts Retaliation ..... 8
Stoker Learns that A Fellow Employee Nearly Asphyxiated, And Immediately Voices His Workplace Safety Concerns ..... 9
Stoker Raises Safety Concerns of Employees Working "24-hour" Shifts ..... 9
Unsurprisingly, Blue Origin's (Now) Internal Investigation Absolved Its CEO of Any Wrongdoing ..... 10
Stoker Schedules a Follow-Up Meeting to Inquire into the Investigation and Express His Grave Concerns Re Its Thoroughness, Propriety, and Impartiality ..... 13
Based on Stoker's Reported "24 Hour Shift" Safety Concerns, Stevens Issues an Interim Policy on "Fatigue Management" ..... 14
Stoker Follows Up on the Concerns Raised at the August 3, 2022 Meeting ..... 15
With No Further Action, Beatty Quickly Closes the Investigation ..... 15
Stoker Raises Ethical / Legal Concerts to In House Counsel ..... 16
Stoker Raises Ethical / Legal Concerts to In House Counsel ..... 17
Defendants' Termination of Plaintiff's Employment ..... 18
FIRST CAUSE OF ACTION ..... 20
Whistleblower Retaliation (Violation of Labor Code § 1102.5, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive ..... 20

SECOND CAUSE OF ACTION ........ 22

Whistleblower Retaliation (Violation of Cal. Labor Code § 232.5) Against Blue Origin and Does 1 to 100, Inclusive ........ 22

THIRD CAUSE OF ACTION ........ 23

Whistleblower Retaliation (Violation of Labor Code § 6310) Against Blue Origin and Does 1 to 100, Inclusive ........ 23

FOURTH CAUSE OF ACTION ........ 24

Discrimination on the Basis of Sex and Gender (Government Code § 12900, et seq.) Against Blue Origin and Does 1 to 100, Inclusive ........ 24

FIFTH CAUSE OF ACTION ........ 25

Hostile Work Environment / Harassment on the Basis of Gender/Sex (Government Code § 12900, et seq.) Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive ........ 25

SIXTH CAUSE OF ACTION ........ 26

Retaliation for Engaging in Protected Activity (Violation of Government Code § 12900, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive ........ 26

SEVENTH CAUSE OF ACTION ........ 27

Failure to Prevent Discrimination, Harassment, and/or Retaliation (Violation of Government Code § 12900, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive ........ 27

EIGHTH CAUSE OF ACTION ........ 28

Breach of Express Oral Contract Not to Terminate Employment Without Good Cause (*Marvin v. Marvin* (1976) 18 Cal.3d 660) Against Blue Origin and Does 1 to 100, Inclusive ........ 28

NINTH CAUSE OF ACTION ........ 29

Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622) Against Blue Origin and Does 1 to 100, Inclusive ........ 29

TENTH CAUSE OF ACTION ........ 30

Negligent Hiring, Supervision, and Retention (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038) Against Blue Origin and Does 1 to 100, Inclusive ........ 30

ELEVENTH CAUSE OF ACTION ........ 31

Wrongful Termination of Employment in Violation of Public Policy (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167) Against Blue Origin and Does 1 to 100, Inclusive ........ 31

TWELFTH CAUSE OF ACTION ........ 32

Intentional Infliction of Emotional Distress (*Hughes v. Pair* (2009) 46 Cal.4th 1035) Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive ................ 32

PRAYER ........................................................................................................ 33

Plaintiff, Craig Stoker, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Craig Stoker ("plaintiff" or "Stoker"), whose employment with defendant Blue Origin LLC ("Blue Origin") was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b), Labor Code section 1102.5(j), and Code of Civil Procedure section 1021.5.

## PARTIES

1. *Plaintiff:* Plaintiff Stoker is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:* Defendant Blue Origin is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Defendants' place of business, where the following causes of action took place, was and is in the County of Los Angeles, at 21650 Oxnard Street, Suite 1555, Woodland Hills, CA 91367. Defendant Kevin Lundy ("Lundy") is, and at all times mentioned in this Complaint was, a manager with defendants. Defendant Lundy is, and at all times mentioned in this Complaint was believed to be, a resident of Los Angeles County, California.

3. *Doe defendants:* Defendants Does 1 to 100, inclusive, are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions

mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

4. *Relationship of defendants:* All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i). All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

5. All Defendants both directly and indirectly employed plaintiff Stoker, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

///

///

6. In addition, defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

7. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## VENUE

8. The actions at issue in this case occurred in the State of California, in the County of Los Angeles. Under the California Fair Employment and Housing Act, this case can alternatively, at Plaintiff's choice, be filed:

> [I]n a county in which the department has an office, ***in a county in which unlawful practices are alleged to have been committed***, in the county in which records relevant to the alleged unlawful practices are maintained and administered, in the county in which the person claiming to be aggrieved would have worked or would have had access to public accommodation, but for the alleged unlawful practices, in the county of the defendant's residence or principal office. . . (Italics and bolding added)

(California Government Code § 12965(b).)

9. Here, the plaintiff worked primarily in California in the County of Los Angeles. The location where plaintiff worked was located in Woodland Hills, California. The majority of the unlawful actions on the part of the defendants occurred at said Woodland Hills location.

10. "[I]n the absence of an affirmative showing to the contrary, the presumption is that the county in which the title of the actions shows that the case is brought is, prima facie, the proper county for the commencement and trial of the action." (*Mission Imports v. Sup. Crt.* (1982) 31 Cal.3d 921, 928.) The FEHA venue statute – section 12965(b) – thus affords a wide choice of venue to persons who bring actions under FEHA. (*Brown v. Sup. Crt.* (1984) 37 Cal.3d 477, 486.) "[T]he special provisions of the FEHA venue statute control in cases involving FEHA claims joined with non-FEHA claims arising from the same facts." (*Id.* at 487.)

///

## FACTS COMMON TO ALL CAUSES OF ACTION

### Plaintiff's Hire

11. Plaintiff, now 62 years of age, began his employment with Blue Origin as an Engine Program Director on or around October 19, 2020.

### Plaintiff's Performance

12. Throughout his employment, Stoker performed exceptionally. Never did he have a significant performance issue. Leading up to his wrongful termination, Stoker consistently received praise in his performance reviews. In his 2021 annual evaluation, Stoker earned an "Outstanding Contribution" overall rating.

13. Stoker's 2022 semiannual review rated his performance "on track" and noted that "***Craig and the BE-4 team have done an outstanding job identifying engineering and program talent to bring into Blue engines that are helping increase the experience and discipline that we need to be successful… BE-4 is an incredibly difficult program being watched through a magnifying glass both internally and externally. Your patience, professionalism, grit and accountability throughout this year has been admirable.***"

### Plaintiff's Protected Status and Activities

14. Stoker is over 40 years of age.

15. Stoker is a male.

16. Stoker engaged in protected activities. Specifically, Stoker made numerous complaints regarding *safety issues*, reported a *hostile work environment*, and brought to light *ethical violations*.

### General Synopsis of Underlying Facts

#### *Stoker Blows the First Whistle*

17. In May of 2022, a meeting was held between Stoker, Linda Cova ("Cova") – a female – Vice President of the Engines Business Unit, and Mary Plunkett ("Plunkett"), – a female – Senior Vice President of Human Resources. Stoker explained to these female leaders that Robert Smith's ("Smith"), Blue Origin CEO, behavior caused employees (mainly male) to frequently violate safety procedures and processes in order to meet

unreasonable deadlines. Then when issues inevitably arose (including those related to safety), Smith would explode. On information and belief, Kevin Lundy ("Lundy") was informed of this complaint and was involved in Plunkett and Cova's actions, or inactions, thereafter.

18. On or around May 23, 2022, Stoker sent an email to Cova and Plunkett, to reiterate and report other serious concerns related to the behavior of CEO Smith and the ever present hostile work environment that was hampering Blue Origin's ability to operate safely, efficiently, or competently. On information and belief Lundy was involved with the receipt and processing of this complaint.

19. This email follows:

a. "Myself, my leadership team and others throughout the company should not have to constantly apologize and make excuses to ourselves and our teams for the **CEO's bad behavior**. We spend significant time smoothing things over, building back morale, repairing damage, stopping people from overreacting to **direction to violate policies and procedures** and guiding them in making the right decisions. By continuing to accept this behavior we are all contributing to creating a **hostile work environment**, **repeating the Space Shuttle missteps discussed at Safety Day this year and are not staying true to the Blue Leadership Principles**."

b. "Therefore, I want to **record a formal complaint against Robert Smith** for creating a ***hostile work environment*** **and selectively targeting people** to assign individual blame for institution failings. The hostile work environment and targeting are **impacting the ability of Blue to execute work, impacting the health and wellbeing of my team and I** (and other across the company), **demoralizing the entire company** and **creating a *safety* and quality hazard for our people, products and customers**. The fact that we work for a private company does not mean we should accept this behavior and work environment that is **inconsistent with the *state and federal laws* that govern the workplace**."

///

c. "Hostile working environment examples are:"

- "Pitting BU and function against each other"
- "Unacceptably harsh tone, behavior and bullying in emails, in discussions and in meetings"
- "Demanding the impossible completion of tasks and schedules and not listening to facts and data"
- "Lack of clear direction leading to constant 'bring me another rock,'"
- "Demeaning direct and indirect communication and discussion"
- "Demanding people violate procedures and processes and take significant risk and then chastising the team and individuals when issues occur"
- "Shooting the messenger and individual blame environment"

d. "Institutional failing include:"

- "Lack of adequate resources, capacity and capability to complete assigned tasks"
- "Immature and inadequate process, procedures and tools"
- "Inadequately trained and experienced personnel to do assigned work"
- "Team burnout leading to mistakes because of constant firefighting and unrealistic goals, schedules and objectives"
- "Schedule above all else approach to execution including sacrificing quality and safety"
- "Inadequate escalation of issues and people moving forward with work instead of stopping to address issues and concerns because of shooting the messenger environment"
- "Lack of institutional accountability for poor decision making that puts us in our current position"

e. "Thank you for your support in this critical matter"

///

20. Stoker also reported that, on at least two occasions in December of 2020 and September of 2021, teams were being forced to work 24-hour shifts, and that the resulting exhaustion and burnout was leading to mistakes that required constant "firefighting." Stoker, thus impressed that company guidelines were needed to avoid careless errors and mistakes that appeared to be caused only by sleep deprivation.

21. Plunkett and Cova (and, on information and belief, by proxy Lundy) promised to take action to investigate Stoker's concerns, and in a case like this involving Senior Leadership, outside counsel would likely be utilized to investigate.

22. At that same meeting, Stoker inquired as to the status of an ongoing investigation into Smith's behavior, of which he was aware because he had been previously interviewed. Stoker echoed those significant concerns regarding Smith's behavior. A dismissive Plunkett (who was, on information and belief, also speaking on behalf of Cova and Lundy) indicated that the investigation had been closed out and that Smith was receiving "coaching."

23. Stoker's complaints to female leadership – *i.e.,* Cova and Plunkett – were, for all intent and purpose, disregarded. Sadly, this was the beginning of a trend where female executives, supervisors and human resources directors, would purposefully ignore Stokers legitimate concerns and complaints, on information and belief, due to his male gender.

24. On information and belief, influenced by the cat's paw, Lundy disregarded Stoker's complaints and expected Stoker, because he was a male, to buck up and grin and bear it.

***Stoker Blows the Whistle, Again***

25. After Stoker's May meeting with Cova and Plunkett, the female executives assigned Melissa Beatty ("Beatty"), – a female – Senior Director of Human Resources Operations, to lead the investigation into Stoker's complaints.

26. In May and June of 2022, Stoker met with Beatty to further express and explain his concerns regarding Smith.

///

27. At the meeting on or around May 24, 2022, Stoker was informed that an outside counsel would be used to complete the investigation since Plaintiff's complaint was against the CEO. At Beatty's request, Stoker walked her through his formal complaint and listed people who either witnessed, or were the subject of, the behavior outlined in his written claim.

28. At the meeting on or around June 9, 2022, Stoker expanded on his concerns. While doing so, he expressed his fear that Smith's behavior would lead to missteps similar to those demonstrated at "Safety Day" the previous January, where a former astronaut was invited to speak to Blue Origin employees regarding shuttle disasters and the circumstances that caused those incidents. ***Stoker specifically noted that, presently, there were several such issues also occurring at Blue Origin***, such as: **(i)** having a narrow focus on schedule above all else, **(ii)** ignoring engineering input, and **(iii)** not having strong safety and quality programs in place.

29. Sadly, Stoker's concerns were *yet again* ignored by a senior female director. On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***After His Complaints Against Blue Origin's CEO, Stoker Confronts Retaliation***

30. Since Stoker started his employment working from home in October of 2020, he did not have a workstation at the Los Angeles office. But by June of 2022, Blue Origin employees were regularly reporting to said office, including Stoker. Yet, Stoker, despite being the most senior employee at the LA branch, was refused a permanent workstation – unlike any other employee there.

31. On information and belief, Kevin Lundy ("Lundy"), the manager of the LA Branch – at the direction of Blue Origin directors such as Smith, Cova, and Beatty – refused to assign Stoker a permanent workstation. By having the branch's most senior employee frequently bounce around from desk to desk, making room for less experienced and lower ranking employees, Lundy actively sought to embarrass Stoker in front of his peers.

32. On several occasions Stoker asked for a permanent workstation, but as usually, he was totally ignored.

33. For the remainder of his tenure with Blue Origin, Stoker was regularly directed by Lundy to move from desk to desk.

***Stoker Learns that A Fellow Employee Nearly Asphyxiated, And Immediately Voices His Workplace Safety Concerns***

34. During Summer 2022, Stoker learned that a fellow employee had almost asphyxiated while working under an engine nozzle during a nitrogen purge. Despite the fact that industry practice required barriers and notification systems in the areas subject to nitrogen purges to make employees aware of the imminent danger, neither of those systems were in place at the time.

35. When Stoker brought these concerns to Michael Stevens ("Stevens"), Vice President of Safety and Mission Assurance, he was brushed off, and dismissively told that ***Blue Origin could not have safety procedures for everything***. Instead, Stevens blamed the employee – also a male – for not knowing that the area would be undergoing a nitrogen purge.

36. On information and belief, this – fare for yourself, you're a male, attitude – was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***Stoker Raises Safety Concerns of Employees Working "24-hour" Shifts***

37. On or around August 1, 2022, in an email to Cova, Beatty, Dawn Lovely, Michael Eilola, Jason Priebe, Rob Brazier, Robert Josker, and Keith Klaus, Stoker wrote:

a. "Congratulations again to you and the team on getting F1 delivered to LS1. I am as excited as anyone about this accomplishment, **but we have to learn from this and ensure the safety of our teams**. We had approximately **9 people work 24+ hours on the final day** to get this engine out the door. We had a similar situation last December where several of our teammates worked 26+ hours to complete a PQ engine and get it out the door. While I fully appreciate the extra effort, understand the schedule pressure and love the enthusiasm, I believe we need to generate a near miss to drive a change. I DO NOT

want an investigation that identifies the 9 employees and provides any kind of discipline. **What I want is a Near Miss that drives the implementation of work place rules that define the max hours per day, max days in a row, max hours per week, etc. that our employees can work to clearly establish a culture of safety over schedule**. We know the cause of the issue: technical and production debt, schedule pressure and lack of adequate resources and so a big investigation should not be required, but we absolutely must establish work place rules to **protect our people from themselves and ensure they understand that we value their safety over schedule**."

38. Human Resources Partner, Julie Grant ("Grant") – a female – was assigned to discuss these issues. As with Stoker's *previous* complaints made to female directors, his legitimate safety complaints, raised to protect his fellow (mainly male) employees from physical and emotional injury, were ignored.

39. On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***Unsurprisingly, Blue Origin's (Now) Internal Investigation Absolved Its CEO of Any Wrongdoing***

40. On or around August 1, 2022, Beatty scheduled a meeting with Stoker to review *her* investigative findings. While Beatty was explaining that Stoker's complaints did not meet the legal definition of a hostile work environment, she informed Stoker that she had *personally* conducted the investigation and that outside counsel was only used to review her findings.

41. Given the nature, severity, and hostility of Smiths egregious conduct, and the fact that Smith has numerous complaints against him for similar reasons, it is highly questionable whether Beatty also would have absolved Smith's hostilities if Stoker were a female. Beatty, in other words, implicitly expected Stoker to deal with the hostility because he was a male and could "handle it." On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

42. Beatty went on to disclaim that, despite *her* investigation's findings, she **did not have the expertise to investigate the safety concerns and compromising mission assurance**. Thus, these issues had **yet to be investigated** and would be **turned over to Stevens**. Beatty assured Stoker that Stevens would be following up with him to provide him with the results of the investigation. **As of Stokers termination, Stevens has not reached out with *any* questions, feedback, or findings related to this "investigation."**

43. Subsequently, Stoker received an email from Beatty stating:

a. "Mr. Stoker, this letter is in response to your email dated 23 May 2022 which you raised allegations of bullying behavior by CEO Bob Smith. We appreciate you sharing your concerns with us to allow us to review and respond. We take these allegations very seriously and therefore we assigned to Human Resources - Employee Relations to investigate."

b. "On 24 May 2022 and 9 June 2022, you met with me, Melissa Beatty, Senior Director, HR Operations to investigate your concerns. Specifically, you alleged in your letter and in your conversation with me the below concerns: [¶ … ¶ **(1)**] Bob Smith, CEO, demonstrated bad behavior towards the Engines team creating a hostile work environment[ and **(2)**] The CEO's behavior will lead to similar missteps demonstrated in the space shuttle disaster discussed at Safety Day in January 2022."

c. Findings: "To investigate these concerns, we reviewed all the material you provided, including the email communications with Mr. Smith, and interviewed people identified. We have also investigated generally Mr. Smith's treatment of you and your colleagues and specifically whether others feel Mr. Smith treats them harshly."

d. "This investigation did not corroborate your belief that Mr. Smith creates a hostile work environment. Everyone spoken to noted that they are under pressure to deliver engines as the next important step in Blue Origin's plans to build the road to space. Many referenced New Shepard right before the first human flight as an example of the kind of pressure they are experiencing. That said, examples of Mr. Smith's behavior do not rise to the level of a hostile work environment, which is the creation of a discriminatory

environment that a reasonable person would find so abusive or intimidating that it impacts the ability to work. The investigation did demonstrate, however, that some things could be done from a management and morale perspective to further support the team, which I discuss in the recommendations section of this letter. In reviewing the email examples of alleged harsh tone by Mr. Smith, I did not see harsh language. The behavior described was consistent with a CEO's desire and commitment to fulfil Blue's mission."

e. "For the allegation that Mr. Smith's behavior will lead to similar missteps demonstrated in the space shuttle disaster discussed at Safety Day in January 2022, HR is not qualified to assess the quality of design or safety impacts. This question has been referred to Michael Stevens, EHS, for inquiry. This effort is underway."

f. Recommendations:

- "*In process*: hand off to assess impact of management issues on design quality and safety concerns to Michael Stevens and EHS for review."
- "Consider additional support for the team, given the stress of where we are in the development of BE4. Answering the questions: does Engines have the right team in place, and the right people to support you and Engines? Include more regular touch points with HR and consider an executive coach for additional development support."
- "Ask Julie Grant to follow up on the Culture Assessment conducted in March to see where we are with the recommendations. To work with Mr. Stoker to assess the health of his organization, including team morale and resources available to support the work, including hours worked by the team."
- *"In process*: Consider incentives for those working the highest hours.
- "You and your Snr. HR Business Partner should engage much more routinely to ensure we are actively working on all concerns that are identified."
- "Conduct a review of all hours worked and ensure that team members

with the highest hours are taking time off periodically for rest and recovery."

g. Beatty's Lip service: "Mr. Stoker, as stated earlier the organization takes these allegations very seriously and conducted a thorough investigation into the matter. As a result, there were no findings that violated Blue Origin's policy or expectations of behavior. We do believe there is additional support and actions that could and should be taken to support the Engines team, and we have asked your Snr. HR Business Partner, Julie Grant, to work with you and Ms. Cova on potential next steps."

***Stoker Schedules a Follow-Up Meeting to Inquire into the Investigation and Express His Grave Concerns Re Its Thoroughness, Propriety, and Impartiality***

44. On or around August 3, 2022, Plaintiff had a follow-up meeting with Beatty, wherein he pointed out what he believed to be fatal flaws with the investigation. To start, Stoker pointed out that her investigation ignored Blue Origin policies, and instead focused narrowly on whether Smith's actions met the legal definition of a hostile work environment. Stated otherwise, Stoker pointed out that Beatty – a female – had "purposefully" ignored the legal standards (and those spelled out by Blue Origin policy) that clearly defined the applicable standard, again, on information and belief, because Stoker was a male, and could "suck it up." On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

45. Stoker then attempted to find out who was interviewed and whether Beatty had looked at things more broadly around Robert Smith's behavior relative to Blue Origins published Leadership Principles. In doing so, **Stoker learned that no one from the BE-4 program (where the safety issues occurred), the Blue Engine Business Unit, or Plaintiff's supervisor were interviewed as part of the investigation**. Beatty, quite hollowly, agreed to look further into Plaintiff's concerns. Stoker candidly conveyed this to Beatty that these failures gave him the impression that the investigation was not thoroughly conducted, and the lack of outside input appeared to place the results of the

investigation in serious question.

46. On information and belief, the three female human resources directors, Beatty, Plunkett, and Grant, along with Lundy (*via* the cat's paw) refused to take Stoker's legitimate safety concerns seriously, because he was a male, implying that they expected him to, in effect, "man up" and get tougher.

47. Rather than striving to protect their employees (mainly male) who worked with extremely dangerous tools and materials, whose designs and calculations require intense and exact precision, Beatty, Plunkett, Grant, and Lundy (*via* the cat's paw) expected Stoker, and male Blue Origin employees, to play the tough and machismo stereotypical blue-collar engineer, often emulated in pre-OSHA movies. Not only did this expectation risk billions of dollars, it risked lives, as demonstrated by the near asphyxiation of an employee just months earlier.

***Based on Stoker's Reported "24 Hour Shift" Safety Concerns, Stevens Issues an Interim Policy on "Fatigue Management"***

48. On or around August 4, 2022, Stevens circulated an email to Stoker, Keith Klaus, Dawn Lovely, James Dewees, Nathan Harris, and Priebe entitled: "Interim Safety Note to All Blue on Fatigue Management."

49. In said email, Stevens wrote:

a. "Leaders,"

b. "Please review and comment on the following note that I intend to send to all Blue."

c. "Safety is a core value at Blue. We value safety over schedule."

d. "Blue is in the process of publishing a fatigue management policy applicable to all organizations without an existing fatigue management plan (TFO and LS1 for example). In the interim, follow the below direction if your organization does not have an approved fatigue management plan:"

e. **(1) "Daily Total Work Hour Limit"** [¶ … ¶] "Employees should be limited to a maximum of 12 hours of work in a 24-hour period."

f. **(2) "Off Duty Periods"** [¶ … ¶] "Employees should be provided with a non-work or off duty period of no less than 10 consecutive hours prior to the start of a workday or shift." [¶ … ¶] "A minimum 48-hour rest period after 5 consecutive days of 12-hour shifts is required."

g. **(3) "Weekly Work Limit"** [¶ … ¶] "Employees should not work more than 60 hours in a labor reporting week."

h. **(4) "Consecutive Workday Limit"** [¶ … ¶] "Employees should not work more than 5 consecutive days where each day contains 12 hours (or more) of work without a 48-hour rest period[.]" [¶ … ¶] "Employees should not work more than 14 consecutive days where any amount of work is performed on those days."

i. Stoker felt some solace in that fact that this one complaint was addressed, notably though, it was by a male colleague.

***Stoker Follows Up on the Concerns Raised at the August 3, 2022 Meeting***

50. On or around August 20, 2022, Stoker sent Beatty a follow up email to determine where Beatty was with respect to his concern regarding the investigation and the timing of when he might receive a final investigation letter that addressed these concerns.

51. Mission critical, was that Stoker informed Beatty that he had **not heard back from Stevens on his Mission Assurance *safety* concerns.** On information and belief, this was no coincidence.

52. On further information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***With No Further Action, Beatty Quickly Closes the Investigation***

53. On or around August 22, 2022, Beatty responded that no additional or further investigation was planned or would be conducted, and that Stoker should expect a final closeout letter.

54. Stoker was left stunned by the clear neglect and unwillingness of human resources to conduct a legitimate and comprehensive investigation.

///

55. On information and belief, Beatty, Plunkett, Cove, and Lundy's (*via* the cat's paw) refusal to adequately investigate his concerns was because of his gender. As a male, they expected him to deal with his problems on his own and "whine" less – leaving Stoker with no recourse nor resource to raise his concerns against the company's most powerful officer.

***Stoker Raises Ethical / Legal Concerts to In House Counsel***

56. Recognizing Beatty, Plunkett, Cove, and Lundy (*via* the cat's paw) were not taking him seriously, Stoker met with Ian Savage ("Savage") – a male – Blue Origin Legal Counsel, on or around August 22, 2022. At said meeting, Stoker filed an Ethics concern against Smith and his actions surrounding Blue Origin's contract for the BE-4 engine with United Launch Alliance ("ULA") who builds and operates the Vulcan launch vehicle that the BE-4 engine will fly on.

57. Specifically, the contract required Blue Origin to provide ULA with a minimum of one year of insight into issues and updates surrounding the delivery of rocket engines.

58. Due to Blue Origin production issues, a production gap impacting ULA's business had been forecasted and Stoker wanted to fulfill Blue Origin's contractual obligations and inform ULA of this likelihood.

59. Stoker also wanted to provide additional insight because of the significance of this impact, in that it would almost certainly delay ULA's ability to make delivery to its government customer – the United States Space Force – and its ability to meet Assured Access to space requirements.

60. In this regard, **Stoker reported to Savage that Smith had instructed both he and Cova *not to* fully share these production issues and delivery schedules with ULA.**

61. At the time of Stoker's termination, Stoker had not heard back from legal regarding his concerns. On information and belief, the powers that be stood in the way.

///

///

///

### *Stoker Raises Ethical / Legal Concerts to In House Counsel*

62. On or around September 22, 2022, Plaintiff sent an email to Senior Quality Director Henry Digdigan ("Digdigan - male – outlining a significant issue regarding baseline management that required immediate attention. Specifically, there was a discrepancy between the techniques, criteria, inspection methodology, and timing between identical production hardware being processed at the Huntsville and Kent locations, and Plaintiff required a plan of action to resolve the discrepancies.

63. Less than fifteen minutes later, Cova sent a follow-up email concurring with Plaintiff's concerns:

a. "+Mike and Jason (and minus all the IPTs)

b. "Diggy –"

c. "As you can see from the e-mail this is critical to ensuring we are delivering identical engines to ULA. And is just as important for all of the engines we deliver internally. In fact with long life hardware we are providing to NG a lot of these critical inspections will be even more important. Will you please let me know when you will have a team ready that can address this and lets get a weekly going to ensure we get quick closure on this. We are already in process with several flight engines and have to have this in control."

d. "We have a meeting with Bob on Friday to discuss how we control tWO change and this is another topic that we will need to discuss."

e. "Jason/Mike – assuming you will talk to this with Bob at our Friday meeting in addition to tWO control as it should be part of 'following planning' as well as change control."

64. On information and belief, this was lip service meant only to placate Stoker until his termination, which was coddled, approved, and ratified by Plunkett, Beatty, and Lundy (*via* the cat's paw).

///

///

***Defendants' Termination of Plaintiff's Employment***

a. On or around October 7, 2022 – on the heels of his protected activity, and only seven months after Stoker started rocking the "safety" boat – Stoker was called into a meeting with Cova and Grant. At the start, Cova informed Plaintiff that he was being terminated "without cause," because Blue Origin wanted to make a so called "leadership change."

b. When a perplexed Stoker asked why this was happening, Cova simply responded that he had neither done anything wrong, nor had he engaged in any misconduct, and that he would receive a – what later turned out to be a "cappy" – severance offer.

c. On information and belief, Smith spearheaded this termination due to Stoker's complaints against him, his raising of safety / ethical / legal issues, and the fact that many of these reports aimed to hamper his production / delivery schedule.

d. On information and belief, Plunkett, Lundy, Grant, and Beatty supported Smith's termination of Stoker, incensed and concerned by his legitimate complaints showcasing the holes in their expectations and procedures.

65. *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

66. Just one week later, Stoker was to hit his cliff to trigger additional equity share.

67. *Non-economic damages:* As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

68. *Punitive damages:* Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a. *Malice:* Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of his age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:* In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of his age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:* In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive him of legal rights.

69. *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

70. *Exhaustion of administrative remedies:* Prior to filing this action, plaintiff exhausted his administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-

sue letter.

## FIRST CAUSE OF ACTION

**Whistleblower Retaliation**

**(Violation of Labor Code § 1102.5, *et seq.*)**

**Against Blue Origin and Does 1 to 100, Inclusive**

71. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

72. Under California Labor Code section 1102.5(b), an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency when the employee has reasonable cause to believe that the information discloses a violation of state or federal statute or a violation of or noncompliance with a state or federal rule or regulation. Section 1102.5 protects employees who disclose reasonably based suspicions of illegal activity or noncompliance with rules or regulations either to a government or law enforcement agency or directly to another employee of the employer, so long as the employee to whom the report is made has authority over the disclosing employee or has authority to investigate, discover, or correct the violation or noncompliance. Labor Code § 1102.5(b). Defendants are and at all relevant times were a government agency.

73. Under California Labor Code section 1102.5(c), an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a state or federal statute or a violation of or noncompliance with a state or federal rule or regulation.

74. At all relevant times, as set forth above, plaintiff reasonably believed, believes, and therefore alleges that he reported defendants' violation of various laws (*e.g.*, statutes, rules, codes, and regulations), ethical obligations, and contractual obligations (some that affected government contracts and legal obligations related thereto). The aforementioned make up plaintiff's reasonable belief of a potential legal violation and/or an actual legal

violation.

75. The same, plaintiff alleges that he refused to violate the law.

76. In violation of California Labor Code section 1102.5(b) and/or (c), defendants, and each of them, discriminated and retaliated against plaintiff by unlawfully demoting her or otherwise retaliating and discriminating against plaintiff because plaintiff lodged a complaint, testified (or was believed to have intended to do so), or assisted in any proceeding (or was believed to have intended to do so) concerning deficient patient care and safety, lack of quality of patient care, and doctors' performing life-threatening procedures on infants. Defendants unlawfully harassed and discriminated against plaintiff, as is fully set forth in the General Allegations and all paragraphs above, including adverse employment actions, such as compelled self-termination of employment.

77. As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

78. As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

79. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

80. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Labor Code section 1102.5(j), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

///

///

///

///

## SECOND CAUSE OF ACTION

**Whistleblower Retaliation**

**(Violation of Cal. Labor Code § 232.5)**

**Against Blue Origin and Does 1 to 100, Inclusive**

81. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

82. At all relevant times, Labor Code section 232.5 was in effect and was binding on Defendants. As relevant here, this statute prohibits Defendants from discharging, formally disciplining, or otherwise discriminating against an employee who discloses information about the employer's working conditions.

83. California courts have interpreted section 232.5's definition of working conditions to mean "those conditions determined by the employer as a condition of employment." As described above, Plaintiff made numerous complaints about his working conditions. In violation of section 232.5, Defendants discharged, formally disciplined, and otherwise discriminated against/harassed Plaintiff because of his disclosures.

84. As a proximate result of Defendants' willful, knowing, intentional, and repeated violations of Labor Code section 232.5, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

85. As a result of defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

86. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles Plaintiff to punitive damages against Defendants.

///

///

///

///

## THIRD CAUSE OF ACTION

**Whistleblower Retaliation**

**(Violation of Labor Code § 6310)**

**Against Blue Origin and Does 1 to 100, Inclusive**

87. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

88. At all relevant times, Labor Code section 6310 was in effect and was binding on defendants. This statute prohibits defendants from retaliating or otherwise discriminating against an employee, including plaintiff, for raising complaints (either oral or written) regarding health or health conditions or practices and/or instate or cause to be instated proceedings related to the employee's right to safe and healthful working conditions. Section 6310 also protects employees who report work-related injuries and illnesses.

89. Plaintiff made protected reports, complaints, and/or disclosures while he worked for defendants and was believed to be willing to raise complaints, and because of those reports/complaints/disclosures, defendants retaliated against him, discriminated against him, harassed him, and otherwise took adverse employment actions against him, up to, and including, the termination of his employment.

90. As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 6310, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

91. As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

92. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

///

## FOURTH CAUSE OF ACTION

**Discrimination on the Basis of Sex and Gender**

**(Government Code § 12900, et seq.)**

**Against Blue Origin and Does 1 to 100, Inclusive**

93. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

94. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.*, and defendants committed unlawful employment practices, including by the following bases for liability:

a. Taking adverse employment action against Plaintiff, including but not limited to discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(a);

b. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(j);

c. Failing to take all reasonable steps to prevent discrimination and harassment in violation of Government Code section 12940(k);

95. On the basis of the above, plaintiff believes and alleges that a pattern and practice of the above described discrimination, harassment, retaliation, and failure to prevent discrimination and harassment occurred.

96. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

97. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

98. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

99. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

**FIFTH CAUSE OF ACTION**

**Hostile Work Environment / Harassment on the Basis of Gender/Sex**

**(Government Code § 12900, et seq.)**

**Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive**

100. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

101. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.*, and defendants committed unlawful employment practices, including by the following bases for liability:

a. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(j);

b. Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation in violation of Government Code section 12940(k).

102. Pursuant to Government Code section 12923(b), a single incident of harassing conduct is sufficient to create a hostile work environment if the harassing conduct has unreasonably interfered with plaintiff's work performance or created an intimidating, hostile, or offensive working environment.

///

103. As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

104. As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

105. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

106. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

**SIXTH CAUSE OF ACTION**

**Retaliation for Engaging in Protected Activity**

**(Violation of Government Code § 12900, *et seq.*)**

**Against Blue Origin and Does 1 to 100, Inclusive**

107. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

108. At all times herein mentioned, FEHA, Government Code section 12940, *et seq.*, was in full force and effect and was binding on defendants. This statute requires defendants to refrain from retaliating against any employee making complaints or opposing discrimination, harassment, or retaliation, or otherwise engaging in activity protected by the FEHA, including for seeking to exercise rights guaranteed under FEHA and/or assisting and/or participating in an investigation, opposing defendants' failure to provide rights, including rights to complain and to assist in a lawsuit, and/or the right to be free of retaliation, in violation of Government Code section 12940(h).

///

109. Plaintiff's seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including the right to be free of discrimination, harassment / a hostile work environment, and/or retaliation, in violation of Government Code section 12940(h), were substantial motivating reasons in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, and/or to take other adverse employment actions against plaintiff.

110. As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

111. As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

112. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

113. Defendants' retaliation was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

## SEVENTH CAUSE OF ACTION

## Failure to Prevent Discrimination, Harassment, and/or Retaliation

## (Violation of Government Code § 12900, *et seq.*)

## Against Blue Origin and Does 1 to 100, Inclusive

114. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

///

115. At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

116. During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in plaintiff being treated less favorably because of his having engaged in protected activity.

117. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiffs have sustained and continue to sustain substantial losses of earnings and other employment benefits.

118. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

119. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

120. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

**EIGHTH CAUSE OF ACTION**

**Breach of Express Oral Contract Not to Terminate**

**Employment Without Good Cause**

**(*Marvin v. Marvin* (1976) 18 Cal.3d 660)**

**Against Blue Origin and Does 1 to 100, Inclusive**

121. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

///

122. Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause. Plaintiff and defendants, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of him under the agreement by performing his job in an exemplary manner.

123. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the express oral contract they had with him.

124. As a proximate result of defendants' willful breach of the express oral contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

**NINTH CAUSE OF ACTION**

**Breach of Implied-in-Fact Contract Not to**

**Terminate Employment Without Good Cause**

**(*Marketing West, Inc. v. Sanyo Fisher* (1992)**

**6 Cal.App.4th 603; Civil Code § 1622)**

**Against Blue Origin and Does 1 to 100, Inclusive**

125. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

126. On the basis of oral assurances of continued employment given to plaintiff by defendants' supervisors, the length of plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and defendants shared the actual understanding that plaintiff's employment could and would be terminated only for cause. This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

127. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with him.

128. As a proximate result of defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

**TENTH CAUSE OF ACTION**

**<u>Negligent Hiring, Supervision, and Retention</u>**

**<u>(*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038)</u>**

**Against Blue Origin and Does 1 to 100, Inclusive**

129. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

130. Defendants owed a duty of care to plaintiff to appoint, hire, retain, and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct. Defendants owed a duty of care to plaintiff not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities. Defendants owed a duty of care to plaintiff to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating against plaintiff.

131. Defendants breached these duties. As a result, defendants caused damages to plaintiff. As a proximate result of defendants' negligent hiring, retention, and supervision of their managers and employees, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof.

///

///

///

///

///

///

///

## ELEVENTH CAUSE OF ACTION

**Wrongful Termination of Employment in Violation of Public Policy**

**(*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167)**

**Against Blue Origin and Does 1 to 100, Inclusive**

132. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

133. Defendants terminated plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, plaintiff's employment was terminated in part because of his protected status (*i.e.*, protected activity). These actions were in violation of, but not limited to, the FEHA, the California Constitution, Government Code section 12900, *et seq.*, and the California Labor Code (*see* 232.5, 1102.5, 6310, and 6311).

134. As a proximate result of defendants' wrongful termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

135. As a result of defendants' wrongful termination of his employment, plaintiff has suffered general and special damages in sums according to proof.

136. Defendants' wrongful termination of plaintiff's employment was done intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages.

137. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq.*, plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

///

///

///

///

## TWELFTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress**

**(*Hughes v. Pair* (2009) 46 Cal.4th 1035)**

**Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive**

138. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

139. Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted extreme and outrageous misconduct and caused plaintiff severe emotional distress. Defendants were aware that treating plaintiff in the manner alleged above, including depriving plaintiff of his livelihood, would devastate plaintiff and cause him extreme hardship.

140. As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

141. As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

142. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

///

///

///

///

///

///

## PRAYER

WHEREFORE, plaintiff, Craig Stoker, prays for judgment against defendants as follows:

1. For general and special damages according to proof;
2. For exemplary damages, according to proof;
3. For pre-judgment and post-judgment interest on all damages awarded;
4. For reasonable attorneys' fees;
5. For costs of suit incurred;
6. For declaratory relief:
7. For such other and further relief as the Court may deem just and proper;

ADDITIONALLY, plaintiff, Craig Stoker, demands trial of this matter by jury. The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated: November 27, 2023

SHEGERIAN & ASSOCIATES, INC.

By: ______________________
William Reed, Esq.

Attorneys for Plaintiff,
CRAIG STOKER

# EXHIBIT 2

BLUE ORIGIN

## EMPLOYEE AGREEMENT

| | |
|---|---|
| **My Name:** | Craig Stoker |
| **My Planned Date of Initial Employment:** | 10/19/2020 |
| **My Planned Location of Initial Employment:** | **Kent, Washington** |

As a condition of my employment and/or continued employment with Blue Origin, LLC (the **"Company"**), and in consideration of the mutual promises set forth below, the sufficiency of which consideration I hereby acknowledge, I therefore agree as follows:

### Section 1. DEFINITIONS

The following terms are used in this Employee Agreement ("Agreement") with the following specified meanings:

**1.1 "Proprietary Information."** Proprietary Information means any information related to the business or other affairs of the Company or its affiliates that is not generally available to the public, and that is or has been received or otherwise becomes known to me in connection with my employment. Without limiting the generality of the foregoing, I understand that Proprietary Information includes any Company proprietary information, technical data, trade secrets or know-how, including without limitation Inventions and Works (whether created by me or others), research, products, product plans, customers, customer lists, software, developments, processes, formulas, designs, drawings, engineering, services, pricing, finances, business and marketing plans, legal affairs, suppliers, current or potential customers and clients, prospects, contracts or assets of the Company, or improvements or new versions thereof. Proprietary Information also includes any information that has been made available to the Company by its customers, clients, suppliers or other third parties and which the Company is obligated to keep confidential. I further understand that Proprietary Information does not include any of the foregoing items that have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof. I further understand that this provision does not prohibit me from discussing the terms and conditions of my employment.

**1.2 "Inventions and Works."** Inventions and Works means any composition, work of authorship, computer program, product, device, technique, know-how, algorithm, method, process, improvement, discovery or invention, whether or not patentable or copyrightable and whether or not reduced to practice, that is (a) within the scope of the Company's business or research, or results from (directly or indirectly) or is suggested by any work performed by me for the Company, and (b) created, conceived, reduced to practice, developed, discovered, invented or made by me during the Term, whether solely or jointly with others, and whether or not while engaged in performing work for the Company.

**1.3 "Materials."** Materials means any product, prototype, hardware, document, record, notes, report, analysis, proposal, list, correspondence, specification, sketch, picture, drawing, model, schematic, blueprint, design, writing, data, software, or other tangible item that in whole or in part contains, embodies or manifests (whether in printed, handwritten, digital, analog, or other form) any Proprietary Information or any Inventions and Works.

**1.4 "Prior Inventions."** Prior Invention means any invention, original work of authorship, development, improvement or trade secret that (a) was made by me prior to the Term, (b) belongs to me or in which I have an interest, and (c) relates to the Company's current or proposed business, products or research and development.

**1.5 "Proprietary Rights."** Proprietary Rights means any patent, copyright, mask work, trade secret, trademark, trade name, service mark or other protected intellectual property right, in each case whether registered or unregistered and including all applications (or rights to apply) for and be granted, renewals or extensions of, and rights to claim priority from, such rights and all similar or equivalent rights or forms of protection which subsist or will subsist now or in the future in any part of the world, in any Proprietary Information, Inventions and Works, and/or Materials.

**1.6 "Term."** Term means the period from the beginning of my employment with the Company, whether on a full-time or part-time basis, through the last day of such employment.

## Section 2. PROPRIETARY INFORMATION

**2.1 Use Restrictions.** I acknowledge that during the Term, the Company will provide me access to its Proprietary Information, trade secrets, and goodwill. Except as required for performance of my work for the Company or as authorized in writing by the Company, I will hold in the strictest confidence all Proprietary Information, Inventions and Works, and Materials, and I will not at any time during the Term or thereafter (a) use, disclose, publish or distribute any Proprietary Information, Inventions and Works, and/or Materials to any person or entity, or (b) remove any Materials from the Company's premises. I will hold all Materials in trust for the Company, and I will deliver them to the Company upon request and in any event at the end of the Term pursuant to Section 4.8.

**2.2 Former Employer Information.** I agree that I will not, during my employment with the Company, improperly use or disclose to the Company any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

**2.3 No Interference.** Notwithstanding any other provision of this Agreement, I acknowledge that (i) I may disclose Proprietary Information when required to do so by a court or any governmental agency or body with jurisdiction to order me to divulge, disclose or make accessible such information, and (ii) nothing in this Agreement is intended to interfere with my ability to (A) file a claim or charge with a governmental agency or entity; (B) participate in an investigation, hearing, or proceeding conducted by a governmental agency, entity or court; or (C) engage in activities protected by law. I also acknowledge that, in accordance with the Defend Trade Secrets Act of 2016, I will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (i) is made (A) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (B) solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding.

## Section 3. INVENTIONS AND WORKS

**3.1 Assignment.** I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby irrevocably assign and transfer to the Company all right, title and interest in and to any and all Inventions and Works which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the Term, except as provided in section 3.2 below.

Further, I hereby waive any moral rights that I may have in or to any Inventions and Works (and any Proprietary Rights therein). I will take such action (including, but not limited to, the preparation and execution of documents or the giving of testimony) as may be requested by the Company to evidence, transfer, vest or confirm the Company's right, title and interest in the Proprietary Information, Inventions and Works, and Materials (and all Proprietary Rights therein), and the license rights described in Sections 3.1 above and 3.3 below. I will not contest the validity of any Proprietary Rights purported to be held by the Company.

**3.2 Exception to Assignment. NOTICE:** This satisfies the written notice and other requirements of Washington law under RCW 49.44.140, to the extent applicable. Notwithstanding any other provision of this Agreement to the contrary, this Agreement does not obligate me to assign or offer to assign to the Company any intellectual property that (i) I develop entirely on my own time; and (ii) I develop without using Company equipment, supplies, facilities or trade secret information; and (iii) does not result from any work performed by me for the Company; and (iv) does not relate at the time of conception or reduction to practice directly to the Company's business, or to its actual or demonstrably anticipated research or development. Any such intellectual property will be owned entirely by me, even if developed by me during the Term. I will advise the Company promptly in writing of any intellectual property that I believe meets the criteria for exclusion set forth herein.

**3.3 Prior Inventions.** Notwithstanding the notice in Section 3.2 above, if during the Term I use any Prior Invention with or incorporate any Prior Invention in any Proprietary Information, Inventions and Works, and/or Materials, I hereby irrevocably grant to the Company (to the fullest extent of my rights in and to the same) a fully paid-up, perpetual, royalty-free, irrevocable worldwide and universe-wide right and license to sublicense, disclose, copy, distribute, sell, make, have made, make derivative works of, use and otherwise exploit any trade secrets, copyrights, patents or other intellectual property rights to the Prior Inventions in connection with such Proprietary Information, Inventions and Works, and/or Materials.

**3.4 Maintenance of Records.** I agree to keep and maintain adequate and current written records of all Inventions and Works made by me (solely or jointly with others) during the Term. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

**3.5 Ownership.** As between the Company and me, the Company is and will be the sole owner of all Proprietary Information, Inventions and Works, and Materials (and all Proprietary Rights therein). To the extent eligible for such treatment, all Inventions and Works will constitute "works made for hire" under applicable copyright laws.

**3.6 Company Authority.** I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure and enforce the Company's Proprietary Rights in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto and the execution of all applications, specifications, oaths, assignments and other instruments that the Company deems necessary in order to apply for and obtain such rights and in order to assign and convey to the Company and its successors, assigns, and nominees the sole and exclusive right, title, and interest therein. I further agree that my obligation to execute or cause to be executed any such instrument or papers continues after the Term. If the Company is unable for any other reason to secure my assistance in perfecting the rights transferred, then I hereby

irrevocably appoint the Company and its authorized agents as my agent and attorney in fact, to transfer, vest or confirm the Company's rights and to execute, file and pursue any application for any United States or foreign patents or other intellectual property registrations covering Inventions and Works assigned to the Company above and to do all other lawful acts to further the prosecution and issuance of letters patent or other intellectual property registrations with the same legal force as if done by me. The designation and appointment of the Company and its duly authorized agents as my agent and attorney in fact will be deemed to be coupled with an interest and therefore irrevocable.

**Section 4. NO CONFLICTING OBLIGATIONS**

**4.1 Acknowledgement.** I understand that the nature of my position gives me access to and knowledge of Proprietary Information and places me in a position of trust and confidence with the Company. I understand and acknowledge that the services I provide to the Company are unique, special or extraordinary. I also acknowledge that I will obtain knowledge and skills relevant to the Company's industry, methods of doing business and marketing strategies by virtue of my employment or continued employment. I also further understand and acknowledge that the Company's ability to reserve these for the exclusive knowledge and use of the Company is of great competitive importance and commercial value to the Company, and that improper use or disclosure by me is likely to result in unfair or unlawful competitive activity. Thus, the restrictive covenants are reasonably necessary to protect the legitimate business interest of the Company.

**4.2 Solicitation of Employees.** During the Term and for one (1) year thereafter, I will not, without the prior written consent of the Company, either directly or indirectly (through any person or entity or otherwise) solicit, induce, recruit or encourage, or attempt to solicit, induce, recruit, or encourage, any of the Company's current employees or consultants to terminate or reduce their employment or relationship with the Company, either for my own benefit or for the benefit of any other person or entity.

**4.3 No Solicitation of Customers and No Interference.** During the Term and for one (1) year thereafter, I will not (except on behalf of the Company) solicit, call upon, divert or take away, or attempt to solicit, call upon, divert or take away, any current customers or clients of the Company with whom I became acquainted as a result of my employment with the Company. The restrictions in this Section only apply if the nature of the customer relationship sought by me is substantially similar to the business relationship targeted, solicited or accepted by the Company. Further, during the Term and for one (1) year thereafter, I will not interfere (directly or indirectly) with the Company's existing and prospective contracts and business relationships, including its contracts and business relationships with contractors, customers and prospective customers, vendors and suppliers.

**4.4 Breaches.** My execution, delivery and performance of this Agreement and the performance of my other obligations and duties to the Company will not cause any breach, default or violation of any other employment, confidentiality, consulting or other agreement to which I am a party or by which I may be bound.

**4.5 No Disparagement.** Although I am not prohibited from factually discussing the terms and conditions of my employment, I will not make any false, misleading or disparaging representations or statements with regard to the Company or its products or services, or make any statement that may impair or otherwise adversely affect the goodwill or reputation of the Company. For purposes of this Section 4.5, the term "Company" includes Blue Origin, its parent, subsidiaries, affiliates, successors or assigns, as well as their current and former officers, directors, employees and agents. I understand and confirm that this No Disparagement provision does not prevent me, nor shall it be construed as preventing me, from making truthful statements or testifying truthfully under oath

in any court or legal proceeding or as otherwise required by law or legal process including by subpoena.

**4.6 Disclosure Obligations.** I will promptly disclose to the Company (a) all Proprietary Information, Inventions and Works, and Materials, and (b) all business opportunities that come to my attention during the Term and that either relate to the business of the Company or arise as a result of my employment by the Company. I will not take advantage of or divert any such opportunity for the benefit of myself or anyone else either during or after the Term without the Company's prior written consent.

**4.7 Consent to Notification.** In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new or prospective employer or consulting client about my rights and obligations under this Agreement.

**4.8 Returning Company Documents and Materials.** I agree that, at the time of leaving the Company's employ, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all Materials and any and all devices, records, data, models, notes, reports, analyses, proposals, lists, correspondence, specifications, drawings, schematics, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any of the aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained by me pursuant to Section 3.4. At the time of leaving my employment, I agree to sign and deliver the "Termination Certificate," in the form attached hereto as Exhibit A.

**Section 5. RELATIONSHIP OF THE PARTIES**

**5.1 Employment at Will.** I acknowledge that I am an employee-at-will, meaning that either I or the Company may terminate my employment relationship at any time for any reason, with or without advance notice, and with or without cause.

**5.2 Attention and Effort.** During the term of my employment with the Company, I will devote all of my business time, ability, attention and effort to the Company's business and will skillfully serve its interests. I will not carry on any other professional endeavors or gainful employment without first obtaining the written consent of the Company, which consent shall not be unreasonably withheld, unless such secondary-employment or endeavor is deemed by the Company to be competitive with the Company's business or would pose a potential or actual conflict of interest, or would otherwise have a negative impact on the operations of the Company or the performance of my services.

**Section 6. ARBITRATION AGREEMENT, CLASS ACTION WAIVER AND DISPUTE RESOLUTION**

**6.1 Arbitration Agreement.**

I understand and agree that all claims, disputes, or controversies relating to or arising out of my employment with the Company, except for the Excluded Claims listed below, shall be determined by binding arbitration before a single, neutral arbitrator. For purposes of this Arbitration Agreement under Section 6, the term "Company" includes Blue Origin, its parent, subsidiaries, affiliates, successors or assigns, as well as their current and former officers, directors, employees and agents.

This arbitration agreement applies to any and all claims, disputes, or controversies between the Company and me, including, without limitation, claims arising out of or relating to my employment application and/or hiring process, employment with the Company, and/or any termination of my

employment, claims for breach of this Agreement or otherwise relating to or arising out of this Agreement, tort claims, breach of contract claims, wage and hour claims including without limitation under the Fair Labor Standards Act, the Washington Minimum Wage Act and other Washington wage and hour statutes, and any other federal, state, and local wage and hour statutes, fee claims, claims under federal, state and local anti-discrimination, anti-harassment, and anti-retaliation laws and all other statutes governing the employment relationship, and any other employment-related claims, whistleblower claims, and all claims for violation of any federal, state, or other governmental law, statute, regulations, or ordinance (collectively "Covered Claims"), except for the following Excluded Claims:

(i) claims for unemployment benefits;
(ii) claims for workers' compensation benefits;
(iii) claims for sexual harassment or sexual assault, except if I choose voluntarily to arbitrate them under this Agreement;
(iv) claims that governing federal law, or a benefits-plan policy, prohibits from being arbitrated;
(v) claims for equitable relief alleging trade secret violations, trademark infringement, breach of fiduciary duty, breach of proprietary information or confidentiality obligations, and breach of non-solicitation agreements for which either party may seek equitable relief such as a temporary restraining order or preliminary injunction from a court of competent jurisdiction, prior to arbitrating the claim(s); and
(vi) actions to confirm, vacate, modify, or correct and arbitrator's award.

Claims under Section 6.1(i) through (vi) are collectively the "Excluded Claims." Covered Claims and Excluded Claims are collectively the "Claims."

Furthermore, I understand that the arbitration provisions of this Section 6, including but not limited to the Confidentiality provision under Section 6.5, do not affect my ability to exercise my rights under the National Labor Relations Act, or to report possible violations of federal law or regulation to any governmental agency or entity, including but not limited to the National Labor Relations Board, the Department of Justice, Equal Employment Opportunity Commission, the Congress, and any agency Inspector General ("Government Agencies"), or making other disclosures that are protected under the whistleblower provisions of federal or state law or regulation. I understand that I do not need the prior authorization of the Company to make any such reports or disclosures, and I am not required to notify the Company that I have made such reports or disclosures, nor does this statement limit my right to receive an award for information provided to any Government Agencies. If I have a Covered Claim that is not resolved by a Governmental Agency, I will arbitrate it under this Agreement unless it is an Excluded Claim.

**6.2 <u>Arbitration Procedure.</u>**

Except as otherwise stated in this arbitration provision, section 6, I agree that the arbitration of Covered Claims shall be conducted in accordance with the JAMS Employment Arbitration Rules and Procedures, except if this Agreement conflicts with the JAMS rules, this Agreement shall govern. A copy of the JAMS procedures is currently available at www.jamsadr.com/rules-employment-arbitration. The arbitration shall be conducted by one neutral arbitrator either mutually agreed upon by the Company and me or chosen in accordance with the JAMS rules, and shall take place in the county in which I work or worked for the Company, unless a different location is agreed to by the parties or, if the parties cannot agree, as decided by the arbitrator. The

arbitrator will make a ruling in a signed writing, including findings of fact and law, within thirty days of the arbitration proceeding. The arbitrator will be permitted to award only those remedies in law or equity that are requested by the parties and allowed by local, state and/or federal substantive law applicable to the Claims.

If I file a claim in arbitration, I understand that I will be responsible for the initial filing fees associated with any arbitration that I initiate, not to exceed the filing fees that I would have paid if I had filed a complaint in a court of law having jurisdiction. To the extent required by law to enforce this Agreement, the Company will pay the balance of the arbitrator's fees and administrative costs related to the arbitration. I understand that the Company and I will otherwise bear our own fees and costs, except the prevailing party shall be entitled to costs, expenses and reasonable attorneys' fees unless otherwise prohibited by law. Judgment upon the award rendered by the arbitrator will be binding and may be entered in any court having jurisdiction thereof.

I and the Company will have the right to conduct discovery in accordance with the Federal Rules of Civil Procedure, and the arbitrator shall have the power to decide any discovery disputes between the parties. I and the Company may call witnesses, cross-examine the other party's witnesses, and present evidence during the arbitration proceeding in accordance with the Federal Rules of Civil Procedure, as applied by the arbitrator. I understand and agree that the arbitrator's ruling will be final and binding on both me and the Company and any other party in the arbitration proceeding, and cannot be reviewed for error of law or legal reasoning of any kind. I understand that I can recover in arbitration on an individual basis the remedies that I could recover in court, including fees and costs to the extent allowed by law.

The statute of limitations applicable to the commencement of a lawsuit will apply to the commencement of an arbitration under this provision. If either I or the Company fail to make a written request for arbitration within the statute of limitations period applicable to a Claim under applicable law, or otherwise fail to comply with the administrative prerequisites to filing certain types of claims, I and/or the Company will have waived the right to raise that Claim in any forum, including arbitration. In the event that I or the Company file an action in court in violation of this Arbitration Agreement, that court shall require the parties to arbitrate all Claims.

The arbitrator's decisions and awards shall have no preclusive effect as to issues or claims in any other arbitration or court proceeding, unless all of the parties in the other proceeding were also a party in the arbitration in which the award or decision was issued. The Company and I will have the right to file a motion to dismiss, discovery motions, and/or a motion for summary judgment, which the arbitrator shall decide under the Federal Rules of Civil Procedure.

**6.3 Waiver of Class, Collective, Consolidated or Representative Claims ("Class Action Waiver").**

The Company and I will resolve Claims only on an individual basis. This means that no Claims, including arbitration of Covered Claims or cause of action in court for Excluded Claims, will be initiated or maintained as a class action, collective action, consolidated action, representative action, or multi-party actions (together "Collective Actions"). The Company and I waive the right to participate in, or receive money or other relief from, a Collective Action. Neither the Company nor I may bring a Claim on behalf of others. No arbitrator or judge may combine more than one individual's Claim(s) into a single arbitration or court proceeding without all parties' written consent. Under the terms of this Agreement, no arbitrator or judge may: (i) order or permit any arbitration-

related notice or information to be sent to any class, collective, representative or consolidated group; or (ii) require a party to produce any contact information for any class, collective, representative, or consolidated group.

FURTHER, TO THE EXTENT THAT ANY CLAIM IS EXCLUDED FROM ARBITRATION UNDER THIS SECTION 6 AND/OR IS DETERMINED NOT TO BE SUBJECT TO ARBITRATION, THE COMPANY AND I EXPRESSLY AGREE THAT ANY SUCH CLAIMS SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS ONLY, AND THE COMPANY AND I WAIVE OUR RIGHTS TO ASSERT CLAIMS ON CLASS, COLLECTIVE, OTHER REPRESENTATIVE, OR MULTI-PARTY ACTIONS.

**6.4 Jury Trial Waiver.**

I understand and agree that this binding arbitration procedure shall supplant and replace claims brought in state or federal court (except as specified in this Section), and that the Company and I expressly waive the right to a civil court action before a jury.

FURTHER, TO THE EXTENT THAT ANY CLAIM IS EXCLUDED FROM ARBITRATION UNDER THIS SECTION 6 AND/OR IS DETERMINED NOT TO BE SUBJECT TO ARBITRATION, THE COMPANY AND I EXPRESSLY AGREE THAT THE CLAIM SHALL BE TRIED TO THE COURT AND THAT ANY RIGHT TO JURY TRIAL IS WAIVED.

**6.5 Confidentiality.**

The arbitration shall be confidential and closed to the public unless otherwise required by law. However, this confidentiality provision does not apply to claims of sexual harassment, sexual assault, or other Excluded Claims under Section 6.1 above. Further, as provided by Washington state law, this confidentiality provision will not apply to claims arising under the Washington Law Against Discrimination, RCW 49.60, federal antidiscrimination laws, or state or local antidiscrimination laws. Arbitration of those claims will not be confidential and will be open to the public.

**6.6 Disputes about this Arbitration Agreement.**

An arbitrator shall resolve under this Agreement all disputes regarding the Agreement's and/or Section 6's scope, validity, applicability, enforceability, or breach and regarding the arbitrability of any claim. The only exception to this requirement is that a court shall resolve any dispute regarding the scope, validity, applicability, enforceability, or breach of the Class Action Waiver, including whether this arbitration clause allows class, collective, multi-party, or other representative arbitration (which it does not).

**6.7 Enforcement of the Arbitration Agreement and Waivers.**

This Arbitration Agreement and Section 6 is the entire agreement of the parties relating to the resolution of Claims, including Covered Claims and Excluded Claims. If any part of this Section 6 is found to be unenforceable, the severability clause in Section 7.2 below shall apply. Under no circumstances will a Claim be allowed to proceed in arbitration or court as a Collective Action.

**6.8 Governing Law.**

The Company's business, my employment, and this Agreement affect interstate commerce. This Arbitration Agreement, Class Action Waiver, and Dispute Resolution procedures, set forth in Section 6, are subject to and governed exclusively by the Federal Arbitration Act, 9 U.S.C. ch. 1, and federal arbitration law under the Federal Arbitration Act. To the extent that law does not apply or does not preempt state laws, Section 6 shall be subject to and governed by applicable Washington state law, without regard to its choice of law principles.

**Section 7. GENERAL PROVISIONS**

**7.1 Survival.** The provisions of this Agreement shall survive the expiration of the Term except for provisions that expressly apply only during the Term.

**7.2 Severability.** This Agreement will be enforced to the fullest extent permitted by applicable law. If for any reason any provision of this Agreement is held to be invalid or unenforceable to any extent under applicable law by a court of competent jurisdiction or in any arbitration proceeding, then (a) such provision will be interpreted, construed, modified, amended or reformed by the court or arbitrator to the minimum extent required to render the same valid, enforceable and consistent with the original intent underlying such provision, and (b) such invalidity or unenforceability will not affect any other provision of this Agreement or any other agreement between the Company and me. If a court or arbitrator declines to modify, amend, or reform any such provision as provided for in this paragraph, such invalidity or unenforceability shall attach only to such provision or portion thereof, and shall not in any way affect or render invalid or unenforceable any other provision of this Agreement or portion thereof, and this Agreement shall be enforceable in full force and affect as if such invalid or unenforceable provision or portion thereof had not been included in this Agreement.

**7.3 No Waiver.** The failure of the Company to insist upon or enforce strict performance of any provision of, or to exercise any of its rights or remedies under this Agreement (or under any similar agreement with any other employee) will not be construed as a waiver or a relinquishment of the Company's rights to assert or rely on any such provision, right or remedy in that or any other instance.

**7.4 Entire Agreement.** This Agreement (a) sets forth the entire agreement and, effective as of the date signed by me, supersedes any and all prior agreements between me and the Company with respect to the subject matter hereof, (b) is independent of any other written agreements between me and the Company regarding other aspects of my employment or any other prior or existing relationship with the Company including, but not limited to, any prior nondisclosure, confidentiality or visitors agreement between me and the Company, which prior agreement shall remain in full force and effect with respect to actions prior to the date of my employment with the Company, and (c) may be amended only by a writing signed by me and an authorized representative of the Company. I agree that I am not entering into this Agreement in reliance on any promises or statements not expressly included in this Agreement.

**7.5 Successors and Assigns.** This Agreement will be binding upon my heirs, executors, assigns, administrators and other legal representatives and will be for the benefit of the Company, its successors and its assigns. I understand that the Company may freely assign this Agreement from time to time to any parent, subsidiary or affiliate of the Company without notice to or consent

by me, but that I may not assign this Agreement, in whole or in part, without the Company's prior written consent.

**7.6 <u>Governing Law and Venue; Consent to Personal Jurisdiction</u>.**

Except for the Arbitration Agreement, Class Action Waiver, and Dispute Resolution procedures set forth in Section 6 above, this Agreement will be governed by the laws of the State of Washington, without regard to its choice of law principles to the contrary. The Arbitration Agreement, Class Action Waiver, and Dispute Resolution procedures, set forth in Section 6 above, are subject to and governed exclusively by the Federal Arbitration Act, 9 U.S.C. ch. 1. Except as to Excluded Claims, I irrevocably consent to the arbitration as set forth in Section 6 above, in connection with any action relating to this Agreement. As to claims that are excluded from arbitration under Section 6, I irrevocably consent to the jurisdiction in the federal and state courts in the State of Washington.

**7.7 <u>Personally Identifiable Information</u>.** The Company will from time to time make information, including my Personally Identifiable Information (PII), available to third parties such as vendors associated with our human resources management systems and other applicable vendor software systems (e.g. personnel file management, timekeeping, travel management, and so forth). Provision of PII to such third parties will have appropriate arrangements in place to address confidentiality and other provisions, consistent with the Company's applicable personnel data privacy policies and procedures.

**7.8 <u>Acknowledgement</u>.** I have carefully read all of the provisions of this Agreement and agree that (a) the same are necessary for the reasonable and proper protection of the Company's business and the Company's Proprietary Information and goodwill provided to me during the Term, (b) the Company has been induced to enter into and continue its relationship with me in reliance upon my compliance with the provisions of this Agreement, (c) every provision of this Agreement is reasonable with respect to its scope, duration and geography or other reference to location, and (d) I have carefully read this Agreement, understand its terms, and have entered into this Agreement voluntarily.

The Company, by offering this Agreement to me, and I, by signing below, agree to all of the terms set forth in this Agreement.

*[Signatures on Following Page]*

To show my agreement, I have signed below:

**EMPLOYEE**

I agree with the terms of this Employee Agreement.

Employee Signature: DocuSigned by: Craig Stoker D2C0DD5B0D02407...

Please Print Name: Craig Stoker

Date Signed: 8/17/2020 | 4:16 PDT

**BLUE ORIGIN, LLC**

By: DocuSigned by: Mary Plunkett 7B0AB762B2B4425...

Name: Mary Plunkett

Title: Sr Vice President - HR

Date Signed: 8/17/2020 | 4:16 PDT

## EXHIBIT A

*(To be completed immediately upon leaving employment; not at commencement of employment)*

## TERMINATION CERTIFICATE

**Section 1. DEFINITIONS**

**1.1 Company**. The Blue Origin affiliate by whom I was most recently employed, and its parent, subsidiaries, affiliates, predecessors, successors or assigns.

**1.2 Proprietary Information.** Proprietary Information means any information related to the business or other affairs of the Company or its affiliates that is not generally available to the public, and that was received or otherwise became known to me in connection with my employment. Without limiting the generality of the foregoing, this includes any Company proprietary information, technical data, trade secrets or know-how, including without limitation Inventions and Works (whether created by me or others), research, products, product plans, customers, customer lists, software, developments, processes, formulas, designs, drawings, engineering, services, pricing, finances, business and marketing plans, legal affairs, suppliers, current or potential customers and clients, prospects, contracts or assets of the Company, or improvements or new versions thereof. Proprietary Information also includes any information that has been made available to the Company by its customers, clients, suppliers or other third parties and which the Company is obligated to keep confidential. I further understand that Proprietary Information does not include any of the foregoing items that have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof. I further understand that this provision does not prohibit me from discussing the terms and conditions of my employment.

**1.3 Inventions and Works.** Inventions and Works means any composition, work of authorship, computer program, product, device, technique, know-how, algorithm, method, process, improvement, discovery or invention, whether patentable or copyrightable and whether reduced to practice, that was (a) within the scope of the Company's business or research, or resulted from (directly or indirectly) or was suggested by any work performed by me for the Company, and (b) was created, conceived, reduced to practice, developed, discovered, invented or made by me, whether solely or jointly with others, and whether or not while engaged in performing work for the Company.

**1.4 Materials.** Materials means any product, prototype, hardware, document, record, notes, report, analysis, proposal, list, correspondence, specification, sketch, picture, drawing, model, schematic, blueprint, design, writing, data, software, or other tangible item that in whole or in part contains, embodies or manifests (whether in printed, handwritten, coded, digital, analog, or other form) any Proprietary Information or any Inventions and Works.

**Section 2. CERTIFICATION**

This is to confirm that I do not have in my possession, nor have I failed to return, any Materials, devices, property, or reproductions of any aforementioned items belonging to the Company.

I further certify that I have complied with all the terms of the Employee Agreement signed by me, including the reporting of any Inventions and Works, conceived, developed, reduced to practice or made by me (solely or jointly with others) covered by that agreement.

I further agree that in compliance with the Employee Agreement, I will preserve as confidential all Proprietary Information.

I further agree that I will review Sections 4.1 through 4.8 of the Employee Agreement I made with the Company and that I will comply with the terms of those Sections and all other Sections that survive termination of employment.

[Exhibit for purposes of Illustration;
Not for Signature at Start of Employment]

Date: ______________________

# EXHIBIT 3

**From:** Spinner, Arielle
**Sent:** Tuesday, February 13, 2024 3:38 PM
**To:** 'Justin Shegerian'; William Reed
**Cc:** Rund, David; Gonzalez, Emilio
**Subject:** RE: Stoker v Blue Origin LLC

Thanks, Justin. I'll circulate an invite now.

**Arielle Spinner** She/Her/Hers
Davis Wright Tremaine LLP

**P** 213.633.6879 **C** 213.219.3269 **E** ariellespinner@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Tuesday, February 13, 2024 1:25 PM
**To:** Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** Re: Stoker v Blue Origin LLC

**[EXTERNAL]**

Hi Arielle,

We are available at 5pm on Thursday.

Thank you.
Justin Shegerian

---

Justin Shegerian | California Bar Certified Law Clerk
Shegerian & Associates
11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

**From:** Spinner, Arielle <ArielleSpinner@dwt.com>
**Sent:** Monday, February 12, 2024 11:52 PM
**To:** William Reed <wreed@shegerianlaw.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Will and Justin,

On February 20, 2024, we intend to simultaneously file a demurrer and a motion to compel arbitration in the Stoker matter. We would like to further meet and confer as to the demurrer. Below are a few proposed dates and times for a meet and confer call, as well as a summary of key points regarding Defendants' grounds for demurrer. Please let us know when you are available for a call this week.

- Tuesday, 2/13: 3:00 – 6:00 p.m.
- Wednesday, 2/14: 1:00 – 6:00 p.m.
- Thursday, 2/15: 9:00 a.m. – 6:00 p.m.

**Breach of Contract Claims (Breach of Express Oral Contract Not to Terminate Employment Without Good Cause; and Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause)**

- To establish a breach of contract claim, Plaintiff must show: **(1) Plaintiff and Blue Origin entered into a contract**; (2) Plaintiff did substantially all of the significant things the contract required him to do, and was excused from doing anything he did not do; **(3) All conditions required by the contract for Blue Origin's performance occurred, and any conditions that did not occur were waived or excused**; **(4) Blue Origin failed to do something that the contract required it to do, or did something that the contract prohibited it from doing**; (5) Plaintiff was harmed; and **(6) Blue Origin's breach of contract was a substantial factor in causing Plaintiff's harm**. The Complaint lacks sufficient facts as to the bolded elements.
- As a threshold matter, Plaintiff must show why the Employment Agreement between the parties does not bar consideration of any purported oral or implied-in-fact contract. He cannot do so because the Employment Agreement was the final and exclusive contract concerning the employment relationship between the parties. Courts have repeatedly declined to enforce an alleged implied contract where its terms would contradict the terms of a valid express contract. Here, the Employment Agreement expressly states in Section 5.1 that Plaintiff's employment was at-will: "I acknowledge that I am an employee-at-will, meaning that either I or the Company may terminate my employment relationship at any time for any reason, with or without advance notice, and with or without cause." Moreover, Section 7.4 states that the terms of Plaintiff's employment "may be amended only by a writing signed by me and an authorized representative of the Company." Plaintiff fails to allege why the Employment Agreement should not bar consideration of the purported oral contract. Plaintiff fails to allege any facts indicating that an authorized representative of the Company amended the terms of the employment relationship. Plaintiff's conclusory allegation in Paragraph 122 of the Complaint that defendants "entered an oral agreement not to terminate plaintiff's employment except for good cause" is insufficient to support a legal cause of action.
- Because no facts have been alleged to show that an oral contract ever existed, because the Employment Agreement expressly bars oral modification of the terms of the employment arrangement, and because Plaintiff has in any event failed to allege that Defendants' conduct violated the terms of the purported oral contract, or that Defendants' supposed breach was a substantial factor in causing Plaintiff's purported harm, Plaintiff's breach of contract claims are ripe for demurrer.

**Gender/Sex Discrimination**

- To establish sex discrimination under the Fair Employment and Housing Act, Plaintiff must show that Defendants discriminated against him in the terms, conditions, or privileges of his employment because of sex. Plaintiff's complaint is replete with vague, conclusory allegations that Blue Origin would have treated him differently had he been female. However, these allegations are unavailing when Plaintiff fails to allege any factual basis for them save for the fact that he is a male, and several of the HR staff who were involved in handling his complaints are female. Plaintiff's baseless claim in this regard lacks credibility, particularly because Plaintiff undermines his own sole allegation by admitting that other employees to whom he allegedly complained, including Henry Digidigan, Nathan Harris, Kevin Lunde, Ian Savage, Jason Priebe, and Michael Stevens, are male.
- Because Plaintiff fails to allege any facts showing that he was subject to discriminatory treatment because of his sex, his sex discrimination claim is ripe for demurrer.

**Hostile Work Environment Sexual/Gender Harassment**

- To establish a prima facie case for harassment, the Plaintiff must show: (1) plaintiff belongs to a protected group; **(2) plaintiff was subjected to unwelcome harassment**; **(3) the harassment complained of was based on his protected status**; **(4) the harassment complained of was sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment**. The Complaint lacks sufficient facts as to the bolded elements.
- As discussed above, Plaintiff fails to allege any facts indicating that he was subject to discrimination because of his sex or gender. Plaintiff's speculatory allegations that his complaints might have been addressed differently had he been a woman are unavailing, particularly given that Plaintiff complained to several of Blue Origin's male employees.
- Even if Plaintiff could show that his sex or gender played a role in how he was treated by Defendants—which he cannot—his hostile work environment claim would nonetheless fail because the Complaint does not allege any conduct that would give rise to a hostile work environment. Plaintiff describes conduct that was directed at others, not at him, and takes issue with Blue Origin's handling of his complaints and various other matters. However, California courts have held that a company may administer its business as it sees fit and common management actions do not come within the meaning of harassment. Thus, while Plaintiff may object to Robert Smith's management style, to the handling of his complaints by HR or other company officers, etc., his disagreement with such actions do not give rise to a hostile work environment.
- Plaintiff fails to allege (1) any facts showing that he was subject to discriminatory treatment because of his sex, or (2) any facts that establish he was subject to a hostile work environment even if he could demonstrate that any of Defendants' actions were motivated by Plaintiff's sex/gender. Accordingly, Plaintiff's hostile work environment claim is ripe for demurrer.

**Intentional Infliction of Emotional Distress**

- To establish a case for intentional infliction of emotional distress, Plaintiff must show (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) he suffered severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.
- Defendants' actions as alleged in the Complaint, even if taken as true, do not rise to the level of IIED. California courts have routinely held that a plaintiff may not recover for IIED on the basis of personnel management decisions, even if they are motivated by retaliation. Consequently, under no circumstances may Plaintiff prevail on his IIED claim, and it is ripe for demurrer.

Thanks,

Arielle

**Arielle Spinner** She/Her/Hers
Davis Wright Tremaine LLP

**P** 213.633.6879 **C** 213.219.3269 **E** ariellespinner@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Spinner, Arielle
**Sent:** Thursday, January 18, 2024 11:48 AM
**To:** 'Justin Shegerian' <jshegerian@shegerianlaw.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Thank you, Justin. We'll get this filed today.

**Arielle Spinner** She/Her/Hers
Davis Wright Tremaine LLP

**P** 213.633.6879 **C** 213.219.3269 **E** ariellespinner@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Thursday, January 18, 2024 11:12 AM
**To:** Spinner, Arielle <ArielleSpinner@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Please find the executed version attached.

Thank you.

Justin Shegerian

Justin Shegerian | California Bar Certified Law Clerk
Shegerian & Associates
11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Spinner, Arielle <ArielleSpinner@dwt.com>
**Sent:** Wednesday, January 17, 2024 3:38 PM
**To:** Justin Shegerian <jshegerian@shegerianlaw.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Thank you, Justin. Will, can you please confirm that we have your authorization to sign the attached on your behalf, and then file? Thanks.

**Arielle Spinner** She/Her/Hers
Davis Wright Tremaine LLP

**P** 213.633.6879 **C** 213.219.3269 **E** ariellespinner@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Wednesday, January 17, 2024 3:18 PM
**To:** Spinner, Arielle <ArielleSpinner@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

We accept the redlines. Thank you, Arielle.

Best,

Justin Shegerian

Justin Shegerian | California Bar Certified Law Clerk
Shegerian & Associates
11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Spinner, Arielle <ArielleSpinner@dwt.com>
**Sent:** Wednesday, January 17, 2024 2:04 PM
**To:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>; Justin Shegerian <jshegerian@shegerianlaw.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Will and Justin,

Following up on Emilio's email, we are now in receipt of the NAR for Kevin Lunde sent by your office today. While we intend to file a Motion to Compel Arbitration, and then demur to the gender harassment claim and any other claims ripe for demurrer that are ordered to proceed in civil court following the Court's order on the MTCA (if any), we want to clarify in the Stipulation that we are not limiting our right to file Demurrers concurrently with the MTCA. Attached are updated redlines for your review.

Thanks,

Arielle

**Arielle Spinner** She/Her/Hers
Davis Wright Tremaine LLP

**P** 213.633.6879 **C** 213.219.3269 **E** ariellespinner@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Wednesday, January 17, 2024 1:57 PM
**To:** Justin Shegerian <jshegerian@shegerianlaw.com>; Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Justin. We will provide our thoughts and responses shortly. In the meantime, and to preserve our client's rights, we will inform the court via declaration that we are still engaged in the process of meeting and conferring regarding the issues reflected in the stipulation and thus need additional time to file any response.

Thank you.

**Emilio Gonzalez**
**Partner,** Davis Wright Tremaine LLP

**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Wednesday, January 17, 2024 9:12 AM
**To:** Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Please see the final revisions attached.

Thank you.

Justin

Justin Shegerian | California Bar Certified Law Clerk
Shegerian & Associates
11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Spinner, Arielle <ArielleSpinner@dwt.com>
**Sent:** Wednesday, January 17, 2024 1:57 AM
**To:** Justin Shegerian <jshegerian@shegerianlaw.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Will and Justin,

To address your question in the margin, we intend to file a Motion to Compel Arbitration, and then demur to the gender harassment claim and any other claims ripe for the demurrer that are ordered to proceed in civil court following the Court's order on the MTCA (if any). This language in the Stip confirms our intent:

WHEREAS, to maximize judicial economy and to limit both I related to motion practice prior to the disposition of Blue Origin's Mc the Parties agree to stay Defendants' deadlines to file responsive plea harassment claim pending this Court's ruling on the Motion to Comp should this Court's ruling on the Motion to Compel Arbitration permi proceed in civil court, Defendants' deadlines to file responsive pleadi limited to Demurrers, as to those surviving claims and the gender har days after this Court's ruling on the Motion to Compel Arbitration.

If you have any further proposed edits to the Stip to clarify this issue, please feel free to implement them in redline and send over a revised version.

Thanks,

Arielle

**Arielle Spinner** She/Her/Hers
Davis Wright Tremaine LLP

**P** 213.633.6879 **C** 213.219.3269 **E** ariellespinner@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Tuesday, January 16, 2024 10:05 PM
**To:** Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Hi all,

See our revisions and comments attached.

Thank you.

Justin Shegerian

Justin Shegerian | California Bar Certified Law Clerk
Shegerian & Associates
11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Spinner, Arielle <ArielleSpinner@dwt.com>
**Sent:** Tuesday, January 16, 2024 2:46 PM
**To:** Justin Shegerian <jshegerian@shegerianlaw.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Will and Justin,

We accepted most of your changes but kept in some of the language you'd deleted. We then ran redlines between the updated (clean) versions and the versions you sent over yesterday. Please let us know if these drafts are good to go, and we can get them filed ASAP.

Thank you,

Arielle

**Arielle Spinner** She/Her/Hers
Davis Wright Tremaine LLP

**P** 213.633.6879 **C** 213.219.3269 **E** ariellespinner@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Monday, January 15, 2024 10:29 AM
**To:** Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Please find the revisions attached.

Thank you.

Justin Shegerian

Justin Shegerian | California Bar Certified Law Clerk
Shegerian & Associates
11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Spinner, Arielle <ArielleSpinner@dwt.com>
**Sent:** Friday, January 12, 2024 9:46 AM
**To:** Justin Shegerian <jshegerian@shegerianlaw.com>; William Reed <wreed@shegerianlaw.com>

**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Will and Justin,

Attached for your review are drafts of the Joint Stipulation and Proposed Order that we discussed. If you can please provide us with your feedback by Monday, we would greatly appreciate it.

Thanks,

Arielle

**Arielle Spinner** She/Her/Hers
Davis Wright Tremaine LLP

**P** 213.633.6879 **C** 213.219.3269 **E** ariellespinner@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Saturday, January 6, 2024 6:26 AM
**To:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>; Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Thank you, Emilio.

Let’s do Tuesday at 4:30 p.m. I will circulate a call in shortly.

We disagree that the sexual harassment claim is “baseless,” and Defendants' "threats" made pursuant to CCP 128.7 are not well taken. As you are probably well aware, CCP 128.7 merely requires a pleading’s claims be warranted by existing law or a non-frivolous argument for the modification of law and that its factual contentions have evidentiary support, or will after a reasonable opportunity for further investigation. Here, plaintiffs claim neatly fits both elements.

Additionally, plaintiff's burden for proving a non-frivolous (or non-"baseless") claim is a low bar: "[Plaintiff] must make a sufficient evidentiary showing to demonstrate that he made a reasonable inquiry into the facts and entertained a good faith belief in the merits of the claim. [Plaintiff] need not amass even enough evidence to create a triable issue of fact as would be required if [Defendant] had brought a motion for summary judgment, or allege a valid cause of action, as required to overcome a demurrer." (*Kumar v. Ramsey (*2021) 71 Cal.App.5th 1110, 1126.)

On the other hand, the moving party's burden for prevailing on a 128.7 motion is steep. Section "128.7 should be utilized only in 'the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.' [Citation]." (*Kumar, supra,* 71 Cal.App.5th at 1121, underlining added.) "Because our adversary system requires that attorneys and litigants be provided substantial breathing room to develop and assert factual and legal arguments, sanctions should not be routinely or easily awarded even for a claim that is arguably frivolous." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 448, underlining added.)

Furthermore, even if the Court did find a claim to be frivolous, which we are not convinced it will, Courts are persuaded to use their discretion to not award 128.7 sanctions. "Procedure section 128.7 sanctions should be 'made with restraint' [citation] and are not mandatory even if a claim is frivolous." (*Peake* at 448.)

Should defendant file this motion, plaintiff will in turn seek sanctions for having to respond to such a motion made without substantial justification.

Best,

Justin Shegerian

Justin Shegerian
Shegerian & Associates
11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Friday, January 5, 2024 2:59 PM
**To:** Justin Shegerian <jshegerian@shegerianlaw.com>; Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Justin and Will,

On Tuesday, I am available from 12PM – 1PM and after 4PM. On Wednesday I am available from 8 -9:30AM and after 4PM. Thursday I am available from 11-1.

Please let us know if any of these dates and times work for you.

As noted in our prior correspondence, the sexual harassment claim is baseless and, if asserted in a complaint, may be a violation of CCP 128.7. We can discuss this further during our call.

We can also discuss the remainder of your email.

Thank you.

**Emilio Gonzalez**
**Partner,** Davis Wright Tremaine LLP

**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Friday, January 5, 2024 2:42 PM
**To:** Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Hi Arielle and Emilio,

We were out of office earlier this week but are available to speak this upcoming Tuesday 1/9 between 1pm and 4pm if that suits you both.

1) As of now, Plaintiff will not be filing an amended complaint.

2) Plaintiff's bases that the purported arbitration agreement is unenforceable remain the same as previously discussed:

> i) The Ending Forced Arbitration Act exempts Plaintiff's ***entire case*** from forced arbitration due to his sexual harassment claims. The statute reads: "*Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting* ***a sexual harassment dispute or sexual assault dispute****, or the named representative of a class or in a collective action alleging such conduct,* ***no predispute arbitration agreement*** *or predispute joint-action waiver* ***shall be valid or enforceable*** ***with respect to a case*** *which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.*" Numerous jurisdictions have applied this plain text reading to the statute. Additionally, *Yost v Everyrealm* is unconvincing,

where the New York appellate court applied the NYCHRL to instances of "generalized hostility" that Yost faced. Here, the sexual harassment was not generalized, and instead particularized to Plaintiff.

ii) Moreover, the purported contract is unconscionable with both high procedural and substantive unconscionability. This is supported by the purported agreement being a contract of adhesion with surprise and oppression, its lacking mutuality, venue and jurisdictional issues, and the improper waiver of PAGA claims, among other faults.

3) Demurrer related to Plaintiff's (i) breach of contract, (ii) negligent hiring, supervision & retention, and (iii) IIED are premature, and the complaint will not be amended to remove these claims. Having said that, we are happy to discuss these issues when we speak next. I will point out, however, that several of the positions in your email do not appear to be demmurable on the face of the complaint, ignore that the causes of action are supported by facts stated above, and have survived previous demurrers as pleaded.

Last, will Blue Origin be accepting service for Kevin Lundy?

Thank you.

Justin Shegerian

Justin Shegerian
Shegerian & Associates
11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Spinner, Arielle <ArielleSpinner@dwt.com>
**Sent:** Tuesday, January 2, 2024 8:15 PM
**To:** William Reed <wreed@shegerianlaw.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Will and Justin,

We hope you had a nice holiday season. We would like to schedule our next call for this Thursday at 2:00 p.m.; please let us know if that time works well for you. During this call, we would like to discuss: (1) If Plaintiff will be filing an amended complaint; (2) Plaintiff's bases for asserting that Blue Origin's arbitration agreement with Plaintiff is

unenforceable; and (3) Blue Origin's bases for asserting that Plaintiff's claims for breach of contract; negligent hiring, supervision, and retention; and IIED are ripe for demurrer. With respect to (3), please see below. If you could please send us (2) prior to our next call to ensure that our discussion will be productive, we would greatly appreciate it.

**Breach of Contract Claims (Breach of Express Oral Contract Not to Terminate Employment Without Good Cause; and Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause)**

- All breach of contract claims are comprised of at least the following elements: **(1) Plaintiff and Blue Origin entered into a contract**; (2) Plaintiff did substantially all of the significant things that the contract required him to do, and was excused from doing anything he did not do; **(3) All conditions required by the contract for Blue Origin's performance occurred, and any conditions that did not occur were waived or excused**; **(4) Blue Origin failed to do something that the contract required it to do, or did something that the contract prohibited it from doing**; (5) Plaintiff was harmed; and **(6) Blue Origin's breach of contract was a substantial factor in causing Plaintiff's harm**. The Complaint lacks sufficient facts as to the bolded elements.
- Plaintiff cannot factually allege that such an oral contract existed. Plaintiff has a copy of his written employment agreement, which expressly states in Section 5.1 that his employment is at-will: "I acknowledge that I am an employee-at-will, meaning that either I or the Company may terminate my employment relationship at any time for any reason, with or without advance notice, and with or without cause." Moreover, Section 7.4 states that the terms of Plaintiff's employment "may be amended only by a writing signed by me and an authorized representative of the Company." Plaintiff's Complaint does not allege that an authorized representative of Blue Origin signed and agreed in writing that Plaintiff's employment was no longer at-will, and that he could only be terminated for good cause. Instead, in Paragraph 122 of the Complaint, Plaintiff merely alleges: "Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause." This conclusory statement does not include any factual allegations. For example, <u>who</u> on behalf of Blue Origin entered into such an agreement, and <u>with whom</u>? When was this agreement made? What were the terms of this agreement? There are simply insufficient facts to show that an oral contract ever existed, or that even if it did, that it could ever have been binding on Blue Origin.
- Nowhere in the Complaint does Plaintiff even address Element 3.
- Given that there are insufficient facts to show that a binding oral contract ever existed, Plaintiff has also failed to sufficiently allege that Blue Origin's conduct violated any such contract, or was a substantial factor in causing Plaintiff's purported harm.
- For numerous reasons, including those listed above, Plaintiff's breach of contract claims are ripe for demurrer.

**Negligent Hiring, Supervision, and Retention**

- To sufficiently assert a claim for negligent hiring, supervision, and retention, Plaintiff must allege that: (1) Blue Origin hired Plaintiff; (2) A specific employee of Blue Origin was or became unfit or incompetent to perform the work for which they were hired; (3) Blue Origin knew or should have known that this employee was or became unfit or incompetent, and that this unfitness or incompetence created a particular risk to others; (4) This employee's unfitness or incompetence harmed Plaintiff; and (5) Blue Origin's negligence in hiring, supervising, or retaining this specific employee was a substantial factor in causing Plaintiff's harm.
- In Paragraphs 130-31 of the Complaint, Plaintiff includes general, conclusory legalese about the duty of care owed by an employer to an employee. Plaintiff then broadly alleges: "Defendants breached these duties. As a result, defendants caused damages to plaintiff. As a proximate result of defendants' negligent hiring, retention,

and supervision of their managers and employees, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof." These allegations are completely devoid of facts. Plaintiff's Complaint discusses many Blue Origin employees. Exactly which Blue Origin employee was or became unfit or incompetent to perform the work for which they were hired?

- Moreover, to the extent that Plaintiff bases this claim on alleged gender harassment or discrimination, this derivative claim must also fail for all the same reasons any gender-based claims fail, as previously explained by Defendant.

**Intentional Infliction of Emotional Distress**

- To sufficiently assert a claim for IIED, Plaintiff must allege that: (1) Blue Origin's conduct was outrageous; (2) Blue Origin intended to cause Plaintiff emotional distress, or acted with reckless disregard of the probability that Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred; (3) Plaintiff suffered severe emotional distress; and (4) Blue Origin's conduct was a substantial factor in causing Plaintiff's severe emotional distress.
- In Paragraphs 139-42 of the Complaint, Plaintiff again includes general, conclusory legalese. There are no factual allegations to substantiate that Blue Origin's alleged conduct rises to the level of being "outrageous" or with "reckless disregard." Similarly, there are no factual allegations to substantiate that Plaintiff suffered severe emotional distress.
- Moreover, to the extent that Plaintiff bases this claim on alleged gender harassment or discrimination, this derivative claim must also fail for all the same reasons any gender-based claims fail, as previously explained by Defendant.

Thanks,

Arielle

**Arielle Spinner** She/Her/Hers
Davis Wright Tremaine LLP

**P** 213.633.6879 **C** 213.219.3269 **E** ariellespinner@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Thursday, December 21, 2023 10:30 AM
**To:** William Reed <wreed@shegerianlaw.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Will and Justin,

Thank you for your time. Per our call:

1. We have agreed to a 15 day extension for defendants to file a responsive pleading
2. We have agreed to preserve the stay on discovery per our prior agreement
3. Your team will consider whether you will amend the complaint
4. Should you decide to not amend, it is our intention to file a motion to compel arbitration and to defer the demurrer. You are inclined to agree with this approach, provided that you get additional pages to oppose the motion should you need it, in which case we would get an equal number of pages for the reply.
5. We will provide you with additional points as to other causes of action that we believe are deficiently pled
6. You will provide us with your basis for asserting that the arbitration provision in Mr. Stoker's complaint is unenforceable

Let's pick a date next week to re-visit the points above.

Thank you and happy holidays.

**Emilio Gonzalez**
**Partner,** Davis Wright Tremaine LLP

**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

**From:** William Reed <wreed@shegerianlaw.com>
**Sent:** Thursday, December 14, 2023 9:25 AM
**To:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

Hi Emilio,

As to the agreement re the stay, I would phrase it a bit differently – I believe our agreement was to keep the status quo as to the number of days out from service of the complaint until we speak next. But I think we're both saying the same thing.

As to the clarification – we would stipulate that Defendants' actions related to the demurrer (whether they relate to the sexual harassment claim or not) as you describe below would not constitute waiver of the arbitration agreement as to those other claims.

Regards,

Will

William Reed | Shareholder
Shegerian & Associates
145 S Spring Street, Suite 400 | Los Angeles, CA 90012
Office: (310) 860-0770 | Facsimile: (310) 860-0771
wreed@shegerianlaw.com | shegerianlaw.com
Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Wednesday, December 13, 2023 3:52 PM
**To:** William Reed <wreed@shegerianlaw.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Subject:** RE: Stoker v Blue Origin LLC

Will,

This will memorialize our agreement to stay discovery and preserve defendants' priority until we discuss the issues raised today, which should be next Thursday (Dec 21).

As a point of clarification while we consider your proposal: if we agree to file the demurrer first, as you propose, we would demurrer to several causes of action, not just the sexual harassment claim. Will you stipulate that by filing the

demurrer first (including as to other claims) plaintiffs will not claim or argue that the request to dismiss the other claims constitutes a waiver of the arbitration agreement as to those or any other claims? Otherwise, I don't see how we could agree to file a demurrer first. Please let us know.

Thank you.

**Emilio Gonzalez**
**Partner,** Davis Wright Tremaine LLP

**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** William Reed <wreed@shegerianlaw.com>
**Sent:** Monday, December 11, 2023 11:54 AM
**To:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Emilio,

Happy holidays. I hope you've been well.

We appreciate your reaching out to discuss how best to proceed efficiently.

How about Wednesday 12/13 at 2:00 p.m.?

Regards,

Will

William Reed | Shareholder
Shegerian & Associates
145 S Spring Street, Suite 400 | Los Angeles, CA 90012
Office: (310) 860-0770 | Facsimile: (310) 860-0771
wreed@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Monday, December 11, 2023 7:42 AM
**To:** Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** Stoker v Blue Origin LLC

Dear counsel,

We represent Blue Origin LLC and are in receipt of the Complaint you filed on behalf of Craig Stoker. Please direct all future communications on this matter to us.

In case you are not already aware, Mr. Stoker's signed employment agreement includes an arbitration agreement (see pages 5-9 of the attached). This agreement mandates arbitration of 11 of the 12 causes of action asserted in Mr. Stoker's Complaint, excluding his claim for gender-based harassment.

We would like to discuss with you how to best proceed. We propose that the parties agree to arbitrate all 12 claims. Absent the parties' agreement to arbitrate, we will need to move to compel arbitration and, separately, demur to the gender-based harassment claim. If this becomes necessary, we would like to explore with you a way to stagger or coordinate the process for the sake of efficiency. Please let us know if any of the below days/times work well for you:

- Tuesday, 12/12: 10:30 a.m. – 12:00 p.m.; 2:00 – 4:30 p.m.
- Wednesday, 12/13: 9:00 – 11:00 a.m., 2:00 – 5:00 p.m.

Thank you.

**Emilio Gonzalez**
**Partner |** Davis Wright Tremaine LLP

**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566

**DWT.COM**

PROOF OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On February 20, 2024, I served the foregoing document(s) described as: **DECLARATION OF EMILIO G. GONZALEZ IN SUPPORT OF BLUE ORIGIN, LLC AND KEVIN LUNDE'S DEMURRER TO PLAINTIFF CRAIG STOKER'S COMPLAINT** by forwarding a portable document file to the electronic mail address(es) below:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>Shegerian & Associates, Inc.<br>11520 San Vicente Blvd.<br>Los Angeles, CA 90049<br><br>*Attorneys for Plaintiff CRAIG STOKER* | Tel: 310-860-0770<br>Fax: 310-860-0771<br>Email:<br>WReed@shegerianlaw.com<br>JShegerian@shegerianlaw.com<br>calendarclerk@shegerianlaw.com |

**(FROM ELECTRONIC MAIL ADDRESS vanessapalma@dwt.com)** at Suite 2400, 865 South Figueroa Street, Los Angeles, California.

Executed on February 20, 2024, at Los Angeles, California.

☒ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☐ Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Vanessa Palma
Print Name

[signature]
Signature



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1(b)(8)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
BLUE ORIGIN LLC

**Electronically FILED by Superior Court of California, County of Los Angeles 2/20/2024 2:12 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Tang, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **23STCV28816**

**DECLARATION OF EMILIO G. GONZALEZ IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Assigned to the Hon. Stephanie M. Bowick
Dept.: 19

Hearing Date: July 30, 2024
Hearing Time: 8:30 a.m.
**RES ID: 119166584644**

Action Filed: November 27, 2023

**DECLARATION OF EMILIO G. GONZALEZ**

I, Emilio G. Gonzalez, declare and state as follows:

1. I am an attorney admitted to practice in the State of California and a partner at the law firm of Davis Wright Tremaine LLP. I am counsel for Defendants Blue Origin LLC ("Blue Origin") and Kevin Lunde, in the above-captioned lawsuit. I submit this declaration in support of Blue Origin's Motion to Compel Arbitration. I am over the age of eighteen, and, if called upon as a witness, could and would competently testify to each of the facts set forth herein.

2. Plaintiff Craig Stoker ("Plaintiff") filed this lawsuit against Blue Origin and Kevin Lunde on November 27, 2023. A true and correct copy of the Complaint for Damages that was served on Blue Origin is attached hereto as Exhibit D.

3. On December 11, 2023, I wrote to Plaintiff's counsel, attaching a copy of the Arbitration Agreement, and explaining that the Arbitration Agreement mandates arbitration of 11 of the 12 causes of action asserted in Plaintiff's Complaint, excluding Plaintiff's claim for gender-based harassment. Later that same day, we agreed to meet and confer by videoconference on December 13, 2023.

4. Counsel for Defendants and Plaintiff met and conferred by videoconference and email between December 13, 2023 and January 9, 2024. Among other things, I pointed out that the Arbitration Agreement excluded sexual harassment claims and that the sexual harassment claim was not viable, and therefore the Parties should agree to arbitrate all remaining claims. Plaintiff's counsel refused to agree to arbitrate any of Plaintiff's claims and claimed, among other things, that the inclusion of a sexual harassment claim meant the entire action must remain in court. During the Parties' meet and confer discussions, Plaintiff's counsel asserted that the federal EFAA precludes the enforcement of the Arbitration Agreement as to all of Plaintiff's claims, simply because one of his 12 claims is gender harassment. Attached hereto as Exhibit E is a true and correct copy of the aforementioned email correspondence between Defendants' counsel and Plaintiff's counsel.

5. Defendants' counsel and Plaintiff's counsel agreed to stay Defendants' responsive pleading deadlines and, at Plaintiff's request, to additional pages beyond the standard page limits



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

for Opposition and Reply briefs. A true and correct copy of the Joint Stipulation signed by the Parties and filed on January 18, 2024 is attached hereto as Exhibit F.

6. On January 19, 2024, Blue Origin secured the first available hearing date for this Motion – July 30, 2024 at 8:30 a.m.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on January 30, 2024 at Los Angeles, CA.

Emilio G. Gonzalez



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT D

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
William Reed, Esq., State Bar No. 261931
WReed@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number: (310) 860 0770
Facsimile Number: (310) 860 0771

Attorneys for Plaintiff,
CRAIG STOKER

Electronically FILED by Superior Court of California, County of Los Angeles 11/27/2023 2:16 PM David W. Slayton, Executive Officer/Clerk of Court, By S. Ruiz, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company. KEVIN LUNDY. an individual. and DOES 1 to 100, inclusive,

Defendants.

Case No.: 23STCV28816

**PLAINTIFF CRAIG STOKER'S COMPLAINT FOR DAMAGES FOR:**

**(1) VIOLATION OF LABOR CODE § 1102.5 (b) & (c) (WHISTLEBLOWER RETALIATION);**

**(2) VIOLATION OF LABOR CODE § 232.5 (RETALIATION FOR REPORTING WORKING CONDITIONS);**

**(3) VIOLATION OF LABOR CODE § 6310 (RETALIATION FOR DISCLOSING UNSAFE WORKING CONDITIONS);**

**(4) DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF FEHA;**

**(5) HARASSMENT ON THE BASIS OF GENDER IN VIOLATION OF FEHA;**

**(6) RETALIATION IN VIOLATION OF THE FEHA;**

**(7) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT. AND/OR**

**RETALIATION IN VIOLATION OF FEHA;**

**(8) BREACH OF EXPRESS ORAL CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

**(9) BREACH OF IMPLIED-IN-FACT CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

**(10) NEGLIGENT HIRING, SUPERVISION, AND RETENTION;**

**(11) WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF PUBLIC POLICY; *and***

**(12) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

Page

SUMMARY ........ 1

PARTIES ........ 1

VENUE ........ 3

FACTS COMMON TO ALL CAUSES OF ACTION ........ 4

Plaintiff's Hire ........ 4

Plaintiff's Performance ........ 4

Plaintiff's Protected Status and Activities ........ 4

General Synopsis of Underlying Facts ........ 4

Stoker Blows the First Whistle ........ 4

Stoker Blows the Whistle, Again ........ 7

After His Complaints Against Blue Origin's CEO, Stoker Confronts Retaliation ........ 8

Stoker Learns that A Fellow Employee Nearly Asphyxiated, And Immediately Voices His Workplace Safety Concerns ........ 9

Stoker Raises Safety Concerns of Employees Working "24-hour" Shifts ........ 9

Unsurprisingly, Blue Origin's (Now) Internal Investigation Absolved Its CEO of Any Wrongdoing ........ 10

Stoker Schedules a Follow-Up Meeting to Inquire into the Investigation and Express His Grave Concerns Re Its Thoroughness, Propriety, and Impartiality ........ 13

Based on Stoker's Reported "24 Hour Shift" Safety Concerns, Stevens Issues an Interim Policy on "Fatigue Management" ........ 14

Stoker Follows Up on the Concerns Raised at the August 3, 2022 Meeting ........ 15

With No Further Action, Beatty Quickly Closes the Investigation ........ 15

Stoker Raises Ethical / Legal Concerts to In House Counsel ........ 16

Stoker Raises Ethical / Legal Concerts to In House Counsel ........ 17

Defendants' Termination of Plaintiff's Employment ........ 18

FIRST CAUSE OF ACTION ........ 20

Whistleblower Retaliation (Violation of Labor Code § 1102.5, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive ........ 20

SECOND CAUSE OF ACTION ..... 22

Whistleblower Retaliation (Violation of Cal. Labor Code § 232.5) Against Blue Origin and Does 1 to 100, Inclusive ..... 22

THIRD CAUSE OF ACTION ..... 23

Whistleblower Retaliation (Violation of Labor Code § 6310) Against Blue Origin and Does 1 to 100, Inclusive ..... 23

FOURTH CAUSE OF ACTION ..... 24

Discrimination on the Basis of Sex and Gender (Government Code § 12900, et seq.) Against Blue Origin and Does 1 to 100, Inclusive ..... 24

FIFTH CAUSE OF ACTION ..... 25

Hostile Work Environment / Harassment on the Basis of Gender/Sex (Government Code § 12900, et seq.) Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive ..... 25

SIXTH CAUSE OF ACTION ..... 26

Retaliation for Engaging in Protected Activity (Violation of Government Code § 12900, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive ..... 26

SEVENTH CAUSE OF ACTION ..... 27

Failure to Prevent Discrimination, Harassment, and/or Retaliation (Violation of Government Code § 12900, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive ..... 27

EIGHTH CAUSE OF ACTION ..... 28

Breach of Express Oral Contract Not to Terminate Employment Without Good Cause (*Marvin v. Marvin* (1976) 18 Cal.3d 660) Against Blue Origin and Does 1 to 100, Inclusive ..... 28

NINTH CAUSE OF ACTION ..... 29

Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622) Against Blue Origin and Does 1 to 100, Inclusive ..... 29

TENTH CAUSE OF ACTION ..... 30

Negligent Hiring, Supervision, and Retention (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038) Against Blue Origin and Does 1 to 100, Inclusive ..... 30

ELEVENTH CAUSE OF ACTION ..... 31

Wrongful Termination of Employment in Violation of Public Policy (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167) Against Blue Origin and Does 1 to 100, Inclusive ..... 31

TWELFTH CAUSE OF ACTION ..... 32

Intentional Infliction of Emotional Distress (*Hughes v. Pair* (2009) 46 Cal.4th 1035) Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive ................ 32

PRAYER ........................................................................................................ 33

Plaintiff, Craig Stoker, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Craig Stoker ("plaintiff" or "Stoker"), whose employment with defendant Blue Origin LLC ("Blue Origin") was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b), Labor Code section 1102.5(j), and Code of Civil Procedure section 1021.5.

## PARTIES

1. *Plaintiff:* Plaintiff Stoker is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:* Defendant Blue Origin is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Defendants' place of business, where the following causes of action took place, was and is in the County of Los Angeles, at 21650 Oxnard Street, Suite 1555, Woodland Hills, CA 91367. Defendant Kevin Lundy ("Lundy") is, and at all times mentioned in this Complaint was, a manager with defendants. Defendant Lundy is, and at all times mentioned in this Complaint was believed to be, a resident of Los Angeles County, California.

3. *Doe defendants:* Defendants Does 1 to 100, inclusive, are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions

mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

4. *Relationship of defendants:* All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i). All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

5. All Defendants both directly and indirectly employed plaintiff Stoker, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

///

///

6. In addition, defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

7. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## VENUE

8. The actions at issue in this case occurred in the State of California, in the County of Los Angeles. Under the California Fair Employment and Housing Act, this case can alternatively, at Plaintiff's choice, be filed:

> [I]n a county in which the department has an office, ***in a county in which unlawful practices are alleged to have been committed***, in the county in which records relevant to the alleged unlawful practices are maintained and administered, in the county in which the person claiming to be aggrieved would have worked or would have had access to public accommodation, but for the alleged unlawful practices, in the county of the defendant's residence or principal office. . . (Italics and bolding added)

(California Government Code § 12965(b).)

9. Here, the plaintiff worked primarily in California in the County of Los Angeles. The location where plaintiff worked was located in Woodland Hills, California. The majority of the unlawful actions on the part of the defendants occurred at said Woodland Hills location.

10. "[I]n the absence of an affirmative showing to the contrary, the presumption is that the county in which the title of the actions shows that the case is brought is, prima facie, the proper county for the commencement and trial of the action." (*Mission Imports v. Sup. Crt.* (1982) 31 Cal.3d 921, 928.) The FEHA venue statute – section 12965(b) – thus affords a wide choice of venue to persons who bring actions under FEHA. (*Brown v. Sup. Crt.* (1984) 37 Cal.3d 477, 486.) "[T]he special provisions of the FEHA venue statute control in cases involving FEHA claims joined with non-FEHA claims arising from the same facts." (*Id.* at 487.)

///

## FACTS COMMON TO ALL CAUSES OF ACTION

### Plaintiff's Hire

11. Plaintiff, now 62 years of age, began his employment with Blue Origin as an Engine Program Director on or around October 19, 2020.

### Plaintiff's Performance

12. Throughout his employment, Stoker performed exceptionally. Never did he have a significant performance issue. Leading up to his wrongful termination, Stoker consistently received praise in his performance reviews. In his 2021 annual evaluation, Stoker earned an "Outstanding Contribution" overall rating.

13. Stoker's 2022 semiannual review rated his performance "on track" and noted that "***Craig and the BE-4 team have done an outstanding job identifying engineering and program talent to bring into Blue engines that are helping increase the experience and discipline that we need to be successful... BE-4 is an incredibly difficult program being watched through a magnifying glass both internally and externally. Your patience, professionalism, grit and accountability throughout this year has been admirable.***"

### Plaintiff's Protected Status and Activities

14. Stoker is over 40 years of age.

15. Stoker is a male.

16. Stoker engaged in protected activities. Specifically, Stoker made numerous complaints regarding *safety issues*, reported a *hostile work environment*, and brought to light *ethical violations*.

### General Synopsis of Underlying Facts

#### *Stoker Blows the First Whistle*

17. In May of 2022, a meeting was held between Stoker, Linda Cova ("Cova") – a female – Vice President of the Engines Business Unit, and Mary Plunkett ("Plunkett"), – a female – Senior Vice President of Human Resources. Stoker explained to these female leaders that Robert Smith's ("Smith"), Blue Origin CEO, behavior caused employees (mainly male) to frequently violate safety procedures and processes in order to meet

unreasonable deadlines. Then when issues inevitably arose (including those related to safety), Smith would explode. On information and belief, Kevin Lundy ("Lundy") was informed of this complaint and was involved in Plunkett and Cova's actions, or inactions, thereafter.

18. On or around May 23, 2022, Stoker sent an email to Cova and Plunkett, to reiterate and report other serious concerns related to the behavior of CEO Smith and the ever present hostile work environment that was hampering Blue Origin's ability to operate safely, efficiently, or competently. On information and belief Lundy was involved with the receipt and processing of this complaint.

19. This email follows:

a. "Myself, my leadership team and others throughout the company should not have to constantly apologize and make excuses to ourselves and our teams for the **CEO's bad behavior**. We spend significant time smoothing things over, building back morale, repairing damage, stopping people from overreacting to **direction to violate policies and procedures** and guiding them in making the right decisions. By continuing to accept this behavior we are all contributing to creating a **hostile work environment**, **<u>repeating the Space Shuttle missteps discussed at Safety Day this year and are not staying true to the Blue Leadership Principles</u>**."

b. "Therefore, I want to **record a formal complaint against Robert Smith** for creating a ***hostile work environment*** **and selectively targeting people** to assign individual blame for institution failings. The hostile work environment and targeting are **impacting the ability of Blue to execute work, impacting the health and wellbeing of my team and I** (and other across the company), **demoralizing the entire company** and **<u>creating a *safety* and quality hazard for our people, products and customers</u>**. The fact that we work for a private company does not mean we should accept this behavior and work environment that is **<u>inconsistent with the *state and federal laws* that govern the workplace</u>**."

///

c. "Hostile working environment examples are:"

- "Pitting BU and function against each other"
- "Unacceptably harsh tone, behavior and bullying in emails, in discussions and in meetings"
- "Demanding the impossible completion of tasks and schedules and not listening to facts and data"
- "Lack of clear direction leading to constant 'bring me another rock,'"
- "Demeaning direct and indirect communication and discussion"
- "Demanding people violate procedures and processes and take significant risk and then chastising the team and individuals when issues occur"
- "Shooting the messenger and individual blame environment"

d. "Institutional failing include:"

- "Lack of adequate resources, capacity and capability to complete assigned tasks"
- "Immature and inadequate process, procedures and tools"
- "Inadequately trained and experienced personnel to do assigned work"
- "Team burnout leading to mistakes because of constant firefighting and unrealistic goals, schedules and objectives"
- "Schedule above all else approach to execution including sacrificing quality and safety"
- "Inadequate escalation of issues and people moving forward with work instead of stopping to address issues and concerns because of shooting the messenger environment"
- "Lack of institutional accountability for poor decision making that puts us in our current position"

e. "Thank you for your support in this critical matter"

///

20. Stoker also reported that, on at least two occasions in December of 2020 and September of 2021, teams were being forced to work 24-hour shifts, and that the resulting exhaustion and burnout was leading to mistakes that required constant "firefighting." Stoker, thus impressed that company guidelines were needed to avoid careless errors and mistakes that appeared to be caused only by sleep deprivation.

21. Plunkett and Cova (and, on information and belief, by proxy Lundy) promised to take action to investigate Stoker's concerns, and in a case like this involving Senior Leadership, outside counsel would likely be utilized to investigate.

22. At that same meeting, Stoker inquired as to the status of an ongoing investigation into Smith's behavior, of which he was aware because he had been previously interviewed. Stoker echoed those significant concerns regarding Smith's behavior. A dismissive Plunkett (who was, on information and belief, also speaking on behalf of Cova and Lundy) indicated that the investigation had been closed out and that Smith was receiving "coaching."

23. Stoker's complaints to female leadership – *i.e.,* Cova and Plunkett – were, for all intent and purpose, disregarded. Sadly, this was the beginning of a trend where female executives, supervisors and human resources directors, would purposefully ignore Stokers legitimate concerns and complaints, on information and belief, due to his male gender.

24. On information and belief, influenced by the cat's paw, Lundy disregarded Stoker's complaints and expected Stoker, because he was a male, to buck up and grin and bear it.

***Stoker Blows the Whistle, Again***

25. After Stoker's May meeting with Cova and Plunkett, the female executives assigned Melissa Beatty ("Beatty"), – a female – Senior Director of Human Resources Operations, to lead the investigation into Stoker's complaints.

26. In May and June of 2022, Stoker met with Beatty to further express and explain his concerns regarding Smith.

///

27. At the meeting on or around May 24, 2022, Stoker was informed that an outside counsel would be used to complete the investigation since Plaintiff's complaint was against the CEO. At Beatty's request, Stoker walked her through his formal complaint and listed people who either witnessed, or were the subject of, the behavior outlined in his written claim.

28. At the meeting on or around June 9, 2022, Stoker expanded on his concerns. While doing so, he expressed his fear that Smith's behavior would lead to missteps similar to those demonstrated at "Safety Day" the previous January, where a former astronaut was invited to speak to Blue Origin employees regarding shuttle disasters and the circumstances that caused those incidents. ***Stoker specifically noted that, presently, there were several such issues also occurring at Blue Origin***, such as: **(i)** having a narrow focus on schedule above all else, **(ii)** ignoring engineering input, and **(iii)** not having strong safety and quality programs in place.

29. Sadly, Stoker's concerns were *yet again* ignored by a senior female director. On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***After His Complaints Against Blue Origin's CEO, Stoker Confronts Retaliation***

30. Since Stoker started his employment working from home in October of 2020, he did not have a workstation at the Los Angeles office. But by June of 2022, Blue Origin employees were regularly reporting to said office, including Stoker. Yet, Stoker, despite being the most senior employee at the LA branch, was refused a permanent workstation – unlike any other employee there.

31. On information and belief, Kevin Lundy ("Lundy"), the manager of the LA Branch – at the direction of Blue Origin directors such as Smith, Cova, and Beatty – refused to assign Stoker a permanent workstation. By having the branch's most senior employee frequently bounce around from desk to desk, making room for less experienced and lower ranking employees, Lundy actively sought to embarrass Stoker in front of his peers.

32. On several occasions Stoker asked for a permanent workstation, but as usually, he was totally ignored.

33. For the remainder of his tenure with Blue Origin, Stoker was regularly directed by Lundy to move from desk to desk.

***Stoker Learns that A Fellow Employee Nearly Asphyxiated, And Immediately Voices His Workplace Safety Concerns***

34. During Summer 2022, Stoker learned that a fellow employee had almost asphyxiated while working under an engine nozzle during a nitrogen purge. Despite the fact that industry practice required barriers and notification systems in the areas subject to nitrogen purges to make employees aware of the imminent danger, neither of those systems were in place at the time.

35. When Stoker brought these concerns to Michael Stevens ("Stevens"), Vice President of Safety and Mission Assurance, he was brushed off, and dismissively told that ***Blue Origin could not have safety procedures for everything***. Instead, Stevens blamed the employee – also a male – for not knowing that the area would be undergoing a nitrogen purge.

36. On information and belief, this – fare for yourself, you're a male, attitude – was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***Stoker Raises Safety Concerns of Employees Working "24-hour" Shifts***

37. On or around August 1, 2022, in an email to Cova, Beatty, Dawn Lovely, Michael Eilola, Jason Priebe, Rob Brazier, Robert Josker, and Keith Klaus, Stoker wrote:

a. "Congratulations again to you and the team on getting F1 delivered to LS1. I am as excited as anyone about this accomplishment, **but we have to learn from this and ensure the safety of our teams**. We had approximately **9 people work 24+ hours on the final day** to get this engine out the door. We had a similar situation last December where several of our teammates worked 26+ hours to complete a PQ engine and get it out the door. While I fully appreciate the extra effort, understand the schedule pressure and love the enthusiasm, I believe we need to generate a near miss to drive a change. I DO NOT

want an investigation that identifies the 9 employees and provides any kind of discipline. **What I want is a Near Miss that drives the implementation of work place rules that define the max hours per day, max days in a row, max hours per week, etc. that our employees can work to clearly establish a culture of safety over schedule**. We know the cause of the issue: technical and production debt, schedule pressure and lack of adequate resources and so a big investigation should not be required, but we absolutely must establish work place rules to **protect our people from themselves and ensure they understand that we value their safety over schedule**."

38. Human Resources Partner, Julie Grant ("Grant") – a female – was assigned to discuss these issues. As with Stoker's *previous* complaints made to female directors, his legitimate safety complaints, raised to protect his fellow (mainly male) employees from physical and emotional injury, were ignored.

39. On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***Unsurprisingly, Blue Origin's (Now) Internal Investigation Absolved Its CEO of Any Wrongdoing***

40. On or around August 1, 2022, Beatty scheduled a meeting with Stoker to review *her* investigative findings. While Beatty was explaining that Stoker's complaints did not meet the legal definition of a hostile work environment, she informed Stoker that she had *personally* conducted the investigation and that outside counsel was only used to review her findings.

41. Given the nature, severity, and hostility of Smiths egregious conduct, and the fact that Smith has numerous complaints against him for similar reasons, it is highly questionable whether Beatty also would have absolved Smith's hostilities if Stoker were a female. Beatty, in other words, implicitly expected Stoker to deal with the hostility because he was a male and could "handle it." On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

42. Beatty went on to disclaim that, despite *her* investigation's findings, she **did not have the expertise to investigate the safety concerns and compromising mission assurance**. Thus, these issues had **yet to be investigated** and would be **turned over to Stevens**. Beatty assured Stoker that Stevens would be following up with him to provide him with the results of the investigation. **As of Stokers termination, Stevens has not reached out with *any* questions, feedback, or findings related to this "investigation."**

43. Subsequently, Stoker received an email from Beatty stating:

a. "Mr. Stoker, this letter is in response to your email dated 23 May 2022 which you raised allegations of bullying behavior by CEO Bob Smith. We appreciate you sharing your concerns with us to allow us to review and respond. We take these allegations very seriously and therefore we assigned to Human Resources - Employee Relations to investigate."

b. "On 24 May 2022 and 9 June 2022, you met with me, Melissa Beatty, Senior Director, HR Operations to investigate your concerns. Specifically, you alleged in your letter and in your conversation with me the below concerns: [¶ … ¶ **(1)**] Bob Smith, CEO, demonstrated bad behavior towards the Engines team creating a hostile work environment[ and **(2)**] The CEO's behavior will lead to similar missteps demonstrated in the space shuttle disaster discussed at Safety Day in January 2022."

c. Findings: "To investigate these concerns, we reviewed all the material you provided, including the email communications with Mr. Smith, and interviewed people identified. We have also investigated generally Mr. Smith's treatment of you and your colleagues and specifically whether others feel Mr. Smith treats them harshly."

d. "This investigation did not corroborate your belief that Mr. Smith creates a hostile work environment. Everyone spoken to noted that they are under pressure to deliver engines as the next important step in Blue Origin's plans to build the road to space. Many referenced New Shepard right before the first human flight as an example of the kind of pressure they are experiencing. That said, examples of Mr. Smith's behavior do not rise to the level of a hostile work environment, which is the creation of a discriminatory

environment that a reasonable person would find so abusive or intimidating that it impacts the ability to work. The investigation did demonstrate, however, that some things could be done from a management and morale perspective to further support the team, which I discuss in the recommendations section of this letter. In reviewing the email examples of alleged harsh tone by Mr. Smith, I did not see harsh language. The behavior described was consistent with a CEO's desire and commitment to fulfil Blue's mission."

e. "For the allegation that Mr. Smith's behavior will lead to similar missteps demonstrated in the space shuttle disaster discussed at Safety Day in January 2022, HR is not qualified to assess the quality of design or safety impacts. This question has been referred to Michael Stevens, EHS, for inquiry. This effort is underway."

f. Recommendations:

- "*In process*: hand off to assess impact of management issues on design quality and safety concerns to Michael Stevens and EHS for review."
- "Consider additional support for the team, given the stress of where we are in the development of BE4. Answering the questions: does Engines have the right team in place, and the right people to support you and Engines? Include more regular touch points with HR and consider an executive coach for additional development support."
- "Ask Julie Grant to follow up on the Culture Assessment conducted in March to see where we are with the recommendations. To work with Mr. Stoker to assess the health of his organization, including team morale and resources available to support the work, including hours worked by the team."
- "*In process*: Consider incentives for those working the highest hours.
- "You and your Snr. HR Business Partner should engage much more routinely to ensure we are actively working on all concerns that are identified."
- "Conduct a review of all hours worked and ensure that team members

with the highest hours are taking time off periodically for rest and recovery."

g. Beatty's Lip service: "Mr. Stoker, as stated earlier the organization takes these allegations very seriously and conducted a thorough investigation into the matter. As a result, there were no findings that violated Blue Origin's policy or expectations of behavior. We do believe there is additional support and actions that could and should be taken to support the Engines team, and we have asked your Snr. HR Business Partner, Julie Grant, to work with you and Ms. Cova on potential next steps."

***Stoker Schedules a Follow-Up Meeting to Inquire into the Investigation and Express His Grave Concerns Re Its Thoroughness, Propriety, and Impartiality***

44. On or around August 3, 2022, Plaintiff had a follow-up meeting with Beatty, wherein he pointed out what he believed to be fatal flaws with the investigation. To start, Stoker pointed out that her investigation ignored Blue Origin policies, and instead focused narrowly on whether Smith's actions met the legal definition of a hostile work environment. Stated otherwise, Stoker pointed out that Beatty – a female – had "purposefully" ignored the legal standards (and those spelled out by Blue Origin policy) that clearly defined the applicable standard, again, on information and belief, because Stoker was a male, and could "suck it up." On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

45. Stoker then attempted to find out who was interviewed and whether Beatty had looked at things more broadly around Robert Smith's behavior relative to Blue Origins published Leadership Principles. In doing so, **Stoker learned that no one from the BE-4 program (where the safety issues occurred), the Blue Engine Business Unit, or Plaintiff's supervisor were interviewed as part of the investigation**. Beatty, quite hollowly, agreed to look further into Plaintiff's concerns. Stoker candidly conveyed this to Beatty that these failures gave him the impression that the investigation was not thoroughly conducted, and the lack of outside input appeared to place the results of the

investigation in serious question.

46. On information and belief, the three female human resources directors, Beatty, Plunkett, and Grant, along with Lundy (*via* the cat's paw) refused to take Stoker's legitimate safety concerns seriously, because he was a male, implying that they expected him to, in effect, "man up" and get tougher.

47. Rather than striving to protect their employees (mainly male) who worked with extremely dangerous tools and materials, whose designs and calculations require intense and exact precision, Beatty, Plunkett, Grant, and Lundy (*via* the cat's paw) expected Stoker, and male Blue Origin employees, to play the tough and machismo stereotypical blue-collar engineer, often emulated in pre-OSHA movies. Not only did this expectation risk billions of dollars, it risked lives, as demonstrated by the near asphyxiation of an employee just months earlier.

***Based on Stoker's Reported "24 Hour Shift" Safety Concerns, Stevens Issues an Interim Policy on "Fatigue Management"***

48. On or around August 4, 2022, Stevens circulated an email to Stoker, Keith Klaus, Dawn Lovely, James Dewees, Nathan Harris, and Priebe entitled: "Interim Safety Note to All Blue on Fatigue Management."

49. In said email, Stevens wrote:

a. "Leaders,"

b. "Please review and comment on the following note that I intend to send to all Blue."

c. "Safety is a core value at Blue. We value safety over schedule."

d. "Blue is in the process of publishing a fatigue management policy applicable to all organizations without an existing fatigue management plan (TFO and LS1 for example). In the interim, follow the below direction if your organization does not have an approved fatigue management plan:"

e. **(1) "Daily Total Work Hour Limit"** [¶ … ¶] "Employees should be limited to a maximum of 12 hours of work in a 24-hour period."

f. **(2) "Off Duty Periods"** [¶ … ¶] "Employees should be provided with a non-work or off duty period of no less than 10 consecutive hours prior to the start of a workday or shift." [¶ … ¶] "A minimum 48-hour rest period after 5 consecutive days of 12-hour shifts is required."

g. **(3) "Weekly Work Limit"** [¶ … ¶] "Employees should not work more than 60 hours in a labor reporting week."

h. **(4) "Consecutive Workday Limit"** [¶ … ¶] "Employees should not work more than 5 consecutive days where each day contains 12 hours (or more) of work without a 48-hour rest period[.]" [¶ … ¶] "Employees should not work more than 14 consecutive days where any amount of work is performed on those days."

i. Stoker felt some solace in that fact that this one complaint was addressed, notably though, it was by a male colleague.

***Stoker Follows Up on the Concerns Raised at the August 3, 2022 Meeting***

50. On or around August 20, 2022, Stoker sent Beatty a follow up email to determine where Beatty was with respect to his concern regarding the investigation and the timing of when he might receive a final investigation letter that addressed these concerns.

51. Mission critical, was that Stoker informed Beatty that he had **not heard back from Stevens on his Mission Assurance *safety* concerns.** On information and belief, this was no coincidence.

52. On further information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***With No Further Action, Beatty Quickly Closes the Investigation***

53. On or around August 22, 2022, Beatty responded that no additional or further investigation was planned or would be conducted, and that Stoker should expect a final closeout letter.

54. Stoker was left stunned by the clear neglect and unwillingness of human resources to conduct a legitimate and comprehensive investigation.

///

55. On information and belief, Beatty, Plunkett, Cove, and Lundy's (*via* the cat's paw) refusal to adequately investigate his concerns was because of his gender. As a male, they expected him to deal with his problems on his own and "whine" less – leaving Stoker with no recourse nor resource to raise his concerns against the company's most powerful officer.

***Stoker Raises Ethical / Legal Concerts to In House Counsel***

56. Recognizing Beatty, Plunkett, Cove, and Lundy (*via* the cat's paw) were not taking him seriously, Stoker met with Ian Savage ("Savage") – a male – Blue Origin Legal Counsel, on or around August 22, 2022. At said meeting, Stoker filed an Ethics concern against Smith and his actions surrounding Blue Origin's contract for the BE-4 engine with United Launch Alliance ("ULA") who builds and operates the Vulcan launch vehicle that the BE-4 engine will fly on.

57. Specifically, the contract required Blue Origin to provide ULA with a minimum of one year of insight into issues and updates surrounding the delivery of rocket engines.

58. Due to Blue Origin production issues, a production gap impacting ULA's business had been forecasted and Stoker wanted to fulfill Blue Origin's contractual obligations and inform ULA of this likelihood.

59. Stoker also wanted to provide additional insight because of the significance of this impact, in that it would almost certainly delay ULA's ability to make delivery to its government customer – the United States Space Force – and its ability to meet Assured Access to space requirements.

60. In this regard, **Stoker reported to Savage that Smith had instructed both he and Cova *not to* fully share these production issues and delivery schedules with ULA**.

61. At the time of Stoker's termination, Stoker had not heard back from legal regarding his concerns. On information and belief, the powers that be stood in the way.

///

///

///

***Stoker Raises Ethical / Legal Concerts to In House Counsel***

62. On or around September 22, 2022, Plaintiff sent an email to Senior Quality Director Henry Digdigan ("Digdigan - male – outlining a significant issue regarding baseline management that required immediate attention. Specifically, there was a discrepancy between the techniques, criteria, inspection methodology, and timing between identical production hardware being processed at the Huntsville and Kent locations, and Plaintiff required a plan of action to resolve the discrepancies.

63. Less than fifteen minutes later, Cova sent a follow-up email concurring with Plaintiff's concerns:

a. "+Mike and Jason (and minus all the IPTs)

b. "Diggy –"

c. "As you can see from the e-mail this is critical to ensuring we are delivering identical engines to ULA. And is just as important for all of the engines we deliver internally. In fact with long life hardware we are providing to NG a lot of these critical inspections will be even more important. Will you please let me know when you will have a team ready that can address this and lets get a weekly going to ensure we get quick closure on this. We are already in process with several flight engines and have to have this in control."

d. "We have a meeting with Bob on Friday to discuss how we control tWO change and this is another topic that we will need to discuss."

e. "Jason/Mike – assuming you will talk to this with Bob at our Friday meeting in addition to tWO control as it should be part of 'following planning' as well as change control."

64. On information and belief, this was lip service meant only to placate Stoker until his termination, which was coddled, approved, and ratified by Plunkett, Beatty, and Lundy (*via* the cat's paw).

///

///

***Defendants' Termination of Plaintiff's Employment***

a. On or around October 7, 2022 – on the heels of his protected activity, and only seven months after Stoker started rocking the "safety" boat – Stoker was called into a meeting with Cova and Grant. At the start, Cova informed Plaintiff that he was being terminated "without cause," because Blue Origin wanted to make a so called "leadership change."

b. When a perplexed Stoker asked why this was happening, Cova simply responded that he had neither done anything wrong, nor had he engaged in any misconduct, and that he would receive a – what later turned out to be a "cappy" – severance offer.

c. On information and belief, Smith spearheaded this termination due to Stoker's complaints against him, his raising of safety / ethical / legal issues, and the fact that many of these reports aimed to hamper his production / delivery schedule.

d. On information and belief, Plunkett, Lundy, Grant, and Beatty supported Smith's termination of Stoker, incensed and concerned by his legitimate complaints showcasing the holes in their expectations and procedures.

65. *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

66. Just one week later, Stoker was to hit his cliff to trigger additional equity share.

67. *Non-economic damages:* As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

68. *Punitive damages:* Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a. *Malice:* Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of his age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:* In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of his age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:* In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive him of legal rights.

69. *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

70. *Exhaustion of administrative remedies:* Prior to filing this action, plaintiff exhausted his administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-

sue letter.

**FIRST CAUSE OF ACTION**

**Whistleblower Retaliation**

**(Violation of Labor Code § 1102.5, *et seq.*)**

**Against Blue Origin and Does 1 to 100, Inclusive**

71. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

72. Under California Labor Code section 1102.5(b), an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency when the employee has reasonable cause to believe that the information discloses a violation of state or federal statute or a violation of or noncompliance with a state or federal rule or regulation. Section 1102.5 protects employees who disclose reasonably based suspicions of illegal activity or noncompliance with rules or regulations either to a government or law enforcement agency or directly to another employee of the employer, so long as the employee to whom the report is made has authority over the disclosing employee or has authority to investigate, discover, or correct the violation or noncompliance. Labor Code § 1102.5(b). Defendants are and at all relevant times were a government agency.

73. Under California Labor Code section 1102.5(c), an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a state or federal statute or a violation of or noncompliance with a state or federal rule or regulation.

74. At all relevant times, as set forth above, plaintiff reasonably believed, believes, and therefore alleges that he reported defendants' violation of various laws (*e.g.*, statutes, rules, codes, and regulations), ethical obligations, and contractual obligations (some that affected government contracts and legal obligations related thereto). The aforementioned make up plaintiff's reasonable belief of a potential legal violation and/or an actual legal

violation.

75. The same, plaintiff alleges that he refused to violate the law.

76. In violation of California Labor Code section 1102.5(b) and/or (c), defendants, and each of them, discriminated and retaliated against plaintiff by unlawfully demoting her or otherwise retaliating and discriminating against plaintiff because plaintiff lodged a complaint, testified (or was believed to have intended to do so), or assisted in any proceeding (or was believed to have intended to do so) concerning deficient patient care and safety, lack of quality of patient care, and doctors' performing life-threatening procedures on infants. Defendants unlawfully harassed and discriminated against plaintiff, as is fully set forth in the General Allegations and all paragraphs above, including adverse employment actions, such as compelled self-termination of employment.

77. As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

78. As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

79. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

80. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Labor Code section 1102.5(j), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

///

///

///

///

**SECOND CAUSE OF ACTION**

**Whistleblower Retaliation**

**(Violation of Cal. Labor Code § 232.5)**

**Against Blue Origin and Does 1 to 100, Inclusive**

81. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

82. At all relevant times, Labor Code section 232.5 was in effect and was binding on Defendants. As relevant here, this statute prohibits Defendants from discharging, formally disciplining, or otherwise discriminating against an employee who discloses information about the employer's working conditions.

83. California courts have interpreted section 232.5's definition of working conditions to mean "those conditions determined by the employer as a condition of employment." As described above, Plaintiff made numerous complaints about his working conditions. In violation of section 232.5, Defendants discharged, formally disciplined, and otherwise discriminated against/harassed Plaintiff because of his disclosures.

84. As a proximate result of Defendants' willful, knowing, intentional, and repeated violations of Labor Code section 232.5, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

85. As a result of defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

86. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles Plaintiff to punitive damages against Defendants.

///

///

///

///

## THIRD CAUSE OF ACTION

**Whistleblower Retaliation**

**(Violation of Labor Code § 6310)**

**Against Blue Origin and Does 1 to 100, Inclusive**

87. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

88. At all relevant times, Labor Code section 6310 was in effect and was binding on defendants. This statute prohibits defendants from retaliating or otherwise discriminating against an employee, including plaintiff, for raising complaints (either oral or written) regarding health or health conditions or practices and/or instate or cause to be instated proceedings related to the employee's right to safe and healthful working conditions. Section 6310 also protects employees who report work-related injuries and illnesses.

89. Plaintiff made protected reports, complaints, and/or disclosures while he worked for defendants and was believed to be willing to raise complaints, and because of those reports/complaints/disclosures, defendants retaliated against him, discriminated against him, harassed him, and otherwise took adverse employment actions against him, up to, and including, the termination of his employment.

90. As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 6310, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

91. As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

92. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

///

## FOURTH CAUSE OF ACTION

**Discrimination on the Basis of Sex and Gender**

**(Government Code § 12900, et seq.)**

**Against Blue Origin and Does 1 to 100, Inclusive**

93. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

94. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.*, and defendants committed unlawful employment practices, including by the following bases for liability:

a. Taking adverse employment action against Plaintiff, including but not limited to discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(a);

b. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(j);

c. Failing to take all reasonable steps to prevent discrimination and harassment in violation of Government Code section 12940(k);

95. On the basis of the above, plaintiff believes and alleges that a pattern and practice of the above described discrimination, harassment, retaliation, and failure to prevent discrimination and harassment occurred.

96. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

97. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

98. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

99. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

## FIFTH CAUSE OF ACTION

## Hostile Work Environment / Harassment on the Basis of Gender/Sex

## (Government Code § 12900, et seq.)

## Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive

100. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

101. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.*, and defendants committed unlawful employment practices, including by the following bases for liability:

a. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(j);

b. Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation in violation of Government Code section 12940(k).

102. Pursuant to Government Code section 12923(b), a single incident of harassing conduct is sufficient to create a hostile work environment if the harassing conduct has unreasonably interfered with plaintiff's work performance or created an intimidating, hostile, or offensive working environment.

///

103. As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

104. As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

105. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

106. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

**SIXTH CAUSE OF ACTION**

**Retaliation for Engaging in Protected Activity**

**(Violation of Government Code § 12900, *et seq.*)**

**Against Blue Origin and Does 1 to 100, Inclusive**

107. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

108. At all times herein mentioned, FEHA, Government Code section 12940, *et seq.*, was in full force and effect and was binding on defendants. This statute requires defendants to refrain from retaliating against any employee making complaints or opposing discrimination, harassment, or retaliation, or otherwise engaging in activity protected by the FEHA, including for seeking to exercise rights guaranteed under FEHA and/or assisting and/or participating in an investigation, opposing defendants' failure to provide rights, including rights to complain and to assist in a lawsuit, and/or the right to be free of retaliation, in violation of Government Code section 12940(h).

///

109. Plaintiff's seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including the right to be free of discrimination, harassment / a hostile work environment, and/or retaliation, in violation of Government Code section 12940(h), were substantial motivating reasons in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, and/or to take other adverse employment actions against plaintiff.

110. As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

111. As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

112. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

113. Defendants' retaliation was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

## SEVENTH CAUSE OF ACTION

**Failure to Prevent Discrimination, Harassment, and/or Retaliation**

**(Violation of Government Code § 12900, *et seq.*)**

**Against Blue Origin and Does 1 to 100, Inclusive**

114. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

///

115. At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

116. During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in plaintiff being treated less favorably because of his having engaged in protected activity.

117. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiffs have sustained and continue to sustain substantial losses of earnings and other employment benefits.

118. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

119. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

120. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

## EIGHTH CAUSE OF ACTION

**Breach of Express Oral Contract Not to Terminate**

**Employment Without Good Cause**

**(*Marvin v. Marvin* (1976) 18 Cal.3d 660)**

**Against Blue Origin and Does 1 to 100, Inclusive**

121. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

///

122. Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause. Plaintiff and defendants, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of him under the agreement by performing his job in an exemplary manner.

123. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the express oral contract they had with him.

124. As a proximate result of defendants' willful breach of the express oral contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

**NINTH CAUSE OF ACTION**

**Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause**

**(*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622)**

**Against Blue Origin and Does 1 to 100, Inclusive**

125. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

126. On the basis of oral assurances of continued employment given to plaintiff by defendants' supervisors, the length of plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and defendants shared the actual understanding that plaintiff's employment could and would be terminated only for cause. This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

127. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with him.

128. As a proximate result of defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

**TENTH CAUSE OF ACTION**

**Negligent Hiring, Supervision, and Retention**

**(*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038)**

**Against Blue Origin and Does 1 to 100, Inclusive**

129. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

130. Defendants owed a duty of care to plaintiff to appoint, hire, retain, and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct. Defendants owed a duty of care to plaintiff not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities. Defendants owed a duty of care to plaintiff to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating against plaintiff.

131. Defendants breached these duties. As a result, defendants caused damages to plaintiff. As a proximate result of defendants' negligent hiring, retention, and supervision of their managers and employees, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof.

///

///

///

///

///

///

///

## ELEVENTH CAUSE OF ACTION

**Wrongful Termination of Employment in Violation of Public Policy**

**(*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167)**

**Against Blue Origin and Does 1 to 100, Inclusive**

132. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

133. Defendants terminated plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, plaintiff's employment was terminated in part because of his protected status (*i.e.,* protected activity). These actions were in violation of, but not limited to, the FEHA, the California Constitution, Government Code section 12900, *et seq.*, and the California Labor Code (*see* 232.5, 1102.5, 6310, and 6311).

134. As a proximate result of defendants' wrongful termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

135. As a result of defendants' wrongful termination of his employment, plaintiff has suffered general and special damages in sums according to proof.

136. Defendants' wrongful termination of plaintiff's employment was done intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages.

137. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq.,* plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

///

///

///

///

**TWELFTH CAUSE OF ACTION**

**Intentional Infliction of Emotional Distress**

**(*Hughes v. Pair* (2009) 46 Cal.4th 1035)**

**Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive**

138. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

139. Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted extreme and outrageous misconduct and caused plaintiff severe emotional distress. Defendants were aware that treating plaintiff in the manner alleged above, including depriving plaintiff of his livelihood, would devastate plaintiff and cause him extreme hardship.

140. As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

141. As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

142. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

///

///

///

///

///

///

# PRAYER

WHEREFORE, plaintiff, Craig Stoker, prays for judgment against defendants as follows:

1. For general and special damages according to proof;
2. For exemplary damages, according to proof;
3. For pre-judgment and post-judgment interest on all damages awarded;
4. For reasonable attorneys' fees;
5. For costs of suit incurred;
6. For declaratory relief:
7. For such other and further relief as the Court may deem just and proper;

ADDITIONALLY, plaintiff, Craig Stoker, demands trial of this matter by jury. The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated: November 27, 2023

SHEGERIAN & ASSOCIATES, INC.

By: ______________________

William Reed, Esq.

Attorneys for Plaintiff,
CRAIG STOKER

# EXHIBIT E

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Saturday, January 6, 2024 6:26 AM
**To:** Gonzalez, Emilio; Spinner, Arielle; William Reed
**Cc:** Rund, David
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Thank you, Emilio.

Let's do Tuesday at 4:30 p.m. I will circulate a call in shortly.

We disagree that the sexual harassment claim is "baseless," and Defendants' "threats" made pursuant to CCP 128.7 are not well taken. As you are probably well aware, CCP 128.7 merely requires a pleading's claims be warranted by existing law or a non-frivolous argument for the modification of law and that its factual contentions have evidentiary support, or will after a reasonable opportunity for further investigation. Here, plaintiffs claim neatly fits both elements.

Additionally, plaintiff's burden for proving a non-frivolous (or non-"baseless") claim is a low bar: "[Plaintiff] must make a sufficient evidentiary showing to demonstrate that he made a reasonable inquiry into the facts and entertained a good faith belief in the merits of the claim. [Plaintiff] need not amass even enough evidence to create a triable issue of fact as would be required if [Defendant] had brought a motion for summary judgment, or allege a valid cause of action, as required to overcome a demurrer." (*Kumar v. Ramsey (*2021) 71 Cal.App.5th 1110, 1126.)

On the other hand, the moving party's burden for prevailing on a 128.7 motion is steep. Section "128.7 should be utilized only in 'the rare and exceptional case where the action is <u>clearly frivolous</u>, legally unreasonable or without legal foundation, or brought for an improper purpose.' [Citation]." (*Kumar, supra,* 71 Cal.App.5th at 1121, underlining added.) "Because our adversary system requires that attorneys and litigants be provided substantial breathing room to develop and assert factual and legal arguments, sanctions should not be routinely or easily awarded <u>even for a claim that is arguably frivolous</u>." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 448, underlining added.)

Furthermore, even if the Court did find a claim to be frivolous, which we are not convinced it will, Courts are persuaded to use their discretion to not award 128.7 sanctions. "Procedure section 128.7 sanctions should be 'made with restraint' [citation] <u>and are not mandatory even if a claim is frivolous</u>." (*Peake* at 448.)

Should defendant file this motion, plaintiff will in turn seek sanctions for having to respond to such a motion made without substantial justification.

Best,

Justin Shegerian

Justin Shegerian
Shegerian & Associates

11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Friday, January 5, 2024 2:59 PM
**To:** Justin Shegerian <jshegerian@shegerianlaw.com>; Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Justin and Will,

On Tuesday, I am available from 12PM – 1PM and after 4PM. On Wednesday I am available from 8 -9:30AM and after 4PM. Thursday I am available from 11-1.
Please let us know if any of these dates and times work for you.
As noted in our prior correspondence, the sexual harassment claim is baseless and, if asserted in a complaint, may be a violation of CCP 128.7. We can discuss this further during our call.
We can also discuss the remainder of your email.
Thank you.

**Emilio Gonzalez**
**Partner,** Davis Wright Tremaine LLP

**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Friday, January 5, 2024 2:42 PM
**To:** Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Hi Arielle and Emilio,

We were out of office earlier this week but are available to speak this upcoming Tuesday 1/9 between 1pm and 4pm if that suits you both.

1) As of now, Plaintiff will not be filing an amended complaint.

2) Plaintiff's bases that the purported arbitration agreement is unenforceable remain the same as previously discussed:

i) The Ending Forced Arbitration Act exempts Plaintiff's ***entire case*** from forced arbitration due to his sexual harassment claims. The statute reads: "*Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting* ***a sexual harassment dispute or sexual assault dispute****, or the named*

*representative of a class or in a collective action alleging such conduct,* ***no predispute arbitration agreement*** *or predispute joint-action waiver* ***shall be valid or enforceable*** ***with respect to a case*** *which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.*" Numerous jurisdictions have applied this plain text reading to the statute. Additionally, *Yost v Everyrealm* is unconvincing, where the New York appellate court applied the NYCHRL to instances of "generalized hostility" that Yost faced. Here, the sexual harassment was not generalized, and instead particularized to Plaintiff.

ii) Moreover, the purported contract is unconscionable with both high procedural and substantive unconscionability. This is supported by the purported agreement being a contract of adhesion with surprise and oppression, its lacking mutuality, venue and jurisdictional issues, and the improper waiver of PAGA claims, among other faults.

3) Demurrer related to Plaintiff's (i) breach of contract, (ii) negligent hiring, supervision & retention, and (iii) IIED are premature, and the complaint will not be amended to remove these claims. Having said that, we are happy to discuss these issues when we speak next. I will point out, however, that several of the positions in your email do not appear to be demmurable on the face of the complaint, ignore that the causes of action are supported by facts stated above, and have survived previous demurrers as pleaded.

Last, will Blue Origin be accepting service for Kevin Lundy?

Thank you.

Justin Shegerian

Justin Shegerian
Shegerian & Associates
11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Spinner, Arielle <ArielleSpinner@dwt.com>
**Sent:** Tuesday, January 2, 2024 8:15 PM
**To:** William Reed <wreed@shegerianlaw.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Will and Justin,

We hope you had a nice holiday season. We would like to schedule our next call for this Thursday at 2:00 p.m.; please let us know if that time works well for you. During this call, we would like to discuss: (1) If Plaintiff will be filing an amended complaint; (2) Plaintiff's bases for asserting that Blue Origin's arbitration agreement with Plaintiff is unenforceable; and (3) Blue Origin's bases for asserting that Plaintiff's claims for breach of contract; negligent hiring, supervision, and retention; and IIED are ripe for demurrer. With respect to (3), please see below. If you could please send us (2) prior to our next call to ensure that our discussion will be productive, we would greatly appreciate it.

**Breach of Contract Claims (Breach of Express Oral Contract Not to Terminate Employment Without Good Cause; and Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause)**

- All breach of contract claims are comprised of at least the following elements: **(1) Plaintiff and Blue Origin entered into a contract**; (2) Plaintiff did substantially all of the significant things that the contract required him to do, and was excused from doing anything he did not do; **(3) All conditions required by the contract for Blue Origin's performance occurred, and any conditions that did not occur were waived or excused**; **(4) Blue Origin failed to do something that the contract required it to do, or did something that the contract prohibited it from doing**; (5) Plaintiff was harmed; and **(6) Blue Origin's breach of contract was a substantial factor in causing Plaintiff's harm**. The Complaint lacks sufficient facts as to the bolded elements.
- Plaintiff cannot factually allege that such an oral contract existed. Plaintiff has a copy of his written employment agreement, which expressly states in Section 5.1 that his employment is at-will: "I acknowledge that I am an employee-at-will, meaning that either I or the Company may terminate my employment relationship at any time for any reason, with or without advance notice, and with or without cause." Moreover, Section 7.4 states that the terms of Plaintiff's employment "may be amended only by a writing signed by me and an authorized representative of the Company." Plaintiff's Complaint does not allege that an authorized representative of Blue Origin signed and agreed in writing that Plaintiff's employment was no longer at-will, and that he could only be terminated for good cause. Instead, in Paragraph 122 of the Complaint, Plaintiff merely alleges: "Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause." This conclusory statement does not include any factual allegations. For example, <u>who</u> on behalf of Blue Origin entered into such an agreement, and <u>with whom</u>? When was this agreement made? What were the terms of this agreement? There are simply insufficient facts to show that an oral contract ever existed, or that even if it did, that it could ever have been binding on Blue Origin.
- Nowhere in the Complaint does Plaintiff even address Element 3.
- Given that there are insufficient facts to show that a binding oral contract ever existed, Plaintiff has also failed to sufficiently allege that Blue Origin's conduct violated any such contract, or was a substantial factor in causing Plaintiff's purported harm.
- For numerous reasons, including those listed above, Plaintiff's breach of contract claims are ripe for demurrer.

**Negligent Hiring, Supervision, and Retention**

- To sufficiently assert a claim for negligent hiring, supervision, and retention, Plaintiff must allege that: (1) Blue Origin hired Plaintiff; (2) A specific employee of Blue Origin was or became unfit or incompetent to perform the work for which they were hired; (3) Blue Origin knew or should have known that this employee was or became unfit or incompetent, and that this unfitness or incompetence created a particular risk to others; (4) This employee's unfitness or incompetence harmed Plaintiff; and (5) Blue Origin's negligence in hiring, supervising, or retaining this specific employee was a substantial factor in causing Plaintiff's harm.
- In Paragraphs 130-31 of the Complaint, Plaintiff includes general, conclusory legalese about the duty of care owed by an employer to an employee. Plaintiff then broadly alleges: "Defendants breached these duties. As a result, defendants caused damages to plaintiff. As a proximate result of defendants' negligent hiring, retention, and supervision of their managers and employees, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof." These allegations are completely devoid of facts. Plaintiff's Complaint discusses many Blue Origin employees. Exactly which Blue Origin employee was or became unfit or incompetent to perform the work for which they were hired?
- Moreover, to the extent that Plaintiff bases this claim on alleged gender harassment or discrimination, this derivative claim must also fail for all the same reasons any gender-based claims fail, as previously explained by Defendant.

**Intentional Infliction of Emotional Distress**

- To sufficiently assert a claim for IIED, Plaintiff must allege that: (1) Blue Origin's conduct was outrageous; (2) Blue Origin intended to cause Plaintiff emotional distress, or acted with reckless disregard of the probability that

Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred; (3) Plaintiff suffered severe emotional distress; and (4) Blue Origin's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

- In Paragraphs 139-42 of the Complaint, Plaintiff again includes general, conclusory legalese. There are no factual allegations to substantiate that Blue Origin's alleged conduct rises to the level of being "outrageous" or with "reckless disregard." Similarly, there are no factual allegations to substantiate that Plaintiff suffered severe emotional distress.
- Moreover, to the extent that Plaintiff bases this claim on alleged gender harassment or discrimination, this derivative claim must also fail for all the same reasons any gender-based claims fail, as previously explained by Defendant.

Thanks,
Arielle

**Arielle Spinner** She/Her/Hers
Davis Wright Tremaine LLP

**P** 213.633.6879 **C** 213.219.3269 **E** ariellespinner@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Thursday, December 21, 2023 10:30 AM
**To:** William Reed <wreed@shegerianlaw.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Will and Justin,
Thank you for your time. Per our call:

1. We have agreed to a 15 day extension for defendants to file a responsive pleading
2. We have agreed to preserve the stay on discovery per our prior agreement
3. Your team will consider whether you will amend the complaint
4. Should you decide to not amend, it is our intention to file a motion to compel arbitration and to defer the demurrer. You are inclined to agree with this approach, provided that you get additional pages to oppose the motion should you need it, in which case we would get an equal number of pages for the reply.
5. We will provide you with additional points as to other causes of action that we believe are deficiently pled
6. You will provide us with your basis for asserting that the arbitration provision in Mr. Stoker's complaint is unenforceable

Let's pick a date next week to re-visit the points above.
Thank you and happy holidays.

**Emilio Gonzalez**
**Partner,** Davis Wright Tremaine LLP

**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

**From:** William Reed <wreed@shegerianlaw.com>
**Sent:** Thursday, December 14, 2023 9:25 AM
**To:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

Hi Emilio,

As to the agreement re the stay, I would phrase it a bit differently – I believe our agreement was to keep the status quo as to the number of days out from service of the complaint until we speak next. But I think we're both saying the same thing.

As to the clarification – we would stipulate that Defendants' actions related to the demurrer (whether they relate to the sexual harassment claim or not) as you describe below would not constitute waiver of the arbitration agreement as to those other claims.

Regards,

Will

William Reed | Shareholder
Shegerian & Associates
145 S Spring Street, Suite 400 | Los Angeles, CA 90012
Office: (310) 860-0770 | Facsimile: (310) 860-0771
wreed@shegerianlaw.com | shegerianlaw.com
Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Wednesday, December 13, 2023 3:52 PM
**To:** William Reed <wreed@shegerianlaw.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Subject:** RE: Stoker v Blue Origin LLC

Will,
This will memorialize our agreement to stay discovery and preserve defendants' priority until we discuss the issues raised today, which should be next Thursday (Dec 21).

As a point of clarification while we consider your proposal: if we agree to file the demurrer first, as you propose, we would demurrer to several causes of action, not just the sexual harassment claim. Will you stipulate that by filing the demurrer first (including as to other claims) plaintiffs will not claim or argue that the request to dismiss the other claims constitutes a waiver of the arbitration agreement as to those or any other claims? Otherwise, I don't see how we could agree to file a demurrer first. Please let us know.

Thank you.

**Emilio Gonzalez**
**Partner,** Davis Wright Tremaine LLP

**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** William Reed <wreed@shegerianlaw.com>
**Sent:** Monday, December 11, 2023 11:54 AM
**To:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Emilio,

Happy holidays. I hope you've been well.

We appreciate your reaching out to discuss how best to proceed efficiently.

How about Wednesday 12/13 at 2:00 p.m.?

Regards,

Will

William Reed | Shareholder
Shegerian & Associates
145 S Spring Street, Suite 400 | Los Angeles, CA 90012
Office: (310) 860-0770 | Facsimile: (310) 860-0771
wreed@shegerianlaw.com | shegerianlaw.com
Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Monday, December 11, 2023 7:42 AM
**To:** Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** Stoker v Blue Origin LLC

Dear counsel,

We represent Blue Origin LLC and are in receipt of the Complaint you filed on behalf of Craig Stoker. Please direct all future communications on this matter to us.

In case you are not already aware, Mr. Stoker's signed employment agreement includes an arbitration agreement (see pages 5-9 of the attached). This agreement mandates arbitration of 11 of the 12 causes of action asserted in Mr. Stoker's Complaint, excluding his claim for gender-based harassment.

We would like to discuss with you how to best proceed. We propose that the parties agree to arbitrate all 12 claims. Absent the parties' agreement to arbitrate, we will need to move to compel arbitration and, separately, demur to the gender-based harassment claim. If this becomes necessary, we would like to explore with you a way to stagger or coordinate the process for the sake of efficiency. Please let us know if any of the below days/times work well for you:

- Tuesday, 12/12: 10:30 a.m. – 12:00 p.m.; 2:00 – 4:30 p.m.
- Wednesday, 12/13: 9:00 – 11:00 a.m., 2:00 – 5:00 p.m.

Thank you.

**Emilio Gonzalez**
**Partner |** Davis Wright Tremaine LLP
**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566

**DWT.COM**

# EXHIBIT F

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
BLUE ORIGIN, LLC

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
William Reed, Esq., State Bar No. 261931
WReed@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number: (310) 860 0770
Facsimile Number: (310) 860 0771

Attorneys for Plaintiff
CRAIG STOKER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **23STCV28816**

**JOINT STIPULATION TO EXTEND DEFENDANTS' DEADLINES TO FILE RESPONSIVE PLEADINGS AND FOR EXTRA PAGES ON OPPOSITION AND REPLY BRIEFS AS TO BLUE ORIGIN'S MOTION TO COMPEL ARBITRATION**

Assigned to the Hon. Stephanie M. Bowick
Dept.: 19

Action Filed: November 27, 2023



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

This Joint Stipulation is entered into by and between plaintiff Craig Stoker ("Plaintiff") and defendant Blue Origin, LLC ( "Blue Origin") (collectively referred to as the "Parties"), by and through their undersigned counsel of record, with reference to the following facts:

WHEREAS, Plaintiff filed a Complaint for Damages in the above-captioned action, *Craig Stoker v. Blue Origin LLC and Kevin Lundy,* Los Angeles Superior Court Case No. 23STCV28816 ("Complaint"), on November 27, 2023.

WHEREAS, on January 17, 2024, counsel for Blue Origin accepted service on behalf of Defendant Kevin Lunde (sued erroneously as "Kevin Lundy") of a Notice of Acknowledgement and Receipt ("NAR") of Plaintiff's Complaint.

WHEREAS, Blue Origin's deadline to respond to the Complaint was January 18, 2024, but on January 17, 2024, Blue Origin's counsel filed a declaration pursuant to California Code of Civil Procedure Section 430.41(a)(2), which extended Blue Origin's response deadline to February 20, 2024.

WHEREAS, Blue Origin intends to file a Motion to Compel Arbitration, requesting that this Court compel Plaintiff's first, second, third, fourth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth causes of action against both Defendants to arbitration and stay all claims in this case pending the completion of arbitration.

WHEREAS, Plaintiff intends to oppose the Motion to Compel Arbitration.

WHEREAS, Plaintiff anticipates the need for up to eight extra pages beyond the applicable page limit for an Opposition to a Motion to Compel Arbitration. The Parties agree that Blue Origin may have the same number of extra pages for its Reply.

WHEREAS, Blue Origin intends to file a Demurrer as to Plaintiff's sexual / gender harassment claim, either concurrently with its Motion to Compel Arbitration or, if the Court denies the Motion to Compel Arbitration, along with some of the surviving claims.

WHEREAS, pursuant to California Code of Civil Procedure §§ 1281.2, 1281.4, and 1281.7, if this Court denies the Motion to Compel Arbitration, Defendants have 15 days to respond to Plaintiff's Complaint.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

WHEREAS, to maximize judicial economy and to limit both Parties' fees and costs related to motion practice prior to the disposition of Blue Origin's Motion to Compel Arbitration, the Parties agree to stay Defendants' deadlines to file responsive pleadings pending this Court's ruling on the Motion to Compel Arbitration. Accordingly, should this Court's ruling on the Motion to Compel Arbitration permit any of Plaintiff's claims to proceed in civil court, Defendants' deadlines to file responsive pleadings, including but not limited to Demurrers, will be 15 days after this Court's ruling on the Motion to Compel Arbitration. The Parties agree that this Stipulation does not limit Defendants' ability to file Demurrers concurrently with Blue Origin's Motion to Compel Arbitration.

WHEREAS, the Parties agree that neither this Stipulation, nor the rights actions afforded thereby, shall be construed as a waiver of any party's arguments regarding enforceability of the Arbitration Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED that:

1) Defendants' deadlines to file responsive pleadings as to the claims permitted by this Court to proceed in civil court following its ruling on Blue Origin's Motion to Compel Arbitration, including the sexual / gender harassment claim, are tolled until 15 days after this Court's ruling on the Motion to Compel Arbitration.
2) Plaintiff and Blue Origin may use up to eight extra pages beyond the applicable page limits for their Opposition and Reply briefs, respectively.
3) Neither this Stipulation, nor the rights actions afforded by the Stipulation above, shall be construed as a waiver of any party's arguments regarding enforceability of the Arbitration Agreement.

///

///

///



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DATED: January 17, 2024

SHEGERIAN & ASSOCIATES
CARNEY R. SHEGERIAN
ANTHONY NGUYEN
WILLIAM REED

By:______________________________
William Reed

Attorneys for Plaintiff
CRAIG STOKER

DATED: January 17, 2024

DAVIS WRIGHT TREMAINE LLP
EMILIO G. GONZALEZ
ARIELLE J. SPINNER

By:______________________________
Emilio G. Gonzalez

Attorneys for Defendant
BLUE ORIGIN, LLC



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

PROOF OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On January 18, 2024, I served the foregoing document(s) described as: **JOINT STIPULATION TO EXTEND DEFENDANTS' DEADLINES TO FILE RESPONSIVE PLEADINGS AND FOR EXTRA PAGES ON OPPOSITION AND REPLY BRIEFS AS TO BLUE ORIGIN'S MOTION TO COMPEL ARBITRATION** by forwarding a portable document file to the electronic mail address(es) below:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>Shegerian & Associates, Inc.<br>11520 San Vicente Blvd.<br>Los Angeles, CA 90049<br><br>*Attorneys for Plaintiff CRAIG STOKER* | Tel: 310-860-0770<br>Fax: 310-860-0771<br>Email:<br>WReed@shegerianlaw.com<br>JShegerian@shegerianlaw.com<br>calendarclerk@shegerianlaw.com |

**(FROM ELECTRONIC MAIL ADDRESS vanessapalma@dwt.com)** at Suite 2400, 865 South Figueroa Street, Los Angeles, California.

Executed on January 18, 2024, at Los Angeles, California.

☒ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☐ Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

| | |
|---|---|
| Vanessa Palma | [signature] |
| Print Name | Signature |

PROOF OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On February 20, 2024, I served the foregoing document(s) described as: **DECLARATION OF EMILIO G. GONZALEZ IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** by forwarding a portable document file to the electronic mail address(es) below:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>Shegerian & Associates, Inc.<br>11520 San Vicente Blvd.<br>Los Angeles, CA 90049<br><br>*Attorneys for Plaintiff CRAIG STOKER* | Tel: 310-860-0770<br>Fax: 310-860-0771<br>Email:<br>WReed@shegerianlaw.com<br>JShegerian@shegerianlaw.com<br>calendarclerk@shegerianlaw.com |

**(FROM ELECTRONIC MAIL ADDRESS vanessapalma@dwt.com)** at Suite 2400, 865 South Figueroa Street, Los Angeles, California.

Executed on February 20, 2024, at Los Angeles, California.

☒ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☐ Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

| | |
|---|---|
| Vanessa Palma | [signature] |
| Print Name | Signature |



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1(b)(9)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
BLUE ORIGIN LLC

**Electronically FILED by Superior Court of California, County of Los Angeles 2/20/2024 2:12 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Tang, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **23STCV28816**

**DECLARATION OF JULIE GRANT IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Assigned to the Hon. Stephanie M. Bowick
Dept.: 19

Hearing Date: July 30, 2024
Hearing Time: 8:30 a.m.
**RES ID: 119166584644**

Action Filed: November 27, 2023

**DECLARATION OF JULIE GRANT**

I, Julie Grant, declare and state as follows:

1. I have been employed by Defendant Blue Origin, LLC ("Blue Origin") as a Senior Human Resource Business Partner since February 2022. I am based in Kent, Washington. I am over the age of eighteen, and, if called upon as a witness, could and would competently testify to each of the facts set forth herein.

2. In my capacity as a Senior Human Resources Partner, I have access to, and have reviewed, various business and personnel records maintained by and on behalf of Blue Origin in the ordinary course of business, including Plaintiff Craig Stoker's ("Plaintiff") personnel file and other Human Resources records.

3. Plaintiff's personnel file indicates that he was hired by Blue Origin in August 2020 to work as the Senior Director of Program Management in Kent, Washington. Blue Origin's Human Resources records also indicate that while Plaintiff lived in Southern California at the time, Blue Origin informed Plaintiff at his time of hire that he was expected to work in Kent, Washington, once COVID-19 restrictions lifted and employees returned to in-person work.

4. Plaintiff's personnel file includes the resume that he submitted to Blue Origin, a true and correct copy of which is attached hereto as Exhibit A. This resume indicates that Plaintiff is a trained engineer, and has a Master's Degree in Business Administration and more than 30 years of management experience.

5. Plaintiff's personnel file also includes the Employment Agreement he signed at his time of hire, a true and correct copy of which is attached hereto as Exhibit B. Plaintiff's Employment Agreement, which he signed on August 17, 2020, includes a four-page Arbitration Agreement. The Arbitration Agreement was executed by both Plaintiff and an authorized representative of Blue Origin.

6. During his employment at Blue Origin, Plaintiff worked in the Engines Department, to which I was and am assigned to provide Human Resources support. Beginning in March 2022, I communicated with Plaintiff regarding ways in which he could support and strengthen the team of engineers he managed. On numerous occasions, Plaintiff complained to



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

me about various work-related matters. None of Plaintiff's complaints included gender-related allegations. Plaintiff never told me that he believed he was being subjected to different or unfair treatment because of his gender.

7. On or about October 7, 2022, my colleague, Linda Cova, and I met with Plaintiff to advise that his employment at Blue Origin was ending for business reasons. During this meeting, Plaintiff expressed his frustration and disagreement with this decision, but did not raise any gender-related complaints. Plaintiff did not state that he believed he was being terminated due to his gender.

8. Blue Origin's Human Resources Department has no record of Plaintiff submitting any complaints of gender harassment to Human Resources prior to his termination.

9. Attached as Exhibit C is a true and correct copy of a letter I received from Plaintiff's attorney, dated October 28, 2022. The letter references complaints made by Plaintiff and does not reference any complaint or report of sexual harassment.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on January, 30, 2024 at Kent, WA.

DocuSigned by:
Julie Grant
587DB6EE8438416...

Julie Grant



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT A



# CRAIG STOKER

23308 BERDON STREET • WOODLAND HILLS, CA 91367
PHONE (301) 401-8257
E-MAIL CRAIG.S.STOKER@GMAIL.COM

## SUMMARY OF QUALIFICATIONS

Over 30 years of proven leadership experience in execution and strategic planning with comprehensive knowledge of management, organizational development, and team building. Thorough knowledge of all aspects of project management, developing operating plans, performance metrics, engineering, construction, manufacturing, commissioning, certification, operations, resource loading, data analysis, government regulations, and delivering improvement initiatives. Expertise in systems engineering, mission assurance, and productivity improvement. Demonstrated ability to manage difficult and complex projects, developing and executing multiple programs through various phases of Design, Development, Build, and Operations. Led, planned and executed the development and certification of the RS-68 rocket engine, the 1st commercially developed U.S. rocket engine certified to fly on the Delta IV rocket. Driver of cost effective solutions based on requirements and needs – utilizing an overall system thinking approach. Motivated by challenge with a proven ability to cultivate an environment that inspires and motivates by creating a vision and path to success. Proven success in establishing relationships with key decision makers, customers, and supplier partners. In-depth experience in rocket propulsion, nuclear and engineering, procurement, construction and commissioning (EPCC) industries working with NASA, DOD, DOE and commercial customers. Demonstrated leadership capability in achieving right the first time quality, 100% mission success, 100% on time delivery of production assets, 100% award fee, product development, and new business capture. Skilled in win-win contract negotiation with customers and suppliers. Core strengths include:

- P&L Management & Strategic Business Planning
- Execution of Certified Quality Programs
- Project Life Cycle Management
- Budgeting & Pricing Strategies
- Market Opportunity Identification & Positioning
- Multi-Site Operations
- Strategic Alliances & Partnerships
- International Sourcing & Supply Chain Mgmt
- Customer and Supplier Relationships
- Product Development, Certification and Operation

## PROFESSIONAL EXPERIENCE

**BECHTEL CORPORATION** **2011 - Present**

**Project Manager, Mobile Launcher 2, Kennedy Space Center, FL** 7/19 – Present

Responsible for overall contract performance, delivery, scope, and timely and accurate execution of the design, fabrication, construction, and commissioning for NASA's Mobile Launcher 2 (ML2) project. Lead a multi-disciplined matrix management staff of more than 300 persons including 8 direct and 5 indirect reporting managers. Authorized to make execution decisions for the ML2 project to successfully perform the design, fabrication, construction, integration, test, and verification of the ML2 requirements. Led the execution of trade studies to optimize the ML2 design and provided the best balanced solution that meets the project technical, cost, and schedule objectives while establishing a mission-focused culture, with an environment of safety and quality. Completed concept development on plan and initiated detailed design and planning for construction, integration, test and verification, and turnover of ML2 to NASA. Provide project management for all technical, integration, and business management functions to plan, implement, track, report, and deliver on the ML2 requirements contained.

**Corporate Manager of Quality and Six Sigma, Reston VA** 4/16 – 7/19

Responsible for strategic direction and corporate policies and procedures for Quality and Six Sigma for the Bechtel Corporation. Responsible for leadership of Bechtel's Quality and Six Sigma quality management systems and implementing programs and initiatives to support right the first time performance across Bechtel including

People Based Quality (PBQ), Closed Loop Corrective Action (CLCA), Lesson Learned (LL) and Continuous Improvement. Responsible for integration of all Quality and Six Sigma related activities across the GBUs. Responsible for transforming Bechtel's quality program to a data centric electronically integrated system.

**Manager of Quality and Six Sigma, Bechtel Infrastructure, Reston VA** 6/18 – 07/19
Management of the Quality and Six Sigma function for Bechtel Infrastructure including policies, procedures, staffing and management of the Quality and Six Sigma work force. Support the successful quality execution, compliance and continuous improvement on Infrastructure projects worldwide. Responsible for leadership of Infrastructure Quality and Six Sigma programs. In this role, tasked with integrating the quality management systems across all Sectors and Regions and implementing programs and initiatives to support right the first-time performance on projects. Programs and initiatives include PBQ, CLCA, Risk Informed Project Reviews and Assessments, Lesson Learned, and Continuous Improvement. Responsible for Infrastructure Quality program including maintaining ISO certifications. Responsible for integration of all Quality related activities across the GBU. Responsible for providing functional staffing including assuring skills and expertise and developing talent.

**Manager, Quality & Six Sigma, Bechtel Nuclear, Security & Environmental Inc., Reston VA** 1/15 – 6/18

Led Bechtel Nuclear, Security & Environmental Inc's (NS&E's) Quality and Six Sigma programs. Integrated Bechtel's Nuclear Power and government services quality management systems and implementing programs and initiatives including PBQ, CLCA, Risk-Informed Project Reviews, supplier performance improvement, and Six Sigma. Responsible for NS&E's Quality Assurance program including maintaining ASME and ISO certifications. Responsible for integration of all Quality-related activities across GBU. Responsible for providing functional staffing, including ensuring skills and expertise and developing talent.

**Manager of Quality and Six Sigma Bechtel Power Corporation, Frederick, MD** 12/11 – 12/14

Responsible for leadership of the Quality and Six Sigma function for Bechtel Power Corporation (BPC). In this role, tasked with defining and implementing a new quality engagement model for the GBU to better influence technical performance across the project lifecycle. Responsible for BPC's Quality Assurance program including maintaining BPC's ASME and ISO certifications. Responsible for integration of all Quality related activities across BPC. Responsible for deployment, training and execution of BPC's Six Sigma program. Responsible for BPC's Corrective Action Program. Responsible for functional management and developing talent.

**PRATT & WHITNEY ROCKETDYNE (PWR), Canoga Park, CA** **1987 - 2011**

**Manager, PWR Enterprise Productivity and Efficiency** 05/11 – 12/11
Developed and led integrated cost-reduction strategies and efficiency improvement initiatives for existing and future products, processes, and facilities. Collaborated with program and functional teams to create an integrated strategic plan to reduce the cost of PWR products and services. Responsible for standard work to capture reductions. Lead execution of improvement initiatives, identify and manage implementation and operational readiness risks, drive lean value stream thinking and probabilistic delivery projections.

**Manager, PWR Enterprise Supplier Development** 10/10 – 05/11
Executed the PWR enterprise-wide vision to build the industry's highest-performing, best-value supplier network. Established PWR Supplier Development Charter, Strategy, and Plan for enhancing PWR's approach to supplier engagement with emphasis on synergistic partnerships that provide best-in-class performance. Addressed PWR supplier management and supply chain systemic risks and issues.

**RS-68 Program Manager** 05/06 – 10/10
Managed the RS-68 engine programs with full P&L responsibility for all program operations. Led a multidisciplinary matrix management staff of more than 200 persons including 6 direct and 12 indirect reporting managers. Responsible for design, development, production, and flight for multiple RS-68 programs across eight sites. Directed all operations for this business with sales of more than $150M annually. Formulated, planned, and implemented growth strategies. Achievements include 100% mission success; captured, designed, and certified an upgraded RS-68A engine; obtained multiple 100% award fee scores; expanded RS-68 Business Base and captured new contracts valued at more than $700M.

**MMRTG Deputy Program Manager** 05/05 – 5/06

Established and managed integrated scheduling and technical integration of Hamilton Sundstrand and Teledyne Energy Systems Inc (TESI) for the Multi-Mission Radioisotope Thermal-electric Generator (MMRTG) program. On site management of TESI in Baltimore, Maryland. Led program risk management and budget and technical change control management.

**Expendable Propulsion Program Production Hardware Director** 05/04 – 05/05

Directed the planning, procurement, and fabrication of the RS-27 and RS-68 engine hardware with 100% on-time delivery and achieved more than 10% under-budget performance.

**Expendable Propulsion Program (EPP) Engine Systems Director** 12/01 – 05/04

Successfully directed, planned, and executed the first flight of the RS-68 engine. Led the EPP Mission Assurance program, achieving 100% mission success. Supervised the transition of the RS-68 from development into production and the successful restructuring and integration of the RS-27, RS-56, and RS-68 engineering teams.

**RS-68 Development and Certification Director** 10/96 - 12/01

Led, planned and executed the development and certification of the RS-68. The RS-68 is the first liquid propulsion system in the world to be developed from the ground up, based on Cost as the Independent Variable. Instituted innovative processes and approaches to accelerate engine certification and achieved a 2 times reduction in development and certification cycle time with a 3 times reduction in the number of engine tests required to certify the engine while achieving increased payload-to-orbit of 2% over plan.

**Early Positions Include: X-33 Development and Controls Manager** (07/95 – 10/96), **Project Engineer, Advanced Programs** (07/94 – 07/95), **Project Engineer, SSME Program** (04/87 – 07/94) and **GENERAL DYNAMICS, ELECTRONICS DIVISION, San Diego, CA** (1983 – 1987)

## EDUCATION

| | | |
|---|---|---|
| **Masters of Business Administration** | Pepperdine University | 1987-1989 |
| **Bachelor of Science, Mechanical Engineering** | San Diego State University | 1981-1986 |

## AWARDS

Recognized throughout career for leadership skills and ability to accomplish objectives including NASA Silver Snoopy Award (1989); PWR Presidents Award (1995); RNASA Award for Development of the RS-68 Rocket Engine (2006); Bechtel Six Sigma Excellence Award (2017); Bechtel Diversity and Inclusion Champion of Change Award (2018).

## REFERENCES

References and information available upon request

# EXHIBIT B

BLUE ORIGIN

**EMPLOYEE AGREEMENT**

| | |
|---|---|
| **My Name:** | Craig Stoker |
| **My Planned Date of Initial Employment:** | 10/19/2020 |
| **My Planned Location of Initial Employment:** | **Kent, Washington** |

As a condition of my employment and/or continued employment with Blue Origin, LLC (the **"Company"**), and in consideration of the mutual promises set forth below, the sufficiency of which consideration I hereby acknowledge, I therefore agree as follows:

**Section 1. DEFINITIONS**

The following terms are used in this Employee Agreement ("Agreement") with the following specified meanings:

**1.1** "**Proprietary Information.**" Proprietary Information means any information related to the business or other affairs of the Company or its affiliates that is not generally available to the public, and that is or has been received or otherwise becomes known to me in connection with my employment. Without limiting the generality of the foregoing, I understand that Proprietary Information includes any Company proprietary information, technical data, trade secrets or know-how, including without limitation Inventions and Works (whether created by me or others), research, products, product plans, customers, customer lists, software, developments, processes, formulas, designs, drawings, engineering, services, pricing, finances, business and marketing plans, legal affairs, suppliers, current or potential customers and clients, prospects, contracts or assets of the Company, or improvements or new versions thereof. Proprietary Information also includes any information that has been made available to the Company by its customers, clients, suppliers or other third parties and which the Company is obligated to keep confidential. I further understand that Proprietary Information does not include any of the foregoing items that have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof. I further understand that this provision does not prohibit me from discussing the terms and conditions of my employment.

**1.2** "**Inventions and Works.**" Inventions and Works means any composition, work of authorship, computer program, product, device, technique, know-how, algorithm, method, process, improvement, discovery or invention, whether or not patentable or copyrightable and whether or not reduced to practice, that is (a) within the scope of the Company's business or research, or results from (directly or indirectly) or is suggested by any work performed by me for the Company, and (b) created, conceived, reduced to practice, developed, discovered, invented or made by me during the Term, whether solely or jointly with others, and whether or not while engaged in performing work for the Company.

**1.3** "**Materials.**" Materials means any product, prototype, hardware, document, record, notes, report, analysis, proposal, list, correspondence, specification, sketch, picture, drawing, model, schematic, blueprint, design, writing, data, software, or other tangible item that in whole or in part contains, embodies or manifests (whether in printed, handwritten, digital, analog, or other form) any Proprietary Information or any Inventions and Works.

**1.4 "Prior Inventions."** Prior Invention means any invention, original work of authorship, development, improvement or trade secret that (a) was made by me prior to the Term, (b) belongs to me or in which I have an interest, and (c) relates to the Company's current or proposed business, products or research and development.

**1.5 "Proprietary Rights."** Proprietary Rights means any patent, copyright, mask work, trade secret, trademark, trade name, service mark or other protected intellectual property right, in each case whether registered or unregistered and including all applications (or rights to apply) for and be granted, renewals or extensions of, and rights to claim priority from, such rights and all similar or equivalent rights or forms of protection which subsist or will subsist now or in the future in any part of the world, in any Proprietary Information, Inventions and Works, and/or Materials.

**1.6 "Term."** Term means the period from the beginning of my employment with the Company, whether on a full-time or part-time basis, through the last day of such employment.

**Section 2. PROPRIETARY INFORMATION**

**2.1 Use Restrictions.** I acknowledge that during the Term, the Company will provide me access to its Proprietary Information, trade secrets, and goodwill. Except as required for performance of my work for the Company or as authorized in writing by the Company, I will hold in the strictest confidence all Proprietary Information, Inventions and Works, and Materials, and I will not at any time during the Term or thereafter (a) use, disclose, publish or distribute any Proprietary Information, Inventions and Works, and/or Materials to any person or entity, or (b) remove any Materials from the Company's premises. I will hold all Materials in trust for the Company, and I will deliver them to the Company upon request and in any event at the end of the Term pursuant to Section 4.8.

**2.2 Former Employer Information.** I agree that I will not, during my employment with the Company, improperly use or disclose to the Company any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

**2.3 No Interference.** Notwithstanding any other provision of this Agreement, I acknowledge that (i) I may disclose Proprietary Information when required to do so by a court or any governmental agency or body with jurisdiction to order me to divulge, disclose or make accessible such information, and (ii) nothing in this Agreement is intended to interfere with my ability to (A) file a claim or charge with a governmental agency or entity; (B) participate in an investigation, hearing, or proceeding conducted by a governmental agency, entity or court; or (C) engage in activities protected by law. I also acknowledge that, in accordance with the Defend Trade Secrets Act of 2016, I will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (i) is made (A) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (B) solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding.

**Section 3. INVENTIONS AND WORKS**

**3.1 Assignment.** I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby irrevocably assign and transfer to the Company all right, title and interest in and to any and all Inventions and Works which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the Term, except as provided in section 3.2 below.

Further, I hereby waive any moral rights that I may have in or to any Inventions and Works (and any Proprietary Rights therein). I will take such action (including, but not limited to, the preparation and execution of documents or the giving of testimony) as may be requested by the Company to evidence, transfer, vest or confirm the Company's right, title and interest in the Proprietary Information, Inventions and Works, and Materials (and all Proprietary Rights therein), and the license rights described in Sections 3.1 above and 3.3 below. I will not contest the validity of any Proprietary Rights purported to be held by the Company.

**3.2 Exception to Assignment. NOTICE:** This satisfies the written notice and other requirements of Washington law under RCW 49.44.140, to the extent applicable. Notwithstanding any other provision of this Agreement to the contrary, this Agreement does not obligate me to assign or offer to assign to the Company any intellectual property that (i) I develop entirely on my own time; and (ii) I develop without using Company equipment, supplies, facilities or trade secret information; and (iii) does not result from any work performed by me for the Company; and (iv) does not relate at the time of conception or reduction to practice directly to the Company's business, or to its actual or demonstrably anticipated research or development. Any such intellectual property will be owned entirely by me, even if developed by me during the Term. I will advise the Company promptly in writing of any intellectual property that I believe meets the criteria for exclusion set forth herein.

**3.3 Prior Inventions.** Notwithstanding the notice in Section 3.2 above, if during the Term I use any Prior Invention with or incorporate any Prior Invention in any Proprietary Information, Inventions and Works, and/or Materials, I hereby irrevocably grant to the Company (to the fullest extent of my rights in and to the same) a fully paid-up, perpetual, royalty-free, irrevocable worldwide and universe-wide right and license to sublicense, disclose, copy, distribute, sell, make, have made, make derivative works of, use and otherwise exploit any trade secrets, copyrights, patents or other intellectual property rights to the Prior Inventions in connection with such Proprietary Information, Inventions and Works, and/or Materials.

**3.4 Maintenance of Records.** I agree to keep and maintain adequate and current written records of all Inventions and Works made by me (solely or jointly with others) during the Term. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

**3.5 Ownership.** As between the Company and me, the Company is and will be the sole owner of all Proprietary Information, Inventions and Works, and Materials (and all Proprietary Rights therein). To the extent eligible for such treatment, all Inventions and Works will constitute "works made for hire" under applicable copyright laws.

**3.6 Company Authority.** I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure and enforce the Company's Proprietary Rights in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto and the execution of all applications, specifications, oaths, assignments and other instruments that the Company deems necessary in order to apply for and obtain such rights and in order to assign and convey to the Company and its successors, assigns, and nominees the sole and exclusive right, title, and interest therein. I further agree that my obligation to execute or cause to be executed any such instrument or papers continues after the Term. If the Company is unable for any other reason to secure my assistance in perfecting the rights transferred, then I hereby

irrevocably appoint the Company and its authorized agents as my agent and attorney in fact, to transfer, vest or confirm the Company's rights and to execute, file and pursue any application for any United States or foreign patents or other intellectual property registrations covering Inventions and Works assigned to the Company above and to do all other lawful acts to further the prosecution and issuance of letters patent or other intellectual property registrations with the same legal force as if done by me. The designation and appointment of the Company and its duly authorized agents as my agent and attorney in fact will be deemed to be coupled with an interest and therefore irrevocable.

**Section 4. NO CONFLICTING OBLIGATIONS**

**4.1 Acknowledgement.** I understand that the nature of my position gives me access to and knowledge of Proprietary Information and places me in a position of trust and confidence with the Company. I understand and acknowledge that the services I provide to the Company are unique, special or extraordinary. I also acknowledge that I will obtain knowledge and skills relevant to the Company's industry, methods of doing business and marketing strategies by virtue of my employment or continued employment. I also further understand and acknowledge that the Company's ability to reserve these for the exclusive knowledge and use of the Company is of great competitive importance and commercial value to the Company, and that improper use or disclosure by me is likely to result in unfair or unlawful competitive activity. Thus, the restrictive covenants are reasonably necessary to protect the legitimate business interest of the Company.

**4.2 Solicitation of Employees.** During the Term and for one (1) year thereafter, I will not, without the prior written consent of the Company, either directly or indirectly (through any person or entity or otherwise) solicit, induce, recruit or encourage, or attempt to solicit, induce, recruit, or encourage, any of the Company's current employees or consultants to terminate or reduce their employment or relationship with the Company, either for my own benefit or for the benefit of any other person or entity.

**4.3 No Solicitation of Customers and No Interference.** During the Term and for one (1) year thereafter, I will not (except on behalf of the Company) solicit, call upon, divert or take away, or attempt to solicit, call upon, divert or take away, any current customers or clients of the Company with whom I became acquainted as a result of my employment with the Company. The restrictions in this Section only apply if the nature of the customer relationship sought by me is substantially similar to the business relationship targeted, solicited or accepted by the Company. Further, during the Term and for one (1) year thereafter, I will not interfere (directly or indirectly) with the Company's existing and prospective contracts and business relationships, including its contracts and business relationships with contractors, customers and prospective customers, vendors and suppliers.

**4.4 Breaches.** My execution, delivery and performance of this Agreement and the performance of my other obligations and duties to the Company will not cause any breach, default or violation of any other employment, confidentiality, consulting or other agreement to which I am a party or by which I may be bound.

**4.5 No Disparagement.** Although I am not prohibited from factually discussing the terms and conditions of my employment, I will not make any false, misleading or disparaging representations or statements with regard to the Company or its products or services, or make any statement that may impair or otherwise adversely affect the goodwill or reputation of the Company. For purposes of this Section 4.5, the term "Company" includes Blue Origin, its parent, subsidiaries, affiliates, successors or assigns, as well as their current and former officers, directors, employees and agents. I understand and confirm that this No Disparagement provision does not prevent me, nor shall it be construed as preventing me, from making truthful statements or testifying truthfully under oath

in any court or legal proceeding or as otherwise required by law or legal process including by subpoena.

**4.6 Disclosure Obligations.** I will promptly disclose to the Company (a) all Proprietary Information, Inventions and Works, and Materials, and (b) all business opportunities that come to my attention during the Term and that either relate to the business of the Company or arise as a result of my employment by the Company. I will not take advantage of or divert any such opportunity for the benefit of myself or anyone else either during or after the Term without the Company's prior written consent.

**4.7 Consent to Notification.** In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new or prospective employer or consulting client about my rights and obligations under this Agreement.

**4.8 Returning Company Documents and Materials.** I agree that, at the time of leaving the Company's employ, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all Materials and any and all devices, records, data, models, notes, reports, analyses, proposals, lists, correspondence, specifications, drawings, schematics, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any of the aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained by me pursuant to Section 3.4. At the time of leaving my employment, I agree to sign and deliver the "Termination Certificate," in the form attached hereto as Exhibit A.

**Section 5. RELATIONSHIP OF THE PARTIES**

**5.1 Employment at Will.** I acknowledge that I am an employee-at-will, meaning that either I or the Company may terminate my employment relationship at any time for any reason, with or without advance notice, and with or without cause.

**5.2 Attention and Effort.** During the term of my employment with the Company, I will devote all of my business time, ability, attention and effort to the Company's business and will skillfully serve its interests. I will not carry on any other professional endeavors or gainful employment without first obtaining the written consent of the Company, which consent shall not be unreasonably withheld, unless such secondary-employment or endeavor is deemed by the Company to be competitive with the Company's business or would pose a potential or actual conflict of interest, or would otherwise have a negative impact on the operations of the Company or the performance of my services.

**Section 6. ARBITRATION AGREEMENT, CLASS ACTION WAIVER AND DISPUTE RESOLUTION**

**6.1 Arbitration Agreement.**

I understand and agree that all claims, disputes, or controversies relating to or arising out of my employment with the Company, except for the Excluded Claims listed below, shall be determined by binding arbitration before a single, neutral arbitrator. For purposes of this Arbitration Agreement under Section 6, the term "Company" includes Blue Origin, its parent, subsidiaries, affiliates, successors or assigns, as well as their current and former officers, directors, employees and agents.

This arbitration agreement applies to any and all claims, disputes, or controversies between the Company and me, including, without limitation, claims arising out of or relating to my employment application and/or hiring process, employment with the Company, and/or any termination of my

employment, claims for breach of this Agreement or otherwise relating to or arising out of this Agreement, tort claims, breach of contract claims, wage and hour claims including without limitation under the Fair Labor Standards Act, the Washington Minimum Wage Act and other Washington wage and hour statutes, and any other federal, state, and local wage and hour statutes, fee claims, claims under federal, state and local anti-discrimination, anti-harassment, and anti-retaliation laws and all other statutes governing the employment relationship, and any other employment-related claims, whistleblower claims, and all claims for violation of any federal, state, or other governmental law, statute, regulations, or ordinance (collectively "Covered Claims"), except for the following Excluded Claims:

(i) claims for unemployment benefits;
(ii) claims for workers' compensation benefits;
(iii) claims for sexual harassment or sexual assault, except if I choose voluntarily to arbitrate them under this Agreement;
(iv) claims that governing federal law, or a benefits-plan policy, prohibits from being arbitrated;
(v) claims for equitable relief alleging trade secret violations, trademark infringement, breach of fiduciary duty, breach of proprietary information or confidentiality obligations, and breach of non-solicitation agreements for which either party may seek equitable relief such as a temporary restraining order or preliminary injunction from a court of competent jurisdiction, prior to arbitrating the claim(s); and
(vi) actions to confirm, vacate, modify, or correct and arbitrator's award.

Claims under Section 6.1(i) through (vi) are collectively the "Excluded Claims." Covered Claims and Excluded Claims are collectively the "Claims."

Furthermore, I understand that the arbitration provisions of this Section 6, including but not limited to the Confidentiality provision under Section 6.5, do not affect my ability to exercise my rights under the National Labor Relations Act, or to report possible violations of federal law or regulation to any governmental agency or entity, including but not limited to the National Labor Relations Board, the Department of Justice, Equal Employment Opportunity Commission, the Congress, and any agency Inspector General ("Government Agencies"), or making other disclosures that are protected under the whistleblower provisions of federal or state law or regulation. I understand that I do not need the prior authorization of the Company to make any such reports or disclosures, and I am not required to notify the Company that I have made such reports or disclosures, nor does this statement limit my right to receive an award for information provided to any Government Agencies. If I have a Covered Claim that is not resolved by a Governmental Agency, I will arbitrate it under this Agreement unless it is an Excluded Claim.

**6.2 <u>Arbitration Procedure</u>.**

Except as otherwise stated in this arbitration provision, section 6, I agree that the arbitration of Covered Claims shall be conducted in accordance with the JAMS Employment Arbitration Rules and Procedures, except if this Agreement conflicts with the JAMS rules, this Agreement shall govern. A copy of the JAMS procedures is currently available at www.jamsadr.com/rules-employment-arbitration. The arbitration shall be conducted by one neutral arbitrator either mutually agreed upon by the Company and me or chosen in accordance with the JAMS rules, and shall take place in the county in which I work or worked for the Company, unless a different location is agreed to by the parties or, if the parties cannot agree, as decided by the arbitrator. The

arbitrator will make a ruling in a signed writing, including findings of fact and law, within thirty days of the arbitration proceeding. The arbitrator will be permitted to award only those remedies in law or equity that are requested by the parties and allowed by local, state and/or federal substantive law applicable to the Claims.

If I file a claim in arbitration, I understand that I will be responsible for the initial filing fees associated with any arbitration that I initiate, not to exceed the filing fees that I would have paid if I had filed a complaint in a court of law having jurisdiction. To the extent required by law to enforce this Agreement, the Company will pay the balance of the arbitrator's fees and administrative costs related to the arbitration. I understand that the Company and I will otherwise bear our own fees and costs, except the prevailing party shall be entitled to costs, expenses and reasonable attorneys' fees unless otherwise prohibited by law. Judgment upon the award rendered by the arbitrator will be binding and may be entered in any court having jurisdiction thereof.

I and the Company will have the right to conduct discovery in accordance with the Federal Rules of Civil Procedure, and the arbitrator shall have the power to decide any discovery disputes between the parties. I and the Company may call witnesses, cross-examine the other party's witnesses, and present evidence during the arbitration proceeding in accordance with the Federal Rules of Civil Procedure, as applied by the arbitrator. I understand and agree that the arbitrator's ruling will be final and binding on both me and the Company and any other party in the arbitration proceeding, and cannot be reviewed for error of law or legal reasoning of any kind. I understand that I can recover in arbitration on an individual basis the remedies that I could recover in court, including fees and costs to the extent allowed by law.

The statute of limitations applicable to the commencement of a lawsuit will apply to the commencement of an arbitration under this provision. If either I or the Company fail to make a written request for arbitration within the statute of limitations period applicable to a Claim under applicable law, or otherwise fail to comply with the administrative prerequisites to filing certain types of claims, I and/or the Company will have waived the right to raise that Claim in any forum, including arbitration. In the event that I or the Company file an action in court in violation of this Arbitration Agreement, that court shall require the parties to arbitrate all Claims.

The arbitrator's decisions and awards shall have no preclusive effect as to issues or claims in any other arbitration or court proceeding, unless all of the parties in the other proceeding were also a party in the arbitration in which the award or decision was issued. The Company and I will have the right to file a motion to dismiss, discovery motions, and/or a motion for summary judgment, which the arbitrator shall decide under the Federal Rules of Civil Procedure.

**6.3 Waiver of Class, Collective, Consolidated or Representative Claims ("Class Action Waiver").**

The Company and I will resolve Claims only on an individual basis. This means that no Claims, including arbitration of Covered Claims or cause of action in court for Excluded Claims, will be initiated or maintained as a class action, collective action, consolidated action, representative action, or multi-party actions (together "Collective Actions"). The Company and I waive the right to participate in, or receive money or other relief from, a Collective Action. Neither the Company nor I may bring a Claim on behalf of others. No arbitrator or judge may combine more than one individual's Claim(s) into a single arbitration or court proceeding without all parties' written consent. Under the terms of this Agreement, no arbitrator or judge may: (i) order or permit any arbitration-

related notice or information to be sent to any class, collective, representative or consolidated group; or (ii) require a party to produce any contact information for any class, collective, representative, or consolidated group.

FURTHER, TO THE EXTENT THAT ANY CLAIM IS EXCLUDED FROM ARBITRATION UNDER THIS SECTION 6 AND/OR IS DETERMINED NOT TO BE SUBJECT TO ARBITRATION, THE COMPANY AND I EXPRESSLY AGREE THAT ANY SUCH CLAIMS SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS ONLY, AND THE COMPANY AND I WAIVE OUR RIGHTS TO ASSERT CLAIMS ON CLASS, COLLECTIVE, OTHER REPRESENTATIVE, OR MULTI-PARTY ACTIONS.

**6.4 Jury Trial Waiver.**

I understand and agree that this binding arbitration procedure shall supplant and replace claims brought in state or federal court (except as specified in this Section), and that the Company and I expressly waive the right to a civil court action before a jury.

FURTHER, TO THE EXTENT THAT ANY CLAIM IS EXCLUDED FROM ARBITRATION UNDER THIS SECTION 6 AND/OR IS DETERMINED NOT TO BE SUBJECT TO ARBITRATION, THE COMPANY AND I EXPRESSLY AGREE THAT THE CLAIM SHALL BE TRIED TO THE COURT AND THAT ANY RIGHT TO JURY TRIAL IS WAIVED.

**6.5 Confidentiality.**

The arbitration shall be confidential and closed to the public unless otherwise required by law. However, this confidentiality provision does not apply to claims of sexual harassment, sexual assault, or other Excluded Claims under Section 6.1 above. Further, as provided by Washington state law, this confidentiality provision will not apply to claims arising under the Washington Law Against Discrimination, RCW 49.60, federal antidiscrimination laws, or state or local antidiscrimination laws. Arbitration of those claims will not be confidential and will be open to the public.

**6.6 Disputes about this Arbitration Agreement.**

An arbitrator shall resolve under this Agreement all disputes regarding the Agreement's and/or Section 6's scope, validity, applicability, enforceability, or breach and regarding the arbitrability of any claim. The only exception to this requirement is that a court shall resolve any dispute regarding the scope, validity, applicability, enforceability, or breach of the Class Action Waiver, including whether this arbitration clause allows class, collective, multi-party, or other representative arbitration (which it does not).

**6.7 Enforcement of the Arbitration Agreement and Waivers.**

This Arbitration Agreement and Section 6 is the entire agreement of the parties relating to the resolution of Claims, including Covered Claims and Excluded Claims. If any part of this Section 6 is found to be unenforceable, the severability clause in Section 7.2 below shall apply. Under no circumstances will a Claim be allowed to proceed in arbitration or court as a Collective Action.

**6.8 Governing Law.**

The Company's business, my employment, and this Agreement affect interstate commerce. This Arbitration Agreement, Class Action Waiver, and Dispute Resolution procedures, set forth in Section 6, are subject to and governed exclusively by the Federal Arbitration Act, 9 U.S.C. ch. 1, and federal arbitration law under the Federal Arbitration Act. To the extent that law does not apply or does not preempt state laws, Section 6 shall be subject to and governed by applicable Washington state law, without regard to its choice of law principles.

**Section 7. GENERAL PROVISIONS**

**7.1 Survival.** The provisions of this Agreement shall survive the expiration of the Term except for provisions that expressly apply only during the Term.

**7.2 Severability.** This Agreement will be enforced to the fullest extent permitted by applicable law. If for any reason any provision of this Agreement is held to be invalid or unenforceable to any extent under applicable law by a court of competent jurisdiction or in any arbitration proceeding, then (a) such provision will be interpreted, construed, modified, amended or reformed by the court or arbitrator to the minimum extent required to render the same valid, enforceable and consistent with the original intent underlying such provision, and (b) such invalidity or unenforceability will not affect any other provision of this Agreement or any other agreement between the Company and me. If a court or arbitrator declines to modify, amend, or reform any such provision as provided for in this paragraph, such invalidity or unenforceability shall attach only to such provision or portion thereof, and shall not in any way affect or render invalid or unenforceable any other provision of this Agreement or portion thereof, and this Agreement shall be enforceable in full force and affect as if such invalid or unenforceable provision or portion thereof had not been included in this Agreement.

**7.3 No Waiver.** The failure of the Company to insist upon or enforce strict performance of any provision of, or to exercise any of its rights or remedies under this Agreement (or under any similar agreement with any other employee) will not be construed as a waiver or a relinquishment of the Company's rights to assert or rely on any such provision, right or remedy in that or any other instance.

**7.4 Entire Agreement.** This Agreement (a) sets forth the entire agreement and, effective as of the date signed by me, supersedes any and all prior agreements between me and the Company with respect to the subject matter hereof, (b) is independent of any other written agreements between me and the Company regarding other aspects of my employment or any other prior or existing relationship with the Company including, but not limited to, any prior nondisclosure, confidentiality or visitors agreement between me and the Company, which prior agreement shall remain in full force and effect with respect to actions prior to the date of my employment with the Company, and (c) may be amended only by a writing signed by me and an authorized representative of the Company. I agree that I am not entering into this Agreement in reliance on any promises or statements not expressly included in this Agreement.

**7.5 Successors and Assigns.** This Agreement will be binding upon my heirs, executors, assigns, administrators and other legal representatives and will be for the benefit of the Company, its successors and its assigns. I understand that the Company may freely assign this Agreement from time to time to any parent, subsidiary or affiliate of the Company without notice to or consent

by me, but that I may not assign this Agreement, in whole or in part, without the Company's prior written consent.

**7.6 Governing Law and Venue; Consent to Personal Jurisdiction.**

Except for the Arbitration Agreement, Class Action Waiver, and Dispute Resolution procedures set forth in Section 6 above, this Agreement will be governed by the laws of the State of Washington, without regard to its choice of law principles to the contrary. The Arbitration Agreement, Class Action Waiver, and Dispute Resolution procedures, set forth in Section 6 above, are subject to and governed exclusively by the Federal Arbitration Act, 9 U.S.C. ch. 1. Except as to Excluded Claims, I irrevocably consent to the arbitration as set forth in Section 6 above, in connection with any action relating to this Agreement. As to claims that are excluded from arbitration under Section 6, I irrevocably consent to the jurisdiction in the federal and state courts in the State of Washington.

**7.7 Personally Identifiable Information.** The Company will from time to time make information, including my Personally Identifiable Information (PII), available to third parties such as vendors associated with our human resources management systems and other applicable vendor software systems (e.g. personnel file management, timekeeping, travel management, and so forth). Provision of PII to such third parties will have appropriate arrangements in place to address confidentiality and other provisions, consistent with the Company's applicable personnel data privacy policies and procedures.

**7.8 Acknowledgement.** I have carefully read all of the provisions of this Agreement and agree that (a) the same are necessary for the reasonable and proper protection of the Company's business and the Company's Proprietary Information and goodwill provided to me during the Term, (b) the Company has been induced to enter into and continue its relationship with me in reliance upon my compliance with the provisions of this Agreement, (c) every provision of this Agreement is reasonable with respect to its scope, duration and geography or other reference to location, and (d) I have carefully read this Agreement, understand its terms, and have entered into this Agreement voluntarily.

The Company, by offering this Agreement to me, and I, by signing below, agree to all of the terms set forth in this Agreement.

*[Signatures on Following Page]*

To show my agreement, I have signed below:

**EMPLOYEE**

I agree with the terms of this Employee Agreement.

Employee Signature: DocuSigned by: Craig Stoker D2C0DD5B0D02407...

Please Print Name: Craig Stoker

Date Signed: 8/17/2020 | 4:16 PDT

**BLUE ORIGIN, LLC**

By: DocuSigned by: Mary Plunkett 7B0AB762B2B4425...

Name: Mary Plunkett

Title: Sr Vice President - HR

Date Signed: 8/17/2020 | 4:16 PDT

## EXHIBIT A

*(To be completed immediately upon leaving employment; not at commencement of employment)*

**TERMINATION CERTIFICATE**

**Section 1. DEFINITIONS**

**1.1 Company**. The Blue Origin affiliate by whom I was most recently employed, and its parent, subsidiaries, affiliates, predecessors, successors or assigns.

**1.2 Proprietary Information.** Proprietary Information means any information related to the business or other affairs of the Company or its affiliates that is not generally available to the public, and that was received or otherwise became known to me in connection with my employment. Without limiting the generality of the foregoing, this includes any Company proprietary information, technical data, trade secrets or know-how, including without limitation Inventions and Works (whether created by me or others), research, products, product plans, customers, customer lists, software, developments, processes, formulas, designs, drawings, engineering, services, pricing, finances, business and marketing plans, legal affairs, suppliers, current or potential customers and clients, prospects, contracts or assets of the Company, or improvements or new versions thereof. Proprietary Information also includes any information that has been made available to the Company by its customers, clients, suppliers or other third parties and which the Company is obligated to keep confidential. I further understand that Proprietary Information does not include any of the foregoing items that have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof. I further understand that this provision does not prohibit me from discussing the terms and conditions of my employment.

**1.3 Inventions and Works.** Inventions and Works means any composition, work of authorship, computer program, product, device, technique, know-how, algorithm, method, process, improvement, discovery or invention, whether patentable or copyrightable and whether reduced to practice, that was (a) within the scope of the Company's business or research, or resulted from (directly or indirectly) or was suggested by any work performed by me for the Company, and (b) was created, conceived, reduced to practice, developed, discovered, invented or made by me, whether solely or jointly with others, and whether or not while engaged in performing work for the Company.

**1.4 Materials.** Materials means any product, prototype, hardware, document, record, notes, report, analysis, proposal, list, correspondence, specification, sketch, picture, drawing, model, schematic, blueprint, design, writing, data, software, or other tangible item that in whole or in part contains, embodies or manifests (whether in printed, handwritten, coded, digital, analog, or other form) any Proprietary Information or any Inventions and Works.

**Section 2. CERTIFICATION**

This is to confirm that I do not have in my possession, nor have I failed to return, any Materials, devices, property, or reproductions of any aforementioned items belonging to the Company.

I further certify that I have complied with all the terms of the Employee Agreement signed by me, including the reporting of any Inventions and Works, conceived, developed, reduced to practice or made by me (solely or jointly with others) covered by that agreement.

I further agree that in compliance with the Employee Agreement, I will preserve as confidential all Proprietary Information.

I further agree that I will review Sections 4.1 through 4.8 of the Employee Agreement I made with the Company and that I will comply with the terms of those Sections and all other Sections that survive termination of employment.

[Exhibit for purposes of Illustration;
Not for Signature at Start of Employment]

Date: ______________________

# EXHIBIT C

akerman

Erica V. Mason

Akerman LLP
999 Peachtree Street NE
Suite 1700
Atlanta, GA 30309

T: 404 733 9800
F: 404 733 9898
DirF: 404 733 9908

October 28, 2022

VIA EMAIL: jgrant@blueorigin.com

Julie Grant
Sr. HR Business Partner
Blue Origin

**Re: Craig Stoker Severance Agreement**

Dear Ms. Grant:

This firm represents Craig Stoker in the above-referenced matter. Please direct all future communications regarding Mr. Stoker's employment to my attention erica.mason@akerman.com copying anita.coleman@akerman.com.

As you are aware, Blue Origin terminated Mr. Stoker on October 7, 2022, and presented him with a Separation and Release Agreement that he was tasked with reviewing and returning by October 28, 2022. This letter serves as our written rejection and counter-offer to same.

Currently, the Company's Severance and Release Agreement offers Mr. Stoker an amount equivalent to one month's salary in exchange for his Release of all claims against the Company. Based on the facts summarized below, Mr. Stoker rejects that offer, but will agree to sign this Agreement for an amount equivalent to three year's salary, benefits, bonus payments, and the second year of his equity grant (which would have vested two weeks after his termination date).

Mr. Stoker is 61 years old and has over 30 years of experience in Program Management. On or about October 19, 2020, Blue Origin hired Mr. Stoker to work at the Company's Kent, Washington location as Program Manager on the BE4 Block 1 Engine. Mr. Stoker, whom the Company recruited away from his Program Manager position at Bechtel in Cape Canaveral, Florida, uprooted his family and moved across the country to accept his position with Blue Origin. Mr. Stoker relocated from Florida to Washington State, and he was later assigned to the Company's Woodland Hills, CA location in January 2022.

Notably, Mr. Stoker was a long-term employee in good standing at Bechtel. He would still be employed at Bechtel in Florida if Blue Origin had not hired him away and relocated him across the country two years ago. He is now left without a job, and, to the extent Mr. Stoker's Washington State employment agreement is enforceable with respect to his California employment, Mr. Stoker

---

is limited in his employment options based on the restrictive covenants contained within his Blue Origin Employment Agreement.

During his Blue Origin employment, Mr. Stoker received satisfactory reviews and six-figure bonuses based on his performance. He was well-regarded by his peers and supervisors alike. Mr. Stoker was also never counseled for performance deficiencies during the course of his employment at Blue Origin.

By contrast, during the last six months of his employment, Mr. Stoker raised a number of concerns about Blue Origin's work and safety environments. Specifically, on May 23, 2022, Mr. Stoker complained to his direct supervisor and Blue Origin's HR Department regarding the perceived hostile work environment and targeting of employees at the hands of the Company's CEO, as well as concerns regarding safety mission assurance.

On October 7, 2022, less than five months after this complaint, and less than two months after the Company concluded its hostile work environment investigation, the Company abruptly terminated Mr. Stoker "not for cause" in retaliation for raising concerns about the work environment and safety. At the time Blue Origin terminated Mr. Stoker, he was only three years away from retirement.

The abrupt timing of Mr. Stoker's termination is concerning given that he had recently raised concerns regarding the CEO's behavior and what Mr. Stoker believed to be a hostile work environment and systemic targeting of employees, as well as safety issues. The Company concluded its investigation into Mr. Stoker's hostile work environment/employee targeting complaint on or about August 22, 2022. While the Company claimed that it found Mr. Stoker's concerns to be "unsubstantiated," Human Resources stated in investigation closure correspondence that it had identified a number of steps that it was undertaking to combat the issues Mr. Stoker had identified in his complaint. Moreover, upon information and belief, the Company's Safety and Mission Assurance Department is still investigating Mr. Stoker's safety concerns. Mr. Stoker was interviewed as a part of that investigation, but was never notified of that investigation's findings or that it had been closed.

The *prima facie* elements of a retaliation claim are that: (1) the employee engaged in a "protected activity;" (2) the employee was subject to an "adverse employment action;" and (3) there is a causal connection between the protected activity and the adverse employment action. The third element, causal connection, is most often demonstrated by the temporal proximity between the protective activity—in this case, Mr. Stoker's complaint—and the adverse employment action-- Mr. Stoker's termination.

The reason Blue Origin provided Mr. Stoker for its termination decision is that it was merely "seeking to make changes in management." No performance deficiencies or "for cause" events were identified. In fact, Mr. Stoker had just received his mid-year performance evaluation which stated that he was "on track" in his position at the Company, the same mid-year evaluation rating he received the year prior. Therefore, there is evidence that the Company's explanation for its

termination decision was merely pretext for retaliation based on Mr. Stoker's complaints. Retaliatory discharge based on the type of complaints raised by Mr. Stoker violates a number of California state and federal employment and whistleblower laws.

Mr. Stoker sincerely wishes to place this chapter behind him and move on from his employment at Blue Origin. However, given the difficulty that Mr. Stoker believes he will have finding comparable employment at 61 years of age (and 3000 miles away from where he had spent the last 10 years building his network), and the fact that he was fired for standing up for himself and other employees at Blue Origin and trying to create a healthier and safer work environment, Mr. Stoker cannot, in good conscience, sign the Separation and Release Agreement presented by the Company in exchange for one month's severance. Instead, he seeks severance in an amount that will compensate him for the lost benefits, salary, and bonuses, as well as the emotional turmoil that this entire ordeal has caused him, and he has authorized us to agree to execute the Company's Separation and Release Agreement in exchange for an amount equivalent to three year's benefits, salary, and bonuses, plus the 2nd year of equity that he would have vested had the Company waited just two more weeks to terminate him.

We look forward to your response and to resolving this matter in an amicable and expeditious fashion. I can be reached at erica.mason@akerman.com or on my cell phone (901)484-2882. Please also copy my LAA, anita.coleman@akerman.com on any written correspondence.

Sincerely,

Erica V. Mason

Erica Mason
Partner

PROOF OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On February 20, 2024, I served the foregoing document(s) described as: **DECLARATION OF JULIE GRANT IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** by forwarding a portable document file to the electronic mail address(es) below:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>Shegerian & Associates, Inc.<br>11520 San Vicente Blvd.<br>Los Angeles, CA 90049<br><br>*Attorneys for Plaintiff CRAIG STOKER* | Tel: 310-860-0770<br>Fax: 310-860-0771<br>Email:<br>WReed@shegerianlaw.com<br>JShegerian@shegerianlaw.com<br>calendarclerk@shegerianlaw.com |

**(FROM ELECTRONIC MAIL ADDRESS vanessapalma@dwt.com)** at Suite 2400, 865 South Figueroa Street, Los Angeles, California.

Executed on February 20, 2024, at Los Angeles, California.

☒ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☐ Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

| | |
|---|---|
| Vanessa Palma | [signature] |
| Print Name | Signature |



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1(b)(10)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
BLUE ORIGIN LLC AND KEVIN LUNDE (sued erroneously as Kevin Lundy)

**Electronically FILED by Superior Court of California, County of Los Angeles 2/20/2024 2:12 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Tang, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **23STCV28816**

**DECLARATION OF KEVIN LUNDE IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Assigned to the Hon. Stephanie M. Bowick
Dept.: 19

Hearing Date: July 30, 2024
Hearing Time: 8:30 a.m.
**RES ID: 119166584644**

Action Filed: November 27, 2023

**DECLARATION OF KEVIN LUNDE**

I, Kevin Lunde, declare and state as follows:

1. I am personally familiar with the facts set forth herein, am over the age of eighteen, and, if called upon as a witness, could and would competently testify to the facts stated in this Declaration.

2. I have been named as an individual defendant in the above-referenced lawsuit, *Craig Stoker v. Blue Origin LLC*, *et al.*, Los Angeles Superior Court Case No. 23STCV28816.

3. I am represented in this lawsuit by Davis Wright Tremaine LLP, who files this Declaration on my behalf. I hereby join co-Defendant Blue Origin in requesting that Plaintiff Craig Stoker be compelled to arbitrate the claims he agreed to arbitrate.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on January 30, 2024 at Los Angeles, CA.

DocuSigned by:
Kevin Lunde
8A2594580CDF4D2...

Kevin Lunde



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

PROOF OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On February 20, 2024, I served the foregoing document(s) described as: **DECLARATION OF KEVIN LUNDE IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** by forwarding a portable document file to the electronic mail address(es) below:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>Shegerian & Associates, Inc.<br>11520 San Vicente Blvd.<br>Los Angeles, CA 90049<br><br>*Attorneys for Plaintiff CRAIG STOKER* | Tel: 310-860-0770<br>Fax: 310-860-0771<br>Email:<br>WReed@shegerianlaw.com<br>JShegerian@shegerianlaw.com<br>calendarclerk@shegerianlaw.com |

**(FROM ELECTRONIC MAIL ADDRESS vanessapalma@dwt.com)** at Suite 2400, 865 South Figueroa Street, Los Angeles, California.

Executed on February 20, 2024, at Los Angeles, California.

☒ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☐ Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Vanessa Palma
Print Name

[signature]
Signature



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1(b)(11)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
BLUE ORIGIN LLC

**Electronically FILED by Superior Court of California, County of Los Angeles 2/20/2024 2:12 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Tang, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **23STCV28816**

**DECLARATION OF LINDA COVA IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Assigned to the Hon. Stephanie M. Bowick
Dept.: 19

Hearing Date: July 30, 2024
Hearing Time: 8:30 a.m.
**RES ID: 119166584644**

Action Filed: November 27, 2023

**DECLARATION OF LINDA COVA**

I, Linda Cova, declare and state as follows:

1. I have been employed by Defendant Blue Origin, LLC ("Blue Origin") since March 1, 2021. I am based in Kent, Washington. Since September 11, 2022, I have held the title of Senior Vice President, Engines Business Unit. I am over the age of eighteen, and, if called upon as a witness, could and would competently testify to each of the facts set forth herein.

2. I am informed and believe that Plaintiff Craig Stoker ("Plaintiff"), was hired by Blue Origin in August 2020 to work as the Senior Director of Program Management. I worked with Plaintiff from the beginning of my employment with Blue Origin until the end of Plaintiff's employment with Blue Origin. Plaintiff began reporting to me in approximately March 2022.

3. During his employment at Blue Origin, Plaintiff complained to me about various work-related matters, many of which involved personality conflicts between Plaintiff and other employees. None of Plaintiff's complaints included gender-related allegations. Plaintiff never told me that he believed he was being subjected to different or unfair treatment because of his gender.

4. On or about October 7, 2022, my colleague, Julie Grant, and I met with Plaintiff to advise that his employment at Blue Origin was ending for business reasons. During this meeting, Plaintiff expressed his frustration and disagreement with this decision, but did not raise any gender-related complaints. Plaintiff did not state that he believed he was being terminated due to his gender.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on January 25, 2024 at Juneau, Alaska.

DocuSigned by:
Linda Cova
576AA1875A27471...
Linda Cova


DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

PROOF OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On February 20, 2024, I served the foregoing document(s) described as: **DECLARATION OF LINDA COVA IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** by forwarding a portable document file to the electronic mail address(es) below:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>Shegerian & Associates, Inc.<br>11520 San Vicente Blvd.<br>Los Angeles, CA 90049<br><br>*Attorneys for Plaintiff CRAIG STOKER* | Tel: 310-860-0770<br>Fax: 310-860-0771<br>Email:<br>WReed@shegerianlaw.com<br>JShegerian@shegerianlaw.com<br>calendarclerk@shegerianlaw.com |

**(FROM ELECTRONIC MAIL ADDRESS vanessapalma@dwt.com)** at Suite 2400, 865 South Figueroa Street, Los Angeles, California.

Executed on February 20, 2024, at Los Angeles, California.

☒ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☐ Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Vanessa Palma
Print Name

[signature]
Signature



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1(b)(12)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
BLUE ORIGIN, LLC and KEVIN LUNDE
(sued erroneously as KEVIN LUNDY)

**Electronically FILED by Superior Court of California, County of Los Angeles 2/20/2024 1:41 PM David W. Slayton, Executive Officer/Clerk of Court, By K. Hung, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN, LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **23STCV28816**

**DEFENDANTS BLUE ORIGIN, LLC'S AND KEVIN LUNDE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEMURRER TO COMPLAINT**

Assigned to the Hon. Stephanie Bowick
Dept.: 19

Hearing Date: August 12, 2024
Hearing Time: 8:30 a.m.
**RES ID: 638544698940**

Action Filed: November 27, 2023

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to California Evidence Code §§ 452 and 453 and California Rule of Court 3.1306, Defendants Blue Origin, LLC and Kevin Lunde (collectively, "Defendants") respectfully request that this Court take judicial notice of the documents attached as Exhibits 1 and 2 to the concurrently filed Declaration of Emilio G. Gonzalez. Defendants make this request for judicial notice in support of the concurrently filed Notice of Demurrer and Demurrer to Plaintiff Craig Stoker's ("Plaintiff") Complaint for Damages ("Complaint").

Attached to the Declaration of Emilio G. Gonzalez in Support of Defendants' Notice of Demurrer and Demurrer to Plaintiff's Complaint, are true and correct copies of the following documents:

1. **Exhibit 1**: Complaint for Damages filed by Plaintiff Craig Stoker in Los Angeles Superior Court on November 27, 2023 (LASC Case No. 23STCV28816) against Defendants Blue Origin LLC and Kevin Lunde (sued erroneously as Kevin Lundy); and

2. **Exhibit 2**: Employee Agreement between Plaintiff and Defendant Blue Origin, signed by Plaintiff on August 17, 2020 and authenticated in the concurrently-filed Declaration of Julie Grant in Support of Blue Origin's Motion to Compel Arbitration and Stay Proceedings.

## MEMORANDUM OF POINTS AND AUTHORITIES

On demurrer, a Court may consider not only the "contents of the challenged pleading itself, but also such matters as may be properly considered under the doctrine of judicial notice." *See El Rancho Unified School Dist. v. National Education Assn.*, 33 Cal. 3d 946, 950 fn. 6 (1983). California Evidence Code section 452(c) states that judicial notice may be taken of "[o]fficial acts of the legislative, executive, and judicial departments of the United States and of any state of the United States." Section 452(h) states that judicial notice may be taken of "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy." Here, the Court may take judicial notice of the requested documents for several reasons.

*First*, Exhibit 1 is the operative Complaint for Damages in this action, and thus is a court record in the instant action. This Court can take judicial notice of the records in the pending



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

action, or in any other action pending in the same court or any other court of record in the United States. *See* Cal. Evid. Code § 452(d).

*Second*, in the Complaint at Paragraph 11, Plaintiff alleges that he was hired by Blue Origin and began his employment as an Engine Program Director on or around October 19, 2020. The hiring referenced by Plaintiff in the Complaint was pursuant to the Employee Agreement that Plaintiff signed on August 17, 2020, attached hereto as Exhibit 2. The authenticity of the Employee Agreement is not in dispute. When ruling on a demurrer, a court can take judicial notice of a written agreement that is not attached to the plaintiff's complaint. *See* Cal. Evid. Code § 452(h); *RealPro v. Smith Residual Co., LLC*, 203 Cal. App. 4th 1215, 1221 n.2 (2012) (taking judicial notice of document directly relevant to complaint but not attached thereto). *Shapiro v. Wells Fargo Realty Advisors,* 152 Cal.App.3d 467, 473-482 (1984) (court took judicial notice of employer's stock option agreement that expressly stated that plaintiff's employment was at-will, and sustained defendant's demurrer as to all causes of action); *see also Hendy v. Losse*, 54 Cal.3d 723, 740 (1991) (in assessing whether defendant was acting within scope of his employment, court took judicial notice on demurrer of employment contract that was not attached to complaint); *Scott v. JP Morgan Chase Bank, N.A.*, 214 Cal.App.4th 743, 746 (2013) (trial court properly took judicial notice of a written contract outside of the Complaint when sustaining defendant's demurrer); *Ascherman v. General Reinsurance Corp.*, 183 Cal.App.3d 307, 310-311 (1986) (when assessing whether an insurance company was obligated to pay the cost of defending a malpractice court took judicial notice of a release from liability contained in a reinsurance contract). "***The rule is well settled that a complaint otherwise good on its face is nevertheless subject to demurrer when facts judicially noticed render it defective. The theory is that the pleader should not be allowed to bypass a demurrer by suppressing facts which the court will judicially notice.***" *See Marina Tenants Assn. v. Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 130 (1986) (emphasis added, and citing *Legg v. Mutual Benefit Health & Accident Assn.*, 184 Cal. App. 2d 482, 488 (1960)).

For all of the foregoing reasons, the Court should take judicial notice of Exhibits 1 and 2.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DATED: February 20, 2024

DAVIS WRIGHT TREMAINE LLP
EMILIO G. GONZALEZ
ARIELLE J. SPINNER

By: ______________________
Emilio G. Gonzalez

Attorneys for Defendants
BLUE ORIGIN, LLC and KEVIN LUNDE



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

PROOF OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On February 20, 2024, I served the foregoing document(s) described as: **DEFENDANTS BLUE ORIGIN, LLC'S AND KEVIN LUNDE'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEMURRER TO COMPLAINT** by forwarding a portable document file to the electronic mail address(es) below:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>Shegerian & Associates, Inc.<br>11520 San Vicente Blvd.<br>Los Angeles, CA 90049<br><br>*Attorneys for Plaintiff CRAIG STOKER* | Tel: 310-860-0770<br>Fax: 310-860-0771<br>Email:<br>WReed@shegerianlaw.com<br>JShegerian@shegerianlaw.com<br>calendarclerk@shegerianlaw.com |

**(FROM ELECTRONIC MAIL ADDRESS vanessapalma@dwt.com)** at Suite 2400, 865 South Figueroa Street, Los Angeles, California.

Executed on February 20, 2024, at Los Angeles, California.

☒ State I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☐ Federal I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Vanessa Palma
Print Name

[signature]
Signature



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1(b)(13)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
BLUE ORIGIN, LLC and KEVIN LUNDE
(sued erroneously as KEVIN LUNDY)

**Electronically FILED by Superior Court of California, County of Los Angeles 2/20/2024 1:41 PM David W. Slayton, Executive Officer/Clerk of Court, By K. Hung, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| CRAIG STOKER,<br><br>Plaintiff,<br><br>vs.<br><br>BLUE ORIGIN, LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive<br><br>Defendants. | Case No. 23STCV28816<br><br>**DEFENDANTS BLUE ORIGIN, LLC'S AND KEVIN LUNDE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF CRAIG STOKER'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Assigned to the Hon. Stephanie Bowick<br>Dept.: 19<br><br>Hearing Date: August 12, 2024<br>Hearing Time: 8:30 a.m.<br>**RES ID: 638544698940**<br><br>Action Filed: November 27, 2023 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 12, 2024 at 8:30 a.m. or as soon thereafter as the matter may be heard in Department 19 of the above-captioned court, located at 111 North Hill Street, Los Angeles, California 90012, Defendants Blue Origin, LLC and Kevin Lunde (sued erroneously as Kevin Lundy), will and hereby do demur, pursuant to California Code of Civil Procedure §§ 430.10 and 430.40, to the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Twelfth Causes of Action in Plaintiff Craig Stoker's ("Plaintiff") Complaint for Damages ("Complaint"). Plaintiff's Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Twelfth Causes of Action do not state facts sufficient to constitute causes of action; thus, each fails to state a claim upon which relief may be granted.

Prior to filing this Demurrer, the parties sufficiently met and conferred pursuant to California Code of Civil Procedure § 430.41. *See* Declaration of Emilio G. Gonzalez in Support of Defendants' Demurrer, filed concurrently herewith.

The Demurrer is based upon this Notice of Demurrer and Demurrer; the attached Memorandum of Points and Authorities; the concurrently filed Declaration of Emilio G. Gonzalez and Request for Judicial Notice; the records of the Court in this action; all matters of which the Court may take judicial notice; and such further argument as may be presented to the Court at the time of hearing.

DATED: February 20, 2024

DAVIS WRIGHT TREMAINE LLP
EMILIO G. GONZALEZ
ARIELLE J. SPINNER

By: ____________________
Emilio G. Gonzalez

Attorneys for Defendants
BLUE ORIGIN, LLC AND KEVIN LUNDE



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**DEFENDANTS' DEMURRER TO PLAINTIFF'S COMPLAINT**

Pursuant to California Code of Civil Procedure 430.10, Defendants Blue Origin, LLC ("Blue Origin") and Kevin Lunde ("Mr. Lunde") hereby demur to the Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Twelfth Causes of Action as set forth in the Complaint for Damages ("Complaint") filed by Plaintiff Craig Stoker ("Plaintiff") on the following grounds, which are apparent on the face of Plaintiff's Complaint:

**Demurrer to Fourth Cause of Action**

Plaintiff's Fourth Cause of Action for discrimination on the basis of sex and gender in violation of the Fair Employment and Housing Act ("FEHA"), California Government Code § 12900, *et seq*., does not state facts sufficient to constitute a cause of action. *See* Code of Civil Procedure ("CCP") § 430.10(e). In his Complaint, Plaintiff fails to allege any facts supporting that he was subject to disparate treatment in the course of his employment ***because of*** his sex or gender. The sole allegation in support of Plaintiff's gender/sex discrimination claim is that the responses of several female Blue Origin employees to complaints lodged during Plaintiff's employment, were unsatisfactory. *See* Compl. at ¶¶ 15, 17, 23-25, 38, 41, 44-47, 55. This allegation is speculative rather than factual; the Complaint is completely devoid of factual allegations substantiating that Plaintiff was discriminated against ***because of*** his sex or gender. Thus, there are insufficient factual allegations to support a claim for gender/sex discrimination under the FEHA. *See* CCP § 430.10(e).

**Demurrer to Fifth Cause of Action**

Plaintiff's Fifth Cause of Action for hostile work environment harassment on the basis of gender/sex in violation of the FEHA, California Government Code § 12900, *et seq*., does not state facts sufficient to constitute a cause of action. *See* CCP § 430.10(e). In his Complaint, Plaintiff fails to allege any facts supporting that he was subject to severe and pervasive conduct during his employment ***because of*** his sex or gender. The sole allegation in support of Plaintiff's gender/sex harassment claim is that Plaintiff is male and the executives and leaders to whom he complained are female and—on his speculation, devoid of any factual support—that the reason his complaints were ignored is because the female leaders expected him to whine less and "suck it up" because



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

he is a man. *See* Compl. at ¶¶ 15, 17, 23-25, 38, 41, 44-47, 55. There are ***no*** facts alleged that any of Plaintiff's coworkers ever made any derogatory or offensive comments regarding his gender or that Plaintiff was ever subjected to any slurs or sexually explicit images or unwelcomed physical touching by anyone. *Id.* Thus, there are insufficient factual allegations to support a claim for gender/sex harassment under the FEHA against Lunde or Blue Origin. *See* CCP § 430.10(e).

**Demurrer to Sixth Cause of Action**

Plaintiff's Sixth Cause of Action for retaliation in violation of the FEHA, California Government Code § 12900, *et seq*., does not state facts sufficient to constitute a cause of action. *See* CCP § 430.10(e). In his Complaint, Plaintiff fails to allege any facts supporting that he opposed, reported or complained about gender discrimination or harassment prior to the termination of his employment. Thus, there are insufficient factual allegations to support a claim for retaliation under the FEHA. *See id.*

**Demurrer to Seventh Cause of Action**

Plaintiff's Seventh Cause of Action for failure to prevent discrimination, harassment, and/or retaliation in violation of the FEHA, California Government Code § 12900, *et seq.*, does not state facts sufficient to constitute a cause of action. *See* CCP § 430.10(e). In his Complaint, Plaintiff fails allege any facts supporting that he (a) was subject to disparate treatment in the course of his employment ***because of*** his sex or gender; (b) was subject to severe and pervasive conduct during his employment ***because of*** his sex or gender; or (c) opposed, reported, or complained about gender discrimination or harassment prior to the termination of his employment. Thus, there are insufficient factual allegations to support a claim for failure to prevent discrimination, harassment, and/or retaliation under the FEHA. *See id.*

**Demurrer to Eighth Cause of Action**

Plaintiff's Eighth Cause of Action for breach of express oral contract not to terminate employment without good cause, does not state facts sufficient to constitute a cause of action. *See* CCP § 430.10(e). In his Complaint, Plaintiff fails to allege any facts supporting that: (a) Plaintiff and Blue Origin entered into an express oral contract; (b) all conditions required by the purported


DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

oral contract for Blue Origin's performance occurred, and any conditions that did not occur were waived or excused; (c) Blue Origin failed to do something that the purported oral contract required it to do, or did something that the contract prohibited it from doing; and (d) Blue Origin's breach of contract was a substantial factor in causing Plaintiff's alleged harm. *See* Compl. at ¶¶ 121-124. For example, Plaintiff does not make <u>any</u> factual allegations with respect to who within Blue Origin allegedly made representations to Plaintiff that his employment would not be terminated except for good cause, nor why such alleged representations should be considered even though they directly conflict with Plaintiff's written at-will employment agreement with Blue Origin—which expressly bars oral modification of the terms of Plaintiff's employment agreement. Plaintiff only makes conclusory allegations such as that Blue Origin "entered an oral agreement not to terminate [P]laintiff's employment except for good cause," which is insufficient to support a legal cause of action. Thus, there are insufficient factual allegations to support a claim for breach of express oral contract not to terminate employment without good cause. *See* CCP § 430.10(e).

## <u>Demurrer to Ninth Cause of Action</u>

Plaintiff's Ninth Cause of Action for breach of implied-in-fact oral contract not to terminate employment without good cause, does not state facts sufficient to constitute a cause of action. *See* CCP § 430.10(e). In his Complaint, Plaintiff fails to allege any facts supporting that: (a) Plaintiff and Blue Origin entered into an implied-in-fact oral contract; (b) all conditions required by the purported oral contract for Blue Origin's performance occurred, and any conditions that did not occur were waived or excused; (c) Blue Origin failed to do something that the purported oral contract required it to do, or did something that the contract prohibited it from doing; and (d) Blue Origin's breach of contract was a substantial factor in causing Plaintiff's alleged harm. *See* Compl. at ¶¶ 125-128. For example, Plaintiff does not make <u>any</u> factual allegations with respect to who within Blue Origin allegedly made representations to Plaintiff that his employment would not be terminated except for good cause, nor why such alleged representations should be considered even though they directly conflict with Plaintiff's written at-will employment agreement with Blue Origin—which expressly bars oral modification of the



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

terms of Plaintiff's employment agreement. Plaintiff only makes conclusory allegations such as that Blue Origin "entered an oral agreement not to terminate [P]laintiff's employment except for good cause," which is insufficient to support a legal cause of action. Thus, there are insufficient factual allegations to support a claim for breach of implied-in-fact oral contract not to terminate employment without good cause. *See* CCP § 430.10(e).

**Demurrer to Twelfth Cause of Action**

Plaintiff's Twelfth Cause of Action for Intentional Infliction of Emotional Distress ("IIED") does not state facts sufficient to constitute a cause of action. *See* CCP § 430.10(e). Even taking all factual allegations asserted in Plaintiff's Complaint as true, they still do not constitute extreme and outrageous conduct by either of the Defendants with the intention of causing, or reckless disregard of the probability of causing, emotional distress. Moreover, all of the factual allegations in the Complaint are personnel management decisions, and under California law Plaintiff may not recover for IIED on the basis of personnel management decisions, even if they are motivated by retaliation. Thus, there are insufficient factual allegations to support a claim for IIED against Lunde or Blue Origin . *See id.*

DATED: February 20, 2024

DAVIS WRIGHT TREMAINE LLP
EMILIO G. GONZALEZ
ARIELLE J. SPINNER

By: ______________________
Emilio G. Gonzalez

Attorneys for Defendants
BLUE ORIGIN, LLC AND KEVIN LUNDE



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

Page


DEFENDANTS' DEMURRER TO PLAINTIFF'S COMPLAINT .... 2

MEMORANDUM OF POINTS AND AUTHORITIES .... 10

I. INTRODUCTION .... 10

II. RELEVANT FACTS .... 11

A. Plaintiff's At-Will Employment Agreement with Blue Origin .... 11

B. Plaintiff's Alleged Safety Complaints to Both Male and Female Managers at Blue Origin, and Blue Origin's Alleged Responses .... 11

C. Plaintiff's Minimal Interactions with Kevin Lunde .... 13

D. Plaintiff's Termination by Blue Origin .... 13

III. LEGAL ARGUMENT .... 13

A. Plaintiff's Speculation Is Insufficient To Maintain A Discrimination Claim Under The California Fair Employment And Housing Act. .... 13

B. Plaintiff Cannot State a Claim for Hostile Work Environment Harassment Against Defendants. .... 15

C. Plaintiff Does Not Allege That He Opposed or Complained About Gender or Sex Discrimination or Harassment. .... 17

D. Plaintiff Cannot State A Claim For Failure To Prevent Discrimination, Harassment, or Retaliation. .... 18

E. Plaintiff Cannot State Claims for Breach of Express and Implied-in-Fact Oral Contracts. .... 18

F. Plaintiff's Claim for Intentional Infliction of Emotional Distress Is Unsupported by Facts. .... 21

G. Dismissal Here Should Be Without Leave to Amend Because Amendment Would Be Futile. .... 22

H. Defendants Met and Conferred with Plaintiff in Advance of Filing this Demurrer. .... 23

IV. CONCLUSION .... 23




DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ascherman v. Gen. Reinsurance Corp.*, 183 Cal. App. 3d 307 (1986) ........ 19

*Barker v. Fox & Assocs.*, 240 Cal. App. 4th 333 (2015) ........ 21

*Cal. Dental Ass'n v. Cal. Dental Hygienists' Ass'n* , 222 Cal. App. 3d 49 (1990) ........ 22

*Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App. 4th 620 (1995) ........ 20

*Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148 (1987) ........ 22

*Coleman v. Republic Indem. Ins. Co.*, 132 Cal. App. 4th 403 (2005) ........ 21

*Continental Ins. Co. v. Lexington Ins. Co.*, 55 Cal. App. 4th 637 (1997) ........ 22

*Covenant Care, Inc. v. Superior Court*, 32 Cal. 4th 771 (2004) ........ 14, 17

*Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590 (1989) ........ 15

*Foley v. Interactive Data Corp.*, 47 Cal. 3d 654 (1988) ........ 19, 20

*Guz v. Bechtel Nat. Inc*, 24 Cal. 4th 317 (2000) ........ 13

*Hadin v. Mendocino Coast Dist. Hosp.*, No. 17-CV-05554-JST, 2018 WL 2984834 (N.D. Cal. June 14, 2018) ........ 21

*Harris v. City of Santa Monica*, 56 Cal. 4th 203 (2013) ........ 13, 14

*Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993) ........ 14

*Hendy v. Losse*, 54 Cal. 3d 723 (1991) ........ 19



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Hughes v. Pair*,
46 Cal. 4th 1035 (2009) ..... 21

*Husman v. Toyota Motor Credit Corp.*,
12 Cal. App. 5th 1168 (2017) ..... 17

*Janken v. GM Hughes Elecs.*,
46 Cal. App. 4th 55 (1996) ..... 15, 22

*Javor v. Taggart*,
98 Cal. App. 4th 795 (2002) ..... 22

*Kaplan v. Dr. Reddy's Lab'ys, Inc.*,
No. CV 10-00675-R, 2010 WL 3894232 (C.D. Cal. Sept. 30, 2010) ..... 18

*Legg v. Mutual Benefit Health & Accident Ass'n*,
184 Cal. App. 2d 482, 488 (1960) ..... 19

*Lyle v. Warner Bros. Television Prods.*,
38 Cal. 4th 264 (2006) ..... 14

*Marina Tenants Ass'n v. Deauville Marina Dev. Co.*,
181 Cal. App. 3d 122 (1986) ..... 19

*Marvin v. Marvin*,
18 Cal. 3d 660 (1976) ..... 20

*Mintz v. Blue Cross of Cal.*,
172 Cal. App. 4th 1594 (2009) ..... 21

*Morgan v. Norms Rests., LLC*,
No. 23STCV13876, 2023 Cal. Super. LEXIS 97819 (Nov. 9, 2023) ..... 16

*Otworth v. S. Pac. Transp. Co.*,
166 Cal. App. 3d 452 (1985) ..... 21

*Pierce v. Lyman*,
1 Cal. App. 4th 1093 (1991) ..... 22

*Reno v. Baird*,
18 Cal. 4th 640 (1998) ..... 15, 17

*Rojo v. Hunter*,
No. 30-2022-01277582-CU-CR-CJC, 2023 Cal. Super. LEXIS 31778 (May 18, 2023) . 14, 17

*Salazar v. Circle Wood Servs.*,
No. 20STCV24471, 2021 Cal. Super. LEXIS 4325 (Feb. 5, 2021) ..... 14

*Scotch v. Art Inst. of Cal.*,
173 Cal. App. 4th 986 (2009) ..... 18



**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Scott v. JP Morgan Chase Bank, N.A.*,
214 Cal. App. 4th 743 (2013) .......... 19

*Shapiro v. Wells Fargo Realty Advisors*,
152 Cal. App. 3d 467 (1984).......... 19

*Starzynski v. Cap. Pub. Radio, Inc.*,
88 Cal. App. 4th 33 (2001) .......... 20

*Stevenson v. S.F. Hous. Auth.*,
24 Cal. App. 4th 269 (1994) .......... 20

*Suarez v. Bank of Am. Corp.*,
No. 18-cv-01202-MEJ, 2018 WL 2431473 (N.D. Cal. May 30, 2018).......... 13

*Trujillo v. N. Cnty. Transit Dist.*,
63 Cal. App. 4th 280 (1998) .......... 18

*Yanowitz v. L'Oreal USA, Inc.*,
36 Cal. 4th 1028 (2005) .......... 17

*York v. City of Sacramento*,
No. 34-2017-00206890-CU-OE-GDS, 2017 Cal. Super. LEXIS 30392 (Nov. 27, 2017) 14, 17

**STATUTES**

California Code of Civil Procedure
§ 430.10.......... 1, 2
§ 430.10(e) .......... 2, 3, 4, 5
§ 430.40.......... 1
§ 430.41.......... 1

California Government Code
§ 12900.......... 2, 3
§ 12940(h).......... 2, 3, 10, 13, 14, 15, 16, 17, 18



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Craig Stoker's ("Plaintiff") Complaint is rife with speculation and conclusory statements, but ultimately lacking in facts sufficient to support several of his twelve causes of action. At bottom, it appears that the gravamen of Plaintiff's lawsuit is his belief that he was targeted for termination for speaking out against the CEO of Defendant Blue Origin. To this core claim, Plaintiff attempts to hang appendages that are not, and cannot, be supported by facts.

***First***, Plaintiff's four causes of action under California's Fair Employment and Housing Act ("FEHA") are completely devoid of factual support because the Complaint does not allege any facts that Plaintiff was subject to disparate treatment or harassment ***because of*** his sex or gender or that he reported or complained ***about gender discrimination or harassment*** prior to the termination of his employment. Rather, the Complaint describes operational decisions and management mandates ***by his male CEO*** that Plaintiff reported as "hostile." Despite not raising any concerns about "gender" while employed by Blue Origin, Plaintiff now claims "gender" discrimination and harassment based solely on the fact that some of the Blue Origin employees involved in addressing his concerns about the CEO were women and his concerns were not addressed to his satisfaction. These facts are insufficient to support Plaintiff's statutory FEHA claims. Accordingly, Defendants' demurrer to Plaintiffs' Fourth through Seventh Causes of Action for Discrimination on the Basis of Gender in Violation of FEHA, Harassment on the Basis of Gender in Violation of FEHA, Retaliation in Violation of the FEHA, and Failure to Prevent Discrimination, Harassment, and/or Retaliation in Violation of FEHA, should be sustained.

***Second***, Plaintiff's claims for breach of express and implied-in-fact oral contracts (not to terminate Plaintiff's employment except for good cause) both fail because Plaintiff and Blue Origin have an express written contract that exclusively governed Plaintiff's employment, which Plaintiff fails to mention in his Complaint. This employment agreement—submitted concurrently with this Demurrer—clearly states that the employment relationship between the parties was at-will and terminable by either party at any time, with or without cause. Plaintiff's Complaint fails to allege ***any*** facts that would void this employment agreement or that would support the existence



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

of an oral "for cause" contract. Accordingly, Plaintiff's Eighth and Ninth Causes of Action for Breach of Express Oral Contract and Breach of Implied-in-Fact Contract should be sustained.

***Finally***, Plaintiff's claim for intentional infliction of emotional distress ("IIED") fails because, even taking all ***factual*** allegations asserted in Plaintiff's Complaint as true, they still do not constitute extreme and outrageous conduct by either of the Defendants with the intention of causing, or reckless disregard of the probability of causing, emotional distress.

These seven claims against Defendants fall woefully short of pleading any factual basis sufficient to avoid dismissal without leave to amend. For these reasons, and as discussed in further detail below, Defendants' Demurrer to Plaintiff's Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Twelfth Causes of Action in the Complaint should be sustained without leave to amend.

## II. RELEVANT FACTS

### A. Plaintiff's At-Will Employment Agreement with Blue Origin

In his Complaint, Plaintiff alleges that he was hired by Blue Origin and began his employment as an Engine Program Director on or around October 19, 2020. *See* Request for Judicial Notice ("RFJN") at ¶ 1, Compl.at ¶ 11. Despite referencing his employment, Plaintiff omits from his complaint the Employee Agreement ("Agreement") he signed on August 17, 2020, in which, among other things, he acknowledges (1) that his employment is "at-will," *i.e.*, terminable "at any time for any reason, with or without advance notice, and with or without cause;" and (2) that this Agreement may be amended only by a writing signed by him "and an authorized representative of the Company." *See* RFJN at ¶ 2 (Sections 5.1 and 7.4 of the Agreement).

### B. Plaintiff's Alleged Safety Complaints to Both Male and Female Managers at Blue Origin, and Blue Origin's Alleged Responses

Plaintiff alleges that in May 2022, he met with Linda Cova, Blue Origin's Vice President of the Engines Business Unit, and Mary Plunkett, who at the time was Blue Origin's Senior Vice President of Human Resources, to report his belief that Blue Origin CEO Robert Smith's conduct caused employees to violate safety procedures in order to meet unreasonable deadlines. *See*



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Compl.at at ¶ 17. Plaintiff also asserts that on May 23, 2022, he sent an email to Ms. Plunkett and Ms. Cova that reiterated his concerns about Mr. Smith's alleged conduct. *Id.* at ¶¶ 18-19.

Plaintiff alleges that while Ms. Plunkett and Ms. Cova, along with Blue Origin's Senior Director of Human Resources Operations, Melissa Beatty, promised to investigate his concerns, they instead disregarded his complaints, thereby beginning a trend where "female executives, supervisors and human resources directors, would purposefully ignore [Plaintiff's] legitimate concerns and complaints, on information and belief, due to his male gender." *Id.* at ¶¶ 21-29.

Plaintiff further asserts in his Complaint that during the summer of 2022, he raised another workplace safety concern to Blue Origin's Vice President of Safety and Mission Assurance, Michael Stevens, who "brushed off" Plaintiff's concern. *Id.* at ¶¶ 34-35.

Plaintiff goes on to allege that in August 2022, he raised two additional workplace safety concerns via email to Ms. Cova, Ms. Beatty, and other Blue Origin employees such as Michael Eilola, James Dewees, Nathan Harris, Jason Priebe, Rob Brazier, Robert Josker, Dawn Lovely, and Keith Klaus. *Id.* at ¶¶ 37-52. Plaintiff asserts in the Complaint that Blue Origin Human Resources Partner Julie Grant ignored one of these concerns, and that his other concern was addressed. *Id.* at ¶¶ 38, 49.

Additionally, Plaintiff alleges that in August 2022, Ms. Beatty informed him that she investigated his complaints about Mr. Smith and concluded that Mr. Smith had not created a hostile work environment. *Id.* at ¶¶ 40-47, 53-55. Plaintiff alleges "on information and belief"—with no factual basis whatsoever—that Ms. Beatty, Ms. Grant, and Ms. Cova "refused to take [Plaintiff's] legitimate safety concerns seriously, because he was a male, implying that they expected him to, in effect, 'man up' and get tougher." *Id.*

Finally, Plaintiff asserts that in late August 2022 and again in late September 2022, he raised additional workplace safety concerns with Blue Origin's in-house legal counsel, Ian Savage, and Blue Origin Senior Quality Director Henry Digdigan. *Id.* at ¶¶ 56-64. Plaintiff claims that in response he received "lip service only meant to placate [him] until his termination." *Id.*



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**C. Plaintiff's Minimal Interactions with Kevin Lunde**

Throughout his Complaint, Plaintiff alleges "on information and belief"—again, with no factual basis whatsoever—that individual defendant and manager at Blue Origin's Woodland Hills office, Kevin Lunde, was informed of Plaintiff's complaints and was "involved" in Ms. Plunkett's and Ms. Cova's allegedly inadequate responses to some of his complaints. *Id.* at ¶¶ 17, 18, 21, 22, 24, 29, 31, 33, 36, 39, 41, 44, 46, 47, 52, 55, 56. Plaintiff further alleges that Mr. Lunde neglected to assign Plaintiff a permanent workstation at Blue Origin's Woodland Hills office. *Id.* at ¶¶ 30-33.

**D. Plaintiff's Termination by Blue Origin**

Plaintiff asserts that on or around October 7, 2022, Ms. Cova and Ms. Grant informed him that his employment was being terminated because Blue Origin wanted to make a "leadership change." *Id.* at ¶ 64. Plaintiff claims "on information and belief" that Mr. Smith "spearheaded this termination due to [Plaintiff's] complaints against [Mr. Smith], [Plaintiff's] raising of safety / ethical / legal issues, and the fact that many of these reports aimed to hamper [Mr. Smith's] production / delivery schedule." *Id.*

## III. <u>LEGAL ARGUMENT</u>

**A. Plaintiff's Speculation Is Insufficient To Maintain A Discrimination Claim Under The California Fair Employment And Housing Act.**

To state a claim for gender/sex discrimination under the California Fair Employment and Housing Act ("FEHA"), Plaintiff must state factual allegations supporting that "(1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action..., and (4) some other circumstance suggests discriminatory motive." *See Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 355 (2000). Plaintiff also must plead facts to demonstrate that his alleged protected category "was a substantial factor in the particular employment decision." *See Suarez v. Bank of Am. Corp.*, No. 18-cv-01202-MEJ, 2018 WL 2431473, at *17 (N.D. Cal. May 30, 2018) (quoting *Harris v. City of Santa Monica*, 56 Cal. 4th 203, 232 (2013)). "Requiring the plaintiff to show that discrimination was a *substantial* motivating factor, rather than simply *a* motivating factor, more effectively



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the disputed employment decision." *Harris*, 56 Cal. 4th at 232. In a gender/sex discrimination case, the "critical issue… is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *See Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279-80 (2006) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).

Here, Plaintiff's Complaint is devoid of ***any*** factual allegations supporting that he was subject to any adverse employment action ***because of*** his gender or sex. Instead, Plaintiff's Complaint is replete with vague, conclusory allegations and sheer speculation that Blue Origin's female leaders expected him to whine less and "suck it up" because he is a man. *See* RFJN at ¶ 1, Compl.at ¶¶ 15, 17, 23-25, 38, 41, 44-47, 55. Notably, there are no facts alleged that these female leaders actually told him to "man up" or "suck it up," or that complaints asserted by female employees of Blue Origin were taken seriously, ***or that anyone at Blue Origin*** ever made any derogatory or offensive comments regarding his gender or sex that would suggest gender animus. *Id.* Plaintiff's baseless allegation is further undercut by his own Complaint, as numerous other employees to whom he allegedly complained, such as Robert Smith, Kevin Lunde, Keith Klaus, Ian Savage, Henry Digidigan, Jason Priebe, Rob Brazier, Robert Josker, Michael Stevens, Nathan Harris, and James Dewees, are male. *Id.* at ¶¶ 17, 35, 37, 48, 56, 62.

Thus, at most, what Plaintiff alleges is that ***some*** of the people who he claims ignored his complaints happened to be women and that he was a man. This is insufficient to plead a FEHA discrimination claim; statutory claims such as the FEHA claims asserted by Plaintiff must be pleaded with factual particularity, showing every fact essential to the existence of liability under the relevant statute. *See, e.g., Covenant Care, Inc. v. Superior Court*, 32 Cal. 4th 771 (2004); *see also York v. City of Sacramento*, No. 34-2017-00206890-CU-OE-GDS, 2017 Cal. Super. LEXIS 30392, at *6 (Nov. 27, 2017) (citing *Covenant Care* to support granting motion for judgment on the pleadings as to age-based harassment claim under the FEHA because the complaint did not specify conduct that could constitute harassment); *Rojo v. Hunter*, No. 30-2022-01277582-CU-CR-CJC, 2023 Cal. Super. LEXIS 31778, at *2-3 (May 18, 2023) (citing *Covenant Care* to



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

sustained demurrer as to FEHA claim for failure to allege facts with particularity); *Salazar v. Circle Wood Servs.*, No. 20STCV24471, 2021 Cal. Super. LEXIS 4325, at *5 (Feb. 5, 2021) (Los Angeles Superior Court judge sustained defendant's demurrer as to plaintiff's sex discrimination claim because, while plaintiff alleged that he was terminated shortly after taking paternity leave, he failed to make any factual allegations in support of his claim that he was discriminated against on the basis of sex-role stereotypes).

Accordingly, because Plaintiff fails to plead any facts sufficient to show that he was treated differently ***because of*** his gender or to plead any other facts suggesting discriminatory motive, Defendants respectfully request that the demurrer as to this cause of action be sustained.

### B. Plaintiff Cannot State a Claim for Hostile Work Environment Harassment Against Defendants.

Plaintiff alleges harassment on the basis of sex/gender against both Defendants. To state a claim for hostile work environment sexual harassment in violation of the FEHA, Plaintiff must show that: (1) Plaintiff belongs to a protected group; (2) Plaintiff was subjected to unwelcome harassment; (3) the harassment complained of was based on protected status; and (4) the harassment complained of was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment. *See Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989), *superseded on other grounds by Beltran v. Hard Rock Hotel Licensing, Inc.,* 97 Cal. App. 5th 865, 880 (2023). In general, "harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." *See Reno v. Baird*, 18 Cal. 4th 640, 645-46 (1998) (*quoting Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63 (1996)), *superseded by statute on other grounds.*

Here, Plaintiff's gender/sex harassment claim fails because he fails to allege facts showing that Defendants' purported conduct was ***because of*** Plaintiff's sex or gender. In the Complaint, Plaintiff specifically lists Mr. Smith's conduct allegedly constituting a "hostile work environment:"


DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

- "Pitting BU and function against each other"
- "Unacceptably harsh tone, behavior, and bulling in emails, in discussions and in meetings"
- "Demanding the impossible completion of tasks and schedules and not listening to facts and data"
- "Lack of clear direction leading to constant 'bring me another rock'"
- "Demeaning direct and indirect communication and discussion"
- "Demanding people violate procedures and processes and take significant risk and then chastising the team and individuals when issues occur"
- "Shooting the messenger and individual blame environment"

*See* RFJN at ¶ 1, Compl.at ¶ 19. Additionally, as explained above, Plaintiff alleges that Blue Origin did not satisfactorily investigate his workplace safety concerns and that Mr. Lunde did not assign him a permanent workstation.

Even assuming that all of Plaintiff's factual allegations in the Complaint are true, they do not constitute hostile work environment harassment based on sex/gender. Plaintiff does not include any factual allegations supporting his conclusory assertion that Blue Origin or Mr. Lunde engaged in any of the above conduct ***because of*** his sex or gender. Notably, there are no facts alleged that any of Plaintiff's coworkers ever made any derogatory or offensive comments regarding his gender or that he was ever subjected to any slurs or sexually explicit images or unwelcomed physical touching by anyone. And Mr. Smith, the alleged harasser, is himself male, and there are no facts that suggest that any of ***his*** comments were based on Plaintiff's gender as opposed to Plaintiff's work performance.

Furthermore, even if the alleged comments and/or conduct ***were*** sufficiently pled as based on Plaintiff's sex or gender, on their face they are ***still*** insufficient to constitute the type of severe or pervasive conduct that is required to support a sexual harassment claim under the FEHA. For example, in *Morgan v. Norms Restaurants, LLC*, No. 23STCV13876, 2023 Cal. Super. LEXIS 97819 (Nov. 9, 2023), a Los Angeles Superior Court judge ruled that the plaintiff's sexual harassment allegations were insufficiently pled under the FEHA, even where the plaintiff observed a male coworker watching a video of a scantily clad woman in the workplace, received a complaint



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

from a female employee about unwanted touching, and then was terminated in part for reporting unwanted touching. Here, Plaintiff merely takes issue with Mr. Smith's leadership and communication styles, such as his "harsh tone." These allegations are ***far*** less than those in the *Morgan v. Norms Restaurants* case, in which the Court ***still*** found the plaintiff's sexual harassment allegations to be insufficiently pled. It logically follows that Plaintiff's allegations at issue are ***certainly*** insufficient to support a sexual harassment claim.

The failure to plead specific facts showing that the harassment complained of was based on protected status ***or*** that the gender-based harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment is fatal to his FEHA harassment claim. *See Covenant Care*, 32 Cal. 4th 771; *York*, 2017 Cal. Super. LEXIS 303092, at *6; *Rojo*, 2023 Cal. Super. LEXIS 31778, at *2-3.

Moreover, California courts have long held that commonly necessary personnel management actions do not come within the meaning of harassment. *See Reno*, 18 Cal. 4th at 646-47. While Plaintiff may object to Mr. Lunde's method of workstation assignments, Mr. Smith's communication or project management style, or the conclusions of Blue Origin managers or investigators who assessed Plaintiff's complaints, their alleged conduct cannot constitute hostile work environment harassment—especially because Plaintiff fails to state factual allegations supporting a causal nexus between the alleged conduct and his sex/gender.

Simply put, Plaintiff's allegations—even if true—do not state sufficient facts to constitute a cause of action for gender/sex harassment. Thus, Plaintiff's gender/sex harassment claim as to both Defendants is ripe for demurrer.

### C. Plaintiff Does Not Allege That He Opposed or Complained About Gender or Sex Discrimination or Harassment.

The FEHA's anti-retaliation provision requires a plaintiff to "oppose[] any practices forbidden under this part or … file[] a complaint, testif[y] or assist[] in any proceeding under this part." *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1049 (2005); *see also* Cal. Gov. Code § 12940(h). Here, while Plaintiff alleges that he opposed and complained about a "hostile work environment" caused by Mr. Smith's demands, he does not allege that he opposed, reported, or



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

complained about gender discrimination or gender-based harassment while employed by Blue Origin. Thus, he has failed to plead a cause of action for discrimination under the FEHA. *See Husman v. Toyota Motor Credit Corp*., 12 Cal. App. 5th 1168, 1194 (2017) (a complaint of harsh or unfair treatment by a supervisor cannot raise a triable issue of fact supporting a retaliation claim under the FEHA); *Kaplan v. Dr. Reddy's Lab'ys, Inc.*, No. CV 10-00675-R, 2010 WL 3894232, at *1 (C.D. Cal. Sept. 30, 2010) (where plaintiff "merely complained that she was treated unfairly and harshly, but made no allegation that her treatment was due to any protected activity," such "vague grievances" did not establish the protected activity element of a FEHA retaliation case).

Because Plaintiff fails to plead any facts sufficient to show that he engaged in protected conduct, the demurrer as to this cause of action must be sustained.

**D. Plaintiff Cannot State A Claim For Failure To Prevent Discrimination, Harassment, or Retaliation.**

In the absence of a viable underlying claim for discrimination, harassment, or retaliation, there can be no claim for failure to prevent conduct that did not occur. *See Scotch v. Art Inst. of Cal.*, 173 Cal. App. 4th 986, 1021 (2009); *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998). Thus, the demurrer as to this derivative cause of action must be sustained.

**E. Plaintiff Cannot State Claims for Breach of Express and Implied-in-Fact Oral Contracts.**

Plaintiff's Eighth and Ninth Causes of Action, respectively, assert breach of express oral contract and breach of implied-in-fact oral contract; both of these purported contracts allegedly stated that Blue Origin would not terminate Plaintiff's employment without good cause. *See* RFJN at ¶ 1, Compl.at ¶¶ 121-128. To establish a breach of contract claim, Plaintiff must show: (1) Plaintiff and Blue Origin entered into a contract; (2) Plaintiff did substantially all of the significant things the contract required him to do, and was excused from doing anything he did not do; (3) all conditions required by the contract for Blue Origin's performance occurred, and any conditions that did not occur were waived or excused; (4) Blue Origin failed to do something that the contract required it to do, or did something that the contract prohibited it from doing; (5) Plaintiff was harmed; and (6) Blue Origin's breach of contract was a substantial factor in causing Plaintiff's


DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

harm. Simply put, Plaintiff's breach of contract claims fail because he has failed to factually allege the existence of an oral contract stating that Blue Origin would not terminate his employment without good cause.

**1. Plaintiff's At-Will Employee Agreement Precludes the Existence of an Implied Oral Contract.**

When ruling on a demurrer, a court can take judicial notice of a written agreement that is not attached to the plaintiff's complaint. *See, e.g., Shapiro v. Wells Fargo Realty Advisors*, 152 Cal. App. 3d 467, 473-82 (1984) (court took judicial notice of employer's stock option agreement that expressly stated that plaintiff's employment was at-will, and sustained defendant's demurrer as to all causes of action); *see also Hendy v. Losse*, 54 Cal. 3d 723, 740 (1991) (in assessing whether defendant was acting within scope of his employment, court took judicial notice on demurrer of employment contract that was not attached to complaint); *Scott v. JP Morgan Chase Bank, N.A.*, 214 Cal. App. 4th 743, 746 (2013) (trial court properly took judicial notice of a written contract outside of the Complaint when sustaining defendant's demurrer); *Ascherman v. Gen. Reinsurance Corp.*, 183 Cal. App. 3d 307, 310-11 (1986) (when assessing whether an insurance company was obligated to pay the cost of defending a malpractice court took judicial notice of a release from liability contained in a reinsurance contract). "***The rule is well settled that a complaint otherwise good on its face is nevertheless subject to demurrer when facts judicially noticed render it defective. The theory is that the pleader should not be allowed to bypass a demurrer by suppressing facts which the court will judicially notice.***" *See Marina Tenants Ass'n v. Deauville Marina Dev. Co.*, 181 Cal. App. 3d 122, 130 (1986) (emphasis added) (citing *Legg v. Mutual Benefit Health & Accident Ass'n*, 184 Cal. App. 2d 482, 488 (1960)).

A "fundamental principle" of freedom of contract is that employer and employee are free to agree to a contract terminable at will or subject to limitations, and "[t]heir agreement will be enforced so long as it does not violate legal strictures external to the contract." *See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 677 (1988). Here, when Plaintiff was hired by Blue Origin, he signed an Employee Agreement, which includes an express at-will employment provision. *See* RFJN at ¶ 2. Specifically, Section 5.1 of the Employee Agreement reads as



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

follows: "**<u>Employment at Will.</u>** I acknowledge that I am an employee-at-will, meaning that either I or the Company may terminate my employment relationship at any time for any reason, with or without advance notice, and with or without cause." *Id.* Additionally, Section 7.4 of the Employee Agreement states that the Agreement "may be amended only by a writing signed by me and an authorized representative of the Company." *Id.*

Blue Origin and Plaintiff, therefore, indisputably had an express written contract that specified Plaintiff's employment with Blue Origin was ***at-will***. Under California law, there "cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." *See Starzynski v. Cap. Pub. Radio, Inc.*, 88 Cal. App. 4th 33, 38 (2001). Thus, the at-will provision of Plaintiff's signed Employee Agreement "preclude[s] the existence of an implied contract requiring good cause for termination." *See id.* (quoting *Camp v. Jeffer, Mangels, Butler & Marmaro*, 35 Cal. App. 4th 620, 630 (1995)). Notably, the very case cited by Plaintiff in his Complaint, *Marvin v. Marvin*, 18 Cal. 3d 660, 665 (1976), specifies that courts should inquire into parties' conduct to determine if their conduct demonstrates an implied contract "***in the absence of an express contract***." (Emphasis added.) Here, of course, an express contract exists and thus there can be no "implied" contract that contradicts its terms.

**2. Plaintiff's Complaint Fails to Sufficiently Allege the Existence of an Oral Contract.**

Even if Plaintiff's fully executed written Employee Agreement did not exist, on its face the Complaint ***still*** fails to state sufficient facts to support the existence of an oral contract. For example, nowhere in the Complaint does Plaintiff state ***who*** on behalf of Blue Origin entered into this purported oral agreement, ***when*** the agreement was allegedly formed, or any details about the ***content*** of the alleged agreement (*e.g.,* Plaintiff's job duties, what constitutes "good cause" for termination, etc). *See* RFJN at ¶ 1, Compl. at ¶¶ 121-128. Namely, valid contracts require the consideration of both parties; here, Blue Origin would have had no consideration to enter into the type of oral contract Plaintiff describes, when Plaintiff had already signed an at-will employment agreement. Plaintiff did not even attempt to state otherwise in his Complaint. Accordingly, both of Plaintiff's breach of contract claims are ripe for demurrer. *See, e.g., Stevenson v. S.F. Hous.*



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Auth.*, 24 Cal. App. 4th 269, 284 (1994) (Court of Appeal affirmed trial court's decision sustaining defendant's demurrer to breach of oral contract claim without leave to amend because plaintiff failed to allege consideration for the oral contract: "The statutory presumption of consideration … does not, of course, apply to an oral contract. In an action on such an agreement, the essential element of consideration must normally be alleged. …The instant pleading does not disclose mutual promises or any other indication of consideration."); *see also Otworth v. S. Pac. Transp. Co.*, 166 Cal. App. 3d 452, 459 (1985) (Court of Appeal affirmed trial court's decision sustaining defendant's demurrer to breach of contract claim where plaintiff failed to allege any of the key terms of the contract: "Otworth's complaint makes no mention of whether the contract is written or oral, sets forth none of the alleged contract's terms, and includes no assertion that Otworth has either performed the contract or is excused from performing.").

**F. Plaintiff's Claim for Intentional Infliction of Emotional Distress Is Unsupported by Facts.**

A cause of action for intentional infliction of emotional distress exists where there is: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009). Liability for IIED does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Id.* California courts routinely dismiss IIED claims on demurrer, concluding that the facts alleged do not amount to outrageous conduct as a matter of law. *See, e.g., Barker v. Fox & Assocs.*, 240 Cal. App. 4th 333, 355-56 (2015); *see also Mintz v. Blue Cross of Cal.*, 172 Cal. App. 4th 1594, 1608-09 (2009); *Coleman v. Republic Indem. Ins. Co.*, 132 Cal. App. 4th 403, 416-17 (2005). Here, Plaintiff's IIED claim fails because his Complaint neglects to allege sufficient facts that, even if taken as true, constitute "extreme and outrageous conduct."

Furthermore, California courts have established that personnel management decisions do not give rise to an IIED claim even if they are motivated by retaliation. *See, e.g., Hadin v. Mendocino Coast Dist. Hosp.*, No. 17-CV-05554-JST, 2018 WL 2984834, at *9 (N.D. Cal. June


DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

14, 2018). Notably, the California Supreme Court sustained a defendant's demurrer as to a plaintiff's IIED claim where the Complaint's allegations pertained to personnel management activity, holding that "[m]anaging personnel is not outrageous conduct beyond the bounds of human decency ... [i]f personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." *See Janken*, 46 Cal. App. 4th at 80; *see also Cole v. Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 160 (1987) (demotions, promotions, criticisms of work practices, and frictions in negotiations as to grievances are normal to the employment relationship). Here, all conduct of which Plaintiff complains are personnel management decisions and, thus, cannot support an IIED claim. Accordingly, Plaintiff's IIED claim is also ripe for demurrer on these grounds.

**G. Dismissal Here Should Be Without Leave to Amend Because Amendment Would Be Futile.**

As shown above, Plaintiff's signed written Employee Agreement with Blue Origin and Plaintiff's own self-defeating allegations in the Complaint (*e.g.*, that male managers of Blue Origin also allegedly failed to adequately respond to Plaintiff's safety complaints) establish that these claims fail against Blue Origin and Mr. Lunde. Because Plaintiff cannot omit or contradict these allegations in an amended pleading, any future amendment would be futile. *See, e.g., Javor v. Taggart*, 98 Cal. App. 4th 795, 809, 810 (2002) ("Javor alleged in the original complaint that Taggart 'acted within the course and scope of his authority.' Having made that allegation early on, Javor cannot contradict it now."); *see also Pierce v. Lyman*, 1 Cal. App. 4th 1093, 1109 (1991), *superseded by statute on other grounds* (holding that where a complaint contains allegations destructive of a cause of action, the defect cannot be cured in subsequently filed pleadings by omitting such allegations); *Cal. Dental Ass'n v. Cal. Dental Hygienists' Ass'n*, 222 Cal. App. 3d 49, 53 n.1 (1990) and *Continental Ins. Co. v. Lexington Ins. Co.*, 55 Cal. App. 4th 637, 646 (1997) (Leave will not be given to amend a complaint to state a fact directly contradictory to one stated previously. A plaintiff may not discard factual allegations of a prior complaint, or avoid them by contradictory averments, in a superseding, amended pleading).



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**H. Defendants Met and Conferred with Plaintiff in Advance of Filing this Demurrer.**

Counsel for Defendants met and conferred with Plaintiff's counsel before filing this Demurrer. On February 12, 2024, Defendants emailed Plaintiff, explaining Defendants' intention to file a Demurrer and inviting Plaintiff to further discuss the matter. *See* Declaration of Emilio G. Gonzalez ("Gonzalez Decl."), ¶ 4, Ex. 3. On February 13, 2024, Plaintiff responded and selected one of the dates and times that Defendants had proposed. *Id.*

On February 15, 2024, Plaintiff and Defendants met and conferred by Zoom videocall. *Id.* at ¶ 5. The Parties discussed numerous issues and ultimately determined that they were at an impasse. *Id.* As of the filing of this Demurrer, Plaintiff has not advised Defendants that he will dismiss any causes of action currently pled in his Complaint. *Id.* at ¶ 6.

## IV. CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant their Demurrer as to Plaintiff's Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Twelfth Causes of Action, without leave to amend.

DATED: February 20, 2024

DAVIS WRIGHT TREMAINE LLP
EMILIO G. GONZALEZ
ARIELLE J. SPINNER

By: [signature]
Emilio G. Gonzalez

Attorneys for Defendants
BLUE ORIGIN, LLC AND KEVIN LUNDE



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

PROOF OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On February 20, 2024, I served the foregoing document(s) described as: **DEFENDANTS BLUE ORIGIN, LLC'S AND KEVIN LUNDE'S NOTICE OF DEMURRER AND DEMURRER TO PLAINTIFF CRAIG STOKER'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** by forwarding a portable document file to the electronic mail address(es) below:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>Shegerian & Associates, Inc.<br>11520 San Vicente Blvd.<br>Los Angeles, CA 90049<br><br>*Attorneys for Plaintiff CRAIG STOKER* | Tel: 310-860-0770<br>Fax: 310-860-0771<br>Email:<br>WReed@shegerianlaw.com<br>JShegerian@shegerianlaw.com<br>calendarclerk@shegerianlaw.com |

**(FROM ELECTRONIC MAIL ADDRESS vanessapalma@dwt.com)** at Suite 2400, 865 South Figueroa Street, Los Angeles, California.

Executed on February 20, 2024, at Los Angeles, California.

☒ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☐ Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Vanessa Palma
Print Name

[signature]
Signature



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Journal Technologies Court Portal

# Make a Reservation

CRAIG STOKER vs BLUE ORIGIN LLC, et al.

Case Number: 23STCV28816 Case Type: Civil Unlimited Category: Wrongful Termination
Date Filed: 2023-11-27 Location: Stanley Mosk Courthouse - Department 19

## Reservation

Case Name:
CRAIG STOKER vs BLUE ORIGIN LLC, et al.

Case Number:
23STCV28816

Type:
Demurrer - without Motion to Strike

Status:
RESERVED

Filing Party:
Blue Origin LLC (Defendant)

Location:
Stanley Mosk Courthouse - Department 19

Date/Time:
08/12/2024 8:30 AM

Number of Motions:
1

Reservation ID:
638544698940

Confirmation Code:
CR-EPUXN8KHMHYVMVTGD

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Demurrer - without Motion to Strike | 60.00 | 1 | 60.00 |
| Credit Card Percentage Fee (2.75%) | 1.65 | 1 | 1.65 |
| TOTAL | | | **$61.65** |

## Payment

Amount:
$61.65

Type:
Visa

Account Number:
XXXX7701

Authorization:
069765

Payment Date:
1969-12-31

Print Receipt | Reserve Another Hearing | View My Reservations

Copyright © Journal Technologies, USA. All rights reserved.

Chat

# EXHIBIT 1(b)(14)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
BLUE ORIGIN LLC and KEVIN LUNDE (sued erroneously as Kevin Lundy)

**Electronically FILED by Superior Court of California, County of Los Angeles 2/20/2024 2:12 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Tang, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **23STCV28816**

**DEFENDANT BLUE ORIGIN LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM IN SUPPORT THEREOF**

*(Concurrently filed with Declarations of Emilio G. Gonzalez, Kevin Lunde, Linda Cova, and Julie Grant; and [Proposed] Order)*

Assigned to the Hon. Stephanie M. Bowick
Dept.: 19

Hearing Date: July 30, 2024
Hearing Time: 8:30 a.m.
**RES ID: 119166584644**

Action Filed: November 27, 2023

TO PLAINTIFF AND TO HIS ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on July 30, 2024 at 8:30 a.m., or as soon thereafter as counsel may be heard, in Department 19 of this Court, located at 111 North Hill Street, Los Angeles, California, 90012-3014, before the Honorable Stephanie M. Bowick, Defendant Blue Origin LLC ("Blue Origin" or "Defendant") will move for an Order: (a) compelling Plaintiff Craig Stoker ("Plaintiff") to arbitrate his claims in this case pursuant to his Mutual Agreement to Arbitrate Claims (the "Arbitration Agreement"); and (b) staying all claims in this case pending the completion of arbitration.

This Motion is brought pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*., and the California Arbitration Act, California Code of Civil Procedure § 1281, *et seq*., on the grounds that as a party to the Arbitration Agreement, Plaintiff agreed to submit certain unresolved controversies or claims related to his former employment with Blue Origin to arbitration, in accordance with the rules of JAMS and with state and federal law. *See* Declaration of Julie Grant ("Grant Decl.") ¶ 5, Exhibit ("Ex.") B, filed concurrently herewith. Thus, Plaintiff's claims against Blue Origin are subject to binding arbitration.

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the supporting declarations of Emilio G. Gonzalez, Kevin Lunde, Linda Cova, and Julie Grant, exhibits in support thereof, all pleadings, papers, records, and files in this case, and such other argument and evidence as may be presented to the Court at the hearing on this Motion.

DATED: February 20, 2024

DAVIS WRIGHT TREMAINE LLP
EMILIO G. GONZALEZ
ARIELLE J. SPINNER

By: /s/ [signature]
Emilio G. Gonzalez

Attorneys for Defendant
BLUE ORIGIN LLC

## TABLE OF CONTENTS


Page

I. INTRODUCTION ..... 7

II. FACTUAL BACKGROUND ..... 7

A. Plaintiff Agreed To Arbitrate All Disputes Related To His Employment, With Limited Exclusions as Required by Applicable Law. ..... 7

B. Plaintiff Refuses To Arbitrate His Claims Under The Arbitration Agreement. ..... 9

III. LEGAL ARGUMENT ..... 10

A. The Federal Ending Forced Arbitration of Sexual Assault and Harassment Act of 2021 ("EFAA") Does Not Preclude Enforceability of the Arbitration Agreement. ..... 10

1. The Arbitration Agreement Expressly Carves Out Sexual Harassment Claims ..... 10

2. Plaintiff's Sham Sexual Harassment Claim Renders the EFAA Inapplicable ..... 10

B. Both Federal And California Law Favor Enforcement of Arbitration Agreements. ..... 12

C. All of the Arbitrable Claims Fall Within the Scope of the Arbitration Agreement. ..... 14

D. Plaintiff's Arbitrable Claim Against Lunde Is Subject to the Arbitration Agreement. ..... 15

E. The Agreement Is Neither Procedurally Nor Substantively Unconscionable ..... 17

1. The Arbitration Agreement Is Not Procedurally Unconscionable. ..... 17

2. The Arbitration Agreement Is Not Substantively Unconscionable. ..... 19

F. Litigation Should Be Stayed Pending Arbitration. ..... 21

IV. CONCLUSION ..... 21

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.D. Hoppe Co. v. Fred Katz Const. Co.*, 249 Cal. App. 2d 154 (1967)........ 14

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000)........ 7, 12, 17, 20

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)........ 13

*Berman v. Dean Witter & Co.*, 44 Cal. App. 3d 999 (1975)........ 16

*Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495 (2005)........ 19

*Boucher v. Alliance Title Co.*, 127 Cal. App. 4th 262 (2005)........ 16

*Bradley v. Harris Rsch., Inc.*, 275 F.3d 884 (9th Cir. 2001), *abrogated in part on other grounds by Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015)........ 17

*Buckhorn v. St. Jude Heritage Med. Grp.*, 121 Cal. App. 4th 1401 (2004)........ 14

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001)........ 12

*Cruise v. Kroger Co.*, 233 Cal. App. 4th 390 (2015)........ 12

*Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975 (2010)........ 18, 19

*Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018)........ 13

*Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590 (1989)........ 11

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)........ 17, 18

*Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527 (2003)........ 17

*Lane v. Francis Cap. Mgmt. LLC*,
224 Cal. App. 4th 676 (2014) .................... 18, 19

*Larian v. Larian*,
123 Cal. App. 4th 751 (2004) .................... 17

*Little v. Auto Stiegler, Inc.*,
29 Cal. 4th 1064 (2003) .................... 19, 20

*Marcus v. Superior Court*,
75 Cal. App. 3d 204 (1977).................... 21

*McManus v. CIBC World Mkts. Corp.*,
109 Cal. App. 4th 76 (2003) .................... 17

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986).................... 11

*Moncharsh v. Heily & Blase*,
3 Cal. 4th 1 (1992) .................... 13

*Moore v. Anderson Zeigler Disharoon Gallagher & Gray, P.C.*,
109 Cal. App. 4th 1287 (2003) .................... 11

*Morgan v. Norms Rests., LLC*,
No. 23STCV13876, 2023 Cal. Super. LEXIS 97819 (Nov. 9, 2023).................... 12

*Morris v. Redwood Empire Bancorp*,
128 Cal. App. 4th 1305 (2005) .................... 19

*Nyulassy v. Lockheed Martin Corp.*,
120 Cal. App. 4th 1267 (2004) .................... 19

*Peng v. First Republic Bank*,
219 Cal. App. 4th 1462 (2013) .................... 15, 18

*Roman v. Superior Ct.*,
172 Cal. App. 4th 1462 (2009) .................... 17

*Ruiz v. Sysco Food Servs.*,
122 Cal. App. 4th 520 (2004) .................... 12

*Simula, Inc. v. Autoliv, Inc.*,
175 F.3d 716 (9th Cir. 1999) .................... 13

*Thomas v. Perry*,
200 Cal. App. 3d 510 (1988).................... 16

*Thompson v. City of Monrovia*,
186 Cal. App. 4th 860 (2010) .................... 11

*United Firefighters of Los Angeles v. City of Los Angeles*, 231 Cal. App. 3d 1576 (1991) .......... 13

*United Transp. Union v. S. Cal. Rapid Transit Dist.*, 7 Cal. App. 4th 804 (1992) .......... 13

*Venters v. City of Delphi*, 123 F.3d 956 (7th Cir. 1997) .......... 11

*Vianna v. Doctors' Mgmt. Co.*, 27 Cal. App. 4th 1186 (1994) .......... 14

*Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal. App. 4th 759 (2005) .......... 16

*Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563 (S.D.N.Y. 2023) .......... 7, 10, 12

**STATUTES**

9 U.S.C.
- Chapter 1 (Federal Arbitration Act) .......... 8, 9, 12, 13
- § 2 .......... 12, 13
- § 401(4) .......... 10
- § 402(a) .......... 10

California Code of Civil Procedure
- § 430.10(e) .......... 11
- § 1281 .......... 14
- § 1281.2 .......... 12, 14, 21
- § 1281.4 .......... 21

California Government Code § 12940, *et seq.* (FEHA) .......... 10, 14, 20

Federal Ending Forced Arbitration of Sexual Assault and Harassment Act of 2021 (EFAA) .......... 7, 10, 12

**OTHER AUTHORITIES**

H.R. 4445, 168th Cong., 168 Cong. Rec. H983-09 (2022) .......... 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

When Plaintiff Craig Stoker was hired to work as a Senior Director of Program Management by Blue Origin in August 2020, he signed an Arbitration Agreement which, among other things, expressly excluded from arbitration any claim of sexual assault or harassment. After Plaintiff's employment was terminated, he filed this lawsuit which, at its core, is a retaliation action. Specifically, Plaintiff claims that his employment was terminated because he made several complaints about Blue Origin's CEO, Robert Smith, whom Plaintiff claims caused Blue Origin's employees to violate safety procedures in order to meet unreasonable deadlines.

In an attempt to avoid his agreement to arbitrate, Plaintiff's civil action asserts a specious sexual harassment claim in order to invoke the Federal Ending Forced Arbitration of Sexual Assault and Harassment Act of 2021 ("EFAA"), which prohibits the forced arbitration of sexual harassment claims. Plaintiff's sexual harassment allegations, however, ***even if true***, fall far short of a viable claim of sexual harassment under the EFAA and should be disregarded for purposes of determining if the arbitration agreement is enforceable. *See, e.g., Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 577 (S.D.N.Y. 2023) (sham sexual harassment claims do not invoke protections of EFAA).

As to the remaining claims ("Arbitrable Claims"), Blue Origin's Arbitration Agreement is substantively and procedurally sound under federal and California law and should be given the full weight of any other enforceable contract. Blue Origin requests that the Court: (1) order Plaintiff's Arbitrable Claims to be submitted to binding arbitration per the Arbitration Agreement; and (2) stay all proceedings in this action, as to all 12 claims and against both Defendants, until arbitration is completed. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000).

## II. FACTUAL BACKGROUND

### A. Plaintiff Agreed To Arbitrate All Disputes Related To His Employment, With Limited Exclusions as Required by Applicable Law.

Plaintiff was formerly employed by Blue Origin as a Senior Director of Program Management. *See* Declaration of Linda Cova ("Cova Decl.") ¶ 2. When Plaintiff was hired in August 2020, he was hired to work in Kent, Washington. *See* Grant Decl. ¶¶ 3, 5, Ex. B. Plaintiff, however, at his request, remained in California throughout the duration of his employment.

On August 17, 2020, Plaintiff signed an Employee Agreement, which included an express Arbitration Agreement (the "Arbitration Agreement"). *Id.* The Arbitration Agreement was executed by both Plaintiff and an authorized representative of Blue Origin. *Id.* The Arbitration Agreement is bilateral, requiring both Plaintiff and Blue Origin to resolve any claims or controversies in any way relating to or associated with Plaintiff's employment by binding arbitration through Judicial Arbitration and Mediation Services ("JAMS"). *Id.* These obligations are made clear in the beginning of the Arbitration Agreement:

> I understand and agree that all claims, disputes, or controversies relating to or arising out of my employment with the Company, **except for the Excluded Claims listed below, shall be determined by binding arbitration** before a single, neutral arbitrator. For purposes of this Arbitration Agreement under Section 6, the term "Company" includes Blue Origin, its parent, subsidiaries, affiliates, successors or assigns, as well as their current and former officers, directors, employees and agents.
>
> This arbitration agreement applies to **any and all claims, disputes, or controversies between the Company and me**, including, without limitation, claims arising out of or relating to my employment application and/or hiring process, employment with the Company, and/or termination of my employment…

*Id.* (emphasis added).

The Arbitration Agreement subsequently lists six categories of Excluded Claims, and expressly excludes from arbitration any claims for "sexual harassment or sexual assault" unless the claimant voluntarily chooses arbitration. *Id.* The Arbitration Agreement specifies that it is "subject to and governed exclusively by the Federal Arbitration Act, 9 U.S.C. ch. 1, and federal arbitration law under the Federal Arbitration Act." *Id.* Further, the Arbitration Agreement includes a severability clause, maintaining that the Arbitration Agreement must be enforced to the fullest extent permitted by applicable law, and any provisions found to be invalid or unenforceable will not impact the enforceability of the other provisions. *Id.*

Under the Arbitration Agreement, Blue Origin will cover any cost of the arbitration filing fee that exceeds the Court's filing fee. *Id.* The Arbitration Agreement does not limit the types of damages that the arbitrator may award, nor does it purport to shorten any applicable limitations period. *Id.* The Arbitration Agreement states that the arbitration proceeding will be conducted pursuant to the JAMS Employment Arbitration Rules and Procedures in effect at the time of the

dispute. *Id.* It also provides that the parties may engage in discovery in accordance with the Federal Rules of Civil Procedure ("FRCP"), and that both Plaintiff and Blue Origin "may call witnesses, cross-examine the other party's witnesses, and present evidence during the arbitration proceeding in accordance with the [FRCP], as applied by the arbitrator." *Id.* Therefore, while not jeopardizing the ability to conduct appropriately streamlined discovery as allowed under arbitration, the parties will not be unduly restricted in discovery should this matter proceed to arbitration.

**B. Plaintiff Refuses To Arbitrate His Claims Under The Arbitration Agreement.**

Plaintiff filed this lawsuit against Blue Origin and Kevin Lunde on November 27, 2023. *See* Declaration of Emilio Gonzalez ("Gonzalez Decl.") ¶ 2, Ex. D. In his Complaint, Plaintiff asserts 12 claims that relate to and arise out of his employment, 11 of which fall well within the scope of the Arbitration Agreement (the "Arbitrable Claims"). *Id.* The single claim that falls outside the scope of the Arbitration Agreement is Plaintiff's gender harassment claim, which is factually baseless and is only pled in an effort to circumvent the Arbitration Agreement.

On December 11, 2023, Blue Origin, through its counsel, wrote to Plaintiff's counsel, attaching a copy of the Arbitration Agreement, and explaining that the Arbitration Agreement expressly carves out the sexual harassment claim and mandates arbitration of 11 of the 12 causes of action asserted in Plaintiff's Complaint. *See* Gonzalez Decl. ¶¶ 3-4, Ex. E. Later that same day, the Parties agreed to meet and confer by videoconference on December 13, 2023. *Id.*

The Parties met and conferred by videoconference and email between December 13, 2023 and January 9, 2024. *Id.* Blue Origin pointed out that the Arbitration Agreement excluded sexual harassment claims and that the sexual harassment claim was not viable, and therefore the Parties should agree to arbitrate all remaining claims. *Id.* Plaintiff refused to agree to arbitrate <u>any</u> claims and claimed the inclusion of a sexual harassment claim meant the entire action must remain in court. *Id.* The Parties agreed to stay Defendants' responsive pleading deadlines and, at Plaintiff's request, to additional pages beyond the standard page limits for Opposition and Reply briefs. *Id.* On January 19, 2024, Blue Origin secured the first available hearing date for this Motion – July 30, 2024 at 8:30 a.m. *See* Gonzalez Decl. ¶ 6.

## III. LEGAL ARGUMENT

### A. The Federal Ending Forced Arbitration of Sexual Assault and Harassment Act of 2021 ("EFAA") Does Not Preclude Enforceability of the Arbitration Agreement.

#### 1. The Arbitration Agreement Expressly Carves Out Sexual Harassment Claims

As required by law, the Arbitration Agreement expressly excludes sexual harassment and sexual assault claims. During the Parties' meet and confer discussions, Plaintiff asserted that the federal EFAA precludes the enforcement of the Arbitration Agreement as to <u>all</u> of Plaintiff's claims, simply because one of his 12 claims is gender harassment. *See* Gonzalez Decl. ¶ 4. Plaintiff's allegations related to gender harassment are so bare that they fail to "allege[] conduct constituting a sexual harassment dispute," rendering the EFAA inapplicable. The EFAA provides:

> [A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute. 9 U.S.C. § 402(a).

The legislative intent of the EFAA, as expressed by Congressman Jerry Nadler, was to "restore access to justice for survivors of sexual assault or sexual harassment who are forced to settle their disputes against their harassers and abusers in a private system of arbitration . . . ." H.R. 4445, 168th Cong., 168 Cong. Rec. H983-09 (2022). The EFAA defines a "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." *See* 9 U.S.C. § 401(4). Thus, in order for the EFAA to apply, a plaintiff's Complaint must state a "plausible" claim of sexual harassment under the statute(s) under which such claim is pled. *See, e.g., Yost*, 657 F. Supp. 3d at577.

Here, Plaintiff is not being asked to arbitrate his sexual harassment claim; Blue Origin acknowledges this claim may remain in this Court, subject to a demurrer due to the insufficient facts supporting that claim. Meanwhile, Blue Origin asks this Court to determine if Plaintiff's sham sexual harassment claim renders an otherwise enforceable Arbitration Agreement voidable.

#### 2. Plaintiff's Sham Sexual Harassment Claim Renders the EFAA Inapplicable

Plaintiff alleges gender harassment in violation of the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12940, *et seq.* To establish a *prima facie*

case of harassment, Plaintiff must prove that he experienced harassment ***based on his gender*** that was so "severe or pervasive" as to "alter the conditions of [his] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 608 (1989); *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 876 (2010); *Venters v. City of Delphi*, 123 F.3d 956, 972 (7th Cir. 1997). At this pleading stage, Plaintiff's allegations must, when taken as true, state sufficient facts to constitute a cause of action for gender harassment. Cal. Civ. Proc. Code § 430.10(e). The Court may not consider the Complaint's contentions, deductions, or conclusions of law. *Moore v. Anderson Zeigler Disharoon Gallagher & Gray, P.C.*, 109 Cal. App. 4th 1287, 1293 (2003).

Plaintiff's complaint fails to plead a viable sexual harassment claim. Specifically, the sexual harassment theory is based on the "fact" that Plaintiff is ***male*** and the executives and leaders to whom he reported Smith's conduct are ***female*** and—on his speculation, devoid of any factual support—that the reason his complaints about Smith were ignored is because the female leaders expected him to whine less and "suck it up" because he is a man. *See* Ex. D at ¶¶ 15, 17, 23-25, 38, 41, 44-47, 55. Notably, there are no facts alleged that any of his coworkers ever made any derogatory or offensive comments regarding his gender or that he was ever subjected to any slurs or sexually explicit images or unwelcomed physical touching by anyone. *Id.* At bottom, there simply are not facts pled that support a sexual harassment claim, but only speculation that his complaints were ignored because of his gender. But even this allegation is undercut by Plaintiff's own Complaint, as numerous other employees to whom he allegedly complained, such as Robert Smith, Kevin Lunde, Keith Klaus, Ian Savage, Henry Digidigan, Jason Priebe, Rob Brazier, Robert Josker, Michael Stevens, Nathan Harris, James Dewees are male. *See* Ex. D at ¶¶ 17, 35, 37, 48, 56, 62.[1]

[1] While Plaintiff complained about various work-related matters to Linda Cova and Julie Grant on numerous occasions, <u>none</u> of these complaints involved gender-related allegations. *See* Cova Decl. ¶ 3; *see also* Grant Decl. ¶ 6. In fact, Blue Origin has no record of Plaintiff submitting any complaints of gender harassment to Human Resources. *See* Grant Decl. ¶ 8. Even during his termination meeting, when Plaintiff had nothing to lose, he did not raise any gender-related issues. *See* Cova Decl. ¶ 4; *see also* Grant Decl. ¶ 7. Moreover, the demand letter that Plaintiff sent after his termination makes no mention of any sexual harassment. *See* Grant Decl. ¶ 9, Ex. C.

Courts considering whether a sexual harassment claim is viable or a sham for purposes of the EFAA have rejected even sexually charged comments and conduct if such comments or conduct are not, on their face, sufficiently severe or pervasive. *See, e.g., Morgan v. Norms Rests., LLC*, No. 23STCV13876, 2023 Cal. Super. LEXIS 97819 (Nov. 9, 2023) (Los Angeles Superior Court judge granting employer's motion to compel arbitration because plaintiff's sexual harassment allegations were not sufficiently plausible to invoke EFAA, where plaintiff observed male coworker watching video of scantily clad woman in the workplace, received complaint from female employee about unwanted touching, and was terminated in part for reporting unwanted touching); *see also Yost*, 657 F. Supp. 3d 563 (holding that EFAA was not barrier to enforcement of arbitration agreement because plaintiff failed to plead plausible facts supporting sex harassment claim, where plaintiff alleged in Complaint that Everyrealm's CEO spoke to plaintiff, and to others in plaintiff's presence, about sexual activities and sexual orientations of coworkers).

Here, Plaintiff's allegations are not even sexual in nature—no mention of sexual acts, sexual activities, sexualized images, or unwanted touching. Simply put, Plaintiff's allegations—even if true—do not state sufficient facts to constitute a gender harassment claim. Thus, Plaintiff has failed to state a "plausible" claim of sexual harassment, rendering the EFAA inapplicable.

**B. Both Federal And California Law Favor Enforcement of Arbitration Agreements.**

Under "both federal and state law, the threshold question presented by a petition to compel arbitration is whether there is an agreement to arbitrate." *Cruise v. Kroger Co.*, 233 Cal. App. 4th 390, 396 (2015). When the claims fall within the scope of the Arbitration Agreement and there is no defense to enforcement, arbitration is mandatory. Cal. Civ. Proc. Code § 1281.2; *see, e.g.*, *Armendariz*, 24 Cal. 4th at 97-99. Both the Federal Arbitration Act ("FAA") and the California Code of Civil Procedure ("CCP") allow a party to compel enforcement of a valid arbitration agreement. 9 U.S.C. § 2; Cal. Civ. Proc. Code § 1281.2.

The FAA embodies a strong federal policy favoring arbitration and requiring the enforcement of arbitration agreements. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111-12 (2001) (arbitration agreements "shall be valid, irrevocable, and enforceable"); *Ruiz v. Sysco Food Servs.*, 122 Cal. App. 4th 520, 534 (2004) ("[t]he purpose of the FAA . . . is to compel judicial

enforcement of a wide range of written arbitration agreements, even though there was historically a resistance by American courts . . . "). The strength of this policy was confirmed again by the Supreme Court in *AT&T Mobility LLC v. Concepcion*: "[Section 2 of the FAA] reflect[s] both a 'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" 563 U.S. 333, 339 (2011) (internal citations omitted). The *Concepcion* court went on to hold that "courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* (citations omitted). In *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018), the Supreme Court reaffirmed the stronghold of the liberal federal policy in favor of arbitration agreements. The Court spoke at length about how, in enacting the FAA, Congress mandated that courts "respect and enforce agreements to arbitrate . . ." *Id.* at 1621.

In keeping with this strong federal policy, any question regarding the applicability of an arbitration agreement must be resolved in favor of arbitration. The Ninth Circuit has been instructive regarding the role of the trial court in ruling on a motion to compel arbitration:

> The standard for demonstrating arbitrability is not high. The . . . FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. . . . Such agreements are to be rigorously enforced. . . . [T]he district court must order arbitration if it is satisfied that the making of the agreement . . . is not in issue. Therefore, the district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms.

*See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999) (citations omitted).

California law also favors arbitration. "[T]he Legislature has expressed a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Moncharsh v. Heily & Blase*, 3 Cal. 4th 1, 9 (1992) (citations and internal quotations omitted). As a result, a "court should order [the parties] to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute." *United Transp. Union v. S. Cal. Rapid Transit Dist.*, 7 Cal. App. 4th 804, 808 (1992) (citations omitted). The public policy favoring arbitration is so strong that "[i]f there is doubt as to whether an arbitration provision in an agreement covers a given controversy, it should be resolved in favor of coverage." *United Firefighters of Los Angeles v. City of Los Angeles*, 231 Cal. App. 3d 1576, 1583 (1991) (citations omitted).

Once a court determines an arbitration agreement encompasses the controversy, the matter *must be* compelled to arbitration. California law provides that "[a] written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is ***valid, enforceable and irrevocable*** . . . " Cal. Civ. Proc. Code § 1281 (emphasis added). On a motion to compel arbitration, "the court ***shall order*** the petitioner and the respondent to arbitrate the controversy ***if it determines that an agreement to arbitrate the controversy exists*** . . . " Cal. Civ. Proc. Code § 1281.2 (emphasis added); *A.D. Hoppe Co. v. Fred Katz Const. Co.*, 249 Cal. App. 2d 154, 159 (1967).

**C. All of the Arbitrable Claims Fall Within the Scope of the Arbitration Agreement.**

In a motion to compel arbitration, the party opposing the motion carries the burden to show the agreement cannot be interpreted to apply to the dispute. *Buckhorn v. St. Jude Heritage Med. Grp.*, 121 Cal. App. 4th 1401, 1406 (2004). Here, 11 of Plaintiff's 12 causes of action against Blue Origin fall within the explicit purview of the Arbitration Agreement that Plaintiff signed in August 2020, because those 11 causes of action pertain to Plaintiff's employment or termination of his employment with Blue Origin, and do not fall under the list of Excluded Claims. *See* Ex. B. The Arbitration Agreement expressly carves out sexual harassment claims, and Blue Origin concedes that it cannot compel Plaintiff to arbitrate any viable sexual harassment claims.

As to the Arbitrable Claims, the language of the Arbitration Agreement is clear: Plaintiff agreed that arbitration would be the exclusive means for resolution of "all claims, disputes, or controversies relating to or arising out of [his] employment" with Blue Origin, "including, without limitation, claims arising out of or relating to [his] employment application and/or hiring process, employment with the Company, and/or any termination of [his] employment . . . tort claims, breach of contract claims . . . and any other employment-related claims, whistleblower claims, and all claims for violation of any federal, state, or other governmental law, statute, regulations, or ordinance," among numerous other claims aside from the list of Excluded Claims. *Id*. ***Any*** means ***any***; ***all*** means ***all***. *Vianna v. Doctors' Mgmt. Co.*, 27 Cal. App. 4th 1186, 1189 (1994) (agreement to arbitrate "any dispute" on provisions of employment contract covered contract and tort claims).

Here, the broad language of the Arbitration Agreement clearly encompasses Plaintiff's statutory claims under the FEHA, Labor Code, and Health and Safety Code, as well as his breach of

contract, wrongful termination, intentional infliction of emotional distress, and negligent hiring, supervision, retention and training claims, because they are rooted in his employment relationship with Blue Origin. As such, based on the language of Plaintiff's Complaint, all of Plaintiff's claims, aside from gender harassment, are subject to arbitration under the Arbitration Agreement.

**D. Plaintiff's Arbitrable Claim Against Lunde Is Subject to the Arbitration Agreement.**

Aside from gender harassment, Plaintiff asserts against Mr. Lunde a claim for intentional infliction of emotional distress. Plaintiff should also be compelled to arbitrate this claim.

*First,* the claims against Mr. Lunde are ancillary to the claims against Blue Origin. Plaintiff alleges in Paragraph 4 of the Complaint:

> All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint . . . . All defendants were responsible for the events and damages alleged herein, including on the following bases . . . at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; [and] . . . defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. . . . All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

Plaintiff has not asserted a single claim against Mr. Lunde that is not also asserted against, and related to his employment with, Blue Origin. *Id.* at ¶¶ 100-106 and 138-142. For example, Plaintiff alleges: "On information and belief, [Lunde] was informed of [Plaintiff's complaint against Robert Smith] and was involved in Plunkett and Cova's actions, or inactions, thereafter," and was also "involved with the receipt and processing of this complaint." *Id.* at ¶¶ 17-18. Plaintiff inextricably associated his claims against Mr. Lunde with his claims against Blue Origin.

*Second*, Plaintiff agreed to arbitrate "any and all claims, disputes, or controversies" in any way related to his employment and termination. *See* Grant Decl. ¶ 5, Ex. B. The express terms of the Arbitration Agreement do not limit its applicability to Plaintiff's possible claims against Blue Origin only. Instead, by its plain language, the Arbitration Agreement is broader and applies equally to claims against others where the claims are related to his employment. Plaintiff's claims

against Mr. Lunde are clearly "related to" his employment with Blue Origin, and thus are subject to the arbitration requirements in the Arbitration Agreement. *See Boucher v. Alliance Title Co.*, 127 Cal. App. 4th 262, 271 (2005) ("[U]nder both federal and California decisional authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations."). Per Plaintiff's own Complaint, Mr. Lunde's alleged acts are based on conduct committed against Plaintiff while Mr. Lunde was Blue Origin's agent and manager. Thus Plaintiff's allegations against Mr. Lunde are related to Plaintiff's employment, and fall under the Arbitration Agreement.

*Third*, Mr. Lunde consents to arbitration. Declaration of Kevin Lunde ("Lunde Decl.") ¶ 3.

*Fourth,* Plaintiff's broad allegations that Mr. Lunde was an agent and alter ego of Blue Origin, entitle Mr. Lunde to invoke the Arbitration Agreement against Plaintiff. *Thomas v. Perry*, 200 Cal. App. 3d 510, 516 (1988) ("By the allegations of [plaintiff's] own complaint, the individual defendants were at all times acting on behalf of [employer defendant] in the course and scope of their employment. Under such circumstances they are entitled to invoke the arbitration requirement."); *Berman v. Dean Witter & Co.*, 44 Cal. App. 3d 999, 1004 (1975). According to the express language in Plaintiff's Complaint, his allegations against Mr. Lunde are rooted in conduct that Plaintiff claims was committed against him while Mr. Lunde was working at Blue Origin in a managerial capacity. Thus, these allegations are related to Plaintiff's employment with Blue Origin, placing Mr. Lunde squarely within the scope of the Arbitration Agreement.

*Fifth,* Plaintiff should not be permitted to frustrate the Arbitration Agreement and avoid his obligations under it simply by naming an individual defendant. Although Defendants do not admit or agree they are each other's agents, Plaintiff should not be allowed to argue and allege as such, and then assert they are not agents to avoid arbitration. *Cf. Westra v. Marcus & Millichap Real Estate Inv. Brokerage Co.*, 129 Cal. App. 4th 759, 767 (2005) (individual not party to arbitration agreement entitled to benefit of agreement where complaint asserted individual acted as agent for party to agreement). Plaintiff should not be allowed to have his cake and eat it too.

**E. The Agreement Is Neither Procedurally Nor Substantively Unconscionable.**

Once the moving party has established that an agreement to arbitrate exists, the burden shifts to Plaintiff to demonstrate grounds for revocation of the arbitration agreement. *Larian v. Larian*, 123 Cal. App. 4th 751, 760 (2004). In *Armendariz*, 24 Cal. 4th 83, the Court sets forth requirements for an otherwise valid arbitration agreement to be enforceable with respect to certain statutory employment claims. Plaintiff likely will claim that the Arbitration Agreement is unconscionable under *Armendariz*, but he cannot meet his burden of proving unconscionability.

Invalidity on the basis of unconscionability is considered an extreme remedy applicable only when contractual terms "shock the conscience." *Jones v. Wells Fargo Bank*, 112 Cal. App. 4th 1527, 1540 (2003). To invalidate a contract due to unconscionability, the court must find the contract is ***both procedurally and substantively unconscionable***. *Armendariz*, 24 Cal. 4th at 114. The two factors must be considered together: "[e]ssentially a sliding scale is invoked . . . . the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

**1. The Arbitration Agreement Is Not Procedurally Unconscionable.**

The procedural component of unconscionability focuses on the manner in which the contract was negotiated. *See Roman v. Superior Ct.*, 172 Cal. App. 4th 1462, 1469 (2009). An agreement is procedurally unconscionable "[if] there is 'oppression' arising from an inequality of bargaining power, or 'surprise' arising from buried terms in a complex printed form." *McManus v. CIBC World Mkts. Corp.*, 109 Cal. App. 4th 76, 87 (2003) (citations omitted). "A bald assertion of inequality in bargaining power is an insufficient basis on which to find a contract provision unenforceable." *Bradley v. Harris Rsch., Inc.*, 275 F.3d 884, 892 (9th Cir. 2001), *abrogated in part on other grounds by Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015).

Here, Plaintiff may attempt to argue that the Arbitration Agreement was "forced" on him as a condition of employment by Blue Origin. But there is no evidence that Plaintiff ever objected to the Arbitration Agreement he signed. Even if he had, this would not render the Arbitration Agreement procedurally unconscionable. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the United States Supreme Court held that the plaintiff was required to

arbitrate an age discrimination claim despite the compulsory nature of the standard form arbitration agreement he was required to sign. The Court held that an arbitration agreement is not *per se* procedurally unconscionable merely because it is required by one party; any claims of oppression or surprise should be decided on a case-by-case basis. *Id.* In application, the Court found "no indication . . . that [the plaintiff] . . . was coerced or defrauded into agreeing to the arbitration clause. . . ." *Id.* at 33; *see also Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981-82 (2010) (enforcing arbitration agreement required by employer in employment context).

Based on *Gilmer*, Plaintiff cannot justifiably argue there was "oppression" when he expressly agreed to the Arbitration Agreement. Plaintiff, who has a Master's Degree in Business Administration and is an experienced engineer and manager, voluntarily accepted a position with Blue Origin, thereby accepting the obligations and privileges of this role, including the Arbitration Agreement. Grant Decl., ¶¶ 4-5, Exs. A, B. Nor can Plaintiff claim "surprise" as to this obligation:

*First*, the Arbitration Agreement is not overly long (four pages) and is written in clear, unambiguous language. *See* Grant Decl., ¶ 5, Ex. B.

*Second*, the language throughout the Arbitration Agreement makes it clear that Plaintiff is signing an agreement requiring him to arbitrate claims or controversies in any way relating to his employment, including its termination. *Id.* Further, the last sentence on the page before Plaintiff's signature on his Employment Agreement clearly states: "The Company, by offering this Agreement to me, and I, by signing below, agree to all of the terms set forth in this Agreement." *Id.*

*Third*, the Arbitration Agreement has language common to employment arbitration agreements. It does not give unequal power to Blue Origin; it is mutual and fair to both parties.

*Finally*, the Arbitration Agreement informs the employee the arbitration will proceed under the JAMS Rules, and provides a link to a copy of these rules. *Id.* That the JAMS Rules were not attached does not render Plaintiff's Arbitration Agreement procedurally unconscionable. *See Lane v. Francis Cap. Mgmt. LLC*, 224 Cal. App. 4th 676, 690 (2014) (*citing Peng v. First Republic Bank*, 219 Cal. App. 4th 1462, 1472 (2013)) ("failure to attach the AAA . . . rules, standing alone, is insufficient grounds to support a finding of procedural unconscionability"). In *Lane*, the court concluded that "the failure to attach a copy of the AAA rules did not render the agreement

procedurally unconscionable," because (1) the AAA rules were "easily accessible to the parties" by being available on the Internet (*citing Boghos v. Certain Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 505 n.6 (2005)); (2) the plaintiff did not "lack the means or capacity to locate and retrieve a copy of the referenced rules;" and (3) the agreement "clearly specified a particular set of AAA rules." *Lane*, 224 Cal. App. 4th at 691-92 (*citing Dotson*, 181 Cal. App. 4th at 981 (rejecting procedural unconscionability argument by highly educated attorney who agreed to arbitration)).

As there is no basis for claiming oppression or surprise in connection with the Arbitration Agreement, Plaintiff cannot show that the Arbitration Agreement is procedurally unconscionable.

**2. The Arbitration Agreement Is Not Substantively Unconscionable.**

A contract is not unconscionable unless it is "so one-sided as to 'shock the conscience,'" or imposes "harsh or oppressive terms." *See Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1322 (2005) (citations omitted). The paramount consideration in addressing substantive unconscionability is the mutuality of the obligation to arbitrate. *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1287 (2004). Accordingly, a substantively unconscionable term must be so one-sided that it lacks even a "modicum of bilaterality." *See Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1072 (2003) (citations omitted).

Here, the Arbitration Agreement is devoid of the kinds of terms necessary to conclude that the Arbitration Agreement is "one-sided" or "shocks the conscience." The Arbitration Agreement is mutual, equally binding Plaintiff and Blue Origin to arbitrate any claims or controversies related to Plaintiff's employment or termination of employment. *See* Ex. B. For example, this mutuality is shown where the Arbitration Agreement reads: "If either I or the Company fail to make a written request for arbitration within the statute of limitations period applicable to a Claim under applicable law, or otherwise fail to comply with the administrative prerequisites to filing certain types of claims, I and/or the Company will have waived the right to raise that Claim in any forum, including arbitration." *Id.* Further, under the Arbitration Agreement, Blue Origin will cover any cost of the arbitration filing fee that exceeds the Court's filing fee, and will pay the balance of the arbitrator's fees and administrative costs to the extent required to enforce the Arbitration Agreement. *Id.*

Additionally, courts have found arbitration agreements to be substantively unconscionable where the employee was only allowed to engage in limited discovery. *Armendariz*, 24 Cal. 4th at 104-107. That is not the case here. Per the Arbitration Agreement, the parties may engage in discovery in accordance with the FRCP, permitting the exchange of documents and information, and the taking of depositions. *Id.* Both Plaintiff and Blue Origin "may call witnesses, cross-examine the other party's witnesses, and present evidence during the arbitration proceeding in accordance with the [FRCP], as applied by the arbitrator." *See* Ex. B.

Furthermore, the Arbitration Agreement requires the appointed arbitrator to provide a written decision, and the Arbitration Agreement in no way limits the type of relief awardable. *Id.* Thus, the Arbitration Agreement does not shock the conscience in its terms, and does not impose upon Plaintiff harsh or oppressive terms, and therefore is not substantively unconscionable. (*Compare Armendariz*, 24 Cal. 4th at 104-107).

The *Armendariz* court also held that employees cannot avoid arbitration where the arbitration clause at issue is fundamentally fair and contains certain safeguards protective of an employee's rights. *See Armendariz*, 24 Cal. 4th at 117. Specifically, the court held that a broad arbitration agreement that encompasses statutory rights, such as those under the FEHA, must contain safeguards to ensure that the employee has an opportunity to vindicate those rights, such as a neutral arbitrator, adequate discovery, and broad relief. *Id.* at 102. Absent these safeguards, an arbitration agreement could be found invalid. The California Supreme Court later found the *Armendariz* essential fairness requirements equally applicable to claims for wrongful termination in violation of public policy—which is also asserted here. *Little*, 29 Cal. 4th at 1076.

The *Armendariz* fairness safeguards described above are in place here. As noted above, the Arbitration Agreement expressly incorporates the rules of JAMS, which prove a framework for selecting an appropriate neutral. *See* Ex. B. The Arbitration Agreement expressly entitles the parties to conduct discovery. *Id.* The Arbitration Agreement requires a written decision containing essential findings and conclusions. *Id.* Neither the Arbitration Agreement nor the JAMS Rules limit the relief that can be awarded. *Id.* Considering all of the above, Plaintiff cannot avoid arbitration based on any alleged unfairness.

Blue Origin anticipates that Plaintiff will argue the Arbitration Agreement is substantively unconscionable due to the inclusion of some provisions that are unenforceable in California. When Plaintiff was hired in August 2020, he was hired to work in Kent, Washington. *See* Grant Decl., ¶¶ 3,5, Ex. B. Thus, he was not hired as a California employee; Plaintiff only continued to work in California because he did not move to Washington as initially agreed. *Id.* Blue Origin does not seek to enforce any aspects of the Arbitration Agreement that are impermissible in California. And, the Arbitration Agreement expressly states that if any part of the Arbitration Agreement is found to be unenforceable, the severability clause of the Employment Agreement will apply. *See* Ex. B. Blue Origin's Arbitration Agreement with Plaintiff is neither procedurally nor substantively unconscionable, and should be enforced to compel Plaintiff to submit his claims to arbitration.

### F. Litigation Should Be Stayed Pending Arbitration.

If this Court compels Plaintiff to honor the Arbitration Agreement and arbitrate his claims, it is required to "*stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate* or until such earlier time as the court specifies." Cal. Civ. Proc. Code § 1281.4. Under Section 1281.4, "any party to a judicial proceeding . . . is entitled to a stay of the proceedings whenever (1) the arbitration of a controversy has been ordered, and (2) that controversy is also an issue involved in the pending judicial action." *Marcus v. Superior Court*, 75 Cal. App. 3d 204, 209 (1977). The CCP also provides for cases in which *only a portion* of an action is found to be arbitrable. In said cases, a court may "order arbitration among the parties who have agreed to arbitration and *stay the pending court action or special proceeding pending the outcome of the arbitration proceeding*." Cal. Civ. Proc. Code § 1281.2. Thus, Blue Origin respectfully requests that this Court stay all proceedings until arbitration occurs and a final decision is reached.

## IV. CONCLUSION

Plaintiff signed an Agreement requiring claims related to his employment to be resolved in binding arbitration. The Agreement must be enforced absent a finding that it is unconscionable or fundamentally unfair. The Agreement is neither. Blue Origin respectfully asks this Court to: (1) order Plaintiff to submit all claims in this case, excluding gender harassment, to binding arbitration; and (2) stay the entire action against Defendants pending the outcome of arbitration.

DATED: February 20, 2024

DAVIS WRIGHT TREMAINE LLP
EMILIO G. GONZALEZ
ARIELLE J. SPINNER

By: /s/ Emilio G. Gonzalez
Emilio G. Gonzalez

Attorneys for Defendants
BLUE ORIGIN LLC and KEVIN LUNDE

PROOF OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On February 20, 2024, I served the foregoing document(s) described as: **DEFENDANT BLUE ORIGIN LLC'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS; MEMORANDUM IN SUPPORT THEREOF** by forwarding a portable document file to the electronic mail address(es) below:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>Shegerian & Associates, Inc.<br>11520 San Vicente Blvd.<br>Los Angeles, CA 90049<br><br>*Attorneys for Plaintiff CRAIG STOKER* | Tel: 310-860-0770<br>Fax: 310-860-0771<br>Email:<br>WReed@shegerianlaw.com<br>JShegerian@shegerianlaw.com<br>calendarclerk@shegerianlaw.com |

**(FROM ELECTRONIC MAIL ADDRESS vanessapalma@dwt.com)** at Suite 2400, 865 South Figueroa Street, Los Angeles, California.

Executed on February 20, 2024, at Los Angeles, California.

☒ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☐ Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Vanessa Palma
Print Name

[signature]
Signature

Journal Technologies Court Portal

# Reschedule a Reservation

Reservation

Reservation ID:
119166584644

Reservation Type:
Motion to Compel Arbitration

Case Number:
23STCV28816

Case Title:
CRAIG STOKER vs BLUE ORIGIN LLC, et al.

Filing Party:
Blue Origin LLC (Defendant)

Location:
Stanley Mosk Courthouse - Department 19

Date/Time:
February 13th 2024, 8:30AM

Status:
RESERVED

Number of Motions:
1

Motions to Reschedule

Motion to Compel Arbitration

***Reschedule To:***
Date: 07/30/2024 8:30 AM
Location: Stanley Mosk Courthouse - Department 19

Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Reschedule Fee | 20.00 | 1 | 20.00 |
| Credit Card Percentage Fee (2.75%) | 0.55 | 1 | 0.55 |
| TOTAL | | | |

Chat

Payment

| | |
|---|---|
| Amount:<br>$20.55 | Type:<br>Visa |
| Account Number:<br>XXXX7701 | Authorization:<br>024026 |
| Payment Date:<br>1969-12-31 | |

Print Receipt | Reserve Another Hearing | View My Reservations

Copyright © Journal Technologies, USA. All rights reserved.

# Journal Technologies Court Portal

# Make a Reservation

CRAIG STOKER vs BLUE ORIGIN LLC, et al.

Case Number: 23STCV28816 Case Type: Civil Unlimited Category: Wrongful Termination
Date Filed: 2023-11-27 Location: Stanley Mosk Courthouse - Department 19

## Reservation

| | |
|---|---|
| Case Name: CRAIG STOKER vs BLUE ORIGIN LLC, et al. | Case Number: 23STCV28816 |
| Type: Motion to Compel Arbitration | Status: RESERVED |
| Filing Party: Blue Origin LLC (Defendant) | Location: Stanley Mosk Courthouse - Department 19 |
| Date/Time: 02/13/2024 8:30 AM | Number of Motions: 1 |
| Reservation ID: 119166584644 | Confirmation Code: CR-QQEZNFBPBGNXSSCFS |

## Fees

| Description | Fee | Qty | Amount |
|---|---|---|---|
| Motion to Compel Arbitration | 60.00 | 1 | 60.00 |
| Credit Card Percentage Fee (2.75%) | 1.65 | 1 | 1.65 |
| TOTAL | | | **$61.65** |

## Payment

| | |
|---|---|
| Amount: $61.65 | Type: Visa |
| Account Number: XXXX7701 | Authorization: 020684 |
| Payment Date: 1969-12-31 | |

Print Receipt | Reserve Another Hearing | View My Reservations

Copyright © Journal Technologies, USA. All rights reserved.

Chat

# EXHIBIT 1(b)(15)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 19

**23STCV28816**
**CRAIG STOKER vs BLUE ORIGIN LLC, et al.**

May 28, 2024
1:43 PM

Judge: Honorable Stephanie M. Bowick
Judicial Assistant: Richard Duarte
Courtroom Assistant: Deonna Jones

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Court Order

Judge Stephanie Bowick hereby recuses herself from this litigation in the interests of justice, pursuant to Code of Civil Procedure section 170.1(a)(6)(A)(i). The issue of disqualification and recusal is on the Court’s own motion and was not raised by any of the parties.

All future dates pending in Department 19 are hereby advanced and vacated.

The matter is referred to Department 1 of this court for reassignment.

Clerk to give notice.

IT IS SO ORDERED

Certificate of Mailing is attached.

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | FILED<br>Superior Court of California<br>County of Los Angeles<br>05/28/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: R. Duarte Deputy |
| PLAINTIFF/PETITIONER:<br>Craig Stoker | |
| DEFENDANT/RESPONDENT:<br>Blue Origin LLC, et al. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>23STCV28816 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order) of 05/28/2024 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Emilio German Gonzalez
Davis Wright Tremaine LLP
865 South Figueroa Street, 24th Floor
Los Angeles, CA 90017

Carney Shegerian
Shegerian & Associates
11520 San Vicente Blvd
Los Angeles, CA 90049

David W. Slayton, Executive Officer / Clerk of Court

Dated: 05/28/2024

By: R. Duarte
Deputy Clerk

# EXHIBIT 1(b)(16)

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 1

**23STCV28816**
**CRAIG STOKER vs BLUE ORIGIN LLC, et al.**

May 29, 2024
11:44 AM

Judge: Honorable Curtis A. Kin
Judicial Assistant: C. Guerrero
Courtroom Assistant: R. Cruz

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Court Order Re Reassignment Pursuant to Recusal

Good cause appearing and on order of the Court, the above matter is reassigned from Judge Stephanie M. Bowick in Department 19, to Judge Cherol J. Nellon in Department 14 at the Stanley Mosk Courthouse, for all further proceedings.

If any appearing party has not yet exercised a peremptory challenge under 170.6 CCP, peremptory challenges by them to the newly assigned judge must be timely filed within the 15 day period specified in Section 170.6 CCP, with extensions of time pursuant to CCP 1013 if service is by mail. Previously non-appearing parties, if any, have a 15-day statutory period from first appearance to file a peremptory challenge (68616(1) Govt. Code).

Counsel for plaintiff is directed to give notice.

Certificate of Mailing is attached.

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | FILED<br>Superior Court of California<br>County of Los Angeles<br>05/29/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: C. Guerrero Deputy |
| PLAINTIFF/PETITIONER:<br>Craig Stoker | |
| DEFENDANT/RESPONDENT:<br>Blue Origin LLC, et al. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>23STCV28816 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order Re Reassignment Pursuant to Recusal) of 05/29/2024 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Carney Shegerian
Shegerian & Associates
11520 San Vicente Blvd
Los Angeles, CA 90049

David W. Slayton, Executive Officer / Clerk of Court

Dated: 05/29/2024

By: C. Guerrero
Deputy Clerk

# EXHIBIT 1(b)(17)

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp<br><br>**FILED**<br>Superior Court of California<br>County of Los Angeles<br>06/05/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: D. DeLeon Deputy |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | |
| PLAINTIFF:<br>Craig Stoker | |
| DEFENDANT:<br>Blue Origin LLC, et al. | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>23STCV28816 |

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 10/15/2024 | Time: 8:30 AM | Dept.: 14 |
|---|---|---|

NOTICE TO DEFENDANT: THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608, subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 06/05/2024

Judicial Officer
Cherol J. Nellon / Judge

**CERTIFICATE OF SERVICE**

I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

Carney Shegerian
11520 San Vicente Blvd
Los Angeles, CA 90049

David W. Slayton, Executive Officer / Clerk of Court

Dated: 06/05/2024

By D. DeLeon
Deputy Clerk

# EXHIBIT 1(b)(18)

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
William Reed, Esq., State Bar No. 261931
WReed@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number: (310) 860 0770
Facsimile Number: (310) 860 0771

Electronically FILED by Superior Court of California, County of Los Angeles 6/05/2024 11:18 AM David W. Slayton, Executive Officer/Clerk of Court, By S. Bolden, Deputy Clerk

Attorneys for Plaintiff,
CRAIG STOKER

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| CRAIG STOKER,<br><br>Plaintiff,<br><br>vs.<br><br>BLUE ORIGIN LLC, a limited liability company, KEVIN LUNDE, an individual, and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No.: 23STCV28816<br><br>**The Honorable Cherol J. Nellon**<br><br>**PLAINTIFF CRAIG STOKER'S NOTICE OF CASE REASSIGNMENT**<br><br>Dept,: 14<br>Action Filed: November 17, 2023 |

**TO ALL PARTIES AND THIS HONORABLE COURT:**

PLEASE TAKE NOTICE that pursuant to the Court's Order attached as **Exhibit 1**, the above-entitled matter, previously assigned to the Honorable Stephanie M. Bowick, has been reassigned to the Honorable Cherol J. Nellon in Department 14 at Stanley Mosk Courthouse. Plaintiff was ordered to give notice.

Dated: June 5, 2024

SHEGERIAN & ASSOCIATES, INC.

By: ______________________________
William Reed, Esq.

Attorneys for Plaintiff,
CRAIG STOKER

# EXHIBIT 1

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | FILED<br>Superior Court of California<br>County of Los Angeles<br>05/29/2024<br>David W. Slayton, Executive Officer / Clerk of Court<br>By: C. Guerrero Deputy |
| PLAINTIFF/PETITIONER:<br>Craig Stoker | |
| DEFENDANT/RESPONDENT:<br>Blue Origin LLC, et al. | |
| CERTIFICATE OF MAILING | CASE NUMBER:<br>23STCV28816 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order Re Reassignment Pursuant to Recusal) of 05/29/2024 upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Carney Shegerian
Shegerian & Associates
11520 San Vicente Blvd
Los Angeles, CA 90049

David W. Slayton, Executive Officer / Clerk of Court

Dated: 05/29/2024

By: C. Guerrero
Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**Civil Division**

Central District, Stanley Mosk Courthouse, Department 1

**23STCV28816**
**CRAIG STOKER vs BLUE ORIGIN LLC, et al.**

May 29, 2024
11:44 AM

Judge: Honorable Curtis A. Kin
Judicial Assistant: C. Guerrero
Courtroom Assistant: R. Cruz

CSR: None
ERM: None
Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s): No Appearances

**NATURE OF PROCEEDINGS:** Court Order Re Reassignment Pursuant to Recusal

Good cause appearing and on order of the Court, the above matter is reassigned from Judge Stephanie M. Bowick in Department 19, to Judge Cherol J. Nellon in Department 14 at the Stanley Mosk Courthouse, for all further proceedings.

If any appearing party has not yet exercised a peremptory challenge under 170.6 CCP, peremptory challenges by them to the newly assigned judge must be timely filed within the 15 day period specified in Section 170.6 CCP, with extensions of time pursuant to CCP 1013 if service is by mail. Previously non-appearing parties, if any, have a 15-day statutory period from first appearance to file a peremptory challenge (68616(1) Govt. Code).

Counsel for plaintiff is directed to give notice.

Certificate of Mailing is attached.

## PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 145 S. Spring Street, Suite 400, Los Angeles, California 90012.

On June 5, 2024, I served the foregoing document, described as **"PLAINTIFF CRAIG STOKER'S NOTICE OF CASE REASSIGNMENT,"** on all interested parties in this action as follows:

**Emilio Gonzalez, Esq.**
**Arielle Spinner, Esq.**
**David Rund, Esq.**
**Rob Mendozs, Esq.**
**Davis Wright Tremaine LLP**
**865 South Figueroa Street, Suite 2400**
**Los Angeles, CA 90017-2566**
**EmilioGonzalez@dwt.com**
**ArielleSpinner@dwt.com**
**DavidRund@dwt.com**
**RobMendoza@dwt.com**
**VanessaPalma@dwt.com**

☒ **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the attorney at the offices of the addressee.

☒ **(STATE)** I declare, under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on June 5, 2024, at Los Angeles, California.

Rebecca Vasquez

# EXHIBIT 1(b)(19)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
BLUE ORIGIN, LLC and KEVIN LUNDE
(sued erroneously as KEVIN LUNDY)

**Electronically FILED by Superior Court of California, County of Los Angeles 6/13/2024 4:37 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Abraham, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN, LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive

Defendants.

Case No. 23STCV28816

**NOTICE OF RESCHEDULED HEARING DATE AND LOCATION FOR DEFENDANTS BLUE ORIGIN, LLC'S AND KEVIN LUNDE'S DEMURRER TO PLAINTIFF CRAIG STOKER'S COMPLAINT**

Assigned to the Hon. Cherol J. Nellon
Dept.: 14

**RESERVATION ID: 845305525256**

New Hearing Date: August 7, 2024
New Hearing Time: 8:30 a.m.

Action Filed: November 27, 2023

**TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, following the reassignment of the above-captioned matter to Hon. Cherol J. Nellon in Department 14, the hearing on Defendants Blue Origin, LLC's and Kevin Lunde's Demurrer to Plaintiff's Complaint has been rescheduled as follows:

| | |
|---|---|
| DATE: | **AUGUST 7, 2024** |
| TIME: | **8:30 A.M.** |
| DEPT: | **14** |

DATED: June 13, 2024

DAVIS WRIGHT TREMAINE LLP
EMILIO G. GONZALEZ
ARIELLE J. SPINNER

By: ______________________
Emilio G. Gonzalez

Attorneys for Defendants
BLUE ORIGIN, LLC and KEVIN LUNDE



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**PROOF OF SERVICE**
*Stoker v. Blue Origin LLC, et al.*
LASC Case No. 23STCV28816
DWT C/M # 0065536-000044

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine, LLP, 865South Figueroa Street, Suite 2400, Los Angeles, California 90017-2566.

On June 13, 2024, I served the following document(s): **NOTICE OF RESCHEDULED HEARING DATE AND LOCATION FOR DEFENDANTS BLUE ORIGIN, LLC'S AND KEVIN LUNDE'S DEMURRER TO PLAINTIFF CRAIG STOKER'S COMPLAINT** as follows:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>SHEGERIAN & ASSOCIATES, INC.<br>11520 San Vicente Boulevard<br>Los Angeles, California 90049<br>Telephone Number: (310) 860 0770<br>Facsimile Number: (310) 860 0771<br>Email: JShegerian@shegerianlaw.com<br>Email: WReed@shegerianlaw.com<br>Email: calendarclerk@shegerianlaw.com | *Attorneys for Plaintiff,* **CRAIG STOKER** |

☒ (**VIA U.S. MAIL**) - I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

☒ (**VIA ELECTRONIC MAIL**) – On June 13, 2024 I electronically served a true and correct copy by e-mail from electronic e-mail address: ***robmendoza@dwt.com*** on the email addresses of the interested parties in this action as noted above.

☐ (VIA OVERNIGHT DELIVERY) and by sealing the envelope and placing it for collection and delivery by [OVERNIGHT SERVICE] with delivery fees paid or provided for in accordance with ordinary business practices.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed on June 13, 2024, at Los Angeles, California.

Robert Mendoza
Print Name

[signature]
Signature



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1(b)(20)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
BLUE ORIGIN, LLC and KEVIN LUNDE
(sued erroneously as KEVIN LUNDY)

**Electronically FILED by Superior Court of California, County of Los Angeles 6/13/2024 4:37 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Abraham, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN, LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive

Defendants.

Case No. 23STCV28816

**NOTICE OF RESCHEDULED HEARING DATE AND LOCATION FOR DEFENDANT BLUE ORIGIN, LLC'S MOTION TO COMPEL ARBITRATION**

Assigned to the Hon. Cherol J. Nellon
Dept.: 14

**RESERVATION ID: 286826024343**

New Hearing Date: August 7, 2024
New Hearing Time: 8:30 a.m.

Action Filed: November 27, 2023

**TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, following the reassignment of the above-captioned matter to Hon. Cherol J. Nellon in Department 14, the hearing on Defendant Blue Origin, LLC's Motion to Compel Arbitration has been rescheduled as follows:

| | |
|---|---|
| DATE: | **AUGUST 7, 2024** |
| TIME: | **8:30 A.M.** |
| DEPT: | **14** |

DATED: June 13, 2024

DAVIS WRIGHT TREMAINE LLP
EMILIO G. GONZALEZ
ARIELLE J. SPINNER

By: ______________________
Emilio G. Gonzalez

Attorneys for Defendants
BLUE ORIGIN, LLC and KEVIN LUNDE



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**PROOF OF SERVICE**
*Stoker v. Blue Origin LLC, et al.*
LASC Case No. 23STCV28816
DWT C/M # 0065536-000044

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine, LLP, 865South Figueroa Street, Suite 2400, Los Angeles, California 90017-2566.

On June 13, 2024, I served the following document(s): **NOTICE OF RESCHEDULED HEARING DATE AND LOCATION FOR DEFENDANT BLUE ORIGIN, LLC'S MOTION TO COMPEL ARBITRATION** as follows:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>SHEGERIAN & ASSOCIATES, INC.<br>11520 San Vicente Boulevard<br>Los Angeles, California 90049<br>Telephone Number: (310) 860 0770<br>Facsimile Number: (310) 860 0771<br>Email: JShegerian@shegerianlaw.com<br>Email: WReed@shegerianlaw.com<br>Email: calendarclerk@shegerianlaw.com | *Attorneys for Plaintiff,* **CRAIG STOKER** |

☒ (**VIA U.S. MAIL**) - I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

☒ (**VIA ELECTRONIC MAIL**) – On June 13, 2024 I electronically served a true and correct copy by e-mail from electronic e-mail address: ***robmendoza@dwt.com*** on the email addresses of the interested parties in this action as noted above.

☐ (VIA OVERNIGHT DELIVERY) and by sealing the envelope and placing it for collection and delivery by [OVERNIGHT SERVICE] with delivery fees paid or provided for in accordance with ordinary business practices.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed on June 13, 2024, at Los Angeles, California.

| | |
|---|---|
| Robert Mendoza | *[signature]* |
| Print Name | Signature |



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1(b)(21)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
BLUE ORIGIN LLC

**Electronically FILED by Superior Court of California, County of Los Angeles 7/02/2024 7:29 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Tang, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **23STCV28816**

**DECLARATION OF ARIELLE J. SPINNER IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Assigned to the Hon. Cherol Nellon
Dept.: 14

Hearing Date: August 22, 2024
Hearing Time: 8:30 a.m.
**RES ID: 028462594858**

Action Filed: November 27, 2023

**DECLARATION OF ARIELLE J. SPINNER**

I, Arielle J. Spinner, declare and state as follows:

1. I am an attorney admitted to practice in the State of California and an associate at the law firm of Davis Wright Tremaine LLP. I am counsel for Defendants Blue Origin LLC ("Blue Origin") and Kevin Lunde, in the above-captioned lawsuit. I submit this declaration in support of Blue Origin's Motion to Compel Arbitration. I am over the age of eighteen, and, if called upon as a witness, could and would competently testify to each of the facts set forth herein.

2. Plaintiff Craig Stoker ("Plaintiff") filed this lawsuit against Blue Origin and Kevin Lunde on November 27, 2023. A true and correct copy of the Complaint for Damages that was served on Blue Origin is attached hereto as Exhibit D.

3. On December 11, 2023, Defendants' counsel wrote to Plaintiff's counsel, attaching a copy of the Arbitration Agreement, and explaining that the Arbitration Agreement mandates arbitration of 11 of the 12 causes of action asserted in Plaintiff's Complaint, excluding Plaintiff's claim for gender-based harassment. Later that same day, we agreed to meet and confer by videoconference on December 13, 2023.

4. Counsel for Defendants and Plaintiff met and conferred by videoconference and email between December 13, 2023 and January 9, 2024. Among other things, Defendants' counsel pointed out that the Arbitration Agreement excluded sexual harassment claims and that the sexual harassment claim was not viable, and therefore the Parties should agree to arbitrate all remaining claims. Plaintiff's counsel refused to agree to arbitrate any of Plaintiff's claims and claimed, among other things, that the inclusion of a sexual harassment claim meant the entire action must remain in court. During the Parties' meet and confer discussions, Plaintiff's counsel asserted that the federal EFAA precludes the enforcement of the Arbitration Agreement as to all of Plaintiff's claims, simply because one of his 12 claims is gender harassment. Attached hereto as Exhibit E is a true and correct copy of the aforementioned email correspondence between Defendants' counsel and Plaintiff's counsel.

5. Defendants' counsel and Plaintiff's counsel agreed to stay Defendants' responsive pleading deadlines and, at Plaintiff's request, to additional pages beyond the standard page limits



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

for Opposition and Reply briefs. A true and correct copy of the Joint Stipulation signed by the Parties and filed on January 18, 2024 is attached hereto as Exhibit F.

6. On January 19, 2024, Blue Origin secured the then-first available hearing date for this Motion – July 30, 2024 at 8:30 a.m. Subsequently, this matter was reassigned from Hon. Stephanie Bowick to Hon. Cherol Nellon, so the hearing date of this motion was vacated, necessitating the reservation of a new hearing date and the instant re-filing of the Motion to Compel Arbitration. Accordingly, Blue Origin secured the hearing date of August 22, 2024 at 8:30 a.m.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on July 2, 2024 at Los Angeles, California.

Arielle J. Spinner

Arielle J. Spinner



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT D

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
William Reed, Esq., State Bar No. 261931
WReed@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number: (310) 860 0770
Facsimile Number: (310) 860 0771

Attorneys for Plaintiff,
CRAIG STOKER

Electronically FILED by Superior Court of California, County of Los Angeles 11/27/2023 2:16 PM David W. Slayton, Executive Officer/Clerk of Court, By S. Ruiz, Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company. KEVIN LUNDY. an individual. and DOES 1 to 100, inclusive,

Defendants.

Case No.: 23STCV28816

**PLAINTIFF CRAIG STOKER'S COMPLAINT FOR DAMAGES FOR:**

**(1) VIOLATION OF LABOR CODE § 1102.5 (b) & (c) (WHISTLEBLOWER RETALIATION);**

**(2) VIOLATION OF LABOR CODE § 232.5 (RETALIATION FOR REPORTING WORKING CONDITIONS);**

**(3) VIOLATION OF LABOR CODE § 6310 (RETALIATION FOR DISCLOSING UNSAFE WORKING CONDITIONS);**

**(4) DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF FEHA;**

**(5) HARASSMENT ON THE BASIS OF GENDER IN VIOLATION OF FEHA;**

**(6) RETALIATION IN VIOLATION OF THE FEHA;**

**(7) FAILURE TO PREVENT DISCRIMINATION, HARASSMENT. AND/OR**

**RETALIATION IN VIOLATION OF FEHA;**

**(8) BREACH OF EXPRESS ORAL CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

**(9) BREACH OF IMPLIED-IN-FACT CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

**(10) NEGLIGENT HIRING, SUPERVISION, AND RETENTION;**

**(11) WRONGFUL TERMINATION OF EMPLOYMENT IN VIOLATION OF PUBLIC POLICY; *and***

**(12) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

**DEMAND FOR JURY TRIAL**

## TABLE OF CONTENTS

Page

SUMMARY ..... 1

PARTIES ..... 1

VENUE ..... 3

FACTS COMMON TO ALL CAUSES OF ACTION ..... 4

- Plaintiff's Hire ..... 4
- Plaintiff's Performance ..... 4
- Plaintiff's Protected Status and Activities ..... 4
- General Synopsis of Underlying Facts ..... 4
  - Stoker Blows the First Whistle ..... 4
  - Stoker Blows the Whistle, Again ..... 7
  - After His Complaints Against Blue Origin's CEO, Stoker Confronts Retaliation ..... 8
  - Stoker Learns that A Fellow Employee Nearly Asphyxiated, And Immediately Voices His Workplace Safety Concerns ..... 9
  - Stoker Raises Safety Concerns of Employees Working "24-hour" Shifts ..... 9
  - Unsurprisingly, Blue Origin's (Now) Internal Investigation Absolved Its CEO of Any Wrongdoing ..... 10
  - Stoker Schedules a Follow-Up Meeting to Inquire into the Investigation and Express His Grave Concerns Re Its Thoroughness, Propriety, and Impartiality ..... 13
  - Based on Stoker's Reported "24 Hour Shift" Safety Concerns, Stevens Issues an Interim Policy on "Fatigue Management" ..... 14
  - Stoker Follows Up on the Concerns Raised at the August 3, 2022 Meeting ..... 15
  - With No Further Action, Beatty Quickly Closes the Investigation ..... 15
  - Stoker Raises Ethical / Legal Concerts to In House Counsel ..... 16
  - Stoker Raises Ethical / Legal Concerts to In House Counsel ..... 17
  - Defendants' Termination of Plaintiff's Employment ..... 18

FIRST CAUSE OF ACTION ..... 20

- Whistleblower Retaliation (Violation of Labor Code § 1102.5, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive ..... 20

SECOND CAUSE OF ACTION ..... 22

Whistleblower Retaliation (Violation of Cal. Labor Code § 232.5) Against Blue Origin and Does 1 to 100, Inclusive ..... 22

THIRD CAUSE OF ACTION ..... 23

Whistleblower Retaliation (Violation of Labor Code § 6310) Against Blue Origin and Does 1 to 100, Inclusive ..... 23

FOURTH CAUSE OF ACTION ..... 24

Discrimination on the Basis of Sex and Gender (Government Code § 12900, et seq.) Against Blue Origin and Does 1 to 100, Inclusive ..... 24

FIFTH CAUSE OF ACTION ..... 25

Hostile Work Environment / Harassment on the Basis of Gender/Sex (Government Code § 12900, et seq.) Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive ..... 25

SIXTH CAUSE OF ACTION ..... 26

Retaliation for Engaging in Protected Activity (Violation of Government Code § 12900, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive ..... 26

SEVENTH CAUSE OF ACTION ..... 27

Failure to Prevent Discrimination, Harassment, and/or Retaliation (Violation of Government Code § 12900, *et seq.*) Against Blue Origin and Does 1 to 100, Inclusive ..... 27

EIGHTH CAUSE OF ACTION ..... 28

Breach of Express Oral Contract Not to Terminate Employment Without Good Cause (*Marvin v. Marvin* (1976) 18 Cal.3d 660) Against Blue Origin and Does 1 to 100, Inclusive ..... 28

NINTH CAUSE OF ACTION ..... 29

Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6 Cal.App.4th 603; Civil Code § 1622) Against Blue Origin and Does 1 to 100, Inclusive ..... 29

TENTH CAUSE OF ACTION ..... 30

Negligent Hiring, Supervision, and Retention (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038) Against Blue Origin and Does 1 to 100, Inclusive ..... 30

ELEVENTH CAUSE OF ACTION ..... 31

Wrongful Termination of Employment in Violation of Public Policy (*Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167) Against Blue Origin and Does 1 to 100, Inclusive ..... 31

TWELFTH CAUSE OF ACTION ..... 32

Intentional Infliction of Emotional Distress (*Hughes v. Pair* (2009) 46 Cal.4th 1035) Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive ................ 32

PRAYER ........................................................................................................ 33

Plaintiff, Craig Stoker, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Craig Stoker ("plaintiff" or "Stoker"), whose employment with defendant Blue Origin LLC ("Blue Origin") was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b), Labor Code section 1102.5(j), and Code of Civil Procedure section 1021.5.

## PARTIES

1. *Plaintiff:* Plaintiff Stoker is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:* Defendant Blue Origin is, and at all times mentioned in this Complaint was, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Defendants' place of business, where the following causes of action took place, was and is in the County of Los Angeles, at 21650 Oxnard Street, Suite 1555, Woodland Hills, CA 91367. Defendant Kevin Lundy ("Lundy") is, and at all times mentioned in this Complaint was, a manager with defendants. Defendant Lundy is, and at all times mentioned in this Complaint was believed to be, a resident of Los Angeles County, California.

3. *Doe defendants:* Defendants Does 1 to 100, inclusive, are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions

mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

4. *Relationship of defendants:* All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i). All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

5. All Defendants both directly and indirectly employed plaintiff Stoker, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

///

///

6. In addition, defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

7. Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## VENUE

8. The actions at issue in this case occurred in the State of California, in the County of Los Angeles. Under the California Fair Employment and Housing Act, this case can alternatively, at Plaintiff's choice, be filed:

> [I]n a county in which the department has an office, ***in a county in which unlawful practices are alleged to have been committed***, in the county in which records relevant to the alleged unlawful practices are maintained and administered, in the county in which the person claiming to be aggrieved would have worked or would have had access to public accommodation, but for the alleged unlawful practices, in the county of the defendant's residence or principal office. . . (Italics and bolding added)

(California Government Code § 12965(b).)

9. Here, the plaintiff worked primarily in California in the County of Los Angeles. The location where plaintiff worked was located in Woodland Hills, California. The majority of the unlawful actions on the part of the defendants occurred at said Woodland Hills location.

10. "[I]n the absence of an affirmative showing to the contrary, the presumption is that the county in which the title of the actions shows that the case is brought is, prima facie, the proper county for the commencement and trial of the action." (*Mission Imports v. Sup. Crt.* (1982) 31 Cal.3d 921, 928.) The FEHA venue statute – section 12965(b) – thus affords a wide choice of venue to persons who bring actions under FEHA. (*Brown v. Sup. Crt.* (1984) 37 Cal.3d 477, 486.) "[T]he special provisions of the FEHA venue statute control in cases involving FEHA claims joined with non-FEHA claims arising from the same facts." (*Id.* at 487.)

///

## FACTS COMMON TO ALL CAUSES OF ACTION

### Plaintiff's Hire

11. Plaintiff, now 62 years of age, began his employment with Blue Origin as an Engine Program Director on or around October 19, 2020.

### Plaintiff's Performance

12. Throughout his employment, Stoker performed exceptionally. Never did he have a significant performance issue. Leading up to his wrongful termination, Stoker consistently received praise in his performance reviews. In his 2021 annual evaluation, Stoker earned an "Outstanding Contribution" overall rating.

13. Stoker's 2022 semiannual review rated his performance "on track" and noted that "***Craig and the BE-4 team have done an outstanding job identifying engineering and program talent to bring into Blue engines that are helping increase the experience and discipline that we need to be successful… BE-4 is an incredibly difficult program being watched through a magnifying glass both internally and externally. Your patience, professionalism, grit and accountability throughout this year has been admirable.***"

### Plaintiff's Protected Status and Activities

14. Stoker is over 40 years of age.

15. Stoker is a male.

16. Stoker engaged in protected activities. Specifically, Stoker made numerous complaints regarding *safety issues*, reported a *hostile work environment*, and brought to light *ethical violations*.

### General Synopsis of Underlying Facts

#### *Stoker Blows the First Whistle*

17. In May of 2022, a meeting was held between Stoker, Linda Cova ("Cova") – a female – Vice President of the Engines Business Unit, and Mary Plunkett ("Plunkett"), – a female – Senior Vice President of Human Resources. Stoker explained to these female leaders that Robert Smith's ("Smith"), Blue Origin CEO, behavior caused employees (mainly male) to frequently violate safety procedures and processes in order to meet

unreasonable deadlines. Then when issues inevitably arose (including those related to safety), Smith would explode. On information and belief, Kevin Lundy ("Lundy") was informed of this complaint and was involved in Plunkett and Cova's actions, or inactions, thereafter.

18. On or around May 23, 2022, Stoker sent an email to Cova and Plunkett, to reiterate and report other serious concerns related to the behavior of CEO Smith and the ever present hostile work environment that was hampering Blue Origin's ability to operate safely, efficiently, or competently. On information and belief Lundy was involved with the receipt and processing of this complaint.

19. This email follows:

a. "Myself, my leadership team and others throughout the company should not have to constantly apologize and make excuses to ourselves and our teams for the **CEO's bad behavior**. We spend significant time smoothing things over, building back morale, repairing damage, stopping people from overreacting to **direction to violate policies and procedures** and guiding them in making the right decisions. By continuing to accept this behavior we are all contributing to creating a **hostile work environment**, **repeating the Space Shuttle missteps discussed at Safety Day this year and are not staying true to the Blue Leadership Principles**."

b. "Therefore, I want to **record a formal complaint against Robert Smith** for creating a ***hostile work environment*** **and selectively targeting people** to assign individual blame for institution failings. The hostile work environment and targeting are **impacting the ability of Blue to execute work, impacting the health and wellbeing of my team and I** (and other across the company), **demoralizing the entire company** and **creating a *safety* and quality hazard for our people, products and customers**. The fact that we work for a private company does not mean we should accept this behavior and work environment that is **inconsistent with the *state and federal laws* that govern the workplace**."

///

c. "Hostile working environment examples are:"

- "Pitting BU and function against each other"
- "Unacceptably harsh tone, behavior and bullying in emails, in discussions and in meetings"
- "Demanding the impossible completion of tasks and schedules and not listening to facts and data"
- "Lack of clear direction leading to constant 'bring me another rock,'"
- "Demeaning direct and indirect communication and discussion"
- "Demanding people violate procedures and processes and take significant risk and then chastising the team and individuals when issues occur"
- "Shooting the messenger and individual blame environment"

d. "Institutional failing include:"

- "Lack of adequate resources, capacity and capability to complete assigned tasks"
- "Immature and inadequate process, procedures and tools"
- "Inadequately trained and experienced personnel to do assigned work"
- "Team burnout leading to mistakes because of constant firefighting and unrealistic goals, schedules and objectives"
- "Schedule above all else approach to execution including sacrificing quality and safety"
- "Inadequate escalation of issues and people moving forward with work instead of stopping to address issues and concerns because of shooting the messenger environment"
- "Lack of institutional accountability for poor decision making that puts us in our current position"

e. "Thank you for your support in this critical matter"

///

20. Stoker also reported that, on at least two occasions in December of 2020 and September of 2021, teams were being forced to work 24-hour shifts, and that the resulting exhaustion and burnout was leading to mistakes that required constant "firefighting." Stoker, thus impressed that company guidelines were needed to avoid careless errors and mistakes that appeared to be caused only by sleep deprivation.

21. Plunkett and Cova (and, on information and belief, by proxy Lundy) promised to take action to investigate Stoker's concerns, and in a case like this involving Senior Leadership, outside counsel would likely be utilized to investigate.

22. At that same meeting, Stoker inquired as to the status of an ongoing investigation into Smith's behavior, of which he was aware because he had been previously interviewed. Stoker echoed those significant concerns regarding Smith's behavior. A dismissive Plunkett (who was, on information and belief, also speaking on behalf of Cova and Lundy) indicated that the investigation had been closed out and that Smith was receiving "coaching."

23. Stoker's complaints to female leadership – *i.e.,* Cova and Plunkett – were, for all intent and purpose, disregarded. Sadly, this was the beginning of a trend where female executives, supervisors and human resources directors, would purposefully ignore Stokers legitimate concerns and complaints, on information and belief, due to his male gender.

24. On information and belief, influenced by the cat's paw, Lundy disregarded Stoker's complaints and expected Stoker, because he was a male, to buck up and grin and bear it.

***Stoker Blows the Whistle, Again***

25. After Stoker's May meeting with Cova and Plunkett, the female executives assigned Melissa Beatty ("Beatty"), – a female – Senior Director of Human Resources Operations, to lead the investigation into Stoker's complaints.

26. In May and June of 2022, Stoker met with Beatty to further express and explain his concerns regarding Smith.

///

27. At the meeting on or around May 24, 2022, Stoker was informed that an outside counsel would be used to complete the investigation since Plaintiff's complaint was against the CEO. At Beatty's request, Stoker walked her through his formal complaint and listed people who either witnessed, or were the subject of, the behavior outlined in his written claim.

28. At the meeting on or around June 9, 2022, Stoker expanded on his concerns. While doing so, he expressed his fear that Smith's behavior would lead to missteps similar to those demonstrated at "Safety Day" the previous January, where a former astronaut was invited to speak to Blue Origin employees regarding shuttle disasters and the circumstances that caused those incidents. ***Stoker specifically noted that, presently, there were several such issues also occurring at Blue Origin***, such as: **(i)** having a narrow focus on schedule above all else, **(ii)** ignoring engineering input, and **(iii)** not having strong safety and quality programs in place.

29. Sadly, Stoker's concerns were *yet again* ignored by a senior female director. On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***After His Complaints Against Blue Origin's CEO, Stoker Confronts Retaliation***

30. Since Stoker started his employment working from home in October of 2020, he did not have a workstation at the Los Angeles office. But by June of 2022, Blue Origin employees were regularly reporting to said office, including Stoker. Yet, Stoker, despite being the most senior employee at the LA branch, was refused a permanent workstation – unlike any other employee there.

31. On information and belief, Kevin Lundy ("Lundy"), the manager of the LA Branch – at the direction of Blue Origin directors such as Smith, Cova, and Beatty – refused to assign Stoker a permanent workstation. By having the branch's most senior employee frequently bounce around from desk to desk, making room for less experienced and lower ranking employees, Lundy actively sought to embarrass Stoker in front of his peers.

32. On several occasions Stoker asked for a permanent workstation, but as usually, he was totally ignored.

33. For the remainder of his tenure with Blue Origin, Stoker was regularly directed by Lundy to move from desk to desk.

***Stoker Learns that A Fellow Employee Nearly Asphyxiated, And Immediately Voices His Workplace Safety Concerns***

34. During Summer 2022, Stoker learned that a fellow employee had almost asphyxiated while working under an engine nozzle during a nitrogen purge. Despite the fact that industry practice required barriers and notification systems in the areas subject to nitrogen purges to make employees aware of the imminent danger, neither of those systems were in place at the time.

35. When Stoker brought these concerns to Michael Stevens ("Stevens"), Vice President of Safety and Mission Assurance, he was brushed off, and dismissively told that ***Blue Origin could not have safety procedures for everything***. Instead, Stevens blamed the employee – also a male – for not knowing that the area would be undergoing a nitrogen purge.

36. On information and belief, this – fare for yourself, you're a male, attitude – was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***Stoker Raises Safety Concerns of Employees Working "24-hour" Shifts***

37. On or around August 1, 2022, in an email to Cova, Beatty, Dawn Lovely, Michael Eilola, Jason Priebe, Rob Brazier, Robert Josker, and Keith Klaus, Stoker wrote:

a. "Congratulations again to you and the team on getting F1 delivered to LS1. I am as excited as anyone about this accomplishment, **but we have to learn from this and ensure the safety of our teams**. We had approximately **9 people work 24+ hours on the final day** to get this engine out the door. We had a similar situation last December where several of our teammates worked 26+ hours to complete a PQ engine and get it out the door. While I fully appreciate the extra effort, understand the schedule pressure and love the enthusiasm, I believe we need to generate a near miss to drive a change. I DO NOT

want an investigation that identifies the 9 employees and provides any kind of discipline. **What I want is a Near Miss that drives the implementation of work place rules that define the max hours per day, max days in a row, max hours per week, etc. that our employees can work to clearly establish a culture of safety over schedule**. We know the cause of the issue: technical and production debt, schedule pressure and lack of adequate resources and so a big investigation should not be required, but we absolutely must establish work place rules to **protect our people from themselves and ensure they understand that we value their safety over schedule**."

38. Human Resources Partner, Julie Grant ("Grant") – a female – was assigned to discuss these issues. As with Stoker's *previous* complaints made to female directors, his legitimate safety complaints, raised to protect his fellow (mainly male) employees from physical and emotional injury, were ignored.

39. On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***Unsurprisingly, Blue Origin's (Now) Internal Investigation Absolved Its CEO of Any Wrongdoing***

40. On or around August 1, 2022, Beatty scheduled a meeting with Stoker to review *her* investigative findings. While Beatty was explaining that Stoker's complaints did not meet the legal definition of a hostile work environment, she informed Stoker that she had *personally* conducted the investigation and that outside counsel was only used to review her findings.

41. Given the nature, severity, and hostility of Smiths egregious conduct, and the fact that Smith has numerous complaints against him for similar reasons, it is highly questionable whether Beatty also would have absolved Smith's hostilities if Stoker were a female. Beatty, in other words, implicitly expected Stoker to deal with the hostility because he was a male and could "handle it." On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

42. Beatty went on to disclaim that, despite *her* investigation's findings, she **did not have the expertise to investigate the safety concerns and compromising mission assurance**. Thus, these issues had **yet to be investigated** and would be **turned over to Stevens**. Beatty assured Stoker that Stevens would be following up with him to provide him with the results of the investigation. **As of Stokers termination, Stevens has not reached out with *any* questions, feedback, or findings related to this "investigation."**

43. Subsequently, Stoker received an email from Beatty stating:

a. "Mr. Stoker, this letter is in response to your email dated 23 May 2022 which you raised allegations of bullying behavior by CEO Bob Smith. We appreciate you sharing your concerns with us to allow us to review and respond. We take these allegations very seriously and therefore we assigned to Human Resources - Employee Relations to investigate."

b. "On 24 May 2022 and 9 June 2022, you met with me, Melissa Beatty, Senior Director, HR Operations to investigate your concerns. Specifically, you alleged in your letter and in your conversation with me the below concerns: [¶ … ¶ **(1)**] Bob Smith, CEO, demonstrated bad behavior towards the Engines team creating a hostile work environment[ and **(2)**] The CEO's behavior will lead to similar missteps demonstrated in the space shuttle disaster discussed at Safety Day in January 2022."

c. Findings: "To investigate these concerns, we reviewed all the material you provided, including the email communications with Mr. Smith, and interviewed people identified. We have also investigated generally Mr. Smith's treatment of you and your colleagues and specifically whether others feel Mr. Smith treats them harshly."

d. "This investigation did not corroborate your belief that Mr. Smith creates a hostile work environment. Everyone spoken to noted that they are under pressure to deliver engines as the next important step in Blue Origin's plans to build the road to space. Many referenced New Shepard right before the first human flight as an example of the kind of pressure they are experiencing. That said, examples of Mr. Smith's behavior do not rise to the level of a hostile work environment, which is the creation of a discriminatory

environment that a reasonable person would find so abusive or intimidating that it impacts the ability to work. The investigation did demonstrate, however, that some things could be done from a management and morale perspective to further support the team, which I discuss in the recommendations section of this letter. In reviewing the email examples of alleged harsh tone by Mr. Smith, I did not see harsh language. The behavior described was consistent with a CEO's desire and commitment to fulfil Blue's mission."

e. "For the allegation that Mr. Smith's behavior will lead to similar missteps demonstrated in the space shuttle disaster discussed at Safety Day in January 2022, HR is not qualified to assess the quality of design or safety impacts. This question has been referred to Michael Stevens, EHS, for inquiry. This effort is underway."

f. Recommendations:

- "*In process*: hand off to assess impact of management issues on design quality and safety concerns to Michael Stevens and EHS for review."
- "Consider additional support for the team, given the stress of where we are in the development of BE4. Answering the questions: does Engines have the right team in place, and the right people to support you and Engines? Include more regular touch points with HR and consider an executive coach for additional development support."
- "Ask Julie Grant to follow up on the Culture Assessment conducted in March to see where we are with the recommendations. To work with Mr. Stoker to assess the health of his organization, including team morale and resources available to support the work, including hours worked by the team."
- "*In process*: Consider incentives for those working the highest hours.
- "You and your Snr. HR Business Partner should engage much more routinely to ensure we are actively working on all concerns that are identified."
- "Conduct a review of all hours worked and ensure that team members

with the highest hours are taking time off periodically for rest and recovery."

g. Beatty's Lip service: "Mr. Stoker, as stated earlier the organization takes these allegations very seriously and conducted a thorough investigation into the matter. As a result, there were no findings that violated Blue Origin's policy or expectations of behavior. We do believe there is additional support and actions that could and should be taken to support the Engines team, and we have asked your Snr. HR Business Partner, Julie Grant, to work with you and Ms. Cova on potential next steps."

***Stoker Schedules a Follow-Up Meeting to Inquire into the Investigation and Express His Grave Concerns Re Its Thoroughness, Propriety, and Impartiality***

44. On or around August 3, 2022, Plaintiff had a follow-up meeting with Beatty, wherein he pointed out what he believed to be fatal flaws with the investigation. To start, Stoker pointed out that her investigation ignored Blue Origin policies, and instead focused narrowly on whether Smith's actions met the legal definition of a hostile work environment. Stated otherwise, Stoker pointed out that Beatty – a female – had "purposefully" ignored the legal standards (and those spelled out by Blue Origin policy) that clearly defined the applicable standard, again, on information and belief, because Stoker was a male, and could "suck it up." On information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

45. Stoker then attempted to find out who was interviewed and whether Beatty had looked at things more broadly around Robert Smith's behavior relative to Blue Origins published Leadership Principles. In doing so, **Stoker learned that no one from the BE-4 program (where the safety issues occurred), the Blue Engine Business Unit, or Plaintiff's supervisor were interviewed as part of the investigation**. Beatty, quite hollowly, agreed to look further into Plaintiff's concerns. Stoker candidly conveyed this to Beatty that these failures gave him the impression that the investigation was not thoroughly conducted, and the lack of outside input appeared to place the results of the

investigation in serious question.

46. On information and belief, the three female human resources directors, Beatty, Plunkett, and Grant, along with Lundy (*via* the cat's paw) refused to take Stoker's legitimate safety concerns seriously, because he was a male, implying that they expected him to, in effect, "man up" and get tougher.

47. Rather than striving to protect their employees (mainly male) who worked with extremely dangerous tools and materials, whose designs and calculations require intense and exact precision, Beatty, Plunkett, Grant, and Lundy (*via* the cat's paw) expected Stoker, and male Blue Origin employees, to play the tough and machismo stereotypical blue-collar engineer, often emulated in pre-OSHA movies. Not only did this expectation risk billions of dollars, it risked lives, as demonstrated by the near asphyxiation of an employee just months earlier.

***Based on Stoker's Reported "24 Hour Shift" Safety Concerns, Stevens Issues an Interim Policy on "Fatigue Management"***

48. On or around August 4, 2022, Stevens circulated an email to Stoker, Keith Klaus, Dawn Lovely, James Dewees, Nathan Harris, and Priebe entitled: "Interim Safety Note to All Blue on Fatigue Management."

49. In said email, Stevens wrote:

a. "Leaders,"

b. "Please review and comment on the following note that I intend to send to all Blue."

c. "Safety is a core value at Blue. We value safety over schedule."

d. "Blue is in the process of publishing a fatigue management policy applicable to all organizations without an existing fatigue management plan (TFO and LS1 for example). In the interim, follow the below direction if your organization does not have an approved fatigue management plan:"

e. **(1) "Daily Total Work Hour Limit"** [¶ … ¶] "Employees should be limited to a maximum of 12 hours of work in a 24-hour period."

f. **(2) "Off Duty Periods"** [¶ … ¶] "Employees should be provided with a non-work or off duty period of no less than 10 consecutive hours prior to the start of a workday or shift." [¶ … ¶] "A minimum 48-hour rest period after 5 consecutive days of 12-hour shifts is required."

g. **(3) "Weekly Work Limit"** [¶ … ¶] "Employees should not work more than 60 hours in a labor reporting week."

h. **(4) "Consecutive Workday Limit"** [¶ … ¶] "Employees should not work more than 5 consecutive days where each day contains 12 hours (or more) of work without a 48-hour rest period[.]" [¶ … ¶] "Employees should not work more than 14 consecutive days where any amount of work is performed on those days."

i. Stoker felt some solace in that fact that this one complaint was addressed, notably though, it was by a male colleague.

***Stoker Follows Up on the Concerns Raised at the August 3, 2022 Meeting***

50. On or around August 20, 2022, Stoker sent Beatty a follow up email to determine where Beatty was with respect to his concern regarding the investigation and the timing of when he might receive a final investigation letter that addressed these concerns.

51. Mission critical, was that Stoker informed Beatty that he had **not heard back from Stevens on his Mission Assurance *safety* concerns.** On information and belief, this was no coincidence.

52. On further information and belief, this conscious ignorance was coddled, approved, and ratified by Plunkett, Cova, and Lundy (*via* the cat's paw).

***With No Further Action, Beatty Quickly Closes the Investigation***

53. On or around August 22, 2022, Beatty responded that no additional or further investigation was planned or would be conducted, and that Stoker should expect a final closeout letter.

54. Stoker was left stunned by the clear neglect and unwillingness of human resources to conduct a legitimate and comprehensive investigation.

///

55. On information and belief, Beatty, Plunkett, Cove, and Lundy's (*via* the cat's paw) refusal to adequately investigate his concerns was because of his gender. As a male, they expected him to deal with his problems on his own and "whine" less – leaving Stoker with no recourse nor resource to raise his concerns against the company's most powerful officer.

***Stoker Raises Ethical / Legal Concerts to In House Counsel***

56. Recognizing Beatty, Plunkett, Cove, and Lundy (*via* the cat's paw) were not taking him seriously, Stoker met with Ian Savage ("Savage") – a male – Blue Origin Legal Counsel, on or around August 22, 2022. At said meeting, Stoker filed an Ethics concern against Smith and his actions surrounding Blue Origin's contract for the BE-4 engine with United Launch Alliance ("ULA") who builds and operates the Vulcan launch vehicle that the BE-4 engine will fly on.

57. Specifically, the contract required Blue Origin to provide ULA with a minimum of one year of insight into issues and updates surrounding the delivery of rocket engines.

58. Due to Blue Origin production issues, a production gap impacting ULA's business had been forecasted and Stoker wanted to fulfill Blue Origin's contractual obligations and inform ULA of this likelihood.

59. Stoker also wanted to provide additional insight because of the significance of this impact, in that it would almost certainly delay ULA's ability to make delivery to its government customer – the United States Space Force – and its ability to meet Assured Access to space requirements.

60. In this regard, **Stoker reported to Savage that Smith had instructed both he and Cova *not to* fully share these production issues and delivery schedules with ULA**.

61. At the time of Stoker's termination, Stoker had not heard back from legal regarding his concerns. On information and belief, the powers that be stood in the way.

///

///

///

***Stoker Raises Ethical / Legal Concerts to In House Counsel***

62. On or around September 22, 2022, Plaintiff sent an email to Senior Quality Director Henry Digdigan ("Digdigan - male – outlining a significant issue regarding baseline management that required immediate attention. Specifically, there was a discrepancy between the techniques, criteria, inspection methodology, and timing between identical production hardware being processed at the Huntsville and Kent locations, and Plaintiff required a plan of action to resolve the discrepancies.

63. Less than fifteen minutes later, Cova sent a follow-up email concurring with Plaintiff's concerns:

a. "+Mike and Jason (and minus all the IPTs)

b. "Diggy –"

c. "As you can see from the e-mail this is critical to ensuring we are delivering identical engines to ULA. And is just as important for all of the engines we deliver internally. In fact with long life hardware we are providing to NG a lot of these critical inspections will be even more important. Will you please let me know when you will have a team ready that can address this and lets get a weekly going to ensure we get quick closure on this. We are already in process with several flight engines and have to have this in control."

d. "We have a meeting with Bob on Friday to discuss how we control tWO change and this is another topic that we will need to discuss."

e. "Jason/Mike – assuming you will talk to this with Bob at our Friday meeting in addition to tWO control as it should be part of 'following planning' as well as change control."

64. On information and belief, this was lip service meant only to placate Stoker until his termination, which was coddled, approved, and ratified by Plunkett, Beatty, and Lundy (*via* the cat's paw).

///

///

***Defendants' Termination of Plaintiff's Employment***

a. On or around October 7, 2022 – on the heels of his protected activity, and only seven months after Stoker started rocking the "safety" boat – Stoker was called into a meeting with Cova and Grant. At the start, Cova informed Plaintiff that he was being terminated "without cause," because Blue Origin wanted to make a so called "leadership change."

b. When a perplexed Stoker asked why this was happening, Cova simply responded that he had neither done anything wrong, nor had he engaged in any misconduct, and that he would receive a – what later turned out to be a "cappy" – severance offer.

c. On information and belief, Smith spearheaded this termination due to Stoker's complaints against him, his raising of safety / ethical / legal issues, and the fact that many of these reports aimed to hamper his production / delivery schedule.

d. On information and belief, Plunkett, Lundy, Grant, and Beatty supported Smith's termination of Stoker, incensed and concerned by his legitimate complaints showcasing the holes in their expectations and procedures.

65. *Economic damages:* As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

66. Just one week later, Stoker was to hit his cliff to trigger additional equity share.

67. *Non-economic damages:* As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

68. *Punitive damages:* Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a. *Malice:* Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of his age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:* In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of his age, disability, medical leave, race, national origin, ancestry, pregnancy, gender, sexual orientation, and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:* In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive him of legal rights.

69. *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

70. *Exhaustion of administrative remedies:* Prior to filing this action, plaintiff exhausted his administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-

sue letter.

## FIRST CAUSE OF ACTION

**Whistleblower Retaliation**

**(Violation of Labor Code § 1102.5, *et seq.*)**

**Against Blue Origin and Does 1 to 100, Inclusive**

71. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

72. Under California Labor Code section 1102.5(b), an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency when the employee has reasonable cause to believe that the information discloses a violation of state or federal statute or a violation of or noncompliance with a state or federal rule or regulation. Section 1102.5 protects employees who disclose reasonably based suspicions of illegal activity or noncompliance with rules or regulations either to a government or law enforcement agency or directly to another employee of the employer, so long as the employee to whom the report is made has authority over the disclosing employee or has authority to investigate, discover, or correct the violation or noncompliance. Labor Code § 1102.5(b). Defendants are and at all relevant times were a government agency.

73. Under California Labor Code section 1102.5(c), an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a state or federal statute or a violation of or noncompliance with a state or federal rule or regulation.

74. At all relevant times, as set forth above, plaintiff reasonably believed, believes, and therefore alleges that he reported defendants' violation of various laws (*e.g.*, statutes, rules, codes, and regulations), ethical obligations, and contractual obligations (some that affected government contracts and legal obligations related thereto). The aforementioned make up plaintiff's reasonable belief of a potential legal violation and/or an actual legal

violation.

75. The same, plaintiff alleges that he refused to violate the law.

76. In violation of California Labor Code section 1102.5(b) and/or (c), defendants, and each of them, discriminated and retaliated against plaintiff by unlawfully demoting her or otherwise retaliating and discriminating against plaintiff because plaintiff lodged a complaint, testified (or was believed to have intended to do so), or assisted in any proceeding (or was believed to have intended to do so) concerning deficient patient care and safety, lack of quality of patient care, and doctors' performing life-threatening procedures on infants. Defendants unlawfully harassed and discriminated against plaintiff, as is fully set forth in the General Allegations and all paragraphs above, including adverse employment actions, such as compelled self-termination of employment.

77. As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

78. As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

79. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

80. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to California Labor Code section 1102.5(j), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

///

///

///

///

**SECOND CAUSE OF ACTION**

**Whistleblower Retaliation**

**(Violation of Cal. Labor Code § 232.5)**

**Against Blue Origin and Does 1 to 100, Inclusive**

81. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

82. At all relevant times, Labor Code section 232.5 was in effect and was binding on Defendants. As relevant here, this statute prohibits Defendants from discharging, formally disciplining, or otherwise discriminating against an employee who discloses information about the employer's working conditions.

83. California courts have interpreted section 232.5's definition of working conditions to mean "those conditions determined by the employer as a condition of employment." As described above, Plaintiff made numerous complaints about his working conditions. In violation of section 232.5, Defendants discharged, formally disciplined, and otherwise discriminated against/harassed Plaintiff because of his disclosures.

84. As a proximate result of Defendants' willful, knowing, intentional, and repeated violations of Labor Code section 232.5, Plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

85. As a result of defendants' adverse employment actions against Plaintiff, Plaintiff has suffered general and special damages in sums according to proof.

86. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles Plaintiff to punitive damages against Defendants.

///

///

///

///

## THIRD CAUSE OF ACTION

## Whistleblower Retaliation

## (Violation of Labor Code § 6310)

## Against Blue Origin and Does 1 to 100, Inclusive

87. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

88. At all relevant times, Labor Code section 6310 was in effect and was binding on defendants. This statute prohibits defendants from retaliating or otherwise discriminating against an employee, including plaintiff, for raising complaints (either oral or written) regarding health or health conditions or practices and/or instate or cause to be instated proceedings related to the employee's right to safe and healthful working conditions. Section 6310 also protects employees who report work-related injuries and illnesses.

89. Plaintiff made protected reports, complaints, and/or disclosures while he worked for defendants and was believed to be willing to raise complaints, and because of those reports/complaints/disclosures, defendants retaliated against him, discriminated against him, harassed him, and otherwise took adverse employment actions against him, up to, and including, the termination of his employment.

90. As a proximate result of defendants' willful, knowing, and intentional violations of Labor Code section 6310, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

91. As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

92. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

///

## FOURTH CAUSE OF ACTION

**Discrimination on the Basis of Sex and Gender**

**(Government Code § 12900, et seq.)**

**Against Blue Origin and Does 1 to 100, Inclusive**

93. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

94. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.*, and defendants committed unlawful employment practices, including by the following bases for liability:

a. Taking adverse employment action against Plaintiff, including but not limited to discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(a);

b. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(j);

c. Failing to take all reasonable steps to prevent discrimination and harassment in violation of Government Code section 12940(k);

95. On the basis of the above, plaintiff believes and alleges that a pattern and practice of the above described discrimination, harassment, retaliation, and failure to prevent discrimination and harassment occurred.

96. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

97. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

98. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

99. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

**FIFTH CAUSE OF ACTION**

**Hostile Work Environment / Harassment on the Basis of Gender/Sex**

**(Government Code § 12900, et seq.)**

**Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive**

100. The allegations set forth in preceding paragraphs are re-alleged and incorporated herein by reference.

101. Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.*, and defendants committed unlawful employment practices, including by the following bases for liability:

a. Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's gender/sex, and/or other protected characteristics, in violation of Government Code section 12940(j);

b. Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation in violation of Government Code section 12940(k).

102. Pursuant to Government Code section 12923(b), a single incident of harassing conduct is sufficient to create a hostile work environment if the harassing conduct has unreasonably interfered with plaintiff's work performance or created an intimidating, hostile, or offensive working environment.

///

103. As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

104. As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

105. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

106. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

**SIXTH CAUSE OF ACTION**

**Retaliation for Engaging in Protected Activity**

**(Violation of Government Code § 12900, *et seq.*)**

**Against Blue Origin and Does 1 to 100, Inclusive**

107. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

108. At all times herein mentioned, FEHA, Government Code section 12940, *et seq.*, was in full force and effect and was binding on defendants. This statute requires defendants to refrain from retaliating against any employee making complaints or opposing discrimination, harassment, or retaliation, or otherwise engaging in activity protected by the FEHA, including for seeking to exercise rights guaranteed under FEHA and/or assisting and/or participating in an investigation, opposing defendants' failure to provide rights, including rights to complain and to assist in a lawsuit, and/or the right to be free of retaliation, in violation of Government Code section 12940(h).

///

109. Plaintiff's seeking to exercise rights guaranteed under FEHA and/or opposing defendants' failure to provide such rights, including the right to be free of discrimination, harassment / a hostile work environment, and/or retaliation, in violation of Government Code section 12940(h), were substantial motivating reasons in defendants' decision to terminate plaintiff's employment, not to retain, hire, or otherwise employ plaintiff in any position, and/or to take other adverse employment actions against plaintiff.

110. As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

111. As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

112. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

113. Defendants' retaliation was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

## SEVENTH CAUSE OF ACTION

**Failure to Prevent Discrimination, Harassment, and/or Retaliation**

**(Violation of Government Code § 12900, *et seq.*)**

**Against Blue Origin and Does 1 to 100, Inclusive**

114. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

///

115. At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants. This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

116. During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in plaintiff being treated less favorably because of his having engaged in protected activity.

117. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiffs have sustained and continue to sustain substantial losses of earnings and other employment benefits.

118. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

119. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

120. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

## EIGHTH CAUSE OF ACTION

**<u>Breach of Express Oral Contract Not to Terminate</u>**

**<u>Employment Without Good Cause</u>**

**<u>(*Marvin v. Marvin* (1976) 18 Cal.3d 660)</u>**

**Against Blue Origin and Does 1 to 100, Inclusive**

121. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

///

122. Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause. Plaintiff and defendants, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of him under the agreement by performing his job in an exemplary manner.

123. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the express oral contract they had with him.

124. As a proximate result of defendants' willful breach of the express oral contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

**NINTH CAUSE OF ACTION**

**Breach of Implied-in-Fact Contract Not to**

**Terminate Employment Without Good Cause**

**(*Marketing West, Inc. v. Sanyo Fisher* (1992)**

**6 Cal.App.4th 603; Civil Code § 1622)**

**Against Blue Origin and Does 1 to 100, Inclusive**

125. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

126. On the basis of oral assurances of continued employment given to plaintiff by defendants' supervisors, the length of plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and defendants shared the actual understanding that plaintiff's employment could and would be terminated only for cause. This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

127. Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with him.

128. As a proximate result of defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

## TENTH CAUSE OF ACTION

**Negligent Hiring, Supervision, and Retention**

**(*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038)**

**Against Blue Origin and Does 1 to 100, Inclusive**

129. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

130. Defendants owed a duty of care to plaintiff to appoint, hire, retain, and supervise persons who would not engage in retaliatory, harassing, or discriminatory conduct. Defendants owed a duty of care to plaintiff not to retain managers or employees who would discriminate against, harass, or retaliate against employees for engaging in protected activities. Defendants owed a duty of care to plaintiff to supervise their managers and employees closely to ensure that they would refrain from harassing and retaliating against plaintiff.

131. Defendants breached these duties. As a result, defendants caused damages to plaintiff. As a proximate result of defendants' negligent hiring, retention, and supervision of their managers and employees, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof.

///

///

///

///

///

///

///

## ELEVENTH CAUSE OF ACTION

**Wrongful Termination of Employment in Violation of Public Policy**

***(Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167)**

**Against Blue Origin and Does 1 to 100, Inclusive**

132. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

133. Defendants terminated plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, plaintiff's employment was terminated in part because of his protected status (*i.e.,* protected activity). These actions were in violation of, but not limited to, the FEHA, the California Constitution, Government Code section 12900, *et seq.*, and the California Labor Code (*see* 232.5, 1102.5, 6310, and 6311).

134. As a proximate result of defendants' wrongful termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

135. As a result of defendants' wrongful termination of his employment, plaintiff has suffered general and special damages in sums according to proof.

136. Defendants' wrongful termination of plaintiff's employment was done intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages.

137. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq.,* plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

///

///

///

///

## TWELFTH CAUSE OF ACTION

**Intentional Infliction of Emotional Distress**

**(*Hughes v. Pair* (2009) 46 Cal.4th 1035)**

**Against Blue Origin, Kevin Lundy, and Does 1 to 100, Inclusive**

138. Plaintiff alleges and incorporates herein by reference each allegation set forth in all previous and subsequent paragraphs as though fully set forth herein.

139. Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted extreme and outrageous misconduct and caused plaintiff severe emotional distress. Defendants were aware that treating plaintiff in the manner alleged above, including depriving plaintiff of his livelihood, would devastate plaintiff and cause him extreme hardship.

140. As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

141. As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

142. Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and/or oppressive manner, and this entitles plaintiff to punitive damages against defendants.

///

///

///

///

///

///

## PRAYER

WHEREFORE, plaintiff, Craig Stoker, prays for judgment against defendants as follows:

1. For general and special damages according to proof;
2. For exemplary damages, according to proof;
3. For pre-judgment and post-judgment interest on all damages awarded;
4. For reasonable attorneys' fees;
5. For costs of suit incurred;
6. For declaratory relief:
7. For such other and further relief as the Court may deem just and proper;

ADDITIONALLY, plaintiff, Craig Stoker, demands trial of this matter by jury. The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated: November 27, 2023

SHEGERIAN & ASSOCIATES, INC.

By: ______________________
William Reed, Esq.

Attorneys for Plaintiff,
CRAIG STOKER

# EXHIBIT E

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Saturday, January 6, 2024 6:26 AM
**To:** Gonzalez, Emilio; Spinner, Arielle; William Reed
**Cc:** Rund, David
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Thank you, Emilio.

Let's do Tuesday at 4:30 p.m. I will circulate a call in shortly.

We disagree that the sexual harassment claim is "baseless," and Defendants' "threats" made pursuant to CCP 128.7 are not well taken. As you are probably well aware, CCP 128.7 merely requires a pleading's claims be warranted by existing law or a non-frivolous argument for the modification of law and that its factual contentions have evidentiary support, or will after a reasonable opportunity for further investigation. Here, plaintiffs claim neatly fits both elements.

Additionally, plaintiff's burden for proving a non-frivolous (or non-"baseless") claim is a low bar: "[Plaintiff] must make a sufficient evidentiary showing to demonstrate that he made a reasonable inquiry into the facts and entertained a good faith belief in the merits of the claim. [Plaintiff] need not amass even enough evidence to create a triable issue of fact as would be required if [Defendant] had brought a motion for summary judgment, or allege a valid cause of action, as required to overcome a demurrer." (*Kumar v. Ramsey (*2021) 71 Cal.App.5th 1110, 1126.)

On the other hand, the moving party's burden for prevailing on a 128.7 motion is steep. Section "128.7 should be utilized only in 'the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.' [Citation]." (*Kumar, supra,* 71 Cal.App.5th at 1121, underlining added.) "Because our adversary system requires that attorneys and litigants be provided substantial breathing room to develop and assert factual and legal arguments, sanctions should not be routinely or easily awarded even for a claim that is arguably frivolous." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 448, underlining added.)

Furthermore, even if the Court did find a claim to be frivolous, which we are not convinced it will, Courts are persuaded to use their discretion to not award 128.7 sanctions. "Procedure section 128.7 sanctions should be 'made with restraint' [citation] and are not mandatory even if a claim is frivolous." (*Peake* at 448.)

Should defendant file this motion, plaintiff will in turn seek sanctions for having to respond to such a motion made without substantial justification.

Best,

Justin Shegerian

Justin Shegerian
Shegerian & Associates

11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Friday, January 5, 2024 2:59 PM
**To:** Justin Shegerian <jshegerian@shegerianlaw.com>; Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Justin and Will,

On Tuesday, I am available from 12PM – 1PM and after 4PM. On Wednesday I am available from 8 -9:30AM and after 4PM. Thursday I am available from 11-1.
Please let us know if any of these dates and times work for you.
As noted in our prior correspondence, the sexual harassment claim is baseless and, if asserted in a complaint, may be a violation of CCP 128.7. We can discuss this further during our call.
We can also discuss the remainder of your email.
Thank you.

**Emilio Gonzalez**
**Partner,** Davis Wright Tremaine LLP

**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Justin Shegerian <jshegerian@shegerianlaw.com>
**Sent:** Friday, January 5, 2024 2:42 PM
**To:** Spinner, Arielle <ArielleSpinner@dwt.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Hi Arielle and Emilio,

We were out of office earlier this week but are available to speak this upcoming Tuesday 1/9 between 1pm and 4pm if that suits you both.

1) As of now, Plaintiff will not be filing an amended complaint.

2) Plaintiff's bases that the purported arbitration agreement is unenforceable remain the same as previously discussed:

i) The Ending Forced Arbitration Act exempts Plaintiff's ***entire case*** from forced arbitration due to his sexual harassment claims. The statute reads: "*Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting **a sexual harassment dispute or sexual assault dispute**, or the named*

*representative of a class or in a collective action alleging such conduct, **no predispute arbitration agreement** or predispute joint-action waiver **shall be valid or enforceable** **with respect to a case** which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.*" Numerous jurisdictions have applied this plain text reading to the statute. Additionally, *Yost v Everyrealm* is unconvincing, where the New York appellate court applied the NYCHRL to instances of "generalized hostility" that Yost faced. Here, the sexual harassment was not generalized, and instead particularized to Plaintiff.

ii) Moreover, the purported contract is unconscionable with both high procedural and substantive unconscionability. This is supported by the purported agreement being a contract of adhesion with surprise and oppression, its lacking mutuality, venue and jurisdictional issues, and the improper waiver of PAGA claims, among other faults.

3) Demurrer related to Plaintiff's (i) breach of contract, (ii) negligent hiring, supervision & retention, and (iii) IIED are premature, and the complaint will not be amended to remove these claims. Having said that, we are happy to discuss these issues when we speak next. I will point out, however, that several of the positions in your email do not appear to be demmurable on the face of the complaint, ignore that the causes of action are supported by facts stated above, and have survived previous demurrers as pleaded.

Last, will Blue Origin be accepting service for Kevin Lundy?

Thank you.

Justin Shegerian

Justin Shegerian
Shegerian & Associates
11520 San Vicente Boulevard | Los Angeles, CA 90049
Office: (310) 860-0770 | Facsimile: (310) 860-0771
jshegerian@shegerianlaw.com | shegerianlaw.com

Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Spinner, Arielle <ArielleSpinner@dwt.com>
**Sent:** Tuesday, January 2, 2024 8:15 PM
**To:** William Reed <wreed@shegerianlaw.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Cc:** Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Hi Will and Justin,

We hope you had a nice holiday season. We would like to schedule our next call for this Thursday at 2:00 p.m.; please let us know if that time works well for you. During this call, we would like to discuss: (1) If Plaintiff will be filing an amended complaint; (2) Plaintiff's bases for asserting that Blue Origin's arbitration agreement with Plaintiff is unenforceable; and (3) Blue Origin's bases for asserting that Plaintiff's claims for breach of contract; negligent hiring, supervision, and retention; and IIED are ripe for demurrer. With respect to (3), please see below. If you could please send us (2) prior to our next call to ensure that our discussion will be productive, we would greatly appreciate it.

**Breach of Contract Claims (Breach of Express Oral Contract Not to Terminate Employment Without Good Cause; and Breach of Implied-in-Fact Contract Not to Terminate Employment Without Good Cause)**

- All breach of contract claims are comprised of at least the following elements: **(1) Plaintiff and Blue Origin entered into a contract**; (2) Plaintiff did substantially all of the significant things that the contract required him to do, and was excused from doing anything he did not do; **(3) All conditions required by the contract for Blue Origin's performance occurred, and any conditions that did not occur were waived or excused**; **(4) Blue Origin failed to do something that the contract required it to do, or did something that the contract prohibited it from doing**; (5) Plaintiff was harmed; and **(6) Blue Origin's breach of contract was a substantial factor in causing Plaintiff's harm**. The Complaint lacks sufficient facts as to the bolded elements.
- Plaintiff cannot factually allege that such an oral contract existed. Plaintiff has a copy of his written employment agreement, which expressly states in Section 5.1 that his employment is at-will: "I acknowledge that I am an employee-at-will, meaning that either I or the Company may terminate my employment relationship at any time for any reason, with or without advance notice, and with or without cause." Moreover, Section 7.4 states that the terms of Plaintiff's employment "may be amended only by a writing signed by me and an authorized representative of the Company." Plaintiff's Complaint does not allege that an authorized representative of Blue Origin signed and agreed in writing that Plaintiff's employment was no longer at-will, and that he could only be terminated for good cause. Instead, in Paragraph 122 of the Complaint, Plaintiff merely alleges: "Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause." This conclusory statement does not include any factual allegations. For example, <u>who</u> on behalf of Blue Origin entered into such an agreement, and <u>with whom</u>? When was this agreement made? What were the terms of this agreement? There are simply insufficient facts to show that an oral contract ever existed, or that even if it did, that it could ever have been binding on Blue Origin.
- Nowhere in the Complaint does Plaintiff even address Element 3.
- Given that there are insufficient facts to show that a binding oral contract ever existed, Plaintiff has also failed to sufficiently allege that Blue Origin's conduct violated any such contract, or was a substantial factor in causing Plaintiff's purported harm.
- For numerous reasons, including those listed above, Plaintiff's breach of contract claims are ripe for demurrer.

**Negligent Hiring, Supervision, and Retention**

- To sufficiently assert a claim for negligent hiring, supervision, and retention, Plaintiff must allege that: (1) Blue Origin hired Plaintiff; (2) A specific employee of Blue Origin was or became unfit or incompetent to perform the work for which they were hired; (3) Blue Origin knew or should have known that this employee was or became unfit or incompetent, and that this unfitness or incompetence created a particular risk to others; (4) This employee's unfitness or incompetence harmed Plaintiff; and (5) Blue Origin's negligence in hiring, supervising, or retaining this specific employee was a substantial factor in causing Plaintiff's harm.
- In Paragraphs 130-31 of the Complaint, Plaintiff includes general, conclusory legalese about the duty of care owed by an employer to an employee. Plaintiff then broadly alleges: "Defendants breached these duties. As a result, defendants caused damages to plaintiff. As a proximate result of defendants' negligent hiring, retention, and supervision of their managers and employees, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, according to proof." These allegations are completely devoid of facts. Plaintiff's Complaint discusses many Blue Origin employees. Exactly which Blue Origin employee was or became unfit or incompetent to perform the work for which they were hired?
- Moreover, to the extent that Plaintiff bases this claim on alleged gender harassment or discrimination, this derivative claim must also fail for all the same reasons any gender-based claims fail, as previously explained by Defendant.

**Intentional Infliction of Emotional Distress**

- To sufficiently assert a claim for IIED, Plaintiff must allege that: (1) Blue Origin's conduct was outrageous; (2) Blue Origin intended to cause Plaintiff emotional distress, or acted with reckless disregard of the probability that

Plaintiff would suffer emotional distress, knowing that Plaintiff was present when the conduct occurred; (3) Plaintiff suffered severe emotional distress; and (4) Blue Origin's conduct was a substantial factor in causing Plaintiff's severe emotional distress.

- In Paragraphs 139-42 of the Complaint, Plaintiff again includes general, conclusory legalese. There are no factual allegations to substantiate that Blue Origin's alleged conduct rises to the level of being "outrageous" or with "reckless disregard." Similarly, there are no factual allegations to substantiate that Plaintiff suffered severe emotional distress.
- Moreover, to the extent that Plaintiff bases this claim on alleged gender harassment or discrimination, this derivative claim must also fail for all the same reasons any gender-based claims fail, as previously explained by Defendant.

Thanks,
Arielle

**Arielle Spinner** She/Her/Hers
Davis Wright Tremaine LLP

**P** 213.633.6879 **C** 213.219.3269 **E** ariellespinner@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

---

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Thursday, December 21, 2023 10:30 AM
**To:** William Reed <wreed@shegerianlaw.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Rund, David <DavidRund@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** RE: Stoker v Blue Origin LLC

Will and Justin,
Thank you for your time. Per our call:

1. We have agreed to a 15 day extension for defendants to file a responsive pleading
2. We have agreed to preserve the stay on discovery per our prior agreement
3. Your team will consider whether you will amend the complaint
4. Should you decide to not amend, it is our intention to file a motion to compel arbitration and to defer the demurrer. You are inclined to agree with this approach, provided that you get additional pages to oppose the motion should you need it, in which case we would get an equal number of pages for the reply.
5. We will provide you with additional points as to other causes of action that we believe are deficiently pled
6. You will provide us with your basis for asserting that the arbitration provision in Mr. Stoker's complaint is unenforceable

Let's pick a date next week to re-visit the points above.
Thank you and happy holidays.

**Emilio Gonzalez**
**Partner,** Davis Wright Tremaine LLP

**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

**From:** William Reed <wreed@shegerianlaw.com>
**Sent:** Thursday, December 14, 2023 9:25 AM
**To:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

---

Hi Emilio,

As to the agreement re the stay, I would phrase it a bit differently – I believe our agreement was to keep the status quo as to the number of days out from service of the complaint until we speak next. But I think we're both saying the same thing.

As to the clarification – we would stipulate that Defendants' actions related to the demurrer (whether they relate to the sexual harassment claim or not) as you describe below would not constitute waiver of the arbitration agreement as to those other claims.

Regards,

Will

William Reed | Shareholder
Shegerian & Associates
145 S Spring Street, Suite 400 | Los Angeles, CA 90012
Office: (310) 860-0770 | Facsimile: (310) 860-0771
wreed@shegerianlaw.com | shegerianlaw.com
Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

---

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Wednesday, December 13, 2023 3:52 PM
**To:** William Reed <wreed@shegerianlaw.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Subject:** RE: Stoker v Blue Origin LLC

Will,
This will memorialize our agreement to stay discovery and preserve defendants' priority until we discuss the issues raised today, which should be next Thursday (Dec 21).

As a point of clarification while we consider your proposal: if we agree to file the demurrer first, as you propose, we would demurrer to several causes of action, not just the sexual harassment claim. Will you stipulate that by filing the demurrer first (including as to other claims) plaintiffs will not claim or argue that the request to dismiss the other claims constitutes a waiver of the arbitration agreement as to those or any other claims? Otherwise, I don't see how we could agree to file a demurrer first. Please let us know.

Thank you.

**Emilio Gonzalez**
**Partner,** Davis Wright Tremaine LLP

**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566
**DWT.COM**

**From:** William Reed <wreed@shegerianlaw.com>
**Sent:** Monday, December 11, 2023 11:54 AM
**To:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>; Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Justin Shegerian <jshegerian@shegerianlaw.com>
**Subject:** RE: Stoker v Blue Origin LLC

**[EXTERNAL]**

Emilio,

Happy holidays. I hope you've been well.

We appreciate your reaching out to discuss how best to proceed efficiently.

How about Wednesday 12/13 at 2:00 p.m.?

Regards,

Will

William Reed | Shareholder
Shegerian & Associates
145 S Spring Street, Suite 400 | Los Angeles, CA 90012
Office: (310) 860-0770 | Facsimile: (310) 860-0771
wreed@shegerianlaw.com | shegerianlaw.com
Please do not print this e-mail unless absolutely necessary. CONFIDENTIALITY NOTICE: This communication and any accompanying document(s) are privileged and confidential and are intended for the sole use of the addressee(s). If you have received this transmission in error, you are advised that any disclosure, copying, distribution, or the taking of any action in reliance upon it is strictly prohibited. Moreover, any such inadvertent disclosure shall not compromise or waive the Shegerian Law client privilege as to this communication or otherwise. If you have received this communication in error, please immediately delete it and contact us at privacy@shegerianlaw.com or by telephone at (310) 860-0770. Thank you.

**From:** Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Sent:** Monday, December 11, 2023 7:42 AM
**To:** Carney Shegerian <cshegerian@shegerianlaw.com>; Anthony Nguyen <anguyen@shegerianlaw.com>; William Reed <wreed@shegerianlaw.com>
**Cc:** Spinner, Arielle <ArielleSpinner@dwt.com>; Gonzalez, Emilio <EmilioGonzalez@dwt.com>
**Subject:** Stoker v Blue Origin LLC

Dear counsel,

We represent Blue Origin LLC and are in receipt of the Complaint you filed on behalf of Craig Stoker. Please direct all future communications on this matter to us.

In case you are not already aware, Mr. Stoker's signed employment agreement includes an arbitration agreement (see pages 5-9 of the attached). This agreement mandates arbitration of 11 of the 12 causes of action asserted in Mr. Stoker's Complaint, excluding his claim for gender-based harassment.

We would like to discuss with you how to best proceed. We propose that the parties agree to arbitrate all 12 claims. Absent the parties' agreement to arbitrate, we will need to move to compel arbitration and, separately, demur to the gender-based harassment claim. If this becomes necessary, we would like to explore with you a way to stagger or coordinate the process for the sake of efficiency. Please let us know if any of the below days/times work well for you:

- Tuesday, 12/12: 10:30 a.m. – 12:00 p.m.; 2:00 – 4:30 p.m.
- Wednesday, 12/13: 9:00 – 11:00 a.m., 2:00 – 5:00 p.m.

Thank you.

**Emilio Gonzalez**
**Partner |** Davis Wright Tremaine LLP
**P** 213.633.6829 **C** 213.663.9381 **E** emiliogonzalez@dwt.com
**A** 865 South Figueroa Street, Suite 2400, Los Angeles, CA 90017-2566

**DWT.COM**

# EXHIBIT F

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
BLUE ORIGIN, LLC

Carney R. Shegerian, Esq., State Bar No. 150461
CShegerian@Shegerianlaw.com
Anthony Nguyen, Esq., State Bar No. 259154
ANguyen@Shegerianlaw.com
William Reed, Esq., State Bar No. 261931
WReed@Shegerianlaw.com
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number: (310) 860 0770
Facsimile Number: (310) 860 0771

Attorneys for Plaintiff
CRAIG STOKER

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| CRAIG STOKER,<br><br>Plaintiff,<br><br>vs.<br><br>BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. **23STCV28816**<br><br>**JOINT STIPULATION TO EXTEND DEFENDANTS' DEADLINES TO FILE RESPONSIVE PLEADINGS AND FOR EXTRA PAGES ON OPPOSITION AND REPLY BRIEFS AS TO BLUE ORIGIN'S MOTION TO COMPEL ARBITRATION**<br><br>Assigned to the Hon. Stephanie M. Bowick<br>Dept.: 19<br><br>Action Filed: November 27, 2023 |



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

This Joint Stipulation is entered into by and between plaintiff Craig Stoker ("Plaintiff") and defendant Blue Origin, LLC ( "Blue Origin") (collectively referred to as the "Parties"), by and through their undersigned counsel of record, with reference to the following facts:

WHEREAS, Plaintiff filed a Complaint for Damages in the above-captioned action, *Craig Stoker v. Blue Origin LLC and Kevin Lundy,* Los Angeles Superior Court Case No. 23STCV28816 ("Complaint"), on November 27, 2023.

WHEREAS, on January 17, 2024, counsel for Blue Origin accepted service on behalf of Defendant Kevin Lunde (sued erroneously as "Kevin Lundy") of a Notice of Acknowledgement and Receipt ("NAR") of Plaintiff's Complaint.

WHEREAS, Blue Origin's deadline to respond to the Complaint was January 18, 2024, but on January 17, 2024, Blue Origin's counsel filed a declaration pursuant to California Code of Civil Procedure Section 430.41(a)(2), which extended Blue Origin's response deadline to February 20, 2024.

WHEREAS, Blue Origin intends to file a Motion to Compel Arbitration, requesting that this Court compel Plaintiff's first, second, third, fourth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth causes of action against both Defendants to arbitration and stay all claims in this case pending the completion of arbitration.

WHEREAS, Plaintiff intends to oppose the Motion to Compel Arbitration.

WHEREAS, Plaintiff anticipates the need for up to eight extra pages beyond the applicable page limit for an Opposition to a Motion to Compel Arbitration. The Parties agree that Blue Origin may have the same number of extra pages for its Reply.

WHEREAS, Blue Origin intends to file a Demurrer as to Plaintiff's sexual / gender harassment claim, either concurrently with its Motion to Compel Arbitration or, if the Court denies the Motion to Compel Arbitration, along with some of the surviving claims.

WHEREAS, pursuant to California Code of Civil Procedure §§ 1281.2, 1281.4, and 1281.7, if this Court denies the Motion to Compel Arbitration, Defendants have 15 days to respond to Plaintiff's Complaint.



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

WHEREAS, to maximize judicial economy and to limit both Parties' fees and costs related to motion practice prior to the disposition of Blue Origin's Motion to Compel Arbitration, the Parties agree to stay Defendants' deadlines to file responsive pleadings pending this Court's ruling on the Motion to Compel Arbitration. Accordingly, should this Court's ruling on the Motion to Compel Arbitration permit any of Plaintiff's claims to proceed in civil court, Defendants' deadlines to file responsive pleadings, including but not limited to Demurrers, will be 15 days after this Court's ruling on the Motion to Compel Arbitration. The Parties agree that this Stipulation does not limit Defendants' ability to file Demurrers concurrently with Blue Origin's Motion to Compel Arbitration.

WHEREAS, the Parties agree that neither this Stipulation, nor the rights actions afforded thereby, shall be construed as a waiver of any party's arguments regarding enforceability of the Arbitration Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED that:

1) Defendants' deadlines to file responsive pleadings as to the claims permitted by this Court to proceed in civil court following its ruling on Blue Origin's Motion to Compel Arbitration, including the sexual / gender harassment claim, are tolled until 15 days after this Court's ruling on the Motion to Compel Arbitration.
2) Plaintiff and Blue Origin may use up to eight extra pages beyond the applicable page limits for their Opposition and Reply briefs, respectively.
3) Neither this Stipulation, nor the rights actions afforded by the Stipulation above, shall be construed as a waiver of any party's arguments regarding enforceability of the Arbitration Agreement.

///

///

///



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DATED: January 17, 2024

SHEGERIAN & ASSOCIATES
CARNEY R. SHEGERIAN
ANTHONY NGUYEN
WILLIAM REED

By: ______________________
William Reed

Attorneys for Plaintiff
CRAIG STOKER

DATED: January 17, 2024

DAVIS WRIGHT TREMAINE LLP
EMILIO G. GONZALEZ
ARIELLE J. SPINNER

By: ______________________
Emilio G. Gonzalez

Attorneys for Defendant
BLUE ORIGIN, LLC



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# PROOF OF SERVICE BY ELECTRONIC MAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, Suite 2400, 865 South Figueroa Street, Los Angeles, California 90017-2566.

On January 18, 2024, I served the foregoing document(s) described as: **JOINT STIPULATION TO EXTEND DEFENDANTS' DEADLINES TO FILE RESPONSIVE PLEADINGS AND FOR EXTRA PAGES ON OPPOSITION AND REPLY BRIEFS AS TO BLUE ORIGIN'S MOTION TO COMPEL ARBITRATION** by forwarding a portable document file to the electronic mail address(es) below:

| | |
|---|---|
| William Reed, Esq.<br>Justin Shegerian<br>Shegerian & Associates, Inc.<br>11520 San Vicente Blvd.<br>Los Angeles, CA 90049<br><br>*Attorneys for Plaintiff CRAIG STOKER* | Tel: 310-860-0770<br>Fax: 310-860-0771<br>Email:<br>WReed@shegerianlaw.com<br>JShegerian@shegerianlaw.com<br>calendarclerk@shegerianlaw.com |

**(FROM ELECTRONIC MAIL ADDRESS vanessapalma@dwt.com)** at Suite 2400, 865 South Figueroa Street, Los Angeles, California.

Executed on January 18, 2024, at Los Angeles, California.

☒ State — I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☐ Federal — I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Vanessa Palma
Print Name

[signature]
Signature

**PROOF OF SERVICE**
*Stoker v. Blue Origin LLC, et al.*
LASC Case No. 23STCV28816
DWT C/M # 0065536-000044

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine, LLP, 865South Figueroa Street, Suite 2400, Los Angeles, California 90017-2566.

On July 2, 2024, I served the following document(s): **DECLARATION OF ARIELLE J. SPINNER IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** as follows:

| | |
|---|---|
| Justin Shegerian, Esq.<br>William Reed, Esq.<br>SHEGERIAN & ASSOCIATES, INC.<br>11520 San Vicente Boulevard<br>Los Angeles, California 90049<br>Telephone Number: (310) 860 0770<br>Facsimile Number: (310) 860 0771<br>Email: JShegerian@shegerianlaw.com<br>Email: WReed@shegerianlaw.com<br>Email: calendarclerk@shegerianlaw.com | *Attorneys for Plaintiff,* **CRAIG STOKER** |

☒ (**VIA U.S. MAIL**) - I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

☒ (**VIA ELECTRONIC MAIL**) – On July 2, 2024, I electronically served a true and correct copy by e-mail from electronic e-mail address: ***robmendoza@dwt.com*** on the email addresses of the interested parties in this action as noted above.

☐ (VIA OVERNIGHT DELIVERY) and by sealing the envelope and placing it for collection and delivery by [OVERNIGHT SERVICE] with delivery fees paid or provided for in accordance with ordinary business practices.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed on July 2, 2024, at Los Angeles, California.

| | |
|---|---|
| Robert Mendoza | [signature] |
| Print Name | Signature |

# EXHIBIT 1(b)(22)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
BLUE ORIGIN LLC

**Electronically FILED by Superior Court of California, County of Los Angeles 7/02/2024 7:29 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Tang, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **23STCV28816**

**DECLARATION OF JULIE GRANT IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Assigned to the Hon. Cherol Nellon
Dept.: 14

Hearing Date: August 22, 2024
Hearing Time: 8:30 a.m.
**RES ID: 028462594858**

Action Filed: November 27, 2023

# DECLARATION OF JULIE GRANT

I, Julie Grant, declare and state as follows:

1. I have been employed by Defendant Blue Origin, LLC ("Blue Origin") as a Senior Human Resource Business Partner since February 2022. I am based in Kent, Washington. I am over the age of eighteen, and, if called upon as a witness, could and would competently testify to each of the facts set forth herein.

2. In my capacity as a Senior Human Resources Partner, I have access to, and have reviewed, various business and personnel records maintained by and on behalf of Blue Origin in the ordinary course of business, including Plaintiff Craig Stoker's ("Plaintiff") personnel file and other Human Resources records.

3. Plaintiff's personnel file indicates that he was hired by Blue Origin in August 2020 to work as the Senior Director of Program Management in Kent, Washington. Blue Origin's Human Resources records also indicate that while Plaintiff lived in Southern California at the time, Blue Origin informed Plaintiff at his time of hire that he was expected to work in Kent, Washington, once COVID-19 restrictions lifted and employees returned to in-person work.

4. Plaintiff's personnel file includes the resume that he submitted to Blue Origin, a true and correct copy of which is attached hereto as Exhibit A. This resume indicates that Plaintiff is a trained engineer, and has a Master's Degree in Business Administration and more than 30 years of management experience.

5. Plaintiff's personnel file also includes the Employment Agreement he signed at his time of hire, a true and correct copy of which is attached hereto as Exhibit B. Plaintiff's Employment Agreement, which he signed on August 17, 2020, includes a four-page Arbitration Agreement. The Arbitration Agreement was executed by both Plaintiff and an authorized representative of Blue Origin.

6. During his employment at Blue Origin, Plaintiff worked in the Engines Department, to which I was and am assigned to provide Human Resources support. Beginning in March 2022, I communicated with Plaintiff regarding ways in which he could support and strengthen the team of engineers he managed. On numerous occasions, Plaintiff complained to



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

me about various work-related matters. None of Plaintiff's complaints included gender-related allegations. Plaintiff never told me that he believed he was being subjected to different or unfair treatment because of his gender.

7. On or about October 7, 2022, my colleague, Linda Cova, and I met with Plaintiff to advise that his employment at Blue Origin was ending for business reasons. During this meeting, Plaintiff expressed his frustration and disagreement with this decision, but did not raise any gender-related complaints. Plaintiff did not state that he believed he was being terminated due to his gender.

8. Blue Origin's Human Resources Department has no record of Plaintiff submitting any complaints of gender harassment to Human Resources prior to his termination.

9. Attached as Exhibit C is a true and correct copy of a letter I received from Plaintiff's attorney, dated October 28, 2022. The letter references complaints made by Plaintiff and does not reference any complaint or report of sexual harassment.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on January, 30, 2024 at Kent, WA.

DocuSigned by:
Julie Grant
587DB6EE8438416...

Julie Grant



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT A



# CRAIG STOKER

23308 BERDON STREET • WOODLAND HILLS, CA 91367
PHONE (301) 401-8257
E-MAIL CRAIG.S.STOKER@GMAIL.COM

## SUMMARY OF QUALIFICATIONS

Over 30 years of proven leadership experience in execution and strategic planning with comprehensive knowledge of management, organizational development, and team building. Thorough knowledge of all aspects of project management, developing operating plans, performance metrics, engineering, construction, manufacturing, commissioning, certification, operations, resource loading, data analysis, government regulations, and delivering improvement initiatives. Expertise in systems engineering, mission assurance, and productivity improvement. Demonstrated ability to manage difficult and complex projects, developing and executing multiple programs through various phases of Design, Development, Build, and Operations. Led, planned and executed the development and certification of the RS-68 rocket engine, the 1st commercially developed U.S. rocket engine certified to fly on the Delta IV rocket. Driver of cost effective solutions based on requirements and needs – utilizing an overall system thinking approach. Motivated by challenge with a proven ability to cultivate an environment that inspires and motivates by creating a vision and path to success. Proven success in establishing relationships with key decision makers, customers, and supplier partners. In-depth experience in rocket propulsion, nuclear and engineering, procurement, construction and commissioning (EPCC) industries working with NASA, DOD, DOE and commercial customers. Demonstrated leadership capability in achieving right the first time quality, 100% mission success, 100% on time delivery of production assets, 100% award fee, product development, and new business capture. Skilled in win-win contract negotiation with customers and suppliers. Core strengths include:

- P&L Management & Strategic Business Planning
- Execution of Certified Quality Programs
- Project Life Cycle Management
- Budgeting & Pricing Strategies
- Market Opportunity Identification & Positioning
- Multi-Site Operations
- Strategic Alliances & Partnerships
- International Sourcing & Supply Chain Mgmt
- Customer and Supplier Relationships
- Product Development, Certification and Operation

## PROFESSIONAL EXPERIENCE

**BECHTEL CORPORATION** **2011 - Present**

**Project Manager, Mobile Launcher 2, Kennedy Space Center, FL** 7/19 – Present

Responsible for overall contract performance, delivery, scope, and timely and accurate execution of the design, fabrication, construction, and commissioning for NASA's Mobile Launcher 2 (ML2) project. Lead a multi-disciplined matrix management staff of more than 300 persons including 8 direct and 5 indirect reporting managers. Authorized to make execution decisions for the ML2 project to successfully perform the design, fabrication, construction, integration, test, and verification of the ML2 requirements. Led the execution of trade studies to optimize the ML2 design and provided the best balanced solution that meets the project technical, cost, and schedule objectives while establishing a mission-focused culture, with an environment of safety and quality. Completed concept development on plan and initiated detailed design and planning for construction, integration, test and verification, and turnover of ML2 to NASA. Provide project management for all technical, integration, and business management functions to plan, implement, track, report, and deliver on the ML2 requirements contained.

**Corporate Manager of Quality and Six Sigma, Reston VA** 4/16 – 7/19

Responsible for strategic direction and corporate policies and procedures for Quality and Six Sigma for the Bechtel Corporation. Responsible for leadership of Bechtel's Quality and Six Sigma quality management systems and implementing programs and initiatives to support right the first time performance across Bechtel including

People Based Quality (PBQ), Closed Loop Corrective Action (CLCA), Lesson Learned (LL) and Continuous Improvement. Responsible for integration of all Quality and Six Sigma related activities across the GBUs. Responsible for transforming Bechtel's quality program to a data centric electronically integrated system.

**Manager of Quality and Six Sigma, Bechtel Infrastructure, Reston VA** 6/18 – 07/19

Management of the Quality and Six Sigma function for Bechtel Infrastructure including policies, procedures, staffing and management of the Quality and Six Sigma work force. Support the successful quality execution, compliance and continuous improvement on Infrastructure projects worldwide. Responsible for leadership of Infrastructure Quality and Six Sigma programs. In this role, tasked with integrating the quality management systems across all Sectors and Regions and implementing programs and initiatives to support right the first-time performance on projects. Programs and initiatives include PBQ, CLCA, Risk Informed Project Reviews and Assessments, Lesson Learned, and Continuous Improvement. Responsible for Infrastructure Quality program including maintaining ISO certifications. Responsible for integration of all Quality related activities across the GBU. Responsible for providing functional staffing including assuring skills and expertise and developing talent.

**Manager, Quality & Six Sigma, Bechtel Nuclear, Security & Environmental Inc., Reston VA** 1/15 – 6/18

Led Bechtel Nuclear, Security & Environmental Inc's (NS&E's) Quality and Six Sigma programs. Integrated Bechtel's Nuclear Power and government services quality management systems and implementing programs and initiatives including PBQ, CLCA, Risk-Informed Project Reviews, supplier performance improvement, and Six Sigma. Responsible for NS&E's Quality Assurance program including maintaining ASME and ISO certifications. Responsible for integration of all Quality-related activities across GBU. Responsible for providing functional staffing, including ensuring skills and expertise and developing talent.

**Manager of Quality and Six Sigma Bechtel Power Corporation, Frederick, MD** 12/11 – 12/14

Responsible for leadership of the Quality and Six Sigma function for Bechtel Power Corporation (BPC). In this role, tasked with defining and implementing a new quality engagement model for the GBU to better influence technical performance across the project lifecycle. Responsible for BPC's Quality Assurance program including maintaining BPC's ASME and ISO certifications. Responsible for integration of all Quality related activities across BPC. Responsible for deployment, training and execution of BPC's Six Sigma program. Responsible for BPC's Corrective Action Program. Responsible for functional management and developing talent.

**PRATT & WHITNEY ROCKETDYNE (PWR), Canoga Park, CA** **1987 - 2011**

**Manager, PWR Enterprise Productivity and Efficiency** 05/11 – 12/11

Developed and led integrated cost-reduction strategies and efficiency improvement initiatives for existing and future products, processes, and facilities. Collaborated with program and functional teams to create an integrated strategic plan to reduce the cost of PWR products and services. Responsible for standard work to capture reductions. Lead execution of improvement initiatives, identify and manage implementation and operational readiness risks, drive lean value stream thinking and probabilistic delivery projections.

**Manager, PWR Enterprise Supplier Development** 10/10 – 05/11

Executed the PWR enterprise-wide vision to build the industry's highest-performing, best-value supplier network. Established PWR Supplier Development Charter, Strategy, and Plan for enhancing PWR's approach to supplier engagement with emphasis on synergistic partnerships that provide best-in-class performance. Addressed PWR supplier management and supply chain systemic risks and issues.

**RS-68 Program Manager** 05/06 – 10/10

Managed the RS-68 engine programs with full P&L responsibility for all program operations. Led a multidisciplinary matrix management staff of more than 200 persons including 6 direct and 12 indirect reporting managers. Responsible for design, development, production, and flight for multiple RS-68 programs across eight sites. Directed all operations for this business with sales of more than $150M annually. Formulated, planned, and implemented growth strategies. Achievements include 100% mission success; captured, designed, and certified an upgraded RS-68A engine; obtained multiple 100% award fee scores; expanded RS-68 Business Base and captured new contracts valued at more than $700M.

**MMRTG Deputy Program Manager** 05/05 – 5/06

Established and managed integrated scheduling and technical integration of Hamilton Sundstrand and Teledyne Energy Systems Inc (TESI) for the Multi-Mission Radioisotope Thermal-electric Generator (MMRTG) program. On site management of TESI in Baltimore, Maryland. Led program risk management and budget and technical change control management.

**Expendable Propulsion Program Production Hardware Director** 05/04 – 05/05

Directed the planning, procurement, and fabrication of the RS-27 and RS-68 engine hardware with 100% on-time delivery and achieved more than 10% under-budget performance.

**Expendable Propulsion Program (EPP) Engine Systems Director** 12/01 – 05/04

Successfully directed, planned, and executed the first flight of the RS-68 engine. Led the EPP Mission Assurance program, achieving 100% mission success. Supervised the transition of the RS-68 from development into production and the successful restructuring and integration of the RS-27, RS-56, and RS-68 engineering teams.

**RS-68 Development and Certification Director** 10/96 - 12/01

Led, planned and executed the development and certification of the RS-68. The RS-68 is the first liquid propulsion system in the world to be developed from the ground up, based on Cost as the Independent Variable. Instituted innovative processes and approaches to accelerate engine certification and achieved a 2 times reduction in development and certification cycle time with a 3 times reduction in the number of engine tests required to certify the engine while achieving increased payload-to-orbit of 2% over plan.

**Early Positions Include: X-33 Development and Controls Manager** (07/95 – 10/96), **Project Engineer, Advanced Programs** (07/94 – 07/95), **Project Engineer, SSME Program** (04/87 – 07/94) and **GENERAL DYNAMICS, ELECTRONICS DIVISION, San Diego, CA** (1983 – 1987)

## EDUCATION

| | | |
|---|---|---|
| **Masters of Business Administration** | Pepperdine University | 1987-1989 |
| **Bachelor of Science, Mechanical Engineering** | San Diego State University | 1981-1986 |

## AWARDS

Recognized throughout career for leadership skills and ability to accomplish objectives including NASA Silver Snoopy Award (1989); PWR Presidents Award (1995); RNASA Award for Development of the RS-68 Rocket Engine (2006); Bechtel Six Sigma Excellence Award (2017); Bechtel Diversity and Inclusion Champion of Change Award (2018).

## REFERENCES

References and information available upon request

# EXHIBIT B

BLUE ORIGIN

## EMPLOYEE AGREEMENT

| | |
|---|---|
| **My Name:** | Craig Stoker |
| **My Planned Date of Initial Employment:** | 10/19/2020 |
| **My Planned Location of Initial Employment:** | **Kent, Washington** |

As a condition of my employment and/or continued employment with Blue Origin, LLC (the **"Company"**), and in consideration of the mutual promises set forth below, the sufficiency of which consideration I hereby acknowledge, I therefore agree as follows:

### Section 1. DEFINITIONS

The following terms are used in this Employee Agreement ("Agreement") with the following specified meanings:

**1.1** "**Proprietary Information.**" Proprietary Information means any information related to the business or other affairs of the Company or its affiliates that is not generally available to the public, and that is or has been received or otherwise becomes known to me in connection with my employment. Without limiting the generality of the foregoing, I understand that Proprietary Information includes any Company proprietary information, technical data, trade secrets or know-how, including without limitation Inventions and Works (whether created by me or others), research, products, product plans, customers, customer lists, software, developments, processes, formulas, designs, drawings, engineering, services, pricing, finances, business and marketing plans, legal affairs, suppliers, current or potential customers and clients, prospects, contracts or assets of the Company, or improvements or new versions thereof. Proprietary Information also includes any information that has been made available to the Company by its customers, clients, suppliers or other third parties and which the Company is obligated to keep confidential. I further understand that Proprietary Information does not include any of the foregoing items that have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof. I further understand that this provision does not prohibit me from discussing the terms and conditions of my employment.

**1.2** "**Inventions and Works.**" Inventions and Works means any composition, work of authorship, computer program, product, device, technique, know-how, algorithm, method, process, improvement, discovery or invention, whether or not patentable or copyrightable and whether or not reduced to practice, that is (a) within the scope of the Company's business or research, or results from (directly or indirectly) or is suggested by any work performed by me for the Company, and (b) created, conceived, reduced to practice, developed, discovered, invented or made by me during the Term, whether solely or jointly with others, and whether or not while engaged in performing work for the Company.

**1.3** "**Materials.**" Materials means any product, prototype, hardware, document, record, notes, report, analysis, proposal, list, correspondence, specification, sketch, picture, drawing, model, schematic, blueprint, design, writing, data, software, or other tangible item that in whole or in part contains, embodies or manifests (whether in printed, handwritten, digital, analog, or other form) any Proprietary Information or any Inventions and Works.

**1.4 "Prior Inventions."** Prior Invention means any invention, original work of authorship, development, improvement or trade secret that (a) was made by me prior to the Term, (b) belongs to me or in which I have an interest, and (c) relates to the Company's current or proposed business, products or research and development.

**1.5 "Proprietary Rights."** Proprietary Rights means any patent, copyright, mask work, trade secret, trademark, trade name, service mark or other protected intellectual property right, in each case whether registered or unregistered and including all applications (or rights to apply) for and be granted, renewals or extensions of, and rights to claim priority from, such rights and all similar or equivalent rights or forms of protection which subsist or will subsist now or in the future in any part of the world, in any Proprietary Information, Inventions and Works, and/or Materials.

**1.6 "Term."** Term means the period from the beginning of my employment with the Company, whether on a full-time or part-time basis, through the last day of such employment.

**Section 2. PROPRIETARY INFORMATION**

**2.1 Use Restrictions.** I acknowledge that during the Term, the Company will provide me access to its Proprietary Information, trade secrets, and goodwill. Except as required for performance of my work for the Company or as authorized in writing by the Company, I will hold in the strictest confidence all Proprietary Information, Inventions and Works, and Materials, and I will not at any time during the Term or thereafter (a) use, disclose, publish or distribute any Proprietary Information, Inventions and Works, and/or Materials to any person or entity, or (b) remove any Materials from the Company's premises. I will hold all Materials in trust for the Company, and I will deliver them to the Company upon request and in any event at the end of the Term pursuant to Section 4.8.

**2.2 Former Employer Information.** I agree that I will not, during my employment with the Company, improperly use or disclose to the Company any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any unpublished document or proprietary information belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

**2.3 No Interference.** Notwithstanding any other provision of this Agreement, I acknowledge that (i) I may disclose Proprietary Information when required to do so by a court or any governmental agency or body with jurisdiction to order me to divulge, disclose or make accessible such information, and (ii) nothing in this Agreement is intended to interfere with my ability to (A) file a claim or charge with a governmental agency or entity; (B) participate in an investigation, hearing, or proceeding conducted by a governmental agency, entity or court; or (C) engage in activities protected by law. I also acknowledge that, in accordance with the Defend Trade Secrets Act of 2016, I will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (i) is made (A) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (B) solely for the purpose of reporting or investigating a suspected violation of law; or (ii) is made in a complaint or other document that is filed under seal in a lawsuit or other proceeding.

**Section 3. INVENTIONS AND WORKS**

**3.1 Assignment.** I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby irrevocably assign and transfer to the Company all right, title and interest in and to any and all Inventions and Works which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the Term, except as provided in section 3.2 below.

Further, I hereby waive any moral rights that I may have in or to any Inventions and Works (and any Proprietary Rights therein). I will take such action (including, but not limited to, the preparation and execution of documents or the giving of testimony) as may be requested by the Company to evidence, transfer, vest or confirm the Company's right, title and interest in the Proprietary Information, Inventions and Works, and Materials (and all Proprietary Rights therein), and the license rights described in Sections 3.1 above and 3.3 below. I will not contest the validity of any Proprietary Rights purported to be held by the Company.

**3.2 Exception to Assignment. NOTICE:** This satisfies the written notice and other requirements of Washington law under RCW 49.44.140, to the extent applicable. Notwithstanding any other provision of this Agreement to the contrary, this Agreement does not obligate me to assign or offer to assign to the Company any intellectual property that (i) I develop entirely on my own time; and (ii) I develop without using Company equipment, supplies, facilities or trade secret information; and (iii) does not result from any work performed by me for the Company; and (iv) does not relate at the time of conception or reduction to practice directly to the Company's business, or to its actual or demonstrably anticipated research or development. Any such intellectual property will be owned entirely by me, even if developed by me during the Term. I will advise the Company promptly in writing of any intellectual property that I believe meets the criteria for exclusion set forth herein.

**3.3 Prior Inventions.** Notwithstanding the notice in Section 3.2 above, if during the Term I use any Prior Invention with or incorporate any Prior Invention in any Proprietary Information, Inventions and Works, and/or Materials, I hereby irrevocably grant to the Company (to the fullest extent of my rights in and to the same) a fully paid-up, perpetual, royalty-free, irrevocable worldwide and universe-wide right and license to sublicense, disclose, copy, distribute, sell, make, have made, make derivative works of, use and otherwise exploit any trade secrets, copyrights, patents or other intellectual property rights to the Prior Inventions in connection with such Proprietary Information, Inventions and Works, and/or Materials.

**3.4 Maintenance of Records.** I agree to keep and maintain adequate and current written records of all Inventions and Works made by me (solely or jointly with others) during the Term. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

**3.5 Ownership.** As between the Company and me, the Company is and will be the sole owner of all Proprietary Information, Inventions and Works, and Materials (and all Proprietary Rights therein). To the extent eligible for such treatment, all Inventions and Works will constitute "works made for hire" under applicable copyright laws.

**3.6 Company Authority.** I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure and enforce the Company's Proprietary Rights in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto and the execution of all applications, specifications, oaths, assignments and other instruments that the Company deems necessary in order to apply for and obtain such rights and in order to assign and convey to the Company and its successors, assigns, and nominees the sole and exclusive right, title, and interest therein. I further agree that my obligation to execute or cause to be executed any such instrument or papers continues after the Term. If the Company is unable for any other reason to secure my assistance in perfecting the rights transferred, then I hereby

irrevocably appoint the Company and its authorized agents as my agent and attorney in fact, to transfer, vest or confirm the Company's rights and to execute, file and pursue any application for any United States or foreign patents or other intellectual property registrations covering Inventions and Works assigned to the Company above and to do all other lawful acts to further the prosecution and issuance of letters patent or other intellectual property registrations with the same legal force as if done by me. The designation and appointment of the Company and its duly authorized agents as my agent and attorney in fact will be deemed to be coupled with an interest and therefore irrevocable.

**Section 4. NO CONFLICTING OBLIGATIONS**

**4.1 Acknowledgement.** I understand that the nature of my position gives me access to and knowledge of Proprietary Information and places me in a position of trust and confidence with the Company. I understand and acknowledge that the services I provide to the Company are unique, special or extraordinary. I also acknowledge that I will obtain knowledge and skills relevant to the Company's industry, methods of doing business and marketing strategies by virtue of my employment or continued employment. I also further understand and acknowledge that the Company's ability to reserve these for the exclusive knowledge and use of the Company is of great competitive importance and commercial value to the Company, and that improper use or disclosure by me is likely to result in unfair or unlawful competitive activity. Thus, the restrictive covenants are reasonably necessary to protect the legitimate business interest of the Company.

**4.2 Solicitation of Employees.** During the Term and for one (1) year thereafter, I will not, without the prior written consent of the Company, either directly or indirectly (through any person or entity or otherwise) solicit, induce, recruit or encourage, or attempt to solicit, induce, recruit, or encourage, any of the Company's current employees or consultants to terminate or reduce their employment or relationship with the Company, either for my own benefit or for the benefit of any other person or entity.

**4.3 No Solicitation of Customers and No Interference.** During the Term and for one (1) year thereafter, I will not (except on behalf of the Company) solicit, call upon, divert or take away, or attempt to solicit, call upon, divert or take away, any current customers or clients of the Company with whom I became acquainted as a result of my employment with the Company. The restrictions in this Section only apply if the nature of the customer relationship sought by me is substantially similar to the business relationship targeted, solicited or accepted by the Company. Further, during the Term and for one (1) year thereafter, I will not interfere (directly or indirectly) with the Company's existing and prospective contracts and business relationships, including its contracts and business relationships with contractors, customers and prospective customers, vendors and suppliers.

**4.4 Breaches.** My execution, delivery and performance of this Agreement and the performance of my other obligations and duties to the Company will not cause any breach, default or violation of any other employment, confidentiality, consulting or other agreement to which I am a party or by which I may be bound.

**4.5 No Disparagement.** Although I am not prohibited from factually discussing the terms and conditions of my employment, I will not make any false, misleading or disparaging representations or statements with regard to the Company or its products or services, or make any statement that may impair or otherwise adversely affect the goodwill or reputation of the Company. For purposes of this Section 4.5, the term "Company" includes Blue Origin, its parent, subsidiaries, affiliates, successors or assigns, as well as their current and former officers, directors, employees and agents. I understand and confirm that this No Disparagement provision does not prevent me, nor shall it be construed as preventing me, from making truthful statements or testifying truthfully under oath

in any court or legal proceeding or as otherwise required by law or legal process including by subpoena.

**4.6 Disclosure Obligations.** I will promptly disclose to the Company (a) all Proprietary Information, Inventions and Works, and Materials, and (b) all business opportunities that come to my attention during the Term and that either relate to the business of the Company or arise as a result of my employment by the Company. I will not take advantage of or divert any such opportunity for the benefit of myself or anyone else either during or after the Term without the Company's prior written consent.

**4.7 Consent to Notification.** In the event that I leave the employ of the Company, I hereby grant consent to notification by the Company to my new or prospective employer or consulting client about my rights and obligations under this Agreement.

**4.8 Returning Company Documents and Materials.** I agree that, at the time of leaving the Company's employ, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all Materials and any and all devices, records, data, models, notes, reports, analyses, proposals, lists, correspondence, specifications, drawings, schematics, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any of the aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns, including, without limitation, those records maintained by me pursuant to Section 3.4. At the time of leaving my employment, I agree to sign and deliver the "Termination Certificate," in the form attached hereto as Exhibit A.

## Section 5. RELATIONSHIP OF THE PARTIES

**5.1 Employment at Will.** I acknowledge that I am an employee-at-will, meaning that either I or the Company may terminate my employment relationship at any time for any reason, with or without advance notice, and with or without cause.

**5.2 Attention and Effort.** During the term of my employment with the Company, I will devote all of my business time, ability, attention and effort to the Company's business and will skillfully serve its interests. I will not carry on any other professional endeavors or gainful employment without first obtaining the written consent of the Company, which consent shall not be unreasonably withheld, unless such secondary-employment or endeavor is deemed by the Company to be competitive with the Company's business or would pose a potential or actual conflict of interest, or would otherwise have a negative impact on the operations of the Company or the performance of my services.

## Section 6. ARBITRATION AGREEMENT, CLASS ACTION WAIVER AND DISPUTE RESOLUTION

**6.1 Arbitration Agreement.**

I understand and agree that all claims, disputes, or controversies relating to or arising out of my employment with the Company, except for the Excluded Claims listed below, shall be determined by binding arbitration before a single, neutral arbitrator. For purposes of this Arbitration Agreement under Section 6, the term "Company" includes Blue Origin, its parent, subsidiaries, affiliates, successors or assigns, as well as their current and former officers, directors, employees and agents.

This arbitration agreement applies to any and all claims, disputes, or controversies between the Company and me, including, without limitation, claims arising out of or relating to my employment application and/or hiring process, employment with the Company, and/or any termination of my

employment, claims for breach of this Agreement or otherwise relating to or arising out of this Agreement, tort claims, breach of contract claims, wage and hour claims including without limitation under the Fair Labor Standards Act, the Washington Minimum Wage Act and other Washington wage and hour statutes, and any other federal, state, and local wage and hour statutes, fee claims, claims under federal, state and local anti-discrimination, anti-harassment, and anti-retaliation laws and all other statutes governing the employment relationship, and any other employment-related claims, whistleblower claims, and all claims for violation of any federal, state, or other governmental law, statute, regulations, or ordinance (collectively "Covered Claims"), except for the following Excluded Claims:

(i) claims for unemployment benefits;
(ii) claims for workers' compensation benefits;
(iii) claims for sexual harassment or sexual assault, except if I choose voluntarily to arbitrate them under this Agreement;
(iv) claims that governing federal law, or a benefits-plan policy, prohibits from being arbitrated;
(v) claims for equitable relief alleging trade secret violations, trademark infringement, breach of fiduciary duty, breach of proprietary information or confidentiality obligations, and breach of non-solicitation agreements for which either party may seek equitable relief such as a temporary restraining order or preliminary injunction from a court of competent jurisdiction, prior to arbitrating the claim(s); and
(vi) actions to confirm, vacate, modify, or correct and arbitrator's award.

Claims under Section 6.1(i) through (vi) are collectively the "Excluded Claims." Covered Claims and Excluded Claims are collectively the "Claims."

Furthermore, I understand that the arbitration provisions of this Section 6, including but not limited to the Confidentiality provision under Section 6.5, do not affect my ability to exercise my rights under the National Labor Relations Act, or to report possible violations of federal law or regulation to any governmental agency or entity, including but not limited to the National Labor Relations Board, the Department of Justice, Equal Employment Opportunity Commission, the Congress, and any agency Inspector General ("Government Agencies"), or making other disclosures that are protected under the whistleblower provisions of federal or state law or regulation. I understand that I do not need the prior authorization of the Company to make any such reports or disclosures, and I am not required to notify the Company that I have made such reports or disclosures, nor does this statement limit my right to receive an award for information provided to any Government Agencies. If I have a Covered Claim that is not resolved by a Governmental Agency, I will arbitrate it under this Agreement unless it is an Excluded Claim.

**6.2 Arbitration Procedure.**

Except as otherwise stated in this arbitration provision, section 6, I agree that the arbitration of Covered Claims shall be conducted in accordance with the JAMS Employment Arbitration Rules and Procedures, except if this Agreement conflicts with the JAMS rules, this Agreement shall govern. A copy of the JAMS procedures is currently available at www.jamsadr.com/rules-employment-arbitration. The arbitration shall be conducted by one neutral arbitrator either mutually agreed upon by the Company and me or chosen in accordance with the JAMS rules, and shall take place in the county in which I work or worked for the Company, unless a different location is agreed to by the parties or, if the parties cannot agree, as decided by the arbitrator. The

arbitrator will make a ruling in a signed writing, including findings of fact and law, within thirty days of the arbitration proceeding. The arbitrator will be permitted to award only those remedies in law or equity that are requested by the parties and allowed by local, state and/or federal substantive law applicable to the Claims.

If I file a claim in arbitration, I understand that I will be responsible for the initial filing fees associated with any arbitration that I initiate, not to exceed the filing fees that I would have paid if I had filed a complaint in a court of law having jurisdiction. To the extent required by law to enforce this Agreement, the Company will pay the balance of the arbitrator's fees and administrative costs related to the arbitration. I understand that the Company and I will otherwise bear our own fees and costs, except the prevailing party shall be entitled to costs, expenses and reasonable attorneys' fees unless otherwise prohibited by law. Judgment upon the award rendered by the arbitrator will be binding and may be entered in any court having jurisdiction thereof.

I and the Company will have the right to conduct discovery in accordance with the Federal Rules of Civil Procedure, and the arbitrator shall have the power to decide any discovery disputes between the parties. I and the Company may call witnesses, cross-examine the other party's witnesses, and present evidence during the arbitration proceeding in accordance with the Federal Rules of Civil Procedure, as applied by the arbitrator. I understand and agree that the arbitrator's ruling will be final and binding on both me and the Company and any other party in the arbitration proceeding, and cannot be reviewed for error of law or legal reasoning of any kind. I understand that I can recover in arbitration on an individual basis the remedies that I could recover in court, including fees and costs to the extent allowed by law.

The statute of limitations applicable to the commencement of a lawsuit will apply to the commencement of an arbitration under this provision. If either I or the Company fail to make a written request for arbitration within the statute of limitations period applicable to a Claim under applicable law, or otherwise fail to comply with the administrative prerequisites to filing certain types of claims, I and/or the Company will have waived the right to raise that Claim in any forum, including arbitration. In the event that I or the Company file an action in court in violation of this Arbitration Agreement, that court shall require the parties to arbitrate all Claims.

The arbitrator's decisions and awards shall have no preclusive effect as to issues or claims in any other arbitration or court proceeding, unless all of the parties in the other proceeding were also a party in the arbitration in which the award or decision was issued. The Company and I will have the right to file a motion to dismiss, discovery motions, and/or a motion for summary judgment, which the arbitrator shall decide under the Federal Rules of Civil Procedure.

**6.3 Waiver of Class, Collective, Consolidated or Representative Claims ("Class Action Waiver").**

The Company and I will resolve Claims only on an individual basis. This means that no Claims, including arbitration of Covered Claims or cause of action in court for Excluded Claims, will be initiated or maintained as a class action, collective action, consolidated action, representative action, or multi-party actions (together "Collective Actions"). The Company and I waive the right to participate in, or receive money or other relief from, a Collective Action. Neither the Company nor I may bring a Claim on behalf of others. No arbitrator or judge may combine more than one individual's Claim(s) into a single arbitration or court proceeding without all parties' written consent. Under the terms of this Agreement, no arbitrator or judge may: (i) order or permit any arbitration-

related notice or information to be sent to any class, collective, representative or consolidated group; or (ii) require a party to produce any contact information for any class, collective, representative, or consolidated group.

FURTHER, TO THE EXTENT THAT ANY CLAIM IS EXCLUDED FROM ARBITRATION UNDER THIS SECTION 6 AND/OR IS DETERMINED NOT TO BE SUBJECT TO ARBITRATION, THE COMPANY AND I EXPRESSLY AGREE THAT ANY SUCH CLAIMS SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS ONLY, AND THE COMPANY AND I WAIVE OUR RIGHTS TO ASSERT CLAIMS ON CLASS, COLLECTIVE, OTHER REPRESENTATIVE, OR MULTI-PARTY ACTIONS.

**6.4 Jury Trial Waiver.**

I understand and agree that this binding arbitration procedure shall supplant and replace claims brought in state or federal court (except as specified in this Section), and that the Company and I expressly waive the right to a civil court action before a jury.

FURTHER, TO THE EXTENT THAT ANY CLAIM IS EXCLUDED FROM ARBITRATION UNDER THIS SECTION 6 AND/OR IS DETERMINED NOT TO BE SUBJECT TO ARBITRATION, THE COMPANY AND I EXPRESSLY AGREE THAT THE CLAIM SHALL BE TRIED TO THE COURT AND THAT ANY RIGHT TO JURY TRIAL IS WAIVED.

**6.5 Confidentiality.**

The arbitration shall be confidential and closed to the public unless otherwise required by law. However, this confidentiality provision does not apply to claims of sexual harassment, sexual assault, or other Excluded Claims under Section 6.1 above. Further, as provided by Washington state law, this confidentiality provision will not apply to claims arising under the Washington Law Against Discrimination, RCW 49.60, federal antidiscrimination laws, or state or local antidiscrimination laws. Arbitration of those claims will not be confidential and will be open to the public.

**6.6 Disputes about this Arbitration Agreement.**

An arbitrator shall resolve under this Agreement all disputes regarding the Agreement's and/or Section 6's scope, validity, applicability, enforceability, or breach and regarding the arbitrability of any claim. The only exception to this requirement is that a court shall resolve any dispute regarding the scope, validity, applicability, enforceability, or breach of the Class Action Waiver, including whether this arbitration clause allows class, collective, multi-party, or other representative arbitration (which it does not).

**6.7 Enforcement of the Arbitration Agreement and Waivers.**

This Arbitration Agreement and Section 6 is the entire agreement of the parties relating to the resolution of Claims, including Covered Claims and Excluded Claims. If any part of this Section 6 is found to be unenforceable, the severability clause in Section 7.2 below shall apply. Under no circumstances will a Claim be allowed to proceed in arbitration or court as a Collective Action.

**6.8 Governing Law.**

The Company's business, my employment, and this Agreement affect interstate commerce. This Arbitration Agreement, Class Action Waiver, and Dispute Resolution procedures, set forth in Section 6, are subject to and governed exclusively by the Federal Arbitration Act, 9 U.S.C. ch. 1, and federal arbitration law under the Federal Arbitration Act. To the extent that law does not apply or does not preempt state laws, Section 6 shall be subject to and governed by applicable Washington state law, without regard to its choice of law principles.

**Section 7. GENERAL PROVISIONS**

**7.1 Survival.** The provisions of this Agreement shall survive the expiration of the Term except for provisions that expressly apply only during the Term.

**7.2 Severability.** This Agreement will be enforced to the fullest extent permitted by applicable law. If for any reason any provision of this Agreement is held to be invalid or unenforceable to any extent under applicable law by a court of competent jurisdiction or in any arbitration proceeding, then (a) such provision will be interpreted, construed, modified, amended or reformed by the court or arbitrator to the minimum extent required to render the same valid, enforceable and consistent with the original intent underlying such provision, and (b) such invalidity or unenforceability will not affect any other provision of this Agreement or any other agreement between the Company and me. If a court or arbitrator declines to modify, amend, or reform any such provision as provided for in this paragraph, such invalidity or unenforceability shall attach only to such provision or portion thereof, and shall not in any way affect or render invalid or unenforceable any other provision of this Agreement or portion thereof, and this Agreement shall be enforceable in full force and affect as if such invalid or unenforceable provision or portion thereof had not been included in this Agreement.

**7.3 No Waiver.** The failure of the Company to insist upon or enforce strict performance of any provision of, or to exercise any of its rights or remedies under this Agreement (or under any similar agreement with any other employee) will not be construed as a waiver or a relinquishment of the Company's rights to assert or rely on any such provision, right or remedy in that or any other instance.

**7.4 Entire Agreement.** This Agreement (a) sets forth the entire agreement and, effective as of the date signed by me, supersedes any and all prior agreements between me and the Company with respect to the subject matter hereof, (b) is independent of any other written agreements between me and the Company regarding other aspects of my employment or any other prior or existing relationship with the Company including, but not limited to, any prior nondisclosure, confidentiality or visitors agreement between me and the Company, which prior agreement shall remain in full force and effect with respect to actions prior to the date of my employment with the Company, and (c) may be amended only by a writing signed by me and an authorized representative of the Company. I agree that I am not entering into this Agreement in reliance on any promises or statements not expressly included in this Agreement.

**7.5 Successors and Assigns.** This Agreement will be binding upon my heirs, executors, assigns, administrators and other legal representatives and will be for the benefit of the Company, its successors and its assigns. I understand that the Company may freely assign this Agreement from time to time to any parent, subsidiary or affiliate of the Company without notice to or consent

by me, but that I may not assign this Agreement, in whole or in part, without the Company's prior written consent.

**7.6 Governing Law and Venue; Consent to Personal Jurisdiction.**

Except for the Arbitration Agreement, Class Action Waiver, and Dispute Resolution procedures set forth in Section 6 above, this Agreement will be governed by the laws of the State of Washington, without regard to its choice of law principles to the contrary. The Arbitration Agreement, Class Action Waiver, and Dispute Resolution procedures, set forth in Section 6 above, are subject to and governed exclusively by the Federal Arbitration Act, 9 U.S.C. ch. 1. Except as to Excluded Claims, I irrevocably consent to the arbitration as set forth in Section 6 above, in connection with any action relating to this Agreement. As to claims that are excluded from arbitration under Section 6, I irrevocably consent to the jurisdiction in the federal and state courts in the State of Washington.

**7.7 Personally Identifiable Information.** The Company will from time to time make information, including my Personally Identifiable Information (PII), available to third parties such as vendors associated with our human resources management systems and other applicable vendor software systems (e.g. personnel file management, timekeeping, travel management, and so forth). Provision of PII to such third parties will have appropriate arrangements in place to address confidentiality and other provisions, consistent with the Company's applicable personnel data privacy policies and procedures.

**7.8 Acknowledgement.** I have carefully read all of the provisions of this Agreement and agree that (a) the same are necessary for the reasonable and proper protection of the Company's business and the Company's Proprietary Information and goodwill provided to me during the Term, (b) the Company has been induced to enter into and continue its relationship with me in reliance upon my compliance with the provisions of this Agreement, (c) every provision of this Agreement is reasonable with respect to its scope, duration and geography or other reference to location, and (d) I have carefully read this Agreement, understand its terms, and have entered into this Agreement voluntarily.

The Company, by offering this Agreement to me, and I, by signing below, agree to all of the terms set forth in this Agreement.

*[Signatures on Following Page]*

To show my agreement, I have signed below:

**EMPLOYEE**

I agree with the terms of this Employee Agreement.

Employee Signature: DocuSigned by: Craig Stoker D2C0DD5B0D02407...

Please Print Name: Craig Stoker

Date Signed: 8/17/2020 | 4:16 PDT

**BLUE ORIGIN, LLC**

By: DocuSigned by: Mary Plunkett 7B0AB762B2B4425...

Name: Mary Plunkett

Title: Sr Vice President - HR

Date Signed: 8/17/2020 | 4:16 PDT

## EXHIBIT A

*(To be completed immediately upon leaving employment; not at commencement of employment)*

## TERMINATION CERTIFICATE

**Section 1. DEFINITIONS**

**1.1 Company**. The Blue Origin affiliate by whom I was most recently employed, and its parent, subsidiaries, affiliates, predecessors, successors or assigns.

**1.2 Proprietary Information.** Proprietary Information means any information related to the business or other affairs of the Company or its affiliates that is not generally available to the public, and that was received or otherwise became known to me in connection with my employment. Without limiting the generality of the foregoing, this includes any Company proprietary information, technical data, trade secrets or know-how, including without limitation Inventions and Works (whether created by me or others), research, products, product plans, customers, customer lists, software, developments, processes, formulas, designs, drawings, engineering, services, pricing, finances, business and marketing plans, legal affairs, suppliers, current or potential customers and clients, prospects, contracts or assets of the Company, or improvements or new versions thereof. Proprietary Information also includes any information that has been made available to the Company by its customers, clients, suppliers or other third parties and which the Company is obligated to keep confidential. I further understand that Proprietary Information does not include any of the foregoing items that have become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved or improvements or new versions thereof. I further understand that this provision does not prohibit me from discussing the terms and conditions of my employment.

**1.3 Inventions and Works.** Inventions and Works means any composition, work of authorship, computer program, product, device, technique, know-how, algorithm, method, process, improvement, discovery or invention, whether patentable or copyrightable and whether reduced to practice, that was (a) within the scope of the Company's business or research, or resulted from (directly or indirectly) or was suggested by any work performed by me for the Company, and (b) was created, conceived, reduced to practice, developed, discovered, invented or made by me, whether solely or jointly with others, and whether or not while engaged in performing work for the Company.

**1.4 Materials.** Materials means any product, prototype, hardware, document, record, notes, report, analysis, proposal, list, correspondence, specification, sketch, picture, drawing, model, schematic, blueprint, design, writing, data, software, or other tangible item that in whole or in part contains, embodies or manifests (whether in printed, handwritten, coded, digital, analog, or other form) any Proprietary Information or any Inventions and Works.

**Section 2. CERTIFICATION**

This is to confirm that I do not have in my possession, nor have I failed to return, any Materials, devices, property, or reproductions of any aforementioned items belonging to the Company.

I further certify that I have complied with all the terms of the Employee Agreement signed by me, including the reporting of any Inventions and Works, conceived, developed, reduced to practice or made by me (solely or jointly with others) covered by that agreement.

I further agree that in compliance with the Employee Agreement, I will preserve as confidential all Proprietary Information.

I further agree that I will review Sections 4.1 through 4.8 of the Employee Agreement I made with the Company and that I will comply with the terms of those Sections and all other Sections that survive termination of employment.

Date: ____________________

[Exhibit for purposes of Illustration;
Not for Signature at Start of Employment]

# EXHIBIT C

akerman

Erica V. Mason

Akerman LLP
999 Peachtree Street NE
Suite 1700
Atlanta, GA 30309

T: 404 733 9800
F: 404 733 9898
DirF: 404 733 9908

October 28, 2022

VIA EMAIL: jgrant@blueorigin.com

Julie Grant
Sr. HR Business Partner
Blue Origin

**Re: Craig Stoker Severance Agreement**

Dear Ms. Grant:

This firm represents Craig Stoker in the above-referenced matter. Please direct all future communications regarding Mr. Stoker's employment to my attention erica.mason@akerman.com copying anita.coleman@akerman.com.

As you are aware, Blue Origin terminated Mr. Stoker on October 7, 2022, and presented him with a Separation and Release Agreement that he was tasked with reviewing and returning by October 28, 2022. This letter serves as our written rejection and counter-offer to same.

Currently, the Company's Severance and Release Agreement offers Mr. Stoker an amount equivalent to one month's salary in exchange for his Release of all claims against the Company. Based on the facts summarized below, Mr. Stoker rejects that offer, but will agree to sign this Agreement for an amount equivalent to three year's salary, benefits, bonus payments, and the second year of his equity grant (which would have vested two weeks after his termination date).

Mr. Stoker is 61 years old and has over 30 years of experience in Program Management. On or about October 19, 2020, Blue Origin hired Mr. Stoker to work at the Company's Kent, Washington location as Program Manager on the BE4 Block 1 Engine. Mr. Stoker, whom the Company recruited away from his Program Manager position at Bechtel in Cape Canaveral, Florida, uprooted his family and moved across the country to accept his position with Blue Origin. Mr. Stoker relocated from Florida to Washington State, and he was later assigned to the Company's Woodland Hills, CA location in January 2022.

Notably, Mr. Stoker was a long-term employee in good standing at Bechtel. He would still be employed at Bechtel in Florida if Blue Origin had not hired him away and relocated him across the country two years ago. He is now left without a job, and, to the extent Mr. Stoker's Washington State employment agreement is enforceable with respect to his California employment, Mr. Stoker

is limited in his employment options based on the restrictive covenants contained within his Blue Origin Employment Agreement.

During his Blue Origin employment, Mr. Stoker received satisfactory reviews and six-figure bonuses based on his performance. He was well-regarded by his peers and supervisors alike. Mr. Stoker was also never counseled for performance deficiencies during the course of his employment at Blue Origin.

By contrast, during the last six months of his employment, Mr. Stoker raised a number of concerns about Blue Origin's work and safety environments. Specifically, on May 23, 2022, Mr. Stoker complained to his direct supervisor and Blue Origin's HR Department regarding the perceived hostile work environment and targeting of employees at the hands of the Company's CEO, as well as concerns regarding safety mission assurance.

On October 7, 2022, less than five months after this complaint, and less than two months after the Company concluded its hostile work environment investigation, the Company abruptly terminated Mr. Stoker "not for cause" in retaliation for raising concerns about the work environment and safety. At the time Blue Origin terminated Mr. Stoker, he was only three years away from retirement.

The abrupt timing of Mr. Stoker's termination is concerning given that he had recently raised concerns regarding the CEO's behavior and what Mr. Stoker believed to be a hostile work environment and systemic targeting of employees, as well as safety issues. The Company concluded its investigation into Mr. Stoker's hostile work environment/employee targeting complaint on or about August 22, 2022. While the Company claimed that it found Mr. Stoker's concerns to be "unsubstantiated," Human Resources stated in investigation closure correspondence that it had identified a number of steps that it was undertaking to combat the issues Mr. Stoker had identified in his complaint. Moreover, upon information and belief, the Company's Safety and Mission Assurance Department is still investigating Mr. Stoker's safety concerns. Mr. Stoker was interviewed as a part of that investigation, but was never notified of that investigation's findings or that it had been closed.

The *prima facie* elements of a retaliation claim are that: (1) the employee engaged in a "protected activity;" (2) the employee was subject to an "adverse employment action;" and (3) there is a causal connection between the protected activity and the adverse employment action. The third element, causal connection, is most often demonstrated by the temporal proximity between the protective activity—in this case, Mr. Stoker's complaint—and the adverse employment action-- Mr. Stoker's termination.

The reason Blue Origin provided Mr. Stoker for its termination decision is that it was merely "seeking to make changes in management." No performance deficiencies or "for cause" events were identified. In fact, Mr. Stoker had just received his mid-year performance evaluation which stated that he was "on track" in his position at the Company, the same mid-year evaluation rating he received the year prior. Therefore, there is evidence that the Company's explanation for its

termination decision was merely pretext for retaliation based on Mr. Stoker's complaints. Retaliatory discharge based on the type of complaints raised by Mr. Stoker violates a number of California state and federal employment and whistleblower laws.

Mr. Stoker sincerely wishes to place this chapter behind him and move on from his employment at Blue Origin. However, given the difficulty that Mr. Stoker believes he will have finding comparable employment at 61 years of age (and 3000 miles away from where he had spent the last 10 years building his network), and the fact that he was fired for standing up for himself and other employees at Blue Origin and trying to create a healthier and safer work environment, Mr. Stoker cannot, in good conscience, sign the Separation and Release Agreement presented by the Company in exchange for one month's severance. Instead, he seeks severance in an amount that will compensate him for the lost benefits, salary, and bonuses, as well as the emotional turmoil that this entire ordeal has caused him, and he has authorized us to agree to execute the Company's Separation and Release Agreement in exchange for an amount equivalent to three year's benefits, salary, and bonuses, plus the 2nd year of equity that he would have vested had the Company waited just two more weeks to terminate him.

We look forward to your response and to resolving this matter in an amicable and expeditious fashion. I can be reached at erica.mason@akerman.com or on my cell phone (901)484-2882. Please also copy my LAA, anita.coleman@akerman.com on any written correspondence.

Sincerely,

Erica V. Mason

Erica Mason
Partner

**PROOF OF SERVICE**
*Stoker v. Blue Origin LLC, et al.*
LASC Case No. 23STCV28816
DWT C/M # 0065536-000044

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine, LLP, 865South Figueroa Street, Suite 2400, Los Angeles, California 90017-2566.

On July 2, 2024, I served the following document(s): **DECLARATION OF JULIE GRANT IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** as follows:

| | |
|---|---|
| Justin Shegerian, Esq.<br>William Reed, Esq.<br>SHEGERIAN & ASSOCIATES, INC.<br>11520 San Vicente Boulevard<br>Los Angeles, California 90049<br>Telephone Number: (310) 860 0770<br>Facsimile Number: (310) 860 0771<br>Email: JShegerian@shegerianlaw.com<br>Email: WReed@shegerianlaw.com<br>Email: calendarclerk@shegerianlaw.com | *Attorneys for Plaintiff,* **CRAIG STOKER** |

☒ (**VIA U.S. MAIL**) - I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

☒ (**VIA ELECTRONIC MAIL**) – On July 2, 2024, I electronically served a true and correct copy by e-mail from electronic e-mail address: ***robmendoza@dwt.com*** on the email addresses of the interested parties in this action as noted above.

☐ (VIA OVERNIGHT DELIVERY) and by sealing the envelope and placing it for collection and delivery by [OVERNIGHT SERVICE] with delivery fees paid or provided for in accordance with ordinary business practices.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed on July 2, 2024, at Los Angeles, California.

Robert Mendoza
Print Name

[signature]
Signature



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1(b)(23)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
BLUE ORIGIN LLC AND KEVIN LUNDE (sued erroneously as Kevin Lundy)

**Electronically FILED by Superior Court of California, County of Los Angeles 7/02/2024 7:29 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Tang, Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| CRAIG STOKER,<br><br>Plaintiff,<br><br>vs.<br><br>BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,<br><br>Defendants. | Case No. **23STCV28816**<br><br>**DECLARATION OF KEVIN LUNDE IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**<br><br>Assigned to the Hon. Cherol Nellon<br>Dept.: 14<br><br>Hearing Date: August 22, 2024<br>Hearing Time: 8:30 a.m.<br>**RES ID: 028462594858**<br><br>Action Filed: November 27, 2023 |

**DECLARATION OF KEVIN LUNDE**

I, Kevin Lunde, declare and state as follows:

1. I am personally familiar with the facts set forth herein, am over the age of eighteen, and, if called upon as a witness, could and would competently testify to the facts stated in this Declaration.

2. I have been named as an individual defendant in the above-referenced lawsuit, *Craig Stoker v. Blue Origin LLC*, *et al.*, Los Angeles Superior Court Case No. 23STCV28816.

3. I am represented in this lawsuit by Davis Wright Tremaine LLP, who files this Declaration on my behalf. I hereby join co-Defendant Blue Origin in requesting that Plaintiff Craig Stoker be compelled to arbitrate the claims he agreed to arbitrate.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on January 30, 2024 at Los Angeles, CA.

DocuSigned by:
Kevin Lunde
8A2594580CDF4D2...
Kevin Lunde



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**PROOF OF SERVICE**
*Stoker v. Blue Origin LLC, et al.*
LASC Case No. 23STCV28816
DWT C/M # 0065536-000044

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine, LLP, 865South Figueroa Street, Suite 2400, Los Angeles, California 90017-2566.

On July 2, 2024, I served the following document(s): **DECLARATION OF KEVIN LUNDE IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** as follows:

Justin Shegerian, Esq.
William Reed, Esq.
SHEGERIAN & ASSOCIATES, INC.
11520 San Vicente Boulevard
Los Angeles, California 90049
Telephone Number: (310) 860 0770
Facsimile Number: (310) 860 0771
Email: JShegerian@shegerianlaw.com
Email: WReed@shegerianlaw.com
Email: calendarclerk@shegerianlaw.com

*Attorneys for Plaintiff,* **CRAIG STOKER**

☒ (**VIA U.S. MAIL**) - I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

☒ (**VIA ELECTRONIC MAIL**) – On July 2, 2024, I electronically served a true and correct copy by e-mail from electronic e-mail address: ***robmendoza@dwt.com*** on the email addresses of the interested parties in this action as noted above.

☐ (VIA OVERNIGHT DELIVERY) and by sealing the envelope and placing it for collection and delivery by [OVERNIGHT SERVICE] with delivery fees paid or provided for in accordance with ordinary business practices.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed on July 2, 2024, at Los Angeles, California.

Robert Mendoza
Print Name

[signature]
Signature



DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# EXHIBIT 1(b)(24)

EMILIO G. GONZALEZ (State Bar No. 197382)
emiliogonzalez@dwt.com
ARIELLE J. SPINNER (State Bar No. 311147)
ariellespinner@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendant
BLUE ORIGIN LLC

Electronically FILED by Superior Court of California, County of Los Angeles 7/02/2024 7:29 PM David W. Slayton, Executive Officer/Clerk of Court, By J. Tang, Deputy Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES – CENTRAL DISTRICT

CRAIG STOKER,

Plaintiff,

vs.

BLUE ORIGIN LLC, a limited liability company; KEVIN LUNDY, an individual; and DOES 1 to 100, inclusive,

Defendants.

Case No. **23STCV28816**

**DECLARATION OF LINDA COVA IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Assigned to the Hon. Cherol Nellon
Dept.: 14

Hearing Date: August 22, 2024
Hearing Time: 8:30 a.m.
**RES ID: 028462594858**

Action Filed: November 27, 2023

**DECLARATION OF LINDA COVA**

I, Linda Cova, declare and state as follows:

1. I have been employed by Defendant Blue Origin, LLC ("Blue Origin") since March 1, 2021. I am based in Kent, Washington. Since September 11, 2022, I have held the title of Senior Vice President, Engines Business Unit. I am over the age of eighteen, and, if called upon as a witness, could and would competently testify to each of the facts set forth herein.

2. I am informed and believe that Plaintiff Craig Stoker ("Plaintiff"), was hired by Blue Origin in August 2020 to work as the Senior Director of Program Management. I worked with Plaintiff from the beginning of my employment with Blue Origin until the end of Plaintiff's employment with Blue Origin. Plaintiff began reporting to me in approximately March 2022.

3. During his employment at Blue Origin, Plaintiff complained to me about various work-related matters, many of which involved personality conflicts between Plaintiff and other employees. None of Plaintiff's complaints included gender-related allegations. Plaintiff never told me that he believed he was being subjected to different or unfair treatment because of his gender.

4. On or about October 7, 2022, my colleague, Julie Grant, and I met with Plaintiff to advise that his employment at Blue Origin was ending for business reasons. During this meeting, Plaintiff expressed his frustration and disagreement with this decision, but did not raise any gender-related complaints. Plaintiff did not state that he believed he was being terminated due to his gender.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on January 25, 2024 at Juneau, Alaska.

DocuSigned by:
Linda Cova
576AA1875A27471...

Linda Cova





DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**PROOF OF SERVICE**
*Stoker v. Blue Origin LLC, et al.*
LASC Case No. 23STCV28816
DWT C/M # 0065536-000044

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine, LLP, 865South Figueroa Street, Suite 2400, Los Angeles, California 90017-2566.

On July 2, 2024, I served the following document(s): **DECLARATION OF LINDA COVA IN SUPPORT OF BLUE ORIGIN LLC'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** as follows:

| | |
|---|---|
| Justin Shegerian, Esq.<br>William Reed, Esq.<br>SHEGERIAN & ASSOCIATES, INC.<br>11520 San Vicente Boulevard<br>Los Angeles, California 90049<br>Telephone Number: (310) 860 0770<br>Facsimile Number: (310) 860 0771<br>Email: JShegerian@shegerianlaw.com<br>Email: WReed@shegerianlaw.com<br>Email: calendarclerk@shegerianlaw.com | *Attorneys for Plaintiff,* **CRAIG STOKER** |

☒ (**VIA U.S. MAIL**) - I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

☒ (**VIA ELECTRONIC MAIL**) – On July 2, 2024, I electronically served a true and correct copy by e-mail from electronic e-mail address: ***robmendoza@dwt.com*** on the email addresses of the interested parties in this action as noted above.

☐ (VIA OVERNIGHT DELIVERY) and by sealing the envelope and placing it for collection and delivery by [OVERNIGHT SERVICE] with delivery fees paid or provided for in accordance with ordinary business practices.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct. Executed on July 2, 2024, at Los Angeles, California.

| | |
|---|---|
| Robert Mendoza | [signature] |
| Print Name | Signature |





DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899